**IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STACY HINNERS | : | Case No.: 1:19-cv-02868-PAB |
| | : | |
| Plaintiff, | : | Judge Pamela A. Barker |
| | : | |
| v. | : | Magistrate Judge David A. Ruiz |
| | : | |
| MICHAEL J. O'SHEA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT MICHAEL J. O'SHEA'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ ii

Table of Authorities ................................................................................................... iv

Statement of the Issues .............................................................................................. vi

Summary of the Argument ....................................................................................... viii

Memorandum in Support ............................................................................................. 1

**I. FACTUAL BACKGROUND** ................................................................................. 1

    A. Huron City Council Follows the Well-Respected *Roberts Rules of Order* ........... 1

    B. The Statutes Under Which Defendant O'Shea Can Prosecute Plaintiff: H.C.O. § 509.04 and H.C.O. § 525.07 ................................................................................. 3

    C. Stacy Hinners's Obstructed the May 14, 2019 Huron City Council Meeting ......... 4

    D. The Conduct of Speakers at Other Huron City Council Meetings ......................... 7

**II. LAW AND ARGUMENT** ...................................................................................... 7

    A. Plaintiff's Motion Sets forth the Incorrect Standard Governing the Grant of Prospective Injunctive Relief Against a Prosecutor from Filing Criminal Charges ................................................................................................................... 7

    B. Under *Younger v. Harris,* a State Court Prosecution May Not be Enjoined Except Under Extraordinary Circumstances Where a Danger of Irreparable Loss is Both Great and Immediate ............................................................................................... 8

    C. Plaintiff Cannot Establish Any of the Elements Necessary to Obtain Temporary or Preliminary Injunctive Relief ............................................................................. 9

        i. No extraordinary circumstances exist where the danger of an irreparable loss is both great and immediate ................................................................................. 9

        ii. Plaintiff is not likely to succeed on the merits of her claims ............................ 11

            1. Plaintiff's First Amendment Claims (Counts 2-5) Are Barred Because the City of Huron's Time, Manner, and Place Rules Did Not Restrict Plaintiff's Protected Conduct ...................................................................... 12

2. The Existence of Probable Cause to Prosecute Plaintiff for Her Criminal Conduct at the May 14, 2019 Meeting, in Violation of H.C.O. § 509.04 and H.C.O. § 525.07, Bars All Plaintiff's Claims (Counts 1-6) ..................15

   a. Because Plaintiff violated H.C.O. § 509.04 and § 525.07, Defendant O'Shea has always had probable cause to prosecute her ......................15

   b. Defendant's probable cause to charge and prosecute Plaintiff defeats Plaintiff's claims ....................................................................................16

3. Plaintiff's Claim for Selective Prosecution (Count 1) Fails Because Defendant O'Shea's Prosecution Was Not Brought in Bad Faith, with No Real Hope of Success, in Order to Chill Plaintiff's Speech ........................17

4. Plaintiff's Prior Restraint Claim (Count 3) Fails Because the Potential Reinstitution of Criminal Proceedings Against Plaintiff Is Not a Prior Restraint of Her Speech ...............................................................................18

5. Plaintiff's Fifth Amendment Claim (Count 6) Fails Because Plaintiff Was Not Arrested for Refusing to Speak to the Police ........................................19

iii. Plaintiff has a remedy at law that is adequate ...................................................19

III. CONCLUSION.................................................................................................20

# **TABLE OF AUTHORITIES**

## **Cases:**

*Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013)..........................................13

*Alexander v. United States*, 509 U.S. 544 (1993) ..........................................................18

*American News Co. v. Ladas*, 454 F.2d 1237 (6th Cir. 1972).....................................8, 9

*Bordenkircher v. Hayes*, 434 U.S. 357 (1978)................................................................15

*Cincinnati v. Thompson*, 96 Ohio App.3d 7, 643 N.E.2d 1157 (1994) ..........................15

*City of Columbus v. Doyle*, 149 Ohio App. 3d 164, 2002-Ohio-4490, 776 N.E.2d 537
(10th Dist.)..............................................................................................................13, 16

*City of Zanesville v. Jones*, 5th Dist. No. CT2016-0025, 2017-Ohio-1112...................12

*Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288 (1984)...............................2, 12

*Cook v. Franklin Cnty. Mun. Court*, 596 F. Supp. 490 (S.D. Ohio April 28, 1983) ....11

*County Secretary Agency v. Ohio Department of Commerce*, 296 F.3d 477 (6th Cir. 2002) .........7

*Doe v. Sorsai*, 2012 U.S. Dist. LEXIS 100423 (S.D.W. Va. June 18, 2012) .................9

*Dombrowski v, Pfister*, 380 U.S. 479 (1965)........................................................ *passim*

*Douglas v. Jeannette*, 319 U.S. 157, 63 S. Ct. 877, 87 L. Ed. 1324 (1943) ...................7

*Ex parte Young*, 209 U.S. 123 (1908).............................................................................8

*Fenner v. Boykin*, 271 U.S. 240 (1926) ...........................................................................8

*Gault v. City of Battle Creek,* 73 F. Supp. 2d 811, 1999 U.S. Dist. LEXIS 17190 (W.D. Mich.
July 12, 1999)...........................................................................................................13

*George v. Local Union No. 639, International Bhd. of Teamsters*, 825 F. Supp. 328 (D.C. Cir.
1993) .........................................................................................................................14

*Hansen v. Westerville City Sch. Dist., Bd. of Educ.,* 1994 U.S. App. LEXIS 31576
(6th Cir. 1994)......................................................................................................12, 14

*Hartman v. Moore*, 547 U. S. 250 (2006)...............................................................15, 16

*Honey v. Goodman*, 432 F.2d 333 (6th Cir. 1970) ..........................................................

*Thompson v. McNeil (1990) 53 Ohio St. 3d 102, 559 N.E. 2d 705* ...............................................17

*Jones v. Heyman*, 888 F.2d 1328 (11th Cir. 1989) ......................................................12, 13, 14

*Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266 (9th Cir. 1995) ...........................................14

*Lefkowitz v. Cunningham*, 431 U.S. 801 (1977) ..........................................................19

*Lowery v. Jefferson County Bd. of Educ.*, 586 F.3d 427 (6th Cir. 2009)...................................3, 14

*Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018)* ..........................................................16

*Mitchum v. Foster*, 407 U.S. 225 (1972) ..................................................................9

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019)..........................................................18, 19

*Parratt v. Taylor*, 451 U.S. 527 (1981).................................................................20

*Pesek v. Brunswick*, 794 F. Supp. 768, 1992 U.S. Dist. LEXIS 11116
(N.D. Ohio July 2, 1992) ..............................................................................12

*State v. Brand*, 2 Ohio App. 3d 460, 442 N.E.2d 805 (1st Dist.)................................................16

*State v. Wolf*, 111 Ohio App. 3d 774, 677 N.E.2d 371 (7th Dist.).......................................3, 12, 16

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ....................................................12

*Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983) ......................................................19, 20

*White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990)..........................................................13

