**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STACY HINNERS | : | Case No.: 1:19-cv-02868-PAB |
| | : | |
| Plaintiff, | : | Judge Pamela A. Barker |
| | : | |
| v. | : | Magistrate Judge David A. Ruiz |
| | : | |
| MICHAEL J. O'SHEA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MOTION OF DEFENDANT MICHAEL J. O'SHEA FOR JUDGMENT ON THE**
**PLEADINGS**

Defendant Michael J. O'Shea, in his official capacity, by and through counsel, moves this

Court under Fed. R. Civ. P. 12(c) for an Order granting judgment on the pleadings on all Plaintiff's

claims.  The grounds for this Motion are fully set forth in the attached Memorandum in Support.

*/s/ Patrick Kasson*
Patrick Kasson (0055570) Trial Attorney
Brian Noethlich (0086933)
Reminger Co., L.P.A.
200 Civic Center Dr., Suite 800
Columbus, OH  43215
Telephone: 614-228-1311
Fax:  614-232-2410
Email: pkasson@reminger.com
            bnoethlich@reminger.com

*Counsel for Defendant Michael J. O'Shea in*
*his Individual and Official Capacities*

## MEMORANDUM IN SUPPORT

This is an odd case.  Plaintiff Stacy Hinners claims that the highest-ranking officials, in the City of Huron, engaged in a conspiracy to retaliate against her because she exercised her right of free speech.  But she did not sue any of those folks.  Rather, she sued Defendant O'Shea to enjoin him from prosecuting her.  And she only sued Defendant O'Shea after the prosecution was dismissed.  Claiming that no probable cause exists for the prosecution, she seeks to enjoin Defendant O'Shea—officially and in his personal capacity.  This, as opposed to simply seeking to dismiss—in the Municipal Court—a subsequent prosecution (if it occurs), given Plaintiff believes there is no probable cause. Simply, the claims against Defendant O'Shea are a mess and should be dismissed.

Plaintiff's Complaint fails to adequately plead a claim for relief for three reasons.  First, the Complaint fails to allege Defendant O'Shea lacked probable cause to institute criminal proceedings against her.  Thankfully, Plaintiff attached the videos of the Council meeting.  Plaintiff must plead and prove that Defendant O'Shea has no probable cause to prosecute her.  But the videos indisputably show probable cause to charge her with disrupting a public meeting and obstructing official business.  Second, the Complaint fails to plead facts showing any exception to *Younger* abstention: (1) that irreparable loss is both great and immediate; (2) that Defendant O'Shea himself acted in bad faith; or (3) that H.C.O. § 509.04 and H.C.O. § 525.07 are flagrantly and patently violative of express constitutional prohibitions.  Finally, Plaintiff has an adequate remedy at law—raising her alleged constitutional violations in any future prosecution in the Huron Municipal Court—required for a § 1983 claim.

1

## I.    STATEMENT OF FACTS

### A.    The Complaint's Allegations Concerning Plaintiff's Conduct at the May 14, 2019 Meeting.

On May 14, 2019, a "regular meeting" of the Huron City Council was called to order. (Doc. 1-84, Ex. D-38, PageID #: 732.)  The meeting's agenda requested speakers to "Please state [their] name and address for the recorded journal.  (3 minute time limit)." (Doc. 1-83, Ex. D-37, PageID #: 730.)

The Complaint alleges that during the meeting, "Mrs. Hinners rose from her seat to speak." (Doc. 1, PageID #: 9, ¶ 38.)  After she began speaking from her seat, "Mayor Hartung told Mrs. Hinners to speak from the podium instead." (*Id*. at ¶ 39.)  "Mrs. Hinners went to the lectern and restarted her speech" but "turned to face the audience." (*Id*. at ¶ 41.)  The Complaint alleges that "[s]econds into the speech Mayor Hartung began trying to summon police to arrest Mrs. Hinners" and that "[w]hen the police did not immediately arrive, Mayor Hartung left the meeting and walked to the police department." (*Id*. at PageID #: 10, ¶¶ 44-45.)  "Unable to find an officer there, Mayor Hartung returned to the meeting." (*Id*. at ¶ 45.)

Two minutes and 53 seconds into her speech, the Complaint alleges, "Vice Mayor Trey Hardy cut her off, telling her that her three minutes were already expired." (*Id*. at PageID #: 11, ¶ 52.)  "Mrs. Hinners requested that she be extended Council's routine courtesy of an additional moment to conclude her remarks, but Mayor Hartung notified her that he had decided to have her charged with a crime." (*Id*. at ¶ 54.)  Then, "Mrs. Hinners noted for the record the discrepancy between how she was being treated and how other citizens had been treated, and then she returned to her seat." (*Id*. at ¶ 55.)  The Complaint alleges that "Mrs. Hinners sat down less than 50 seconds after Mr. Hardy called time." (*Id*. at ¶ 56.)  "After Mrs. Hinners sat down, the meeting continued without interruption for about five minutes as two other citizens spoke during the public-comments

session." (Doc. 1, PageID #: 12, ¶ 63.)  The Complaint alleges that, at this point, Mrs. Hinners was removed from the Council meeting as follows:

- Mayor Hartung walked out of the meeting and directed the police officers to seize Mrs. Hinners.  (*Id*. at ¶ 65);

- While Mrs. Hinners was sitting quietly and listening to other citizens speak, Officer Orzech and Officer Kevin Koehler arrived.  They stood behind the audience and observed nothing more than a routine meeting.  (*Id*. at ¶ 64);

- The police entered Council chambers and asked Mrs. Hinners if she would speak to them outside. Mrs. Hinners wanted to continue observing the public meeting, so she declined. Mayor Hartung then ordered the police to remove Mrs. Hinners.  (*Id*. at ¶ 66);

- The officers followed the mayor's orders. They grabbed Mrs. Hinners by the arms, pulled her out of the chair where she was sitting next to her son, threw her against a wall, handcuffed her, and marched her from Council chambers. (*Id*. at PageID #: 13, ¶ 76).

