IN THE HURON MUNICIPAL COURT
ERIE COUNTY, OHIO

**Exhibit 1**

| | |
|---|---|
| STATE OF OHIO<br><br>        *Plaintiff,*<br><br>    v.<br><br>STACY HINNERS<br><br>        *Defendant* | Case No.: CRB1900126ABC<br><br>Visiting Judge S. Dwight Osterud |

**DEFENDANT'S MOTION TO DISMISS UNDER CRIM. R. 12(C)(1–2)
(ORAL ARGUMENT REQUESTED)**

Defendant Stacy Hinners respectfully moves this Court under Crim. R. 12(C)(1–2) for

pretrial dismissal of charges stemming from her speech during a Huron City Council meeting on

May 14, 2019.[1] As explained below, dismissal of all charges against Mrs. Hinners is warranted for

five reasons:

1. The complaints filed by the City allege no criminal conduct supporting the charges of Disturbing A Lawful Meeting, Resisting Lawful Arrest, or Obstructing Official Business, leaving this Court without subject-matter jurisdiction;

2. The charging officers lacked both statutory authority and probable cause to suspect Mrs. Hinners of any crime. Police seized and charged Mrs. Hinners without observing any crime as R.C. 2935.03 requires;

3. The City is selectively prosecuting Mrs. Hinners for alleged conduct it regularly permits other citizens to engage in—because she challenged the legality of secret payments made to the city manager;

---

[1] The State agreed not to oppose any motions based upon their timing. *See, e.g.,* Email from M. O'Shea to B. Bardwell dated Jun. 21, 2019 (attached as Ex. I-1). To simplify the issues for the Court, Mrs. Hinners had been waiting to file this motion until the State fulfilled its stated intention to dismiss the resisting-lawful-arrest charge. *See, e.g.,* Email from M. O'Shea to S. Chandra dated July 31, 2019 (attached as Ex. I-2); Email from M. O'Shea to B. Bardwell and S. Chandra dated Aug. 5, 2019 (attached as Ex. I-4). The State, however, having added a charge of obstructing official business, has now indicated it may not dismiss the resisting-lawful-arrest charge until the final pretrial. Aff. of Brian Bardwell at ¶ 10 (attached as Ex. I). Thus, this motion includes argument regarding the resisting-lawful-arrest charge.

4.   The City's prosecution of Mrs. Hinners violates her First Amendment rights by retaliating against her for protected speech, and by imposing unreasonable time, place, and manner restrictions on her speech.

5.   The City's prosecution of Mrs. Hinners violates her Fourth and Fifth Amendment rights by retaliating against her for exercising her rights to be from unreasonable seizure and to refuse to speak to the police.

Issue 1 alleges defects in the complaints, none of which claim that Mrs. Hinners engaged in any criminal conduct. Because they fail to invoke the court's subject-matter jurisdiction, such an objection may be raised "at any time during the pendency of the proceeding"[2] and must be decided before trial.[3]

But because issues 2 through 5 above raise defenses based on defects in the institution of the prosecution under Crim. R. 12(C)(1), this motion must be made "[p]rior to trial"[4] and "determined before trial."[5] The need for pretrial adjudication is particularly acute on the selective-prosecution and First Amendment questions. As a constitutional defense, "[t]he defense of selective prosecution *must be raised in a pretrial motion*."[6] Courts demand prompt attention to the other First Amendment questions as well, requiring pretrial resolution of such defenses because "the actual act of going to trial under a pretextual prosecution has a chilling effect on protected expression," giving defendants a "right not to be tried" at all.[7]

A memorandum in support is attached. Given the importance of the First Amendment and selective-prosecution issues raised by this case, **Mrs. Hinners respectfully requests oral argument on this motion.**

---

[2] Crim. R. 12(C)(2).

[3] Crim. R. 12(F).

[4] Crim. R. 12(C)(1).

[5] Crim. R. 12(F).

[6] *State v. Brown*, 6th Dist. Ottawa No. OT-95-040, 1996 WL 139626, *7 (emphasis added).

[7] *See, e.g., United States v. P.H.E., Inc.*, 965 F.2d 848, 856 (10th Cir. 1992).

# TABLE OF CONTENTS

Table of Authorities.................................................................................................................iv

I.    Issues Presented..........................................................................................................1

II.   Facts..............................................................................................................................1

III.  Legal Standard.............................................................................................................5

IV.  Law and Argument......................................................................................................6

      A.    If it does not dispose of the case on procedural grounds, the Court has both the authority and the duty to dismiss criminal charges that violate the First Amendment.......6

      B.    The Court must dismiss the case because the complaints fail to allege Mrs. Hinners engaged in any criminal conduct. ...................................................................................7

           1.    Because the State has not alleged any of the elements of H.C.O. 509.04, this Court has no jurisdiction over the complaint...................................................................8

                a.    The complaint does not allege that Mrs. Hinners obstructed or interfered with the Huron City Council meeting.................................................................8

                b.    The complaint does not allege that Mrs. Hinners caused a "substantial" disruption to the Huron City Council meeting.................................................9

                c.    The complaint does not allege that Mrs. Hinners had the purpose to disrupt the Huron City Council meeting........................................................................11

           2.    Because the State has not alleged a violation of H.C.O. 525.09, the Court has no jurisdiction over those complaints................................................................12

            3.    Because the State has not alleged a violation of H.C.O. 525.07, the Court lacks jurisdiction over the complaint. .................................................................13

      C.    The Court must dismiss the charge of disturbing a lawful meeting because the police did not satisfy the personal-observation requirement for a warrantless misdemeanor arrest.14

      D.    The Court must dismiss the case because the City is selectively prosecuting Mrs. Hinners based on First Amendment-protected activity..............................................................16

           1.    Mrs. Hinners has been singled out for prosecution for conduct that dozens of citizens have engaged in without consequence.........................................................17

           2.    The City is targeting Mrs. Hinners because she exercised her statutory and constitutional rights............................................................................................22

      E.    The Court must dismiss the case because H.C.O. 509.04 violates the First Amendment as applied to Mrs. Hinners's speech. ...............................................................................23

           1.    The City's purported basis for prosecuting Mrs. Hinners is a pretext for First Amendment retaliation..................................................................................24

           2.    Even if it were genuine, the City's pretext is itself a First Amendment violation. ..26

      F.    The Court must dismiss the case because the charges were brought in retaliation for Mrs. Hinners's exercise of her Fourth and Fifth Amendment rights. ...........................................28

V.    Conclusion.................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ...............................................27

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485, 104 S. Ct. 1949, 80 L.Ed. 2d 502 (1984) ...................................6

*City of Cleveland v. Norman*, 2019-Ohio-697 (8th Dist.)...............................................12

*City of Euclid v. Moore*, 8th Dist. Cuyahoga, No. 75143, 1999 WL 1129580 ...............10

*City of Oregon v. Szakovits*, 32 Ohio St. 2d 271, 291 N.E. 2d 742 (1972) ...................15

*Clark v. Community for Creative Non-Violence*,
    468 U.S. 288, 104 S. Ct. 3065, 82 L.Ed. 2d 221 (1984) .................................26

*Cleveland v. Newburger*, 2016 CRB 13732 (Cleveland M.C., Oct. 20, 2017) ...............7

*Cleveland v. Trzebuckowski*, 85 Ohio St. 3d 524, 1999-Ohio-285, 709 N.E. 2d 1148 (1999) .................17

*Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983) ...................29

*Goetz v. Ansell*, 477 F.2d 636 (2d Cir. 1973)...............................................................27

*Gregory v. City of Chicago*, 394 U.S. 111, 89 S. Ct. 946, 22 L.Ed. 2d 134 (1969) ......28

*Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695, 164 L.Ed. 2d 441 (2006) ...............24

*Hinners v. City of Huron*, No. 2018-00549, 2018 WL 4560012 (Ohio Ct.Cl. Sep. 11, 2018) .................22

*Hinners v. City of Huron*, No. 2018-01502 (Ohio Ct.Cl. Dec. 12, 2018)...................23

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557, 115 S. Ct. 2338, 132 L.Ed. 2d 487 (1995) .................................28

*In re B.M.*, 2nd Dist. Montgomery No. 25093, 2012-Ohio-6221 .................................12

*Jobe v. City of Catlettsburg*, 409 F.3d 261 (6th Cir. 2005) .......................................27

*Lee v. Weisman*, 505 U.S. 577, 112 S. Ct. 2649, 120 L.Ed. 2d 467 (1992) ...............27

*Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S. Ct. 2132, 53 L.Ed.2d 1 (1977) ...........29

*Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427 (6th Cir. 2009) .......................26

*Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 201 L.Ed.2d 342 (2018) ....... 24, 25

*Matter of Pribanic*, 6th Dist. Erie No. E-90-20, 1991 WL 3813 .................................13

*McCullen v. Coakley*, 573 U.S. 464, 134 S. Ct. 2518, 189 L.Ed. 2d 502 (2014)...........27

*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed. 2d 686 (1964) ...........28

*Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L.Ed. 2d 1 (2019) .......................................24

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir.2019) ...........................................9, 10, 24, 27