*Younger v. Harris*, 401 U.S. 37 (1971)................................................................ *passim*

*Young v. Weirich*, No. 19-5012, 2019 U.S. App. LEXIS 14702 (6th Cir. May 16, 2019)............20

*Thompson v. McNeil (1990) 53 Ohio St. 3d 102, 559 N.E. 2d 705* ...............................................15

**Statutes, Ordinances, and Codes:**

42 U.S. Code § 1983 .........................................................................................*passim*

R.C. 2917.12 ..............................................................................................*passim*

R.C. 2921.31 ..........................................................................................3, 4, 16

H.C.O. § 509.04 ...........................................................................................*passim*

H.C.O. § 525.07 .................................................................................................... *passim*

Huron Admin. Code 121.01 ...........................................................................2, 3

**<u>Other Sources:</u>**

ROBERT, HENRY M., ROBERT'S RULES OF ORDER NEWLY REVISED,
(11th ed. 2011).........................................................................................................2

## <u>STATEMENT OF THE ISSUES</u>

1.  Whether Plaintiff's conduct at the May 14, 2019 Huron City Council meeting was protected under the First Amendment.

2.  Whether the potential refiling of criminal charges against Plaintiff is an exceptional circumstance where irreparable injury is both great and immediate, warranting an injunction against Defendant.

3.  Whether, by prosecuting or holding out the possibility of refiling criminal charges, Defendant has acted in bad faith, with no hope of success, in order chill Plaintiff's speech.

## SUMMARY OF THE ARGUMENT

Federal Courts rarely enjoin state criminal prosecutions, absent extraordinary circumstances that are not present in this case.  At the outset, Plaintiff begins with the wrong framework for determining whether a temporary or preliminary injunction of a criminal proceeding is warranted.  Plaintiff argues for a "collapsed" test in which the constitutional interests of Plaintiff and Defendant are weighed against each other.  But Plaintiff's proposed test only applies prior restraints on pure speech not at issue here.  Rather, the test for whether a criminal proceeding should be enjoined is set forth in the well-known case *Younger v. Harris*: extraordinary circumstances where irreparable loss is both great and immediate.  In this context, extraordinary circumstances include a prosecution carried out in bad faith, with no hope of success, in order chill speech, as set forth in *Dombrowski v. Pfister*.

Plaintiff does not come close to establishing *Younger's* extraordinary circumstances, and in fact, does not even mention *Younger* or its progeny.  Nor does Plaintiff meet the requirements for a temporary or preliminary injunction—(1) threat of sufficient immediacy, (2) likelihood of success on the merits, (3) irreparable harm, and (4) inadequate remedy at law (factors similar to those set forth in *Younger*).

*First*, Plaintiff cannot establish irreparable harm that is both great and immediate. Plaintiff's anxiety about a *future* prosecution and her alleged self-restraint from engaging in protected speech is not the type of harm *Younger* envisioned.  And the alleged harm is not immediate: the criminal charges will not be potentially refiled until after the Ohio Attorney General completes its investigation into the City of Huron, commenced upon Plaintiff's demand during the criminal prosecution.  During Plaintiff's prosecution, beginning in May 2019 through its dismissal in October 2019, she did not believe that harm was sufficiently great and imminent

to warrant filing a § 1983 action; yet, she determined in December 2019, *after* the prosecution was dismissed, that her harm *at that time* became great and immediate.

*Second*, Plaintiff is not likely to succeed on the merits of her claims.  Plaintiff brings six claims against Defendant O'Shea all based upon alleged 42 U.S. Code § 1983 violations: (1) Equal Protection - Selective Prosecution; (2) First Amendment - Retaliatory Arrest; (3) First Amendment - Prior Restraint; (4) First Amendment - H.C.O. § 509.04 is unconstitutional as applied; (5) First Amendment - H.C.O. § 525.07 is unconstitutional as applied; and (6) Fifth Amendment - H.C.O. § 525.07 is unconstitutional as applied.

Plaintiff's First Amendment claims (Claims 2-5) fail because the time, place, and manner restrictions imposed by Huron's City Council at the May 14, 2019 meeting and violated by Plaintiff, including a three-minute limit per speaker and addressing Council from the podium, were permissible restrictions for a government meeting under the First Amendment.

All Plaintiff's claims are barred because probable cause negates a § 1983 action seeking to restrain a prosecution.  Because Plaintiff violated Council's restrictions, Defendant had probable cause to prosecute her for disrupting a public meeting and obstructing government business under laws whose application has been upheld under similar facts.

Under *Dombroski*, Plaintiff's retaliatory prosecution claim (Claim 1) fails because she no evidence that Defendant acted in bad faith, with no hope of success in prosecuting her, with the purpose of chilling Plaintiff's speech.

Plaintiff's prior restraint claim (Claim 3) fails for the additional reason that a prior restraint is an order that forbids protected speech in advance—the possibility of a future prosecution is not a prior restraint.

Plaintiff's Fifth Amendment claim (Count 6) fails because she has no evidence that she

was arrested for refusing to speak with the police.  On the contrary, videos of the May 14, 2019 Council meeting show that Plaintiff refused to comply with the police officer's lawful order, including to leave the meeting.

*Finally*, Plaintiff has a remedy at law that is adequate, negating her § 1983 action and the need for a preliminary injunction: she may raise her constitutional challenges to the criminal suit against her in the Huron Municipal Court.  In fact, Plaintiff chose to proceed in this manner, raising her constitutional challenges in the municipal court, until the case was dismissed.  Now, *after* the case was dismissed, she wishes to forum-shop and prematurely litigate her defenses in this Court.  Plaintiff's maneuver, however, is not permitted under *Younger*.

x

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STACY HINNERS | : | Case No.: 1:19-cv-02868-PAB |
| | : | |
| Plaintiff, | : | Judge Pamela A. Barker |
| | : | |
| v. | : | Magistrate Judge David A. Ruiz |
| | : | |
| MICHAEL J. O'SHEA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

District Courts are adept at sifting through miscited caselaw. And that is a good thing, here. Because Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order takes liberties, in citing cases, in an attempt to exercise prior restraint of a prosecutor filing criminal charges. The controlling Supreme Court decision, *Younger v. Harris*, is not mentioned by Plaintiff. All in an attempt to cross examine—at an injunctive hearing—a prosecutor on his mental impressions, which are obviously privileged.

There is no dispute: Plaintiff engaged in conduct which justifies filing charges against her. And while those charges are not currently pending, prohibiting a Prosecutor from filing charges for which probable cause exists cannot occur. Simply, Plaintiff cannot overcome *Younger*'s burden of irreparable loss—that is both great and immediate—for a potential prosecution of misdemeanors, not even currently filed.

I.    **FACTUAL BACKGROUND**

   A. **Huron City Council Follows the Well-Respected *Roberts Rules of Order*.**

The rules governing Huron City Council meetings originate from the Huron Administrative Code and Council. Addressing Council at its meetings is a privilege granted by Council. *See* Huron Admin. Code 121.01(XIX) ("No member of Council while Council is in session shall engage in debate or discussion with

1

any one save another member of Council or the Mayor or some person who has either been granted by Council the privilege to address Council or is present at a Council meeting on invitation of Council.")  The privilege to speak to Council is limited to the reasonable time, manner, and place restrictions imposed by Huron City Council.  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  According to the Huron Administrative Code, all "discussion shall be governed by Robert's Rules of Order."  *See* Huron Admin. Code 121.01(XIX).