Based upon these allegations, the Complaint baldly alleges that Mrs. Hinners did not violate H.C.O. § 509.04 or H.C.O. § 525.07, and there is no probable cause to believe she violated those ordinances.  (*Id*. at PageID #: 15, ¶ 82, PageID #: 22, ¶ 118.)

## B.    Plaintiff's Unlawful Conduct at the May 14, 2019, as Indisputably Demonstrated by Videos Filed with the Complaint.

The videos filed with Plaintiff's Complaint indisputably show that Plaintiff unlawfully disrupted the council meeting and obstructed official business.

### 1.    Plaintiff's Violations of H.C.O. § 509.04 During Her Speech.

The only complete recording of Plaintiff's speech is a compilation of audio and video, filed with the Complaint as Doc. 1-10, Ex. A-7.

The video compilation (Doc. 1-10, Ex. A-7) shows the following exchange:

| Time of Video | Speaker | Physical Actions | Verbal Statements |
| --- | --- | --- | --- |
| 0:12 | Stacy Hinners | Stands at her seat in audience | "I'm going to just stand here so I don't have to turn my back." |
| 0:16 | Mayor Brad Hartung | Seated at council | "Ms. Hinners please address |

| | | meeting table | council." |
|---|---|---|---|
| 0:18 | Stacy Hinners | Stands at her seat in audience, ignoring instruction | Begins addressing audience, with her back to council. |
| 0:19 | Mayor Brad Hartung | Seated at council meeting table | "Ms. Hinners please address council, step to the podium and address council, you're here in a public meeting to address council …" |
| 0:26 | Stacy Hinners | Begins moving from seat to podium | "I am." |
| 0:27 | Mayor Brad Hartung | Seated at council meeting table | "…not the audience, it's council. Thank you." |
| 0:33 | Stacy Hinners | Standing at podium facing the audience | Resumes speaking while addressing the audience with her back to council. |
| 0:37 | Mayor Brad Hartung | Seated at council meeting table, bangs his gavel several times | "Ms. Hinners, Ms. Hinners, Mrs. Hinners." |
| 0:33 – 2:58 | Stacy Hinners | Standing at podium facing the audience | Gives uninterrupted speech. |
| 2:58 | Vice Mayor Trey Hardy | Seated at council meeting table | "30 seconds Mrs. Hinners." |
| 2:58 | Stacy Hinners | Standing at podium facing the audience | Continues to give speech. |
| 3:27 | Vice Mayor Trey Hardy | Seated at council meeting table | "Your three minutes are up." |
| 3:30 | Stacy Hinners | Standing at podium, turns and faces council | "Mayor, you allowed Mr. Wright to speak for 5 minutes at the last meeting about [inaudible] Beechwood and I ask to be afforded the same privilege." |
| 3:37 | Mayor Brad Hartung | Seated at council meeting table | "No." |
| 3:39 | Stacy Hinners | Standing at podium facing council | "Sir if you cut me off . . ." |
| 3:42 | Mayor Brad Hartung | Seated at council meeting table | "3 minutes is the time limit." |
| 3:43 | Stacy Hinners | Standing at podium facing | "Sir, you do not enforce that rule consistently and without regard |

| | | council | to content [inaudible] …" |
|---|---|---|---|
| 3:44 | Mayor Brad Hartung | Seated at council meeting table, bangs gavel. | "You are going to be charged with disrupting a public meeting. Please sit down.  Please sit down." |
| 3:53 | Stacy Hinners | Standing at podium facing council, ignoring instruction to sit down | "I'll note here for the record that unlike Mr. Wright who was permitted to speak for five minutes …" |
| 4:00 | Mayor Brad Hartung | Seated at council meeting table | "You're making a mockery of the, you're making a mockery of the city council meeting by turning and talking, sit down Ms. Hinners, we are done with you, sit down please." |
| 4:15 | Stacy Hinners | Walks from podium back to seat in audience | "Par for the course." |

### 2.  Plaintiff's Violations of H.C.O. § 509.04 and § 525.07After Her Speech.

At some point after Plaintiff sat down—the Complaint alleges five minutes—two police officers approached her and asked Plaintiff if she would speak to them outside.  (Doc. 1, PageID #: 12, ¶ 66.)  The Complaint alleges that "Mrs. Hinners wanted to continue observing the public meeting, so she declined."  (*Id*.)  This allegation alone is sufficient to prove that Plaintiff violated H.C.O. § 509.04 and H.C.O. § 525.07.