*Parma v. Mentch*, 8th Dist. Cuyahoga No. 101222, 2014-Ohio-5690...........................11

*Pestrak v. Ohio Elections Com'n*, 670 F. Supp. 1368 (S.D. Ohio 1987) ...................6

*Sheldon v. Fannin*, 221 F. Supp. 766 (D.Ariz. 1963)...............................................27

*Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 179 L.Ed. 2d 172 (2011) ...............28

*Soltesz v. City of Sandusky*, 138 F. Supp.2d 932 (N.D. Ohio 2001) .......................14

*Spencer v. City of Catlettsburg*, 506 F. App'x 392 (6th Cir. 2012)...........................24

*State v. Brady*, 119 Ohio St. 3d 375, 2008-Ohio-4493, 894 N.E. 2d 671 (2008) ...........7

*State v. Busch*, 76 Ohio St. 3d 613 1996-Ohio-82, 669 N.E. 2d 1125 (1996)...............6

*State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843 (1st Dist.) ...........12

*State v. Cearley*, 12th Dist. Butler No. CA2003-08-213, 2004-Ohio-4837...................7

*State v. Collins*, 7th Dist. Columbiana No. 97-CO-38, 1999 WL 182505...................12

*State v. Colon*, 119 Ohio St. 3d 204, 2008-Ohio-3749, 893 N.E. 2d 169 (2008) ...........11

*State v. Conley*, 5th Dist. Perry No. 03-CA-18, 2005-Ohio-3257...............................11

*State v. Drummer*, 6th Dist. Wood No. WD-95-010, 1995 WL 803841........................ 14, 15

*State v. Echemendia*, 6th Dist. Ottawa No. OT-95-059, 1996 WL 475994 ...................8

*State v. Gonzalez*, 7th Dist. Mahoning No., 06 MA 58, 2008-Ohio-2749 ................................11
*State v. Horner*, 126 Ohio St. 3d 466, 2010-Ohio-3830, 935 N.E.2d 26 (2010) ...................11
*State v. Kalman*, 4th Dist. No. 16CA9, 2017-Ohio-7548, 84 N.E.3d 1088 .........................5, 27
*State v. McGroarty*, 11th Dist. Lake No. 96-L-1, 58, 1997 WL 703376...............................13
*State v. Parks*, 12th Dist. Clermont No. CA98-12-119, 1999 WL 543842.............................8
*State v. Schwing*, 42 Ohio St. 2d 295, 328 N.E. 2d 379 (1975) ...................................9, 10
*State v. Shelton*, 63 Ohio App.3d 137, 578 N.E.2d 473 (4th Dist.1989) ...........................13
*State v. Stacy*, 9 Ohio App. 3d 55, 458 N.E. 2d 403 (9th Dist. 1983) ...........................14, 16
*State v. Wagner*, 6th Dist. Ottawa No. OT-00-037, 2001 WL 605114................................12
*State v. Wallace*, 7th Dist. No. 11 MA 137-, 2012-Ohio-6270, 986 N.E. 2d 498 ....................7
*State v. Young*, 6th Dist. Lucas No. L-90-273, 1991 WL 106081 ..................................15
*State v. Zuravel*, 9th Dist. Summit No. 28217, 2017-Ohio-1540 ...................................13
*Terminiello v. City of Chicago*, 337 U.S. 1, 69 S. Ct. 894, 93 L.Ed. 1131 (1949)...................28
*Toledo v. Thompson-Bean*, 173 Ohio App. 3d 566, 2007-Ohio-4898, 879 N.E. 2d 799 ................9
*Tucker v. City of Fairfield, Ohio*, 398 F.3d 457 (6th Cir. 2005) ................................27
*United States v. Fennelly*, 726 F. Supp. 871 (D.D.C. 1989) ......................................7
*United States v. Friday*, 2006 WL 3592952 (Oct. 13, 2006) ......................................7
*United States v. Head*, 317 F. Supp. 1138 (E.D. La. 1970) ......................................6
*United States v. Heicklen*, 858 F. Supp.2d 256 (S.D.N.Y. 2012) ..................................7
*United States v. Hill*, 473 F.2d 759 (9th Cir. 1972) ...........................................6
*United States v. Menendez*, 132 F. Supp.3d 635 (D.N.J. 2015) ....................................7
*United States v. Nursey*, 2015 WL 7074570 (Aug. 7, 2015) .......................................7
*United States v. P.H.E., Inc.*, 965 F.2d 848 (10th Cir. 1992) ................................6, 23
*United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996)...........................................6
*United States v. Thompson*, 420 F.2d 536 (3d Cir. 1970) ........................................6
*Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746, 105 L.Ed. 2d 661 (1989) ...........26
*Wayte v. United States*, 470 U.S. 598, 105 S. Ct. 1524, 84 L.Ed. 2d 547 (1985)..................16
*Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 168 L.Ed.2d 389 (2007) ......................29

## Statutes

H.C.O. 509.04.....................................................................................8, 9, 22
H.C.O. 525.07.........................................................................................13
H.C.O. 525.09.........................................................................................12
R.C. 121.22.......................................................................................14, 23
R.C. 149.43...........................................................................................22
R.C. 2909.04...........................................................................................9
R.C. 2917.12......................................................................................9, 22
R.C. 2921.33..........................................................................................12
R.C. 2935.03......................................................................................14, 16
R.C. 3761.11..........................................................................................10

## Rules

Crim. R. 3 .........................................................................................7, 8
Crim. R. 12 .......................................................................................5, 30
Crim. R. 48 ...........................................................................................6

**MEMORANDUM IN SUPPORT**

## I.    ISSUES PRESENTED

1.  A criminal complaint must be dismissed unless it includes factual allegations establishing every element of the offenses charged. The complaints against Ms. Hinners allege none of the elements of disturbing a lawful meeting, resisting lawful arrest, or obstructing official business. Should the Court dismiss the complaints as fatally deficient?

2.  Unless the arresting officer personally observed the commission of the offense, a warrantless misdemeanor arrest is unlawful. The officers here charged Mrs. Hinners with disturbing a lawful meeting without personally observing any disturbance, acting solely on the Mayor's order to arrest her. Should the Court dismiss that complaint?

3.  The State may not selectively prosecute a citizen based on constitutionally protected classifications. This case is the only known instance of a prosecution based on conduct that occurs frequently in Huron City Council meetings, and it occurred just one day after Mrs. Hinners sued City Council. Should the Court dismiss the charges based upon selective prosecution?

4.  Criminal charges are invalid when they infringe on a defendant's First Amendment rights. Mrs. Hinners is being prosecuted in retaliation for exercising her First Amendment rights, using a pretext that relies on unreasonable restrictions on the time, place, and manner of her speech to Huron City Council. Should the Court dismiss the charges as violating the First Amendment?

5.  Criminal charges are not valid when they infringe on a defendant's Fourth and Fifth Amendment rights. Mrs. Hinners is being prosecuted in retaliation for exercising her Fourth Amendment right to be free from unreasonable seizures and her Fifth Amendment right not to speak to the police. Should the Court dismiss the charges as violating the Fourth and Fifth Amendments?

## II.    FACTS

The day after she and her husband filed a lawsuit revealing Open Meetings Act violations by City officials,[8] Defendant Stacy Hinners spoke at the May 14, 2019, Huron City Council meeting during a segment designated for public comments.[9] Mrs. Hinners rose from her seat to speak, and Mayor Brad Hartung yelled at her to speak from the podium instead.[10] Mrs. Hinners went to the

---

[8] Complaint, *Hinners v. Huron*, 2019 CV 0275 (Erie C.P.) (attached as Ex. A-1).

[9] The State produced an audio recording of the full meeting in discovery, as well as several videos showing parts of the meeting, but there are no known videos of the full meeting. Those recordings are attached as Exs. B-1, B-2, B-3, B-4, B-5, and B-6. A compilation of footage available from various sources is attached as Ex. B-7.

[10] Artino statement, ¶ 3 (attached as Ex. C-1).

lectern and restarted her speech,[11] noting several controversial decisions Council had made over the last two years and saying that whether they were good or not, "the community had a right to know about them and weigh in on them."[12]

The criticism was more than Mayor Hartung could bear. In a text to Chief of Police Bob Lippert, City Manager Andy White said Hartung was "ignited" and "wants her arrested."[13] Another witness said the mayor was "visibly upset."[14] Watching how Mayor Hartung's "face got red," one first-time visitor to City Council was "flabbergasted" at how "angry and irate" the mayor was.[15] She pulled out her camera because "something was amiss."[16]

She was right. Mayor Hartung left his seat, spoke with City Manager White and Law Director Aimee Lane, and then summoned the police.[17] As Mrs. Hinners was wrapping up her speech, police still had not arrived. Two minutes and 53 seconds in, Mrs. Hinners revealed to her neighbors that Council had made secret payments to City Manager White. Vice Mayor Trey Hardy immediately cut her off, telling her that her three minutes were expired.[18] Mrs. Hinners requested that she receive the Council's routine courtesy of additional time to conclude her remarks, but Mayor Hartung ordered her to sit down and notified her of his decision to have her charged with disturbing a public meeting.[19] After noting the discrepancy between how she was being treated and how other citizens had been treated, and within 50 seconds of Mr. Hardy calling time, Mrs. Hinners

---

[11] *Id.* at 4.