Robert's Rules of Order require speakers to address Council: "Speakers [] address their remarks to the presiding officer, be courteous in their language and deportment, and avoid personalities, never alluding to the officers or other members by name, where possible to avoid it, nor to the motives of members."  ROBERT, HENRY M., ROBERT'S RULES OF ORDER NEWLY REVISED, Art. 1, § 7 (11th ed. 2011). In other words, speakers are required to face and address the presiding officer, in this case Mayor Hartung, when speaking at Council meetings.  This is also a general instruction given by the Mayor before public members speak (*see* Statement of Councilman Trey Hardy, Doc. 1-63, Ex. D-17), and a specific instruction given by the Mayor when public members do not comply (*see e.g.*, Doc. 1-10, Ex. A-7 at 0:19-0:37.)

The Huron City Council generally limits the time speakers are permitted to speak at its meetings to three minutes.  (Statement of Councilman Trey Hardy, Doc. 1-63, Ex. D-17).  For the May 14, 2019 Huron City Council meeting (the "May 14, 2019 Meeting"), the meeting in question, the agenda requested speakers to "Please state [their] name and address for the recorded journal.  (3 minute time limit)." (Doc. 1-83, Ex. D-37.)  There were no specific topics listed on the agenda.  (*See id*.)  Copies of the agenda were available for members of the public at the podium.  (Statement of Councilman Trey Hardy, Doc. 1-63, Ex. D-17).  When the audience comments portion began, the Mayor, Brad Hartung, announced, as he always does, that anyone wanting to address the council must (1) step to the podium, (2) state their name and address for the record, and (3) they would be given three minutes to speak.  (*Id*.)  Councilman and Vice Mayor Trey Hardy was

tasked with keeping track of time and giving everyone a 30-second notice prior to the expiration of the 3 minutes, due to the large crowd.  *Id*.  There were nine members of the public who spoke at the meeting, and six spoke before Hinners.  (Meeting Minutes, Doc. 1-84, Ex. D-38.)  The time limit was applied equally to all speakers on May 14, 2019: several of the first six speakers took their entire allotted 3 minutes, and others took less time. (Statement of Councilman Trey Hardy, Doc. 1-63, Ex. D-17.)

Finally, disruptive behavior or speech is prohibited during meetings.  The Administrative Code states that "the Mayor shall preserve order and decorum . . . ." (Huron Admin. Code 121.01(V).)  Courts recognize the significant government interest in orderly meetings, including the right to remove disruptive members of the public, even when their disruptive behavior violates no specific rules or policies.  *Lowery v. Jefferson County Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009).

### B. The Statutes Under Which Defendant O'Shea Can Prosecute Plaintiff: H.C.O. § 509.04 and H.C.O. § 525.07.

For Plaintiff's actions at the May 14, 2019 Meeting, Defendant O'Shea prosecuted Plaintiff for disrupting a lawful meeting under H.C.O. § 509.04 and obstructing official business under H.C.O. § 525.07. (Doc. 1-47, Ex. D-01; Doc. 1-48, Ex. D-02.)  Under H.C.O. § 509.04(a) (modelled upon R.C. 2917.12):

> No person, with purpose to prevent or disrupt a lawful meeting, procession or gathering, shall do either of the following: (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession or gathering; (2) Make any utterance, gesture or display which outrages the sensibilities of the group.

Under H.C.O. § 525.07(a) (modelled upon R.C. 2921.31):

> No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

These ordinances prohibit conduct that disrupts a lawful meeting or impedes a public official in performance of his lawful duties.  Prohibited conduct includes speaking without permission, refusing to follow the rules of the meeting, and refusing to leave a meeting.  *See State v. Wolf*, 111 Ohio App. 3d 774, 677 N.E.2d 371

(7th Dist.).  To violate the ordinances, disruptions need not be "substantial."  *See id*. Courts have upheld prosecutions under the Ohio Revised Code sections upon which the ordinances were modelled under similar facts.  For example, in *State v. Wolf*, the defendant attended a meeting of the local Board of Health, sat at the Board meeting table, and refused to sit with the general public when instructed to do so.  (*Id*. at 775.)  After the Board summoned the police, defendant stood up without permission and reciting a statement explaining why he was not disrupting the meeting.  (*Id*.)  Police were summoned, and when defendant refused to leave the meeting, he was arrested and charged under R.C. 2917.12 and R.C. 2921.31, and found guilty by a jury. (*Id*.)  His conviction was upheld on appeal, despite his constitutional challenges.  (*Id*. at 779.)

### C.  Stacy Hinners's Obstructed the May 14, 2019 Huron City Council Meeting.

On May 14, 2019, a "regular meeting" of the Huron City Council was called to order.  (Meeting Minutes, Doc. 1-84, Ex. D-38.)  The agenda for the May 14, 2019 Meeting included "Audience Comments," during which time "Citizens may address their concerns to City Council."  (Agenda, Doc. 1-83, Ex. D-37.) Plaintiff Stacy Hinners—an attorney who should be knowledgeable about the criminal law and permissible First Amendment restrictions at meetings—attended the meeting with her son. (Compl., Doc. 1 at ¶ 76; *The Supreme Court of Ohio Directory*, https://www.supremecourt.ohio.gov/AttorneySearch/#/76458/attyinfo (last visited Jan. 17, 2020).)  When it was Hinners's turn, she stood up in her seat and began speaking to the audience with her back to council. (Statement of Councilman Trey Hardy, Doc. 1-63, Ex. D-17.) The only complete recording of Hinners's speech is a compilation of audio and video, filed as Doc. 1-10, Ex. A-7.

The video compilation (Doc. 1-10, Ex. A-7) shows the following exchange:

| Time of Video | Speaker | Physical Actions | Verbal Statements |
|---|---|---|---|
| 0:12 | Stacy Hinners | Stands at her seat in audience | "I'm going to just stand here so I don't have to turn my back." |
| 0:16 | Mayor Brad Hartung | Seated at council meeting table | "Ms. Hinners please address council." |
| 0:18 | Stacy Hinners | Stands at her seat in audience, ignoring instruction | Begins addressing audience, with her back to council. |