Two other videos taken of Plaintiff's removal from the meeting show even more egregious violations of H.C.O. § 509.04 and H.C.O. § 525.07.  (Doc. 1-7, Ex. A-4; Doc. 1-8, Ex. A-5.)  These videos indisputably demonstrate Mrs. Hinners's unlawful actions and also fill in the gaps of Plaintiff's Complaint. (*See generally, id*.)

The first video of Plaintiff's removal from the meeting is shot directly behind Mrs. Hinners, apparently on a cell phone, showing two police officers standing over her.  (Doc. 1-7, Ex. A-4.)  The video begins with Mayor Hartung stating to Plaintiff, "You don't turn around, you don't make

the rules." (*Id*. at 0:01.) **Plaintiff responded, "I'm not leaving**. I didn't do anything to disrupt. I took my three minutes and I sat down. I requested that I be treated the same as every other citizen who comes to this meeting." (*Id*. at 0:03-0:12.) Mayor Hartung responded, "[inaudible comment about a threat] you've created a scene, now please remove her." (*Id*. at 0:14-0:17.) Plaintiff responded, "You created a scene by bringing a policeman, abusing their power." (*Id*. at 0:18-0:21.)

While Plaintiff remained seated, <u>one of the police officers asked Plaintiff to "stand up," and she refused to stand</u>. (*Id*. at 0:22.)  The two police officers placed their hands under Plaintiff's arms while she was still seated, and Plaintiff asked the audience, "Is someone videoing this?" and someone responded affirmatively, "Yep." (*Id*. at 0:23-0:24.)  The two police officers guided Plaintiff by her arms out of her seat and stand her up, and she attempted to pull away from them, stating "Really?" (*Id*. at 0:24-0:28.)  <u>Plaintiff then asked the officers, "You're going to physical remove me?" while jerking her body away from the officers</u>. (*Id*. at 0:28-0:30.)  And one of the police officers responded, "Yes, we are." (*Id*. at 0:30.)  <u>Plaintiff continued to struggle against the police's attempts to lead her out of chambers</u>—forcing the police to push her against the wall and place her in handcuffs. (*Id*. at 0:30-0:45.)  Once in handcuffs, <u>Plaintiff again struggled against the officers, attempting to walk away,</u> forcing one officer to push Plaintiff back with his hand on her abdomen. (*Id*. at 0:48-0:55.)  Plaintiff declared to the audience, "This is the kind of city we're running here folks." (*Id*. at 0:55-0:58.)  <u>As the police were adjusting Plaintiff's handcuffs, Plaintiff stated, "By all means, shut them in, I hope -- we're going to have a good time in federal court."</u> (*Id*. at 1:02-1:05; Doc. 1-8, Ex. A-5 at 0:18-0:19.)  The officers then removed Plaintiff from the meeting, leading Plaintiff from Council chambers to the hallway. (Doc. 1-8, Ex. A-5 at 0:26-0:37.)

In sum, the videos show that Plaintiff violated H.C.O. § 509.04 and H.C.O. § 525.07. Specifically, they show that:

6

- Plaintiff refused to comply with the three-minute time limit by refusing to stop her speech after the time limit expired and continuing to argue with the Mayor;

- Plaintiff refused to sit down after her three minutes expired and she was ordered to do so, while making disruptive, confrontational, and accusatory comments after the Mayor did not provide Hinners with additional time; and

- Plaintiff refused to follow the instructions of Mayor Hartung and the police to leave the meeting, and resisted the officers' efforts to remove her from the meeting.

### C. Defendant O'Shea's Now-Dismissed Criminal Prosecution of Plaintiff Under H.C.O. § 509.04 and H.C.O. § 525.07.

The Complaint alleges that on May 23, 2019, the former Huron City Law Director Aimee Lane hired Defendant O'Shea to handle the criminal prosecution of Plaintiff. (Doc. 1, PageID #: 20-21, ¶ 103-104.)  Lane allegedly "contracted Defendant Michael O'Shea . . . to act as an assistant prosecutor"—*after* the alleged bad faith and harassing conduct occurred—and "continued to direct and advise O'Shea's handling of the case in an effort to limit the civil liability to which she and other city officials were exposed."  (*Id*. at PageID #: 2, ¶ 3.)  The Complaint does not allege that O'Shea was unlawfully appointed or did not have the lawful authority to prosecute Plaintiff.

Defendant O'Shea prosecuted Plaintiff for disrupting a lawful meeting under H.C.O. § 509.04 and obstructing official business under H.C.O. § 525.07 based upon two complaints filed against Plaintiff by police officers on May 14, 2019 and July 17, 2019, respectively.  (Doc. 1-47, Ex. D-01, PageID #: 623; Doc. 1-52, Ex. D-06, PageID #: 634.)   Under H.C.O. § 509.04(a) (identical to R.C. 2917.12(a)):

> No person, with purpose to prevent or disrupt a lawful meeting, procession or gathering, shall do either of the following: (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession or gathering; (2) Make any utterance, gesture or display which outrages the sensibilities of the group.

Under H.C.O. § 525.07(a) (identical to R.C. 2921.31(a)):

> No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public

> official's official capacity, shall do any act that hampers or impedes a public official
> in the performance of the public official's lawful duties.