[12] Ex. B-7 at 1:10.

[13] Text messages from White to Lippert (attached as Ex. A-2).

[14] Tapp statement, 2 (attached as Ex. C-2).

[15] Jones statement, ¶ 4–5 (attached as Ex. C-3).

[16] *Id.* at ¶ 5.

[17] See Ex. B-7 at 1:00–1:25; Incident report No. 20-190550, at 4 (attached as Ex. B-8).

[18] Ex. B-7 at 3:20.

[19] *Id.* at 3:29.

sat down.[20] The Mayor never ordered Mrs. Hinners to leave the meeting; he never suspended or recessed the meeting.

The meeting continued without interruption; two other citizens spoke to Council. About five minutes later, while Mrs. Hinners was sitting quietly, listening to other citizens speak, the police arrived.[21] They stood in the back and observed only a meeting occurring without disruption.[22] Mayor Hartung then walked out of the meeting and in an eleven-second exchange, angrily pointed at Mrs. Hinners.[23] The police entered Council chambers and asked Mrs. Hinners if she would speak to them outside.[24] She wanted to continue observing the public meeting, so she declined.[25] Mayor Hartung then ordered the police to remove Mrs. Hinners: "Remove her. Remove her. Yes. If you can't get up and respect like everyone else does— I understand that you're upset about stuff, but this is a city council meeting. You stand up and you do it. You don't grandstand. You don't do that. You don't turn around. You don't make the rules."[26]

Police conducted no other investigation before seizing Mrs. Hinners; they questioned none of the other 40-plus witnesses in the room, they did not review the readily available audio or video footage. They grabbed Mrs. Hinners by the arms, pulled her out of her chair where she was sitting next her son, threw her against a wall, handcuffed her, and marched her from Council chambers.[27] That night, Mrs. Hinners became the first person to be prosecuted for disturbing a lawful meeting in

---

[20] *Id.* at 4:17.
[21] *Id.* at 8:48.
[22] *Id.* at 8:48.
[23] *Id.* at 9:02.
[24] *Id.* at 9:17.
[25] *Id.* at 9:47.
[26] *Id.* at 9:53.
[27] *Id.* at 10:23.

Huron in at least the 20 years for which electronic court records exist.[28] The complaint filed by police against Mrs. Hinners read simply:

> No person, with purpose to prevent or disrupt a lawful meeting, procession or gathering, shall do any act which obstructs or interferes with the due conduct of such meeting, procession, or gathering. To wit: Stacy Hinners did disrupt the City of Huron Council meeting. Probable cause was established through officer investigation.[29]

The complaint did not allege that Mrs. Hinners interfered with or obstructed the meeting, that any interference or obstruction to the meeting was "substantial," or that she acted with purpose to disrupt the meeting.

The next day, after Mrs. Hinners's counsel notified the City of his appearance and asked it to dismiss the charge immediately and avoid further issue, the police tacked on an additional charge of resisting lawful arrest. That charge fails to assert there was ever any arrest—let alone a lawful one—for her to resist:

> No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another. TO WIT: Stacy Hinners did resist arrest by pulling away from officers while officers were attempting to handcuff Hinners. Probable Cause was established through officer investigation and witness accounts.[30]

Several months later, the State filed a third complaint against Mrs. Hinners, claiming she obstructed official business:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties. TO WIT: Stacy Hinners did fail to leave the Huron City Council Meeting after multiple requests made by officers for her to leave. Stacy Hinners physically thwarted attempts by officers to calmly follow their attempts to follow their lawful duties; including but not limited to stiffening up, resting soft attempts by the officers to remove her from her seat, pulling away from officers as they attempted to escort her from the room and pushing back on officers

---

[28] Ortega e-mail to Gillombardo (attached as Ex. D-2).

[29] Complaint (attached as Ex. E).

[30] Second complaint (attached as Ex. F).

as they tried to calm her down and removed her from the room. Probable cause was established through officer investigation.[31]

The complaint did not allege that Mrs. Hinners had a purpose to obstruct officers from performing lawful a duty, that she was without privilege to do so, or that the officers had to remove Mrs. Hinners from the meeting.

The state sought a written not-guilty plea and time waiver on the obstruction charge, promising Mrs. Hinners that in exchange, it would move to dismiss the resisting charge at the City's cost "[o]nce this new charge is docketed."[32] Although Mrs. Hinners accepted and entered both her plea and time waiver two days later,[33] the State failed to follow through with dismissing the resisting charge and is now willing to do so only "when I get around to it."[34]

## III.   LEGAL STANDARD

Crim. R. 12(C) permits a defendant to "raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue." This includes defenses based on "defects in the institution of the prosecution,"[35] defenses based on "defects in the ... complaint,"[36] and motions "involving a constitutional determination."[37] "The court may adjudicate a motion and dismiss charges based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means."[38]

This memorandum applies these principles below.

---

[31] Third complaint (attached as Ex. G).

[32] O'Shea e-mail to Chandra dated July 31, 2019 (attached as Ex. I-2).

[33] Notice of Plea and Waiver of Time (attached as Ex. H).

[34] Bardwell Aff. at ¶ 10 (attached as Ex. I).

[35] Crim. R. 12(C)(1).

[36] Crim. R. 12(C)(2).

[37] *State v. Kalman*, 4th Dist. No. 16CA9, 2017-Ohio-7548, 84 N.E.3d 1088, ¶ 25, *appeal not allowed,* 152 Ohio St.3d 1421, 2018-Ohio-923, 93 N.E. 3d 1003, ¶ 25 (2018).

[38] Crim. R. 12(F).

## IV.   LAW AND ARGUMENT

### A.   If it does not dispose on procedural grounds, the Court has both the authority and the duty to dismiss—pretrial—criminal charges that violate the First Amendment.

Because "[t]rial judges are at the front lines of the administration of justice in our judicial system,"[39] Crim. R. 48 grants them the authority to dismiss charges *sua sponte* and over the objection of the prosecutor "if a dismissal serves the interests of justice."[40] "The rule does not limit the reasons for which a trial judge might dismiss a case."[41]

This authority is particularly important where it appears the government is using its power to squelch the exercise of First Amendment rights. Such a defense should be raised and decided before trial begins, as "the actual act of going to trial under a pretextual prosecution has a chilling effect on protected expression," giving defendants a "right not to be tried" at all.[42] This was the procedure used for more than a dozen cases against protestors at the 2016 Republican National Convention in

---

[39] *State v. Busch*, 76 Ohio St. 3d 613, 615 1996-Ohio-82, 669 N.E. 2d 1125 (1996).

[40] *Id.*

[41] *Id.*

[42] *United States v. P.H.E., Inc.*, 965 F.2d 848, 856 (10th Cir. 1992). *See also United States v. Thomas*, 74 F.3d 701, 710 (6th Cir. 1996) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 505, 104 S. Ct. 1949, 80 L.Ed. 2d 502 (1984)) ("[C]ourt has a duty to conduct an independent review of the record 'both to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.'"); *Pestrak v. Ohio Elections Com'n*, 670 F. Supp. 1368, 1378 (S.D. Ohio 1987), *opinion clarified*, 677 F. Supp. 534 (S.D. Ohio 1988), and *aff'd in part, rev'd in part*, 926 F.2d 573 (6th Cir. 1991) ("[S]ociety's interest in robust political debate are simply too important to sidestep judicial determination of whether speech violates the line between protected and unprotected speech."); *United States v. Hill*, 473 F.2d 759 (9th Cir. 1972) (denying writ to vacate pretrial, First Amendment-based dismissal of indictments); *United States v. Thompson*, 420 F.2d 536, 542 (3d Cir. 1970) (holding "defendant is entitled to have the indictment dismissed for constitutional infirmity"); *United States v. Head*, 317 F. Supp. 1138, 1140 (E.D. La. 1970) ("The judge has a duty to protect the constitutional rights of defendants who assert the protection of the First Amendment that requires him, when the issue is properly presented, to pass on the constitutional adequacy of the evidence before it can be submitted to the jury on the question whether the statute was violated.").

Cleveland,[43] and it is routinely applied in both federal[44] and state courts.[45] The State's protest in the first pretrial, anticipated here again, that there is something wrong with a trial court protecting First Amendment interests before trial, and that a trial must take place, is simply wrong. American courts are far more protective of free speech.

Although the Court need not reach the constitutional questions due to the procedural defects addressed in Sections IV.B and IV.C, there is strong evidence that the City has invidiously singled out Mrs. Hinners because of her lawsuit and for revealing that the City has been making secret payments to the city manager. Because, as discussed below, the First Amendment bars this prosecution in multiple ways, the Court should dismiss it before the City extends its retaliation further.

**B.    The Court must dismiss the case because the complaints fail to allege Mrs. Hinners engaged in any criminal conduct.**

A complaint "is a written statement of the essential facts constituting the offense charged.[46] "[A] complaint that does not contain **every element** does not charge an offense and is void for

---

[43] *See, e.g.*, Order dismissing complaint, *Cleveland v. Newburger*, 2016 CRB 13732 (Cleveland M.C., Oct. 20, 2017). This decision and other key cases may be found in the attached appendix of authorities.