4

| 0:19 | Mayor Brad Hartung | Seated at council meeting table | "Ms. Hinners please address council, step to the podium and address council, you're here in a public meeting to address council …" |
|---|---|---|---|
| 0:26 | Stacy Hinners | Begins moving from seat to podium | "I am." |
| 0:27 | Mayor Brad Hartung | Seated at council meeting table | "…not the audience, it's council. Thank you." |
| 0:33 | Stacy Hinners | Standing at podium facing the audience | Begins speech addressing the audience, with her back to council. |
| 0:37 | Mayor Brad Hartung | Seated at council meeting table, bangs his gavel several times | "Ms. Hinners, Ms. Hinners, Mrs. Hinners."[1] |
| 0:33 – 2:58 | Stacy Hinners | Standing at podium facing the audience | Gives uninterrupted speech. |
| 2:58 | Vice Mayor Trey Hardy | Seated at council meeting table | "30 seconds Mrs. Hinners." |
| 2:58 | Stacy Hinners | Standing at podium facing the audience | Continues to give speech.[2] |
| 3:27 | Vice Mayor Trey Hardy | Seated at council meeting table | "You're three minutes are up." |
| 3:30 | Stacy Hinners | Standing at podium, turns and faces council | "Mayor, you allowed Mr. Wright to speak for 5 minutes at the last meeting about [inaudible] Beechwood and I ask to be afforded the same privilege." |
| 3:37 | Mayor Brad Hartung | Seated at council meeting table | "No." |
| 3:39 | Stacy Hinners | Standing at podium facing council | "Sir if you cut me off . . ." |
| 3:42 | Mayor Brad Hartung | Seated at council meeting table | "3 minutes is the time limit." |
| 3:43 | Stacy Hinners | Standing at podium facing council | "Sir, you do not enforce that rule consistently and without regard to content [inaudible] …" |
| 3:44 | Mayor Brad Hartung | Seated at council meeting table, bangs gavel. | "You are going to be charged with disrupting a public meeting. Please sit down. Please sit down." |
| 3:53 | Stacy Hinners | Standing at podium facing council, | "I'll note here for the record that unlike Mr. Wright who was |

---

[1] During her speech, after Hinners refused to follow his order to turn and address council, the Mayor pressed the buzzer to the police department. (Statement of Mayor Hartung, Doc. 1-57, Ex. D-11.)  When no police officer came, the Mayor left the meeting to locate an office, but could not find one, so he returned to the meeting while Hinners was still speaking.  *Id.*

[2] During the speech, Hinners states that her husband met with many of the council members one on one about the transparency issue.

| | | ignoring instruction to sit down | permitted to speak for five minutes …" |
|---|---|---|---|
| 4:00 | Mayor Brad Hartung | Seated at council meeting table | "You're making a mockery of the, you're making a mockery of the city council meeting by turning and talking, sit down Ms. Hinners, we are done with you, sit down please." |
| 4:15 | Stacy Hinners | Walks from podium back to seat in audience | "Par for the course." |

The video compilation also shows that her unlawful interactions with the police after Hinners sat down after speaking.  At some point after Hinners sat down, two police officers approached her and asked her to leave.  (Doc. 1-7, Ex. A-4 at 10:10.)  Hinners told the two officers she was not leaving.  *Id.*  The Mayor told Hinners that she created a scene and she responded by shouting out that he created a scene by calling the officers in.  *Id.*  Hinners asked the officers if they were physically going to remove her if she did not voluntarily leave, and they told her they would.  *Id.*  Hinners remained seated and resisted the officers' efforts to guide her out by her arm.  *Id.*  The officers then forcibly removed Hinners and placed her in handcuffs.  *Id.*  As she was placed in handcuffs and removed from the room, Hinners said, "This is the kind of city we are running here folks."  *Id.*  During this time, the meeting was delayed.

In sum, the video compilation show that Hinners violated the rules governing Huron City Council Meetings and H.C.O. § 509.04 and H.C.O. § 525.07.  Specifically, it shows that:

- Hinners disobeyed the Mayor's general instruction to speak from the podium;

- Hinners disobeyed the Mayor's specific, repeated instructions to Hinners to face and address council throughout her speech, violating the Robert's Rules of Order;

- Hinners refused to comply with the three-minute time limit by refusing to stop her speech after the time limit expired and continuing to argue with the Mayor;

- Hinners refused to sit down and made disruptive, confrontational, and accusatory comments after the Mayor did not provide Hinners with additional time; and

- Hinners refused to follow the instructions of the police to leave the meeting.

### D.  The Conduct of Speakers at Other Huron City Council Meetings.

Plaintiff filed 26 exhibits with her Complaint that purport to be audio or video of the May 14, 2019 Meeting and other meetings at Huron City Council. (*See* Doc. 1-4, Ex. A-1 – Doc. 1-11, Ex. A-7; Doc. 1-22, Ex. B-3 – Doc. 1-36, Ex. B-17; Doc. 1-38, Ex. B-19; Doc. 1-80, Ex. D-34; Doc. 1-87, Ex. D-41.)  These recordings show that nearly every single speaker addressed council while speaking.  (*See id*.)  The speakers who addressed the audience, were warned by council to address council, and each speaker complied, except for Plaintiff.  (*See* Doc. 1-26, Ex. B-7 (Gina Woody), Doc. 1-27, Ex. B-8 (Shannon Pollick), Doc. 1-30, Ex. B-11 (Judy Tann), Doc. 1-32, Ex. B-13 (Sandy Legando), Doc. 1-35).  Other speakers only turned momentarily to address the audience then turned back to address council primarily.  (*See* Doc. 1-35, Ex. B-16).  The videos purportedly showing speakers who did not speak from the podium only show clips a minute or less without context, and do not show that they disregarded the council's instructions to speak at the podium. (*See* Doc. 1-34, Ex. B-15.)  Although the videos show speakers who speak for longer than 3 minutes, none of the videos demonstrate that, for those meetings, a large number of speakers were present requiring council to strictly uphold the limits, as council consistently did at the May 14, 2019 Meeting.

## II.     LAW AND ARGUMENT

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions." [3]

### A.  Plaintiff's Motion Sets forth the Incorrect Standard Governing the Grant of Prospective Injunctive Relief Against a Prosecutor from Filing Criminal Charges.

Misciting *County Secretary Agency v. Ohio Department of Commerce*, Plaintiff argues that a collapsed test applies, in which restrictions on First Amendment rights are weighed against competing rights, rather than the four-part preliminary injunction test. (Doc. 2 at 3).  But Plaintiff ignores that the Sixth Circuit limited the application of the collapsed test to cases "of prior restraint on *pure speech*."  296 F.3d 477, 485 (6th Cir. 2002) (considering an injunction specifically prohibiting the release of information about security

---

[3] *Douglas v. Jeannette*, 319 U.S. 157, 63 S. Ct. 877, 881, 87 L. Ed. 1324 (1943).

guards at a Union strike site—pure speech) (emphasis added).

The collapsed test obviously does not apply here. The prosecution Plaintiff attempts to hinder was an obstruction prosecution—it did not seek to prohibit any speech.  Plaintiff is simply arguing that she feels she cannot speak, for fear that the prosecution will be refiled. (Doc. 2 at 2, 21.) This is not a pure speech case. Rather, the doctrine in *Younger v. Harris*—which specifically involved an injunction to prevent a criminal prosecution—controls.  401 U.S. 37 (1971).  Curiously, *Younger* is not even mentioned in Plaintiff's motion.

## B. Under *Younger v. Harris,* a State Court Prosecution May Not Be Enjoined Except Under Extraordinary Circumstances Where a Danger of Irreparable Loss is Both Great and Immediate.