These ordinances prohibit conduct that disrupts a lawful meeting or impedes a public official in performance of his lawful duties.  Prohibited conduct includes speaking without permission, refusing to follow the rules of the meeting, and refusing to leave a meeting.  *See State v. Wolf*, 111 Ohio App. 3d 774, 775 ,677 N.E.2d 371 (7th Dist. 1996).

During the dismissed criminal action, Plaintiff specifically raised her constitutional challenges—now raised here—in the Huron Municipal Court in a Motion to Dismiss.  (Doc. 1 at PageID #: 634, ¶ 140 (referring to Plaintiff's motion to dismiss filed in the criminal action); Ex. 1 at pp. 6, 16-30 (Plaintiff's motion to dismiss filed in the criminal action); Doc. 1-54, PageID #: 650-59.)  Plaintiff's motion to dismiss challenged the criminal proceedings based on the same underlying constitutional violations that Plaintiff alleges here.  (Ex. 1 at pp. 6, 16-30.)  On October 7, 2019, the Huron Municipal Court held a hearing on Plaintiff's "motion to dismiss," raising, among other issues, a selective prosecution claim.  (Doc. 1, PageID #: 26, ¶ 142.)  The Complaint alleges that "[h]alf an hour before the selective-prosecution hearing was scheduled to begin, Defendant O'Shea filed a motion to dismiss the case without prejudice because his key witnesses were under criminal investigation for interfering with Mrs. Hinners's civil right in violation of Ohio Rev. Code § 2921.45." (*Id*. at PageID #: 27, ¶ 153.)  The Court granted Defendant O'Shea's motion to dismiss without prejudice, ending the criminal prosecution of Plaintiff.  (*Id*. at ¶ 154.)

## II.    LAW AND ARGUMENT

### A.  Rule 12(c) Standard.

"After the pleadings are closed—but within such time as not to delay the trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing

party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered in evaluating Plaintiff's claims under this standard. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

"[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536-37 (6th Cir. 2017). This rule also applies to videos attached to a complaint that, like here, "blatantly contradict" the allegations of the complaint. *See Laning v. Doyle*, No. 3:14-cv-24, 2015 U.S. Dist. LEXIS 19424, *6-7 (S.D. Ohio Feb. 18, 2015) ("However, unless the videotape 'blatantly contradict[s]' the allegations in the complaint, the court must still accept those allegations as true."); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (affirming a grant of Fed. R. Civ. P. 12(b) dismissal based upon videos attached to the complaint).

**B. Plaintiff Has Failed to Adequately Plead that Defendant Does Not Have Probable Cause to Bring Charges Under H.C.O. § 509.04 and H.C.O. § 525.07 Against Plaintiff, Entitling Defendant to Judgment on the Pleadings on All Claims.**

Attaching the videos to the Complaint is fatal to Plaintiff. Under well-established law, if Defendant O'Shea has probable cause to prosecute the Plaintiff, then there can be no lawsuit against him. And the videos confirm that he has probable cause. Thus, because Plaintiff has failed to sufficiently plead facts showing that Defendant O'Shea lacks probable cause to prosecute her under H.C.O. § 525.07 and H.C.O. § 525.07, each of Plaintiff's claims must fail as a matter of law. *See Hartman v. Moore*, 547 U. S. 250 (2006), syllabus.

**1. The Complaint Must Plead That O'Shea Lacks Probable Cause to Prosecute Plaintiff to Adequately State Claims Against O'Shea.**

To establish § 1983 claims based upon a criminal prosecution, the claimant must plead and

prove that the prosecutor did not have probable cause to institute the criminal proceedings. *Hartman v. Moore*, 547 U. S. at syllabus.  In *Hartman v. Moore*, the Supreme Court held that a "plaintiff in a retaliatory-prosecution action must *plead* and *show* the absence of probable cause for pressing the underlying criminal charges." *Id*. at syllabus (emphasis added).  In *Hartman*, like here, the plaintiff alleged that government officials persuaded a prosecutor to bring charges against him in retaliation for his criticism of the government.  *Id*.  In holding that probable cause was a pleading requirement for *Bivens* or § 1983 claims based upon a criminal prosecution, the Court reasoned that such claims are different from other types of retaliation claims:

> (1) "there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge;" and (2) "the requisite causation between the defendant's retaliatory animus and the plaintiff's injury is usually more complex than it is in other retaliation cases, and the need to show this more complex connection supports a requirement that no probable cause be alleged and proven."

*Id*. at 261-62.

Thus, the subjective animus of a governmental official, and a prosecutor's mere knowledge of that animus, is not sufficient to adequately plead a § 1983 claim based upon a criminal prosecution—a showing that the prosecutor lacked probable cause is required.  *See also Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019) ("*Hartman* requires plaintiffs in retaliatory prosecution cases to show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause.")

### 2. The Supreme Court's Decision in *Lozman v. City of Riviera Beach* Does Not Modify the Rule in *Hartman* as to Claims Based upon Criminal Prosecutions.