[44] *See, e.g., United States v. Nursey*, 2015 WL 7074570, *3 (Aug. 7, 2015), *aff'd in part*, 696 Fed. Appx. 983 (11th Cir. 2017) (agreeing to consider motion to dismiss filed "on the eve of jury selection and trial" because "First Amendment free speech rights are at stake"); *United States v. Menendez*, 132 F. Supp.3d 635, 637 (D.N.J. 2015) (granting motion to dismiss "based on purported violations of the First Amendment"); *United States v. Heicklen*, 858 F. Supp.2d 256, 259 (S.D.N.Y. 2012) (granting motion to dismiss "on the ground that the statute, both on its face and as applied, is unconstitutionally overbroad in violation of the First Amendment"); *United States v. Friday*, 2006 WL 3592952, *1 (Oct. 13, 2006) (granting motion to dismiss on grounds "that the charge violates the free exercise of religion protected under the First Amendment"); *United States v. Fennelly*, 726 F. Supp. 871, 872 (D.D.C. 1989) (granting motion to dismiss "on the ground that the regulation claimed to be violated unconstitutionally limits [defendant's] First Amendment rights").

[45] *See, e.g., Kalman; State v. Wallace*, 7th Dist. No. 11 MA 137-145, 2012-Ohio-6270, 986 N.E. 2d 498; *State v. Brady*, 119 Ohio St. 3d 375, 2008-Ohio-4493, 894 N.E. 2d 671 (2008); *State v. Cearley*, 12th Dist. Butler No. CA2003-08-213, 2004-Ohio-4837.

[46] Crim. R. 3.

subject matter jurisdiction."[47] "When a complaint 'fails to state an offense under the laws of Ohio,' such complaint is not considered valid and may not be used to form the basis of any conviction."[48]

Here, as explained below, the complaints are void for subject-matter jurisdiction, as neither is sufficient to allege that any offense ever occurred.

### 1. Because the State has alleged none of the elements of H.C.O. 509.04, this Court has no jurisdiction over the complaint.

Huron Codified Ordinance 509.04(a)(1) makes it a misdemeanor for any person "with purpose to prevent or disrupt a lawful meeting, procession or gathering [to do] any act which obstructs or interferes with the due conduct of such meeting, procession or gathering."

### a. The complaint does not allege that Mrs. Hinners obstructed or interfered with the Huron City Council meeting.

The complaint against Mrs. Hinners paraphrases the ordinance and then makes only a single factual allegation against her: "Stacy Hinners did disrupt the City of Huron Council meeting."

Under Crim. R. 3 and the caselaw cited above, that conclusory statement does nothing to advance the claim that Mrs. Hinners violated H.C.O. 509.04(A)(1). It is not a crime to "disrupt the City of Huron Council meeting," nor is "disrupting" an element of the offense. Instead H.C.O. 509.04 (A)(1) outlaws only acts that *obstruct* or *interfere* with the due conduct of a lawful meeting, which the complaint does not allege happened.

With no allegation Mrs. Hinners did anything that is actually prohibited by H.C.O. 509.04(A)(1)—or any other law—the complaint is fatally deficient and the Court must dismiss that charge.

---

[47] *State v. Echemendia*, 6th Dist. Ottawa No. OT-95-059, 1996 WL 475994, *2 (emphasis added).
[48] *State v. Parks*, 12th Dist. Clermont No. CA98-12-119, 1999 WL 543842, *2.

b. **The complaint does not allege that Mrs. Hinners caused a "substantial" disruption to the Huron City Council meeting.**

Although it was not part of the statutory enactment, one of the judicially imposed elements of H.C.O. 509.04 and equivalent "disturbing a meeting" laws is a requirement that any disturbance to the meeting in question be "substantial." Ohio courts apply this rule to various ordinances relating to various types of gatherings, and the Sixth District Court of Appeals has applied it to R.C. 2917.12,[49] which H.C.O. 509.04 copies word for word.

Courts treat this requirement as fundamental, as such laws are usually so broadly written that they are otherwise "susceptible of encroaching upon the constitutional right of freedom of expression."[50] Just last month, the Sixth Circuit affirmed the denial of qualified immunity for First Amendment–retaliation claims in *Novak v. City of Parma*,[51] where the plaintiff had been charged with violating R.C. 2909.04(B), H.C.O. 509.04's online equivalent.

That statute prohibits knowingly using a computer "to disrupt, interrupt, or impair the functions of any … governmental operations." As in this case, the police charged Novak with causing a "disruption" or interruption of government operations, based on nothing other than the content of his speech.[52] While noting that it was not yet positioned to decide the question, the Sixth Circuit warned of the threats posed by sweeping interpretations of statutes like these: "Taken at face value, the Ohio law seems to criminalize speech well in the heartland of First Amendment

---

[49] *Toledo v. Thompson-Bean*, 173 Ohio App. 3d 566, 2007-Ohio-4898, 879 N.E. 2d 799, ¶ 21 ("Only conduct that 'effectively impairs, interferes with or obstructs the due conduct of the meeting in a major, consequential, significant or considerable manner' is prohibited.").
[50] *State v. Schwing*, 42 Ohio St. 2d 295, 302, 328 N.E.2d 379, 384 (1975).
[51] *Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019).
[52] *Novak*, 932 F.3d 421 ("[T]he sole basis for probable cause was speech.").

protection. This broad reach gives the police cover to retaliate against all kinds of speech under the banner of probable cause."[53]

To prevent such mischief, Ohio courts look for both an allegation and proof of some *substantial* harm resulting from the disturbance. In this context, the Ohio Supreme Court recognizes only two types of harm as sufficient to trigger criminal liability for disturbing a lawful meeting: "First, those which cause a lawful assemblage to terminate in an untimely manner. Second, those which substantially impair the conduct of the assemblage."[54]

The courts treat this added requirement as an element of the offense, ensuring that it is not just considered by the jury but *also that it is alleged in the complaint*.[55] Yet here, the complaint merely alleges that Mrs. Hinners "did disrupt the City of Huron council meeting." Constrained by the abundance of documentary evidence to the contrary, the complaint doesn't allege Mrs. Hinners's speech caused the meeting "to terminate in an untimely manner," nor that Mrs. Hinners' remarks "substantially impair[ed]" the conduct of the meeting. The complaint does not do so because, as the Court will observe from the video of the meeting, no such "substantial" disruption took place.

Absent such allegations, the complaint charges no offense and the Court must dismiss it.

---

[53] *Novak*, 932 F.3d 421.

[54] *Schwing*, 42 Ohio St. 2d at 305–06.

[55] *See, e.g., Schwing*, 42 Ohio St. 2d at 306 ("The affidavit charging appellant with violating former R.C. 3761.11 alleged that his actions caused the meeting to end. … However, the trial court's charge to the jury did not narrow the scope of former R.C. 3761.11. Therefore, because this court can and should narrow the statute, appellant's conviction for violating R.C. 3761.11 is reversed and the defendant is discharged thereon. Judgment reversed."); *City of Euclid v. Moore*, 8th Dist. Cuyahoga No. 75143, 1999 WL 1129580, *5 ("Section 537.24 must be construed to prohibit only … conduct which either causes the class to terminate in an untimely manner or substantially impairs the conduct of the classroom. … We therefore apply these additional elements.").

c. **The complaint does not allege that Mrs. Hinners had the purpose to disrupt the Huron City Council meeting.**

Beyond failing to allege that Mrs. Hinners disturbed or obstructed a meeting or that the disturbance was substantial, the complaint fails to allege that her actions were undertaken with the requisite mental state. This defect is also fatal, as a charging document is defective when it "fail[s] to charge … the *mens rea* of the charged offense."[56]

Again, the complaint quotes the *mens rea* requirement, but it does not allege that requirement is *satisfied* in this case. Whatever Mrs. Hinners's alleged disruption was, there is no allegation it was done with the purpose to prevent or disrupt the council meeting—or with any purpose at all. Where the statute includes a required mental state, Ohio courts universally agree that such a defect is fatal to the charge.[57]

With no allegations of substantiality, no allegations of an obstruction or interference, and no allegation of the requisite mental state, this Court lacks subject-matter jurisdiction over the complaint and must dismiss it.

---

[56] *State v. Colon*, 119 Ohio St. 3d 204, 2008-Ohio-3749, 893 N.E. 2d 169, ¶ 2 (2008), *overruled on other grounds by State v. Horner*, 126 Ohio St. 3d 466, 2010-Ohio-3830, 935 N.E. 2d 26, ¶ 2 (2010) (holding indictment was "defective because it failed to charge … the *mens rea* of the charged offense").