For over one hundred years, the Supreme Court has repeatedly recognized that, absent extraordinary circumstances, a federal court should not restrain either the institution of or pending state criminal proceedings. *See Fenner v. Boykin*, 271 U.S. 240, 243 (1926) ("*Ex parte Young*, 209 U.S. 123 [(1908)] and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done except under extraordinary circumstances, where the danger of irreparable loss *is both great and immediate*."); *American News Co. v. Ladas*, 454 F.2d 1237, 1239 (6th Cir. 1972) (Emphasis added) (stating that the Supreme Court has long held that "*even with respect to state criminal proceedings not yet formally instituted*," a suit seeking to enjoin state prosecutions "could be proper only under very special circumstances") (emphasis added).

In *Younger v. Harris*, the Supreme Court provided its fundamental rationale to determine when a federal court's injunction against a state prosecution is proper.  401 U.S. at 43.  In *Younger*, the Court reiterated that a "basic doctrine of equity jurisprudence [is] that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  *Id.* at 44.  In construing *Younger*, the

Court has held that when a criminal action is pending, a federal court may enjoin the proceeding only "in certain exceptional circumstances—where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief.'" *Mitchum v. Foster*, 407 U.S. 225, 230-31 (1972) (quoting *Younger*, 401 U.S. at 46). Here, Plaintiff is alleging that, by threatening to prosecute her, Huron and Defendant O'Shea have harassed her and acted in bad faith.

Though *Younger* itself was limited to *pending* prosecutions, its principles apply to *threatened* prosecutions, as alleged here. *See American News Co.*, 454 F.2d at 1239. In a suit to enjoin threatened prosecution, "[t]o justify federal interference, the plaintiff must demonstrate (1) a threat of sufficient immediacy and reality to warrant the issuance of an injunction, (2) the likelihood of success on the merits, (3) the likelihood of irreparable harm from allowing the prosecution to proceed, and (4) a remedy at law that is plainly inadequate." *Doe v. Sorsai*, 2012 U.S. Dist. LEXIS 100423, *28 (S.D.W. Va. June 18, 2012).

### C. Plaintiff Cannot Establish Any of the Elements Necessary to Obtain Temporary or Preliminary Injunctive Relief.

      i. No extraordinary circumstances exist where the danger of an irreparable loss is both great and immediate.

Under *Younger*, there must be extraordinary circumstances where the irreparable loss to Plaintiff is both great and immediate. *Younger*, 401 U.S. at 46 ("in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate'"). Here, Plaintiff cannot meet either burden: (1) the threat of filing second and fourth degree misdemeanor charges—to which Plaintiff claims to have complete defenses—is not a great harm; and (2) there is no evidence that the charge will be refiled anytime in the near future, given that it was withdrawn pending an attorney general investigation.

First, Plaintiff cannot establish "great harm." To establish irreparable harm, Plaintiff must prove "a

substantial loss or impairment of freedoms of expression will occur if [she] must await the state court's disposition." *Dombrowski v, Pfister*, 380 U.S. 479, 486 (1965).  Her injury must be an "injury other than that incidental to every criminal proceeding brought lawfully and in good faith." *Id*. at 485.  In *Dombrowski*—the case that sets the standard for enjoining a bad-faith prosecution—the appellants were arrested and threatened with prosecution for ongoing speech that allegedly violated a facially Constitutionally invalid statute. *Id*. at 495-96.[4]  And the police's "[s]eizure of document and records [] paralyzed operations and threatened exposure of the identity of adherents to a locally unpopular cause," with a series of state prosecution likely.  *Id*. at 488-89.

In this case, Plaintiff claims that her impairment of freedom is the alleged prior restraint of *all* her political speech criticizing Huron and its city council after May 14, 2019 by the threatened prosecution. (Doc. 2 at 20.)  Plaintiff alleges that "she has spent the last seven months unable to inform her neighbors about the secret payments City Council has been making or other developments at City Hall."  (*Id*.)  But Plaintiff remains free to engage in speech in any medium she prefers, including at City Council meetings, as she was before the criminal proceeding was dismissed. And the statutes under which Defendant had prosecuted Plaintiff are not being applied—and cannot be applied—to restrict Plaintiff's speech beyond disrupting a Huron City Council meeting, in contrast to the all-encompassing, content-based speech restrictions imposed by the statutes in *Dombrowski*.  *Indeed, Plaintiff has spoken about these issues at least twice within three months of filing this lawsuit through her lawyer's blog*.[5] Plaintiff's Open Meetings violation lawsuit against the City of Huron, a public proceeding, continues. *See Hinners v. Huron*, Erie C.P. No. 2019 CV 0275 (filed May 13, 2019).  And upon demand by Plaintiff's attorney, Ohio Attorney General

---

[4] Note that *Younger* substantially limited *Dombrowski's* application. 401 U.S. at 50-52.

[5] The Chandra Law Firm LLC, *Huron activist Stacy Hinners asks court to dismiss charges based on First Amendment retaliation*, https://www.chandralaw.com/blog/huron-activist-stacy-hinners-asks-court-to-dismiss-charges-based-on-first-amendment-retaliation, Sept. 6, 2019; The Chandra Law Firm LLC, *First Amendment win: retaliatory criminal charges against Huron activist Stacy Hinners dismissed*, https://www.chandralaw.com/blog/first-amendment-win-retaliatory-criminal-charges-against-huron-activist-stacy-hinners-dismissed, Oct. 7, 2019.

David Yost is conducting an investigation into whether Huron violated Plaintiff's civil rights. While claiming to be afraid to speak out, she is unafraid to have instituted proceedings against Huron and its officials. Plaintiff's anxiety about a single, future prosecution does not qualify as "great harm" under *Younger*. *Cook v. Franklin Cnty. Mun. Court*, 596 F. Supp. 490, 500 (S.D. Ohio April 28, 1983) ("the 'cost, anxiety, and inconvenience of having to defend against a single criminal prosecution' is not the type of injury that could justify federal interference.") (quoting *Younger*, 401 U.S. at 46).

Second, the alleged harm is not immediate. Defendant O'Shea dismissed his criminal complaint against Plaintiff without prejudice, electing to wait on potentially refiling the action until after the Ohio Attorney General completes the investigation of Huron.[6] Until this investigation is completed, the potential reinstituting of criminal proceedings against Defendant is not sufficiently immediate to warrant the issuance of an injunction. Indeed, the charges hungover Plaintiff's head for months—having been filed in the summer—but she sought no injunction until December 11, 2019 with the filing of this Complaint. In other words, while the charges were actually pending, and Plaintiff had a platform to rail against Huron, she sought no injunctive relief from this Court. Now with the charges dismissed, and the Plaintiff's platform gone, she seeks injunctive relief.

ii.  Plaintiff is not likely to succeed on the merits of her claims.