Defendant anticipates that Plaintiff will try to side-step the probable cause requirement by

relying on *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953 (2018).[1]  In *Lozman*, appellant brought a *Monell* claim against city council members for violating his First Amendment rights when they ordered him to be arrested at the council's meeting.  *Id*. at 1951.  The prosecutor determined there was probable to prosecute the speaker, but declined to bring criminal charges (appellant did not seek an order enjoining his prosecution, and did not name the prosecutor in the suit).[2]  *Id*. at 1946-47.  The Court ruled on the narrow issue of whether a retaliatory *arrest* claim (brought against *non-prosecuting government officials*) *always* requires a showing a lack of probable cause.  *Id*. at 1947-48.  The Court held that probable cause is not required for a retaliatory *arrest* claims in unique cases where objective evidence shows an official policy of retaliation.  *Id*.

But *Lozman* actually reinforces the rule in *Hartman*.  The *Lozman* Court emphasized that retaliatory *arrest* claims are different than retaliatory *prosecution* claims.  *Id*. at 1952-53.  For retaliatory prosecution claims, the Supreme Court advised, *Hartman v. Moore* continues to apply in barring such claims when probable cause is not plead and proven.  *Id*.  And an even more recent Supreme Court case, *Nieves v. Bartlett*, has reaffirmed *Hartman's* rule.  139 S. Ct. at 1723.

Each of Plaintiff's claims implicate a causal connection between Huron's alleged retaliation campaign (through its council members and former law director) and the decision to prosecute.  (Doc. 1, PageID #: 1, 24, 29, and 32.)  Thus, in order to prevail, Plaintiff must show that there is no probable cause for a future prosecution of her based upon her conduct in the council meeting. *Hartman,* 547 U.S. at syllabus; *Nieves*, 139 S. Ct. at 1723 (a § 1983 claim brought based upon a criminal prosecution must allege a lack of probable cause).  Because the videos indisputably prove probable cause exists, the Complaint should be dismissed.

---

[1] *See* Doc. 2 at PageID #: 792-93.
[2] Citing *Harman v. Moore*, the *Lozman* court recognized that "[a]n action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute."  *Id*. at 1953.

**3.  The Videos Filed with the Complaint Indisputably Show that Defendant O'Shea Has No Probable Cause to Prosecute Plaintiff with Violations of H.C.O. § 509.04 and § 525.07.**

The videos attached to Plaintiff's Complaint indisputably show Defendant O'Shea has probable cause Plaintiff violated H.C.O. §§ 509.04 and 525.07.  This trumps Plaintiff's allegations to the contrary, and thus warranting judgment on the pleadings. *Laning,* 2015 U.S. Dist. LEXIS 19424, *6-7 (videotaped evidence, which blatantly contradicts conclusory allegations in a Complaint, controls); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016) (upholding grant of motion to dismiss retaliatory-prosecution claim under § 1983 for failing to sufficiently plead that the prosecutor lacked probable cause to press the underlying charges).[3]

"[P]robable cause to initiate a criminal prosecution exists where facts and circumstances are sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *Webb v. United States*, 789 F.3d 647, 666 (6th Cir. 2015) (quotations marks omitted). Plaintiff's conduct falls squarely into the type of conduct prohibited by H.C.O. § 509.04 and H.C.O. § 525.07, leading to O'Shea to reasonably believe Plaintiff was guilty of those crimes.  *See e.g., City of Columbus v. Doyle*, 149 Ohio App. 3d 164, 170-71, 2002-Ohio-4490, 776 N.E.2d 537 (10th Dist.) (upholding conviction for disturbing a meeting under a Code section identical to H.C.O. § 509.04); *State v. Wolf*, 111 Ohio App. 3d 774, 778-79, 677 N.E.2d 371 (7th Dist.) (upholding convictions for violations of a Code section identical to H.C.O. §§ 509.04 and 525.07).

First, under H.C.O. § 509.04, "No person, with purpose to prevent or disrupt a lawful meeting, procession or gathering, shall do either of the following: (1) Do any act which obstructs or interferes with the due conduct of such meeting, procession or gathering . . . ."  To violate this

---

[3] If the Court believes that any factual issues remain in determining probable cause, the Court should allow the jury resolve these issues in any future criminal proceeding in the Huron Municipal Court.  *See Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006).

ordinance, a defendant's disruption need not be "substantial." *See Wolf*, 111 Ohio App. 3d at 777-78. Here, Plaintiff violated the ordinance by:

- Refusing to comply with the three-minute time limit by refusing to stop her speech after the time limit expired and continuing to argue with the Mayor. (Doc. 1-10, Ex. A-7 at 3:30-4:15);

- Refusing to sit down after her three minutes expired and she was ordered to do so, while making disruptive, confrontational, and accusatory comments after the Mayor did not provide Hinners with additional time. (*Id*.); and

- Refusing to leave the meeting when requested by the Mayor and police officers. (Doc. 1-7, Ex. A-4 at 0:01-0:58; Doc. 1-8, Ex. A-5 at 0:18-0:37.)

Even if Plaintiff did not intend to disrupt the meeting, she intended the conduct that disrupted the Council's meeting, the standard under the ordinance. *See Doyle*, 149 Ohio App. 3d at 171.