[57] *See, e.g., Parma v. Mentch*, 8th Dist. Cuyahoga No. 101222, 2014-Ohio-5690, ¶ 18 ("[B]ecause the complaint omits and fails to charge the culpable mental state of knowingly—an essential element of the crime of assault—it is fatally defective and fails to charge an offense."); *State v. Gonzalez*, 7th Dist. Mahoning No. 06 MA 58, 2008-Ohio-2749, ¶ 31 ("Because the indictment failed to include at least one essential element, the scienter … [we] vacate the conviction for failure to stop after an accident."); *State v. Conley*, 5th Dist. Perry No. 03-CA-18, 2005-Ohio-3257, ¶ 26 ("The failure to state the essential element of recklessness in regard to an indictment for child endangering and to subsequently fail to amend the indictment or otherwise correct the error is plain error. … Such an indictment is insufficient and invalid."). (There is a narrow exception permitted when the allegations in the charging document both (a) track the language of the statute; *and* (b) charge a violation of a statute that itself does not specify any *mens rea. See Horner*, 126 Ohio St. 3d at 475. The complaint against Ms. Hinners does neither.)

2.    **Because the State has not alleged a violation of H.C.O. 525.09, the Court has no jurisdiction over those complaints.**

The resisting-lawful-arrest charge is just as defective. H.C.O. 525.09(a) makes it illegal for a person to "recklessly or by force … resist or interfere with a *lawful* arrest." (Emphasis added.) The local analogue to R.C. 2921.33, it has three elements:

(1) an arrest;

(2) the lawfulness of that arrest; and

(3) reckless or forceful resistance or interference with that arrest.

The complaint against Mrs. Hinners alleges only that she was "pulling away from officers while officers were attempting to handcuff [her]."

Again, the complaint alleges none of the required elements:

(1) The complaint alleges that officers were attempting to handcuff Mrs. Hinners, but it does not allege that she was under arrest;[58]

(2) Even if the allegation of attempting to handcuff Mrs. Hinners indicated an arrest, that arrest was not lawful, for the reasons discussed below, including the officers' failure to personally observe the offense and the retaliatory motive;[59] and

(3) The complaint does not allege Mrs. Hinners acted recklessly, and merely pulling away from an officer while being handcuffed is not forceful resistance.[60]

Without an allegation of any of the elements of resisting arrest, the charge must be dismissed.

---

[58] *City of Cleveland v. Norman*, 2019-Ohio-697 (8th Dist.), ¶ 23 ("[T]here was no point at which Norman was under arrest and resisting. Thus, the state failed to prove the essential elements of the offense."); *State v. Carroll*, 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843 (1st Dist.), ¶ 18 ("[H]e was not under arrest when Officer Bender wanted to handcuff him, so he was not resisting arrest when he fled."); *State v. Collins*, 7th Dist. Columbiana No. 97-CO-38, 1999 WL 182505, *5 ("The resisting arrest statute is clearly worded and refers to a 'lawful arrest', not a lawful detention or any other seizure short of custodial arrest.").

[59] *State v. Wagner*, 6th Dist. Ottawa No. OT-00-037, 2001 WL 605114, *3 (reversing resisting-arrest conviction where underlying arrest was not lawful).

[60] *In re B.M.*, 2nd Dist. Montgomery No. 25093, 2012-Ohio-6221, ¶ 17 (holding that "turning or pulling away" was not the use of force where there was no allegation that defendant touched or injured the arresting officer).

### 3. Because the State has not alleged a violation of H.C.O. 525.07, the Court lacks jurisdiction over the complaint.

The charge of obstructing official business is just as defective. H.C.O. 525.07(a) makes it illegal for any person "without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's official capacity, [to] do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

The charge has three elements:

(1) lack of privilege;

(2) purpose to prevent, obstruct or delay the performance by a public official of any authorized act within the public official's official capacity; and

(3) an act that hampers or impedes a public official in the performance of the public official's lawful duties.[61]

But this complaint, too, alleges none of those elements. It tacitly concedes that Mrs. Hinners was privileged to decline officers' invitation to answer questions, because she was so privileged.[62] It makes no assertion that her actions were for the purpose of preventing, obstructing, or delaying anything, because her purpose (as the video shows) was only to continue observing the public meeting. And it makes no assertion she hampered any public official in the performance of the official's lawful *duties*. The charging officers may have had the authority to engage Mrs. Hinners in a consensual interview, but they had no authority—let alone a *lawful* duty—to seize her and remove

---

[61] *Matter of Pribanic*, 6th Dist. Erie No. E-90-20, 1991 WL 3813, *4.

[62] *See State v. McGroarty*, 11th Dist. Lake No. 96-L-158, 1997 WL 703376, *3 (holding that school superintendent lacked authority to bar citizen from meeting); *State v. Zuravel*, 9th Dist. Summit No. 28217, 2017-Ohio-1540 ("Members of the public generally have the right to enter and remain on public areas of public property and a county official may not revoke such a privilege if the person is merely being a nuisance."); *State v. Shelton*, 63 Ohio App.3d 137, 139–40, 578 N.E.2d 473, 475 (4th Dist.1989) ("As a general rule, a person has the right to enter and be upon the public areas of public property. So we have to ask: May a county official revoke such a privilege when the official finds that person to be a nuisance? We think not.").

her from a public meeting without probable cause to believe she was disturbing that meeting. Under those circumstances, the officers had no lawful duty to obey orders from Mayor Hartung,[63] because (1) the Huron City Charter prohibits the mayor from issuing a direct order to a City employee;[64] (2) Mrs. Hinners had the right to attend the meeting under the Open Meetings Act and the Huron City charter, both of which require council meetings to be "open to the public";[65] and (3) Mrs. Hinners had the right to be free from unlawful seizure under the Fourth Amendment, as discussed below.

### C.   The Court must dismiss the charge of disturbing a lawful meeting because the police did not satisfy the personal-observation requirement for a warrantless misdemeanor arrest.

The Fourth Amendment generally requires a warrant before the police can make an arrest, though there are exceptions in cases where law-enforcement officers have contemporaneously observed the commission of an offense. In Ohio, a police officer's authority to make such a warrantless arrest comes from  R.C. 2935.03, which provides that "A ... police officer ... shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision ... an ordinance of a municipal corporation."

"R.C. 2935.03(A) is consistently construed to mean that to make a warrantless arrest for a misdemeanor, an officer must witness the commission of the offense, or ' * * * from the surrounding circumstances, including admissions by the defendant, be able to reasonably conclude that an offense has been committed.'"[66] In *Drummer*, the defendant was charged with driving under

---

[63] Brad Hartung is no longer the mayor of Huron. After the May 14 meeting, he skipped six consecutive council meetings and work sessions before resigning from office on July 22, 2019.

[64] H.C.C. 4.05 ("Neither the council nor any member or committee thereof shall give any orders to a subordinate of the city manager either publicly or privately. Any council member who violates any of the provisions of this section or votes for any ordinance or resolution in violation thereof shall be guilty of malfeasance in office and upon conviction thereof he shall cease to be a council member").

[65] R.C. 121.22(C); H.C.C. 2.09(2).

[66] *State v. Drummer*, 6th Dist. Wood No. WD-95-010, 1995 WL 803841, *3 (quoting *State v. Stacy*, 9 Ohio App. 3d 55, 57, 458 N.E. 2d 403 (9th Dist. 1983)). *See also Soltesz v. City of Sandusky*, 138 F.

the influence and leaving the scene of the accident, despite an officer's admissions he had not personally witnessed either offense. The trial court overruled motions to dismiss and suppress, finding no "unreasonable delay" between the time of the offense and the arrest. But the Sixth District reversed and ordered the defendant discharged, holding that the arrest raised Fourth Amendment questions "as to whether the officer had probable cause to arrest appellant without a warrant."[67]

This narrow exception to the Fourth Amendment's general warrant requirement recognizes "that the power to arrest without warrant for breach of peace or other minor offense is given in order to maintain the public peace [and] it therefore ceases when the offense is an accomplished fact which can no longer be prevented.[68]

In this case, both the video evidence and the officers' admissions make plain that the personal-observation requirement was not satisfied. The video shows that up to the point police intervened, Mrs. Hinners did only two things: speak when it was her turn and sit quietly when it was not. She was so docile that even after the officers spoke with Mayor Hartung, they were unable to observe why they were summoned. Rather, it was only after Mayor Hartung approached them and pointed to Mrs. Hinners that they even knew who he was targeting.[69]

---

Supp.2d 932, 937 (N.D. Ohio 2001), *aff'd*, 49 Fed. Appx. 522 (6th Cir. 2002) ("Menacing is a misdemeanor. Plaintiff did not menace Mr. Loken in the presence of the defendants. … Thus, Officer Gautschi could not arrest plaintiff under Ohio law unless the plaintiff had menaced Mr. Loken in the officer's presence."); *State v. Young*, 6th Dist. Lucas No. L-90-273, 1991 WL 106081, *2 ("The record in this case shows that the officers immediately confronted appellant once they reached the second floor. Because they had not witnessed appellant 'hanging around' the hallway at the time of the initial arrest and because they had no description of the alleged loiterers, the officers had no probable cause to arrest appellant for the misdemeanor offense of loitering.").
[67] *Drummer*, 1995 WL 803841, at *3
[68] *City of Oregon v. Szakovits*, 32 Ohio St. 2d 271, 275, 291 N.E.2d 742, 745 (1972)
[69] Ex. B-7 at 9:12.