Plaintiff brings six claims against Defendant O'Shea all based upon alleged 42 U.S. Code § 1983 violations: (1) Equal Protection - Selective Prosecution; (2) First Amendment - Retaliatory Arrest; (3) First Amendment - Prior Restraint; (4) First Amendment - H.C.O. § 509.04 is unconstitutional as applied; (5) First Amendment - H.C.O. § 525.07 is unconstitutional as applied; and (6) Fifth Amendment - H.C.O. § 525.07 is unconstitutional as applied. The relief Plaintiff seeks under all claims is for this Court to enjoin Defendant O'Shea from prosecuting Plaintiff in the future for her criminal actions at the May 14, 2019 Huron City

---

[6] *See* Michael Harrington, *Huron dismisses charges against Hinners*, Sandusky Register (Oct. 10, 2019), http://www.sanduskyregister.com/story/201910080010.

Council meeting.  Thus, each of Plaintiff's § 1983 claims must be viewed through the lens of *Younger*, and relief may only be granted if Plaintiff establishes one of the doctrine's extraordinary exceptions.

1. Plaintiff's First Amendment Claims (Counts 2-5) Are Barred Because the City of Huron's Time, Manner, and Place Rules Did Not Restrict Plaintiff's Protected Conduct.

To establish a First Amendment claim, the Plaintiff must prove that she engaged in protected conduct. *See e.g.*, *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).  But Plaintiff's claims fail at the outset because her conduct on May 14, 2019 was not protected under the First Amendment: she violated the reasonable time, place, and manner restrictions imposed by the Council.  An individual has no right to speak at a city council meeting, unless granted that privilege by the city council.  *See e.g., Pesek v. Brunswick*, 794 F. Supp. 768, 785, 1992 U.S. Dist. LEXIS 11116, *43 (N.D. Ohio July 2, 1992).  Once a city council opens its meetings for general public comment it becomes a "limited public forum" under First Amendment jurisprudence.  *Id*.  Within a limited forum, the government may regulate the time, place and manner of speech so long as the regulation is (1) "content-neutral," (2) "narrowly tailored to serve a significant governmental interest" and (3) "leave[s] open ample alternative channels for communication of the information." *Clark*, 468 U.S. at 295. "The government has a significant interest in the orderly and efficient conduct of its business."  *Hansen v. Westerville City Sch. Dist., Bd. of Educ.*, 1994 U.S. App. LEXIS 31576, *33 (6th Cir. 1994).  To this end, Huron's Council may impose restrictions on public speakers, including preventing disruptive conduct and imposing time limitations, and may arrest and prosecute speakers when they violate them under H.C.O. §§ 509.04 and 525.07. *See State v. Wolf*, 111 Ohio App. 3d at 775.

First, the City of Huron was permitted to remove Plaintiff from the May 14, 2019 Meeting because she disrupted it from conducting business.  *See e.g., Jones v. Heyman,* 888 F.2d 1328, 1333 (11th Cir. 1989) (mayor's interest in controlling the agenda and preventing the disruption of public meetings is significant governmental interest); *City of Zanesville v. Jones*, 5th Dist. No. CT2016-0025, 2017-Ohio-1112,

12

¶¶ 10-13 (upholding conviction for disrupting meeting); *City of Columbus v. Doyle*, 149 Ohio App. 3d 164, 2002-Ohio-4490, 776 N.E.2d 537 (10th Dist.) (same).   "It is well established that a citizen addressing a city governmental body in a limited public forum may be stopped from speaking if the speech is 'irrelevant or repetitious' or 'disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting,' so long as the speaker is not 'stopped from speaking because the moderator disagrees with the viewpoint he is expressing. . . .'" *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811, 814, 1999 U.S. Dist. LEXIS 17190, *8 (W.D. Mich. July 12, 1999) (quoting *White v. City of Norwalk*, 900 F.2d 1421, 1425-26 (9th Cir. 1990)). Plaintiff spoke directly to the audience, despite being instructed several times to face and address the City Council, as act that, on its own, can be considered disruptive and warrant removal.  *See Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) ("Contrary to [the public speaker's] assertion that the evidence shows the Mayor only feared a disruption and not that an actual disruption occurred, the properly instructed jury could certainly have found that the meeting was actually disrupted by [the speaker] addressing the audience and the audience's reaction to his urging them to stand.").

This restriction, along with the others, was imposed *before* Hinners communicated *any* content or announced the alleged illegal payments by City Council or that she had filed a lawsuit against Huron. (Doc. 1 at ¶ 51.)  After Plaintiff's three minutes had expired, a limitation imposed on the other speakers at the meeting, she began arguing with the Mayor, and refused to sit down.  (Doc. 1-10, Ex. A-7 at 3:30-3:53.)  She also made disruptive, antagonistic comments while she was returning to her seat (*id*. at 3:30-4:15), behavior courts have found to render speakers removable.[7]  Even though Plaintiff incorrectly claims there were no rules against her disruptive conduct, the Sixth Circuit has noted that removals from public meetings are

---

[7] For example, in *Jones v. Hayman*, a speaker in front of the city commission became antagonistic after being asked to stay on subject, stating: "Let me tell you something Mister, I am on the subject. If you can't stay germane in your mind, that's your problem, not mine."  *Id*. at 1329.  In response to a warning from the mayor that further outbursts would result in his removal, the speaker stated, "I don't think you're big enough," and he was ordered removed.  *Id*.  The Eleventh Circuit affirmed that the removal of the speaker did not violate the First Amendment.  *Id*. at 1334.

permitted even where there are no written policies at all, based upon the general prohibition on "disturb[ing] or interrupt[ing]" meetings. *Lowery*, 586 F.3d at 436 (citing *Jones*, 888 F.2d at 1329 n.3).

Second, according to the Sixth Circuit, a municipality's participation policy in open meetings that restricts the number of speakers and amount of time per speaker is a permissible restriction on speech. *See Hansen*, 1994 U.S. App. LEXIS 31576 at *34. Other courts have upheld identical three-minute time limits. *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995). In *Hanson*, the Sixth Circuit found that a school district's policy limiting the number of speakers and the amount of time they could speak at a school board meeting, but that "did not limit the content of the speech or restrict the full range of expressive activity available outside the board meeting," was permissible. 1994 U.S. App. LEXIS 31576 at *7. When two speakers refused to follow these restrictions, they were arrested and removed for disturbing a lawful meeting. *Id*. In upholding the restrictions, the Court reasoned that "*[a]ll speakers* during the public participation period were required to comply with the policy regardless of their viewpoint. The regulation affected the timing of the speech, not its content." *Id*. at *32. Here, all speakers at the meeting were held to the three-minute limit. (*See* Doc. 1-45, Ex. C-5.) Plaintiff's complaint that another speaker had five minutes at a prior meeting is irrelevant because a large number of speakers had shown up to the May 14, 2019, and the City Council had an interest in limiting the time each could speak to facilitate an orderly meeting and allow those who wished to speak to do so. (*See* Doc. 1-63, Ex. D-17.)