Ohio courts have upheld convictions for disturbing a lawful meeting under nearly identical circumstances. In *Doyle*, the appeals court affirmed a conviction for disturbing a Columbus School Board meeting when the appellant-speaker refused to obey the three-minute time limit. 149 Ohio App. 3d at 171. After the three-minute limit had expired, appellant was told that his time was up, but he refused to sit down. *Id.* at 167. The Board called a recess and asked the police to remove him, but appellant refused the officer's request to leave, forcing the officers to physically remove him. *Id*. The facts in *Doyle* are nearly identical to Plaintiff's case. And H.C.O. § 509.04 is a local law modeled after the statute at issue in *Doyle. Id*. at 167; C.C. 2317.12. Because federal courts are required to defer to Ohio courts on the application of local law, *Doyle* controls and mandates that Mr. O'Shea has probable cause, as a matter of law. *Mullaney v. Wilbur*, 421 U.S. 684, 689 (1975). Similarly, in *City of Zanesville v. Jones*, a speaker was convicted of disrupting a lawful city council meeting after continuing to speak after his three minutes had expired, forcing the police to remove him. 5th Dist. No. CT2016-0025, 2017-Ohio-1112, ¶ 4. The appeals court upheld the conviction because the speaker's actions "disrupted the meeting and delayed other

13

community members from having the opportunity to timely speak before the Council." *Id.* Here, the videos show that Plaintiff refused to concede her time, argued with the Mayor, and refused the Mayor's and police's requests to leave the meeting—all establishing probable cause. (Doc. 1-10, Ex. A-7 at 3:30-4:15; Doc. 1-7, Ex. A-4 at 0:01-0:58). Again, the state court's analysis of probable cause, in the context of this law, controls. As such, as a matter of law, O'Shea had probable cause.

Second, under H.C.O. § 525.07(a), "No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "To prove the crime of obstructing official business, there must be proof of an affirmative act that hampered or impeded the performance of the lawful duties of a public official." *Columbus v. Montgomery*, 10th Dist. Franklin No. 09AP-537, 2011-Ohio-1332, ¶ 90. Probable cause exists that Plaintiff violated H.C.O. § 525.07: she failed to obey the police officers' requests for her to leave and struggled with them while they attempted to restrain and remove her. (Doc. 1-7, Ex. A-4 at 0:01-0:58).

Again, Ohio courts have upheld convictions for identical conduct. For example, in *State v. Wolf*, the Ohio appeals court upheld a conviction for obstructing official business because the speaker disrupted a lawful meeting then refused to remove himself when asked to do so. 111 Ohio App. 3d at 779. Here, after the Mayor summoned the police to chambers for suspected violations of disturbing a public meeting, the police approached Plaintiff and asked to speak with her outside. (Doc. 1 at PageID #: 12, ¶ 66.) Plaintiff refused. (*Id.*) The police then asked Plaintiff to stand, and she refused. (Doc. 1-7, Ex. A-4 at 0:22.) The police guided her by her arms out of her seat, and she continued to refuse to leave the meeting. (*Id*. at 0:24-0:28.) The police attempted to place handcuffs on Plaintiff, but she resisted. (*Id*. at 0:30-0:45.) Even when the police see no crime

14

committed and are not making an arrest, they are permitted to conduct an initial an investigatory detention by handcuffing a suspect. *See State v. Kilton*, No. 106864, 2019-Ohio-87, *7 (8th Dist.). And when the suspect disobeys the officer's orders and resists the detention "by clenching up and holding his arms close to his chest" the suspect obstructs official business. *id.*

The videos could not be clearer—Plaintiff disrupted the meeting, refused to sit down and then refused to leave. The meeting was delayed by Plaintiff's conduct. And she expressly disregarded the request of the police verbally indicating she would not leave or stand up. Under well-established Ohio law, O'Shea had probable cause to prosecute Plaintiff. As a result, the claims against O'Shea should be dismissed. *Hartman*, 547 U.S. at syllabus; *Nieves*, 137 S. Ct. at 1723.

C. **Under *Younger v. Harris,* Plaintiff Fails to Adequately Plead a Claim for an Injunction Prohibiting Defendant O'Shea from Refiling Criminal Charges Against Plaintiff, Entitling Defendant to Judgment on the Pleadings.**

For over one hundred years, the Supreme Court has repeatedly recognized that, absent extraordinary circumstances, a federal court should not restrain either the institution of or pending state criminal proceedings. *See Fenner v. Boykin*, 271 U.S. 240, 243 (1926). This principal applies to prosecutions that have not yet been formally instituted. *American News Co. v. Ladas*, 454 F.2d 1237, 1239 (6th Cir. 1972) (stating that the Supreme Court has long held that "even with respect to state criminal proceedings not yet formally instituted," a suit seeking to enjoin state prosecutions "could be proper only under very special circumstances").

A federal court may enjoin the proceeding only "in certain exceptional circumstances— where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or . . . other unusual circumstances that would call for equitable relief.'" *Mitchum v. Foster*, 407 U.S. 225, 230-31 (1972) (quoting *Younger*, 401 U.S. at 46). And, before filing a

§ 1983 action, Plaintiff must first assert her constitutional challenges in the criminal proceeding. *See Younger v. Harris*, 401 U.S. at 45; *Dombrowski v, Pfister*, 380 U.S. 479, 481 (1965). Here, the Plaintiff has neither met the younger burden nor has she first exhausted her challenges in the criminal proceeding. For these reasons, the Complaint should be dismissed.

### 1. No extraordinary circumstances exist where the danger of an irreparable loss is both great and immediate.

Under *Younger*, there must be extraordinary circumstances where the irreparable loss to Plaintiff is both great and immediate. *Younger*, 401 U.S. at 46. Plaintiff cannot demonstrate this.