There was, in short, no disturbance for police to personally observe, but even if there had been, the police admitted in the complaint that probable cause "was established through officer investigation," not through personal observation. And that investigation consisted only of receiving Mayor Hartung's allegation that "Stacy Hinners was disrupting the council meeting and he wished for her to be removed."[70] There were no surrounding circumstances or admissions by Mrs. Hinners that would have allowed police to conclude an offense had occurred. A warrantless seizure such as this—based only on hearsay—violates R.C. 2935.03.[71]

Here, the Court should dismiss the charge because the officers relied solely on the hearsay statement of a City Hall employee and personally saw nothing that corroborated that witness's story.

**D.     The Court must dismiss the case because the City is selectively prosecuting Mrs. Hinners based on First Amendment-protected activity.**

"Although prosecutorial discretion is broad, it is not unfettered. Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints. In particular, the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, ... including the exercise of protected statutory and constitutional rights."[72]

A selective-prosecution defense requires a defendant to make a prima facie showing "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in

---

[70] Incident report No. 20-190550, at 1 (attached as Ex. B-8).

[71] *Stacy*, 9 Ohio App. 3d at 57 ("R.C. 2935.03(A) prohibits an officer from arresting a person for a misdemeanor offense on the basis of hearsay evidence alone").

[72] *Wayte v. United States*, 470 U.S. 598, 608, 105 S. Ct. 1524, 1531, 84 L.Ed. 2d 547 (1985) (cleaned up).

bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."[73]

1.     **Mrs. Hinners has been singled out for prosecution for conduct that dozens of citizens have engaged in without consequence.**

For the past two years, several Huron residents have been engaged with local affairs, voicing frustration with light pollution,[74] a marijuana dispensary setting up shop near an elementary school,[75] and conditions at a mobile home park.[76] Council meetings are rambunctious enough that news coverage of the final meeting of 2018 came with a warning: *"Editor's note: This news story contains graphic language."*[77]

Given the climate at these meetings, council members, City employees, and audience members regularly deviate from strict parliamentary procedure. Video evidence shows that speakers at City Council meetings regularly engage in the conduct that the State has suggested might be the basis for the charges against Mrs. Hinners here. For instance, audience members who give speeches about topics other than Council making secret, backroom payments to Mr. White regularly speak from somewhere other than lectern without being arrested.[78]

---

[73] *Cleveland v. Trzebuckowski*, 85 Ohio St. 3d 524, 1999-Ohio-285, 709 N.E. 2d 1148 (1999).

[74] Andy Ouriel, *Mucci can't expand until light problem gets fixed*, Sandusky Register (Jan. 20, 2019), http://www.sanduskyregister.com/story/201901200003 [perma.cc/Z7WW-H4DN] (attached as Ex. J).

[75] Andy Ouriel, *Huron's medical marijuana company sues city, state*, Sandusky Register (Oct. 19, 2018), http://www.sanduskyregister.com/story/201810180037 [perma.cc/L5YB-EFCH] (attached as Ex. K).

[76] Andy Ouriel, *Huron begins process to clean up Oster's*, Sandusky Register (Jul. 2, 2019), http://www.sanduskyregister.com/story/201907010034 [perma.cc/2SXJ-NUMP] (attached as Ex. L).

[77] Andy Ouriel, *Clash between Artino, mayor gets nasty*, Sandusky Register (Dec. 14, 2018), http://www.sanduskyregister.com/story/201812130027 [perma.cc/3ZGR-7KK3] (attached as Ex. M).

[78] Ex. A-15 (compiling instances of guests at City Council meetings speaking without approaching the podium).

They include the following:

- Beth Fisher at the January 9, 2018, meeting;[79]
- Gina Woody at the January 9, 2018, meeting;[80]
- Gordon Hahn twice, at the January 9, 2018, meeting;[81]
- Steve Fisher at the January 9, 2018, meeting;[82]
- Sandy Legando three times, at the January 9, 2018, meeting;[83]
- Steve Fisher at the January 23, 2018, meeting;[84]
- Tony Legando at the April 24, 2018, meeting;[85]
- Robert Forney Jr. at the April 24, 2018, meeting;[86] and
- Phyllis Wassner at the May 22, 2018, meeting.[87]

Similarly, many audience members regularly turn to face the audience without being arrested when they address topics other than Council making secret payments to Mr. White.[88] They include:

- Paul Hanny at the January 23, 2018, meeting;[89]
- Steve Fisher at the January 23, 2018, meeting;[90]
- Kyle Orten at the January 23, 2018, meeting;[91]
- Shannon Pollack at the February 27, 2018, meeting;[92]

---

[79] Ex. A-3 at 42:28 (footage of January 9, 2018 meeting of Huron City Council).

[80] *Id.* at 43:09.

[81] *Id.* at 44:02 and 45:46.

[82] *Id.* at 46:07.

[83] *Id.* at 39:22, 42:17, and 44:44.

[84] Ex. A-4 at 1:10:54 (footage of January 23, 2018, meeting of Huron City Council).

[85] Ex. A-7 at 25:51 (footage of April 24, 2018, meeting of Huron City Council).

[86] *Id.* at 28:50.

[87] Ex. A-8 at 1:22:30 (footage of May 22, 2018, meeting of Huron City Council).

[88] *See* Ex. A-16 (compiling instances of guests at City Council meetings directly addressing the audience).

[89] Ex. A-4 at 1:35:22, 1:36:07, 1:36:50, and 1:37:16 (footage of January 23, 2018, meeting of Huron City Council).

[90] *Id.* at 1:55:10.

[91] *Id.* at 2:14:46.

[92] Ex. A-6 at 6:30 (footage of February 27, 2018, meeting of Huron City Council).

- Glen Szatala at the April 24, 2018, meeting;[93]
- Beth Fisher at the April 24, 2018, meeting;[94]
- Gina Woody at the April 24, 2018, meeting;[95]
- Tony Legando at the April 24, 2018, meeting;[96]
- Shannon Pollack at the May 22, 2018, meeting;[97]
- Rebekah Cupp at the January 8, 2019, meeting;[98]
- Mary Kay Schlessman at the January 8, 2019, meeting;[99] and
- Sandy Legando at the January 8, 2019, meeting.[100]

And speakers are regularly allowed to exceed the supposed three-minute limit on speeches without being arrested when they give speeches about topics other than Council making secret payments to Mr. White.[101] They include:

- Kyle Orten at the January 23, 2018, meeting;[102]
- Tony Legando at the January 23, 2018, meeting;[103]
- Pete Schade at the January 23, 2018, meeting;[104]
- Beth Fisher at the January 23, 2018, meeting;[105]
- Bill Scott at the February 27, 2018, meeting;[106]

---

[93] Ex. A-7 at 13:55 (footage of April 24, 2018, meeting of Huron City Council).

[94] *Id.* at 17:52.

[95] *Id.* at 20:53.

[96] *Id.* at 24:38.

[97] Ex. A-8 at 29:16, 30:06, 30:48, 31:11, and 31:40 (footage of May 22, 2018, meeting of Huron City Council).

[98] Ex. A-13 at 24:03 (footage of January 8, 2019, meeting of Huron City Council).

[99] *Id.* at 32:35.

[100] *Id.* at 42:27.

[101] *See* Ex. A-17 (compiling instances of guests at City Council meetings exceeding the three– or five-minute limit).

[102] Ex. A-4 at 2:10:13 (footage of January 28, 2018, meeting of Huron City Council).

[103] *Id.* at 2:21:36.

[104] *Id.* at 2:29:00.

[105] *Id.* at 2:49:35.

[106] Ex. A-5 at 2:00 (footage of February 27, 2018, meeting of Huron City Council).

- Stacy Hinners at the February 27, 2018, meeting (not talking about secret payments to Mr. White);[107]
- Steve Fisher at the February 27, 2018, meeting;[108]
- Shannon Pollack at the February 27, 2018, meeting;[109]
- Julie Spitzley at the April 24, 2018, meeting;[110]
- Glen Szatala at the April 24, 2018, meeting;[111]
- Gina Woody at the April 24, 2018, meeting;[112]
- Tony Legando at the May 22, 2018, meeting;[113]
- Steve Fisher at the May 22, 2018, meeting;[114]
- Lori Legando at the May 22, 2018, meeting;[115]
- Bob Howell at the May 22, 2018, meeting;[116]
- Robert Smith at the May 22, 2018, meeting;[117]
- Shannon Pollack at the May 22, 2018, meeting;[118]
- Beth Fisher at the May 22, 2018, meeting;[119]
- Dr. Brian Murphy at the May 22, 2018, meeting;[120]
- Shannon Pollack at the October 9, 2018, meeting;[121]
- Jason Hinners at the November 27, 2018, meeting;[122]

---

[107] *Id.* at 6:25.

[108] *Id.* at 10:05.

[109] Ex. A-6 at 6:00 (footage of February 27, 2018, meeting of Huron City Council).

[110] Ex. A-7 at 1:22 (footage of April 24, 2018, meeting of Huron City Council).

[111] *Id.* at 13:39.

[112] *Id.* at 20:34.