Third, the Huron City Council's requirement for Hinners to face and address the council was permissible. In an analogous case, *George v. Local Union No. 639, International Bhd. of Teamsters*, the Plaintiff brought a First Amendment claim based upon violations of the Landrum-Griffin Act, prohibiting restrictions based upon "an organization's established and reasonable rules pertaining to the conduct of meetings." 825 F. Supp. 328, 331 (D.C. Cir. 1993). The Court found that the Union's bylaws incorporating Robert's Rules of Order permitted the chair to require the speaker to face and address him, and granted the

defendant union summary judgment. *Id*.

Fourth, in addition to completing the entirety of her allotted three minutes at the May 14, 2019 Meeting, Plaintiff had ample alternative ways to communicate with City Council. For example, City Council members met privately with Plaintiff's husband about the concerns Plaintiff raised during the meeting. (Doc. 1-10, Ex. A-7.) Plaintiff also elected to file a public lawsuit against Huron attacking the improprieties she claimed at the council meeting. (Doc. 1 at ¶ 36.) Plaintiff does not have the First Amendment right to dictate *how* she wishes to speak at a council meeting, beyond the limits imposed upon her, and all other speakers, by council. *See Cincinnati v. Thompson*, 96 Ohio App.3d 7, 15-16, 643 N.E.2d 1157 (1994) ("The First Amendment has never conferred an absolute right to engage in expressive conduct whenever, wherever or in whatever manner a speaker may choose.")

Finally, the *Younger* court made it clear that an unconstitutional legislative rule—itself—is not sufficient to justify injunctive relief concerning a criminal prosecution. *Younger*, 401 U.S. at 53 (noting that a federal court cannot enjoin enforcement of a statute based solely on the claim the statute is abridging First Amendment rights).

> 2. The Existence of Probable Cause to Prosecute Plaintiff for Her Criminal Conduct at the May 14, 2019 Meeting, in Violation of H.C.O. § 509.04 and H.C.O. § 525.07, Bars All Plaintiff's Claims (Counts 1-6).

Plaintiff cannot succeed on any of her claims because Defendant O'Shea had probable cause to charge and prosecute Plaintiff. To establish § 1983 claims based upon a criminal prosecution, the claimant must establish that the prosecutor did not have probable cause to institute the criminal proceedings, regardless of intent. *See Hartman v. Moore*, 547 U. S. 250 (2006). This is because prosecutors have broad discretion in whether to bring criminal charges. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

> a. Because Plaintiff violated H.C.O. § 509.04 and § 525.07, Defendant O'Shea has always had probable cause to prosecute her.

Plaintiff failed to follow instructions to face and address the City Council and to sit down once her

time expired, and she made disruptive comments.  Plaintiff then failed to follow the police officers' instructions to leave the meeting.  These acts fall squarely into the type of conduct prohibited by R.C. 2917.12 and R.C. 2921.31, and by extension, H.C.O. § 509.04 and H.C.O. § 525.07.  *See City of Columbus v. Doyle*, 149 Ohio App. 3d at 171 (upholding conviction under R.C. 2917.12 when speaker refused to sit down and leave the public meeting upon request).  Courts have upheld convictions under R.C. 2917.12 and R.C. 2921.31 under similar facts.  *See e.g.*, *State v. Wolf*, 111 Ohio App. 3d at 775.  And they have held R.C. 2917.12 to be facially constitutional. *State v. Brand*, 2 Ohio App. 3d 460, 461, 442 N.E.2d 805 (1st Dist.).

> b. Defendant's probable cause to charge and prosecute Plaintiff defeats Plaintiff's claims.

Plaintiff attempts to side-step the probable cause requirement by citing *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018).  In *Lozman*, appellant-speaker brought a *Monell* claim against city council members for violating his First Amendment rights when they ordered him to be arrested at the council's meeting.  The prosecutor—who was not named in the suit—determined there was probable to prosecute the speaker, but declined to bring criminal charges (appellant did not seek an order enjoining his prosecution). *Id*. at 1946-47.  The Court ruled on the narrow issue of whether a retaliatory arrest claim requires a showing a lack of probable cause for his arrest—and found that it does not. *Id*. at 1947-48.

But *Lozman* actually supports Defendant O'Shea under these circumstances.  The *Lozman* Court emphasized that retaliatory *arrest* claims were different than retaliatory *prosecution* claims. *Id*. at 1952-53. For retaliatory prosecution claims, the Supreme Court advised, *Hartman v. Moore* applies to bar such claims when there is probable cause. *Id*. *Lozman* reiterated *Hartman's* reasoning for this conclusion that "the causal connection between the defendant's animus and the prosecutor's decision to prosecute is weakened by the presumption of regularity accorded to prosecutorial decision making." *Id*. at 1953 (quotation marks omitted). Because each of Plaintiff's claims implicates the causal connection between the City of Huron's alleged animus, through its council members, and Defendant O'Shea's decision to prosecute—the action Plaintiff

16

seeks to enjoin—whether Defendant O'Shea had (or has) probable cause to proceed with reinstituting criminal proceeding is the threshold question. Indeed, Plaintiff's "retaliatory arrest" claim is actually just a prosecution claim. And for the reasons stated above, Defendant O'Shea had and continues to have probable cause to institute criminal proceedings against Plaintiff under H.C.O. § 509.04 and H.C.O. § 525.07.

> ### 3. Plaintiff's Claim for Selective Prosecution (Count 1) Fails Because Defendant O'Shea's Prosecution Was Not Brought in Bad Faith, with No Real Hope of Success, in Order to Chill Plaintiff's Speech.

"To be entitled to injunctive relief [from a criminal prosecution], Plaintiff must prove the heavy burden of showing that the State instituted the proceedings in bad faith and with no real hope of ultimate success, in order to chill the free expression of unpopular ideas." *Honey v. Goodman*, 432 F.2d 333, 342 (6th Cir. 1970) (quotation marks omitted). Suits seeking an injunction based on bad-faith prosecution are limited "to those First Amendment cases where it is alleged that the prosecution itself, as opposed to a possible conviction and punishment, results in a 'chilling effect' . . . and solely where the only effective protection available is by way of federal injunction." *Id*. And, under *Younger*, the harm must be great and immediate. 401 U.S. at 46. Plaintiff's allegations do not meet this standard.

*First*, Plaintiff has presented no evidence that Defendant O'Shea acted in bad faith. Defendant O'Shea was appointed as prosecutor *after* the alleged bad faith and harassing conduct of the Huron City Council members occurred. (*See* Doc. 1 at ¶ 103.) He was hired to determine whether, based upon his prosecutorial discretion, to institute criminal proceedings against Plaintiff. Yet, Plaintiff has not plausibly alleged that, in *conducting* his prosecutorial duties, Defendant O'Shea acted in bad faith. And the evidence Plaintiff has submitted does not establish that the City Council treated Plaintiff differently than other speakers on May 14, 2019, requiring her to address council and requiring that she only speak for three minutes.

*Second*, because Defendant had probable cause to bring charges, Plaintiff cannot establish that Defendant brought them "with no real hope of ultimate success." As explained in Section II(C)(ii)(2) above,

17

Plaintiff violated H.C.O. § 509.04 and H.C.O. § 525.07.