First, Plaintiff cannot establish "great harm." To establish great harm, Plaintiff must prove "a substantial loss or impairment of freedoms of expression will occur if [she] must await the state court's disposition." *Dombrowski v, Pfister*, 380 U.S. at 486. Her injury must be an "injury other than that incidental to every criminal proceeding brought lawfully and in good faith." *Id*. at 485. In *Dombrowski*—the seminal case on enjoining a bad-faith prosecution—the appellants were arrested and threatened with prosecution for ongoing speech that allegedly violated a facially Constitutionally invalid statute. *Id*. at 495-96. And the police's "[s]eizure of document and records [] paralyzed [their] operations and threatened exposure of the identity of adherents to a locally unpopular cause," with a series of state prosecution likely. *Id*. at 488-89. This significant loss of freedom was sufficient to establish *Younger's* exception. *Id*.

In this case, Plaintiff alleges that "by executing the Retaliation Campaign in an effort to chill her and her husband from engaging in protected activity," Defendant O'Shea's threats of a criminal prosecution are an unlawful prior restraint. (Doc. 1, PageID #: 32, ¶¶ 179, 181.) But Plaintiff remains free to engage in speech in any medium she prefers, including at City Council meetings, as she was before the criminal proceeding was dismissed. And the statutes under which Defendant had prosecuted Plaintiff are not being applied—and cannot be applied—to restrict

16

Plaintiff's speech beyond disrupting the May 14, 2019 Huron City Council meeting, in contrast to the all-encompassing, content-based speech restrictions enforced by the prosecutions under unconstitutional statutes in *Dombrowski*.  In short, O'Shea is not threatening a series of prosecutions under invalid statutes based upon Plaintiff's ongoing speech.

Second, the alleged harm is not immediate.  Defendant O'Shea dismissed his criminal complaint against Plaintiff without prejudice, electing to wait on potentially refiling the action until after the Ohio Attorney General completes the investigation of Huron.[4]  Until this investigation is completed, the potential reinstituting of criminal proceedings against Defendant is not sufficiently immediate to warrant the issuance of a permanent injunction.  Indeed, the charges hung over Plaintiff's head for months—having been filed in the summer—but she sought no injunction until December 11, 2019 with the filing of this Complaint.

### 2. Plaintiff Fails to Allege that Defendant O'Shea's Prosecution Was Brought in Bad Faith, with No Real Hope of Success, in Order to Chill Plaintiff's Speech.

"To be entitled to injunctive relief [from a criminal prosecution], Plaintiff must prove the heavy burden of showing that the State instituted the proceedings in bad faith and with no real hope of ultimate success, in order to chill the free expression of unpopular ideas."  *Honey v. Goodman*, 432 F.2d 333, 342 (6th Cir. 1970) (quotation marks omitted).  Suits seeking an injunction based on bad-faith prosecution are limited "to those First Amendment cases where it is alleged that the prosecution itself, as opposed to a possible conviction and punishment, results in a 'chilling effect' . . .  and solely where the only effective protection available is by way of federal injunction."  *Id*.  Plaintiff's allegations do not meet this standard.

*First*, Plaintiff has not made any allegations <u>that Defendant O'Shea acted in bad faith</u>.

---

[4] *See* Michael Harrington, *Huron dismisses charges against Hinners*, Sandusky Register (Oct. 10, 2019), http://www.sanduskyregister.com/story/201910080010.

Instead, the only allegation that even *implies* Defendant O'Shea acted in bad faith is that "*[d]uring the prosecution*, Defendant O'Shea became aware that the charges against Mrs. Hinners were purely political and that Mrs. Hinners was being selectively prosecuted in retaliation for her exercise of her First Amendment rights." (Doc. 1, PageID #2, ¶ 4.) The alleged "bad faith" is only the animus imputed from Lane: "Defendant Lane retained authority to approve and pay Defendant O'Shea's fees and expenses" and that "*[o]n information and belief*, she also continued overseeing Defendant O'Shea's handling of the case, including in discussions of filing in the case, case strategy, and possible plea bargains." (*Id*. at PageID #21, ¶ 105.)[5] These allegations concede that Plaintiff, in fact, is not aware of *any* bad faith or animus harbored by O'Shea himself.

*Second*, because Defendant had probable cause to bring charges, Plaintiff cannot establish that Defendant brought them "with no real hope of ultimate success." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) ("[B]ad faith in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.") As explained in Section II(B) above, Defendant O'Shea has probable cause to prosecute Plaintiff.

*Third*, Plaintiff fails to sufficiently allege that Defendant O'Shea instituted the criminal proceeding "in order to chill the free expression of unpopular ideas."[6] The prior criminal proceeding against Plaintiff was based upon her *conduct* at the May 14, 2019 council meeting that violated H.C.O. § 509.04 and H.C.O. § 525.07, not any ongoing or prospective speech. Plaintiff has censored and enjoined herself from speaking based upon her own subjective, unfounded fears. In contrast, in *Dombrowski v. Pfister,* members of a civil rights group were arrested and threatened

---

[5] This allegation is based solely upon one of O'Shea's invoices submitted to "City of Huron, c/o Walter Haverfield," citing two time entries for email correspondence between Defendant and Aimee Lane. (*See id*. at n.58, 59.)
[6] Plaintiff also fails to adequately allege that Plaintiff's prosecution itself is a "prior restraint." *See Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)) ("A prior restraint is an 'administrative' or 'judicial order[]' that forbids protected speech in advance.")

with prosecution for past and ongoing speech based upon membership in a group under statutes the Court found to be invalid. 380 U.S. at 488-89. Here, Plaintiff is not threatened with prosecution for *any* speech, let alone ongoing or future speech, upon invalid statutes.