[113] Ex. A-8 at 4:50 (footage of May 22, 2018, meeting of Huron City Council).

[114] *Id.* at 9:15.

[115] *Id.* at 12:45.

[116] *Id.* at 18:45.

[117] *Id.* at 22:23.

[118] *Id.* at 28:30.

[119] *Id.* at 35:18.

[120] *Id.* at 43:06.

[121] Ex. A-9 at 14:38 (recording of October 9, 2018, meeting of Huron City Council).

[122] Ex. A-10 at 1:17 (recording of November 27, 2018, meeting of Huron City Council).

- Cathy Ramey at the November 27, 2018, meeting;[123]
- Scott Schlessman at the November 27, 2018, meeting;[124]
- Shawn Buckley at the December 11, 2018, meeting;[125]
- Jason Hinners at the December 20, 2018, meeting (not talking about secret payments to Mr. White);[126]
- Mac Lehrer at the December 20, 2018, meeting;[127]
- Bob Howell at the December 20, 2018, meeting;[128]
- Lori Suter at the January 8, 2019, meeting;[129]
- Shaun Bickley, twice, at the January 8, 2019, meeting;[130]
- Rebekah Cupp at the January 8, 2019, meeting;[131]
- Scott Schlessman at the January 8, 2019, meeting;[132]
- Sandy Legando at the January 8, 2019, meeting;[133]
- John Zimmerman at the February 12, 2019, meeting;[134]
- Chuck Allendorf at the February 12, 2019, meeting;[135] and
- Joe Catri at the February 12, 2019, meeting.[136]

Under normal circumstances, Mrs. Hinners' conduct—like the conduct of these dozens of

citizens—would warrant no mayoral backlash, let alone a demand that she be hauled out of Council

---

[123] *Id.* at 5:16.

[124] *Id.* at 34:17.

[125] Ex. A-11 at 2:46 (recording of December 11, 2018, meeting of Huron City Council).

[126] Ex. A-12 at 12:32 (footage of December 20, 2018, meeting of Huron City Council).

[127] *Id.* at 16:30.

[128] *Id.* at 24:14.

[129] Ex. A-13 at 11:53 (footage of January 8, 2019, meeting of Huron City Council).

[130] *Id.* at 17:15 and 35:26.

[131] *Id.* at 22:10.

[132] *Id.* at 29:08.

[133] *Id.* at 41:10.

[134] Ex. A-14 at 1:10 (recording of February 12, 2019, meeting of Huron City Council).

[135] *Id.* at 12:37.

[136] *Id.* at 22:42.

chambers and criminally charged. Indeed, until this case, no one had ever been charged or prosecuted in this Court for disturbing a lawful meeting under either R.C 2917.12 or H.C.O. 509.04 in the 20-plus years since it began keeping computerized records.[137]

If the State's allegation is that Mrs. Hinners failed to comply with Mayor Hartung's unlegislated and previously unenforced expectations,[138] the evidence shows that "conduct of the type forming the basis of the charge[s]" has traditionally been unobjectionable—and that *she alone has been targeted for prosecution*.

The only remaining question is why. As discussed below, the answer is clear.

2.    **The City is targeting Mrs. Hinners because she exercised her statutory and constitutional rights.**

While Mrs. Hinners is not the first Huron citizen to criticize the Mayor and this City Council, she and her husband are the first and only citizens to sue them under Ohio's Sunshine Laws and discuss it openly.

Early in 2018, Mrs. Hinners and her husband, Jason Hinners, began using the Ohio Public Records Act[139] to gather information about Council's involvement in plans to open a marijuana shop and pay a developer to take land that City officials had previously promised would sell for millions of dollars. The City refused to turn over certain emails between it and private developers, so the Hinnerses sued—and won.[140] Later that year, the Hinnerses gathered information about payments that City Council had secretly approved for Mr. White. Again, the City refused to turn over those

---

[137] Ortega e-mail to Gillombardo (attached as Ex. D-2).
[138] *See* State's Oppo. to Mot. for Bill of Particulars, 2.
[139] R.C. 149.43.
[140] *Hinners v. City of Huron*, No. 2018-00549, 2018 WL 4560012 (Ohio Ct. Cl. Sep. 11, 2018).

records to the Hinnerses. Again, they sued. Almost immediately after, the City turned over the records.[141]

Soon, Councilman Glen Ginesi approached Mrs. Hinners's pastor to complain about her husband and discourage the church from ordaining him as a deacon because criticizing City Council was "non-Christian."[142] Armed with records the City had withheld, Mrs. Hinners and her husband filed a follow-up action under the Open Meetings Act[143] to nullify the secret payments the City had made to Mr. White. They sued on May 13, 2019, one day before the meeting where the City initiated this prosecution.

There is no discernible difference between Mrs. Hinners and her fellow citizens regarding their conduct at Council meetings. The only difference is that Mrs. Hinners exercised her statutory and constitutional rights.

The evidence available indicates that the only people the City will prosecute for violating the Mayor's capricious meeting expectations are citizens who exercise their rights on topics that offend the Mayor. Prosecutorial decisions based on such criteria are entitled to no deference, so the Court should dismiss this selective prosecution.

E. **The Court must dismiss the case because H.C.O. 509.04 violates the First Amendment as applied to Mrs. Hinners's speech.**

"[A] prosecution motivated by a desire to discourage expression protected by the First Amendment is barred and must be enjoined or dismissed, irrespective of whether the challenged action could possibly be found to be unlawful."[144]

---

[141] Entry Assessing Costs, *Hinners v. City of Huron*, No. 2018-01502 (Ohio Ct. Cl. Dec. 12, 2018).
[142] McBeth Aff., ¶ 6 (attached as Ex. N).
[143] R.C. 121.22.
[144] *P.H.E., Inc.*, 965 F.2d at 853.

The evidence strongly suggests that the City is pursuing these charges to punish Mrs. Hinners for challenging unlawful conduct by City Council and petitioning the government to solve the problem. And even if that were not the case, the Court would still be required—as explained below—to dismiss the charges because the speech restrictions on which the charges are based are unconstitutional.

1. **The City's purported basis for prosecuting Mrs. Hinners is a pretext for First Amendment retaliation.**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."[145] Establishing a retaliatory arrest moves in two steps: First, the arrestee must establish that retaliation was a substantial or motivating factor for her arrest, then the government may overcome the presumption of retaliation by proving that it would have arrested her even without that motive.[146]

Especially given the 24-hour gap between the filing of the Open Meetings Act litigation and the initiation of charges against Mrs. Hinners,[147] the City's lax approach to enforcing the Mayor's whimsies against citizens who are not actively challenging Council's authority or seeking to undo its illegal actions strongly suggests that the City's motive in prosecuting this case is to retaliate against Mrs. Hinners and her husband for their First Amendment-protected activity. In this respect, the case bears an uncanny resemblance to *Lozman v. City of Riviera Beach, Fla.*, 138 S. Ct. 1945, 201 L.Ed.2d 342 (2018).

---

[145] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L.Ed. 2d 1 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L.Ed. 2d 441 (2006)).

[146] *Novak*, 932 F.3d 421.

[147] *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 397 (6th Cir. 2012) (In cases involving "adverse action immediately after learning of … protected activity, the temporal proximity alone is sufficient to establish the causation element of a First Amendment retaliation claim.").

There, a plaintiff sued his city for First Amendment retaliation based on his arrest at a council meeting, but the trial court instructed the jury there could be no First Amendment violation if the police had probable cause for the arrest, which Lozman had conceded. The Eleventh Circuit affirmed, but the Supreme Court reversed, holding that *even if there was probable cause for an arrest*, the First Amendment forbade the City's attempts to bring charges in retaliation for his protected speech.[148]

The similarities between *Lozman* and this case are striking: Lozman was an "outspoken critic" of the government in a small beachfront community who "often made critical comments about officials during the public-comment period of city council meetings" and eventually "filed a lawsuit alleging that the City Council … violated Florida's open-meetings laws," leading to a decision by city council members to "intimidate" him in retaliation. When he "violated the City Council's rules of procedure by discussing issues unrelated to the City and then refused to leave the podium," council had him charged with disorderly conduct and resisting arrest. The prosecutor found probable cause but dismissed the charges nonetheless.

Huron's attack on Mrs. Hinners for her speech is even worse. Lozman actually engaged in some criminal conduct and violated an actual set of rules, but here the State is alleging only that Mrs. Hinners violated the Mayor's ad hoc expectations.

Because it was initiated in retaliation for Mrs. Hinners engaging in speech "high in the hierarchy of First Amendment values,"[149] the Court should act to protect the Constitution and do what—as cited above—other courts do and dismiss this case, sparing Mrs. Hinners further First Amendment retaliation in the form of a criminal trial.

---

[148] *Lozman*, 138 S. Ct. at 1955 ("Lozman need not prove the absence of probable cause to maintain a claim of retaliatory arrest against the City.").
[149] *Lozman*, 138 S. Ct. at 1955.