*Third*, Defendant O'Shea did not institute the criminal proceeding "in order to chill the free expression of unpopular ideas." The prior criminal proceeding against Plaintiff was based upon her *conduct* at the May 14, 2019 council meeting that violated H.C.O. § 509.04 and H.C.O. § 525.07, not any ongoing or prospective speech. In choosing to (allegedly) cease her own speech pertaining to the Huron City Council, Plaintiff has censored and enjoined herself from speaking based upon her own subjective, unfounded fears. In contrast, in *Dombrowski v. Pfister*—the Supreme Court case outlining the type of chilled speech she must establish—members of a civil rights group were arrested and threatened with prosecution for past and ongoing speech that Louisiana deemed "subversive," and for maintaining their membership in an alleged "Communist front organization," under statutes the Court found to be invalid. 380 U.S. at 488-89. Here, Plaintiff is not threatened with prosecution for *any* speech, let alone ongoing or future speech, and the statutes upon which the charges were based are not invalid.

> 4. Plaintiff's Prior Restraint Claim (Count 3) Fails Because the Potential Reinstitution of Criminal Proceedings Against Plaintiff Is Not a Prior Restraint of Her Speech.

Plaintiff's "prior restraint" claim is barred because Defendant O'Shea's reinstitution of criminal proceedings against Plaintiff is not a prior restraint of her speech. "A prior restraint is an 'administrative' or 'judicial order[]' that forbids protected speech in advance." *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). And "[a]n action taken after the speech is expressed, like a punishment for disfavored speech, is not a prior restraint." *Id*. The Supreme Court has admonished lower courts not to "blur the line separating prior restraints from subsequent punishments" for speech. *Alexander*, 509 U.S. at 544.

Plaintiff's Complaint alleges she is being punished for her speech during the May 14, 2019 Meeting, not that Defendant O'Shea is seeking an order to restrain Plaintiff from speaking. Plaintiff's citation of

*Novak v. City of Parma* does not advance her position.  In *Novak*, the appellant created a Facebook page that parodied his local police department.  *Id*. at 424.  The police department began investigating who set up the page, sent a cease and desist letter to Facebook, and announced its investigation to the local news.  *Id*. at 425.  After seeing this news coverage, the police arrested him for unlawfully impairing the department's function, and appellant was tried and acquitted.  *Id*. at 425-26.  The arrest and prosecution stopped appellant from maintaining the Facebook page containing the speech.  *Id*. at 425.  Here, in contrast, the "threatened" prosecution is not stopping Plaintiff from engaging in any speech.  Indeed, Plaintiff has accessed her rights to the Court, and has continued engaging in speech through her lawyer's blog.

> 5.  Plaintiff's Fifth Amendment Claim (Count 6) Fails Because Plaintiff Was Not Arrested for Refusing to Speak to the Police.

The criminal complaint brought by Defendant for Plaintiff's H.C.O. § 525.07 violation was based upon Plaintiff's "fail[ure] to leave the Huron City Council Meeting after multiple requests made by officers for her to leave" and for "physically thwart[ing] attempts by officers to calmly follow their attempts to follow their lawful duties."  (Doc. 1-52, Ex. D-06.)  Plaintiff offers no evidence that she was removed from the meeting or charged with H.C.O. § 525.07 based on her silence.  In fact, Plaintiff alleges that she was removed *because* of her speech.  Plaintiff provides no legal support that her Fifth Amendment rights were violated under these circumstances, and simply states that "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself," a context far removed from what happened here. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

> iii.  Plaintiff has a remedy at law that is adequate.

Plaintiff has a remedy at law that is adequate: she may raise her constitutional challenges to the criminal suit against her in the Huron Municipal Court.  *See Younger v. Harris*, 401 U.S. at 45 ("The accused should first set up and rely on his defense in the state courts . . . .")  Indeed, the Sixth Circuit has repeatedly held, that a Plaintiff first must exercise available state law remedies, before filing a § 1983 action. *Vicory v.*

*Walton*, 721 F.2d 1062, 1065-1066 (6th Cir. 1983); *Parratt v. Taylor*, 451 U.S. 527, 544 (1981).

In fact, during the dismissed criminal action, Plaintiff specifically raised her constitutional challenges—now raised here—in the Huron Municipal Court. (Doc. 1 at ¶ 140; Doc. 1-54.) In the criminal proceeding, Plaintiff filed a motion to dismiss challenging the criminal proceedings based on the same underlying First Amendment violations that Plaintiff alleges here. (*Id*.) Plaintiff concedes that the Huron Municipal Court specifically reserved these challenges for a determination by the jury, and has not been foreclosed from bringing them in a potential future criminal proceeding. (Doc. 1-54, Ex. D-08; Doc. 2 at 12.)[8] As such, Plaintiff has an adequate state law remedy—to the potential second- and fourth- degree misdemeanor charges—to raise these constitutional challenges, in the Municipal Court.

Although Plaintiff does not believe that the Huron Municipal Court will properly apply Constitutional standards, based upon the court's rulings in the dismissed criminal proceeding, this fear alone is not sufficient to warrant federal interference. *See Dombrowski*, 380 U.S. at 481 ("The mere possibility of erroneous initial application of constitutional standards by a state court will not ordinarily constitute irreparable injury warranting federal interference with a good-faith prosecution and the adjudication during its course of constitutional defenses.") And the threshold issue, whether there was probable cause, should be also decided by a jury in any future criminal proceeding in the Huron Municipal Court, without interference from this Court. *See Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006) ("Probable cause is an issue of fact for the jury to resolve if there are any genuine issues of material fact that are relevant to the inquiry.")

## III.   CONCLUSION

For the foregoing reasons, Defendant Michael O'Shea respectfully requests the Court deny Plaintiff's motion for temporary restraining order and preliminary injunction, and dismiss Plaintiff's Complaint.

---

[8] If anything, this Court should wait until the potential criminal process unfolds in the Huron Municipal Court, in the event the case is refiled, and Plaintiff's First Amendment defense proceeds through final determination in Ohio state courts. *See Young v. Weirich*, No. 19-5012, 2019 U.S. App. LEXIS 14702, *5 (6th Cir. May 16, 2019) (upholding denial of application to enjoin prosecution because plaintiff "had adequate opportunities to raise the alleged defects in his prosecution in state court.").

Respectfully submitted,

/s/ Patrick Kasson
Patrick Kasson (0055570) Trial Attorney
Brian Noethlich (0086933)
Reminger Co., L.P.A.
200 Civic Center Dr., Suite 800
Columbus, OH  43215
Telephone: 614-228-1311
Fax:  614-232-2410
Email: pkasson@reminger.com
        bnoethlich@reminger.com

*Counsel for Defendant Michael J. O'Shea in his
Individual and Official Capacities*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civ. R. 7.1(f), I hereby certify that this Defendants' Memorandum in Support of their Motion to Dismiss adheres to the page limitation set forth in Local Civ. R. 7.1(f) for unassigned cases.

/s/ Patrick Kasson
Patrick Kasson (0055570)

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Patrick Kasson
Patrick Kasson (0055570)