### 3. Plaintiff Fails to Allege that H.C.O. § 509.04 and H.C.O. § 525.07 Flagrantly and Patently Violate Express Constitutional Prohibitions.

The exception to *Younger* based upon challenges to criminal laws used to prosecute a criminal defendant only applies "where a statute regulating speech is properly attacked on its face, and where . . . the conduct charged in the indictments is not within the reach of an acceptable limiting construction readily to be anticipated as the result of a single criminal prosecution." *Dombrowski*, 380 U.S. at 491. In this case, Plaintiff only alleges that H.C.O. § 509.04 and H.C.O. § 525.07 are unconstitutional *as applied*. (*See* Doc. 1, PageID #: 33-34.) And Plaintiff does not allege that these statutes themselves regulate speech, or that they cannot be construed within an acceptable limiting construction in a single prosecution. In fact, Ohio courts regularly affirm such convictions. *See* Section II(B)(3), *supra*. And courts have found identical statutes to be facially constitutional. *See e.g., State v. Brand*, 2 Ohio App. 3d 460, 461, 442 N.E.2d 805 (1st Dist.).

### D. Because Plaintiff Has an Adequate Remedy at Law, Plaintiff's Claims Fail.

Plaintiff has a remedy at law that is adequate: she may raise her constitutional challenges to the criminal suit against her in the Huron Municipal Court. *See Younger v. Harris*, 401 U.S. at 45. Indeed, the Sixth Circuit has repeatedly held, that a Plaintiff first must exercise available state law remedies, before filing a § 1983 action. *Vicory v. Walton*, 721 F.2d 1062, 1065-1066 (6th Cir. 1983); *Parratt v. Taylor*, 451 U.S. 527, 544 (1981).

In fact, during the dismissed criminal action, Plaintiff specifically raised her constitutional challenges—now raised here—in the Huron Municipal Court. (Doc. 1, PageID #: 26, ¶ 140; Ex. 1 at pp. 6, 16-30.) Plaintiff filed a motion to dismiss challenging the criminal proceedings based

on the same underlying First Amendment violations that Plaintiff alleges here.  (*See* Ex. 1 at pp. 6, 16-30.)  Plaintiff concedes that the Municipal Court specifically reserved these challenges for a determination by the jury and did not foreclosed from in a potential future criminal proceeding. (Doc. 2 at PageID # 790-91.)  As such, Plaintiff has an adequate remedy: raising her constitutional challenges in the Municipal Court. *See Young v. Weirich*, No. 19-5012, 2019 U.S. App. LEXIS 14702, *5 (6th Cir. May 16, 2019) (upholding denial of application to enjoin prosecution because plaintiff "had adequate opportunities to raise the alleged defects in his prosecution in state court.").

Although Plaintiff does not believe that the Huron Municipal Court will properly apply Constitutional standards, based upon the court's rulings in the dismissed criminal proceeding, this fear alone is not sufficient to warrant federal interference.  *See Dombrowski,* 380 U.S. at 481 ("The mere possibility of erroneous initial application of constitutional standards by a state court will not ordinarily constitute irreparable injury warranting federal interference . . . .").  Therefore, because Plaintiff can raise these constitutional challenges in any future Huron Municipal Court criminal action, she is barred from bringing a Federal Court action raising the same claims.

## III.    CONCLUSION

The Plaintiff simply wants a platform for a public display of aggression against Huron.  As she was being escorted out, she promised to see council "in Federal Court."  But made no attempt to file this action for nearly seven months, while she still had the platform of the Huron Municipal Court action.  Only when the charges were dismissed, did Plaintiff feel the need for immediate injunctive relief to prevent charges from being filed.  Apparently, the same need for injunctive relief was not present, when charges were actually filed.  In any event, the videos show probable cause exists.  And Plaintiff can certainly take advantage of her constitutional defenses, in the Municipal Court, if Defendant O'Shea refiles.  As such, the Complaint should be dismissed.

Respectfully submitted,

*/s/ Patrick Kasson*
Patrick Kasson (0055570) Trial Attorney
Brian Noethlich (0086933)
Reminger Co., L.P.A.
200 Civic Center Dr., Suite 800
Columbus, OH  43215
Telephone: 614-228-1311
Fax:  614-232-2410
Email:  pkasson@reminger.com
            bnoethlich@reminger.com

*Counsel for Defendant Michael J. O'Shea in
his Individual and Official Capacities*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civ. R. 7.1(f), I hereby certify that Defendant's Memorandum in Support of his Motion for Judgment on the Pleadings adheres to the page limitation set forth in Local Civ. R. 7.1(f) for unassigned cases.

*/s/ Patrick Kasson*
Patrick Kasson (0055570)

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*/s/ Patrick Kasson*
Patrick Kasson (0055570)