2. **Even if it were genuine, the City's pretext is itself a First Amendment violation.**

The public-comment sessions of school-board and city-council meetings are limited public fora.[150] Within such a forum, the government may regulate the time, place, and manner of speech if the regulation:

(1) is "content-neutral";

(2) is "narrowly tailored to serve a significant governmental interest"; and

(3) "leave[s] open ample alternative channels for communication of the information."[151]

A restriction on speech is not "narrowly tailored" if it "burden[s] substantially more speech than is necessary to further the government's legitimate interests" or if "a substantial portion of the burden on speech does not serve to advance its goals."[152]

Despite his freestyle approach, Mayor Hartung made it at least partially clear what will get you in trouble in a Huron City Council meeting:

(1) If you are "making a mockery of the city council meeting."

(2) "[I]f you can't get up and respect like everyone else does."

(3) Unless "you stand up and you do it."

(4) If you "turn around."

(5) If you "grandstand."

(6) If you "make the rules."

Mrs. Hinners never actually violated these supposed "rules," but even if she had, none survives a limited-public-forum analysis.

---

[150] *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009) ("[C]ourts call this sort of forum a 'designated' and 'limited' public forum.").

[151] *Lowery*, 586 F.3d at 432 (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 295, 104 S. Ct. 3065, 82 L.Ed. 2d 221 (1984)).

[152] *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S. Ct. 2746, 2758, 105 L.Ed. 2d 661 (1989).

The first four are impermissible content-based restrictions:

- A "rule" against speeches "making a mockery of the City Council meeting" is a restriction based on the content of the speech.[153]

- A "rule" requiring that speeches demonstrate "respect" is a restriction based on the content of the speech.

- The "rule" requiring speakers to "stand up" appears not to be implicated here, as there is no dispute that Mrs. Hinners was standing for the entirety of her speech. Even if it were, such coerced expressions of respect are consistently rejected as First Amendment violations.[154]

- The "rule" against turning around to face the audience when speaking is a similarly impermissible effort to coerce a display of respect for City Council.

Although the fifth and sixth rules are not content based, they fail because—like the first four—they are not narrowly tailored to serve a significant government interest. In limited-public-forum analysis, "significant" interests are generally focused on safety, security, and preservation of property.[155] Here, prohibitions on "grandstanding" and "making rules" do nothing to advance any such interest, nor is there any indication they would serve any other significant interest. And even if

---

[153] *See, e.g., Novak*, 932 F.3d 421 ("Apple pie, baseball, and the right to ridicule the government. Each holds an important place in American history and tradition.").

[154] *See, e.g., Lee v. Weisman*, 505 U.S. 577, 593, 112 S. Ct. 2649, 120 L.Ed. 2d 467 (1992) (holding First Amendment prohibits school officials from placing "subtle and indirect public and peer pressure on attending students to stand" during student-led prayers); *Goetz v. Ansell*, 477 F.2d 636, 638 (2d Cir. 1973) (holding First Amendment limitations mean that standing for the Pledge of Allegiance "can no more be required than the pledge itself"); *Sheldon v. Fannin*, 221 F. Supp. 766, 775 (D.Ariz. 1963) (holding First Amendment prohibits punishing students "solely because they silently refuse to rise and stand for the playing or singing of the National Anthem").

[155] *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S. Ct. 2518, 189 L.Ed. 2d 502 (2014) ("public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways"); *Bays v. City of Fairborn*, 668 F.3d 814, 822 (6th Cir. 2012) (finding significant interest in "ensuring smooth pedestrian traffic flow, increasing public safety, and relieving congestion and overcrowding"); *Tucker v. City of Fairfield, Ohio*, 398 F.3d 457, 466 (6th Cir. 2005) (finding significant interest in "keeping the right-of-way clear"); *Jobe v. City of Catlettsburg*, 409 F.3d 261, 268 (6th Cir. 2005) (finding significant interests in "prohibiting litter and visual blight" and ensuring private property is "left alone by those who do not have permission to use it"); *Kalman*, 2017-Ohio-7548 at ¶ 37 (finding significant interest in acting to address "public safety concerns, liability concerns, concerns regarding attempted unauthorized access into the courthouse, and to prevent damage and defacement of county property").

they did, the burden from imposing criminal liability goes far beyond anything conceivably necessary to advance whatever interest might be animating these rules.

The First Amendment protects speech that goes far beyond anything Mrs. Hinners might have said or done the day she was charged. In *Schwing*, for instance, the Ohio Supreme Court adopted language extolling the First Amendment *benefits* of "heckling, interrupting, harsh questioning, and booing," noting that they "may constitute the only manner in which [citizens] can express their views to a large number of people."[156] The Court held firm that "the Constitution does not require that the effective expression of ideas be restricted to rigid and predetermined patterns."[157]

Given the wide latitude afforded speakers in public debates, the heavy burden inflicted by criminal liability for violating the Mayor's capricious, unlegislated, and previously unenforced expectations is unjustifiably disproportionate to any interest that might be served by it.

F.    **The Court must dismiss the case because the charges were brought in retaliation for Mrs. Hinners's exercise of her Fourth and Fifth Amendment rights.**

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' … [A person] may not be punished for exercising a

---

[156] *Schwing* at 302–03. *See also Snyder v. Phelps*, 562 U.S. 443, 458, 131 S. Ct. 1207, 179 L.Ed. 2d 172 (2011) (recognizing First Amendment protection for "insulting, and even outrageous, speech"); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 574, 115 S. Ct. 2338, 2348, 132 L.Ed. 2d 487 (1995) (recognizing First Amendment protection for "misguided, or even hurtful" speech); *Gregory v. City of Chicago*, 394 U.S. 111, 117, 89 S. Ct. 946, 22 L.Ed. 2d 134 (1969) (Black, J., concurring) (debate that devolves into personal invective generally remains "within the general give-and-take of heated political argument"); *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 11 L.Ed. 2d 686 (1964) (recognizing First Amendment protection for "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); *Terminiello v. City of Chicago*, 337 U.S. 1, 5, 69 S. Ct. 894, 93 L.Ed. 1131 (1949) (recognizing First Amendment protection for speech that "stirred people to anger, invited public dispute, or brought about a condition of unrest").

[157] *Schwing* at 303.

protected statutory or constitutional right."[158] Here, though, the State is attempting to do just that. Besides retaliating against Mrs. Hinners for her First Amendment-protected speech, the police brought charges against her for exercising her Fourth Amendment right to be free from unreasonable seizure and her Fifth Amendment right to refuse to talk to the police.

As discussed above, the police violated the Fourth Amendment when they seized Mrs. Hinners with neither a warrant nor personal observation of events giving rise to probable cause. Given the unlawful arrest, Mrs. Hinners would have been within her Fourth Amendment rights to resist the police's efforts to draw her out of the City Council meeting. So to the extent the State insists, as it represented to undersigned counsel, that Mrs. Hinners disturbed the meeting by declining to leave, it is conceding that its prosecution is in retaliation for her exercising her Fourth Amendment rights because the seizure was unlawful. And to the extent the resisting and obstruction charges are based on her refusal to cooperate with the police, they too are in retaliation for her exercising Fourth Amendment-protected activity.

The rules are no different in the Fifth Amendment context. "[A] State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself."[159] But the City is charging Mrs. Hinners with disturbing a lawful meeting and obstructing official business because she did not comply with "multiple requests made by officers for her to leave" the meeting and answer their questions. The Fifth Amendment entitled Mrs. Hinners to refuse all those requests,[160] she invoked that right so she could continue

---

[158] *United States v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488, 73 L. Ed. 2d 74 (1982).

[159] *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S. Ct. 2132, 53 L.Ed.2d 1 (1977). *See also Wilkie v. Robbins*, 551 U.S. 537, 555–56, 127 S. Ct. 2588, 168 L.Ed.2d 389 (2007) ("[T]he Government may not retaliate for exercising First Amendment speech rights … or … Fifth Amendment privilege against self-incrimination.").

[160] *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 75 L.Ed.2d 229 (1983) ("The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.").

observing City Council, and the City is now criminally prosecuting her in retaliation for declining to answer questions.

This prosecution violates both the Fourth and Fifth Amendments and should be dismissed.

## V.    CONCLUSION

From the beginning, the prosecution of these charges against Mrs. Hinners has been infected with violations of her procedural, statutory, and constitutional rights. Under Crim. R. 12(C), this Court may adjudicate this motion and dismiss the charges "based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." And it should dismiss charges based on "defects in the institution of the prosecution," "defects in the … complaint," and motions "involving a constitutional determination."

Given the importance of the First, Fourth, and Fifth Amendment issues associated with this selective and retaliatory prosecution, Mrs. Hinners respectfully requests that the Court conduct a pretrial oral argument on the merits of this motion well enough before trial that trial preparation may be avoided if the motion is granted. The Court should dismiss the case and send a message to the City of Huron it must handle its disagreements with voters through debate and democratic processes, rather than by wielding the cudgel of criminal prosecution to silence dissenters.

A proposed order is attached.

Respectfully submitted,

THE CHANDRA LAW FIRM LLC

Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Attorneys for Stacy Hinners*

## CERTIFICATE OF SERVICE

I certify that on September 6, 2019, this document was served on opposing counsel as provided by Civ. R. 5(B)(2)(b)(i).

*One of the attorneys for Stacy Hinners*