IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STACY HINNERS,** *et al.* <br><br>                     *Plaintiffs,* <br><br>     v. <br><br> **MICHAEL J. O'SHEA,** *et al.* <br><br>                     *Defendants.* | Case No.: 1:19-cv-02868 <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge David A. Ruiz |
| **PLAINTIFFS STACY AND JASON HINNERS'S OPPOSITION TO DEFENDANT LANE'S MOTION FOR JUDGMENT ON THE PLEADINGS** | |

Plaintiffs Stacy and Jason Hinners respectfully oppose Defendant Lane's motion for judgment on the pleadings (ECF #51). The reasons for their opposition are set forth in the attached memorandum.

July 31, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiffs Stacy and Jason Hinners*

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

Introduction ........................................................................................................................... 1

Issues Presented .................................................................................................................... 1

Factual Background ............................................................................................................... 2

Legal Standard ...................................................................................................................... 3

Law & Argument ................................................................................................................... 3

   I.   **Prosecutorial immunity does not entitle Defendant Lane to judgment on the pleadings.** ...................................................................................................................... 3

      A.  **Because the Complaint alleges she was not acting within the scope of her duties in initiating and pursuing a criminal prosecution, Defendant Lane cannot claim absolute immunity at this stage.** ..................................................................... 3

         1.  Because the pleadings allege Defendant Lane was not acting within the scope of her duties, she cannot claim absolute immunity. .......................................... 4

            a.  The complaint alleges Defendant Lane was not a prosecutor. ................................. 4

            b.  Lane's own pleadings create a factual question as to whether her participation in the Retaliation Campaign occurred while she could have been protected by absolute immunity. ......................................................................................................... 5

         2.  Because the pleadings allege Defendant Lane was not initiating and pursuing a criminal prosecution, she cannot claim absolute immunity. .............................. 7

            a.  Ordering police to make an arrest is not a prosecutorial function. ......................... 8

            b.  Appointing a special prosecutor to avoid a conflict of interest is not a prosecutorial function. ............................................................................................... 10

            c.  Advocating against legislation is not a prosecutorial function. .............................. 12

         3.  Lane's conflict of interest stripped her of absolute immunity. ....................................... 13

      B.  **Even if Defendant Lane were entitled to immunity, it would not dispose of the Hinnerses' claims for equitable and declaratory relief.** ........................................ 15

   II.  **Because the Complaint alleges Defendant Lane advised other Defendants to seize her, Mrs. Hinners has stated a claim for false arrest.** .................................................. 16

   III. **Because foreseeability is a jury question, the Court should not find as a matter of law that Lane could not have foreseen the harm O'Shea would inflict on Mrs. Hinners.** 18

   IV. **Because the Complaint alleges Defendant Lane violated numerous criminal statutes, it states a claim under Ohio Rev. Code § 2307.60.** ....................................................... 20

Conclusion ........................................................................................................................... 21

Loc. R. 7.1 Certification ....................................................... Error! Bookmark not defined.

TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Harrington*, 51 F.3d 271 (6th Cir. 1995)................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................3

*Bear v. Delaware Cty., Ohio*, No. 2:14-CV-0043, 2016 WL 234848 (S.D. Ohio Jan. 20, 2016)...............18

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) .............................................................................7

*Buddenberg v. Weisdack*, No. 2018-1209, 2020 WL 4341889 (Ohio July 29, 2020) .................21

*Burns v. Reed*, 500 U.S. 478 (1991) ..............................................................................................8

*California v. Hodari D.*, 499 U.S. 621 (1991) ...............................................................................17

*Clemente v. Town of N. Greenbush*, No. 1:08-CV-0212, 2008 WL 1771934 (N.D.N.Y. Apr. 15, 2008)...11

*Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002)...............................................................16–17

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000)...............................................................4–6, 18

*Davidson v. Eblen*, 142 F.3d 432 (6th Cir. 1998).........................................................................15

*Eldridge v. Gibson*, 332 F.3d 1019 (6th Cir. 2003) ...............................................................13–15

*Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008) .......................................................................9

*Hunter v. Hamilton Cty.*, No. 1:15-CV-540, 2016 WL 11463840 (S.D. Ohio May 5, 2016) ...................11

*Imbler v. Pachtman*, 424 U.S. 409 (1976)...................................................................................10

*Jacobson v. Kaforey*, 149 Ohio St. 3d 398 (2016) .......................................................................20

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ...........................................................18

*Kalina v. Fletcher*, 522 U.S. 118 (1997) .......................................................................................7

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) ...........................................................10–12

*Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013) .........................................3

*Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419 (6th Cir. 2013) ......................................3

*Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999) ....................................................................16

*Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999).............................................................................8–9

*Pulliam v. Allen*, 466 U.S. 522 (1984).........................................................................................15

*Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392 (Ohio Ct. App. 2015) ..................18

*Rhoden v. Randall*, 124 F.3d 199 (6th Cir. 1997).........................................................................15

*Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678 (6th Cir. 2020) .............................................9

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983)...........................................................................7

*Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687 (Ohio Ct. App. 2014) .............19

*Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003) ...................................................................8

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) ......................................................................7

*Weser v. Goodson*, No. 20-5178, 2020 WL 3989633 (6th Cir. July 15, 2020) ...........................16

**Statutes**

18 U.S.C. § 1961 ............................................................................................................................7

42 U.S.C. § 1983..........................................................................................................................3, 13

Ohio Rev. Code § 2307.60........................................................................................... 1, 13, 20–21

Ohio Rev. Code § 2921.45............................................................................................................21

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................3, 18, 21

## INTRODUCTION

This case involves an agreement among officials in the City of Huron to retaliate against two residents exercising their First Amendment rights to ask questions about, object to, and inform their neighbors of how the City was managing local affairs. Defendant Aimee Lane seeks judgment on the pleadings on all claims related to her involvement, insisting that as Huron's prosecutor, she is entitled to absolute immunity for any part she had in the conspiracy. But her request ignores the Fed. R. Civ. P. 12(c) standard requiring the Court to accept all the Complaint's well-pleaded facts as true—including, in this case, allegations that Lane was not, in fact the City's prosecutor, that she had no prosecutorial authority whatsoever, and that even if she did, her liability arises out of actions that are not covered by absolute immunity. Because Lane's request for immunity asks the Court to expand its protection far beyond what the Sixth Circuit allows—and because her fallback arguments are equally unsupported—the Court should deny Lane's motion.

## ISSUES PRESENTED

1. A private attorney can only avail herself of absolute immunity for actions "intimately associated with the judicial phase of the criminal process" taken when she is "acting as a public official." The Complaint alleges Defendant Lane's liability arises from actions neither connected to judicial proceedings nor within her authority as a public official. Can she terminate the claims against her by invoking absolute immunity?

2. Absolute immunity protects prosecutors from claims for monetary damages only. The Complaint brings claims for equitable and declaratory relief. Can the Court terminate those claims based on absolute immunity?

3. A civil-rights violation can be attributed to the perpetrator's supervisor if she encouraged or otherwise directly participated in the violation. The Complaint alleges Lane approved orders for other City officials to seize Mrs. Hinners without probable cause. Does that allegation sufficiently plead that Lane encouraged the unlawful seizure?

4. In a negligent-hiring claim, foreseeability is a question for the jury. The Complaint alleges facts showing Lane should have known—both before she hired him and as she supervised him—that hiring Defendant O'Shea could endanger Mrs. Hinners's civil rights. Should the Court find that danger to be unforeseeable as a matter of law without allowing a jury to consider it?

5. The Ohio Supreme Court says Ohio Rev. Code § 2307.60 allows civil claims for damages from criminal acts, regardless of whether the defendant was convicted. Lane maintains that is not true. Should the Court adhere to the Ohio Supreme Court's authoritative pronouncement?

## FACTUAL BACKGROUND

This opposition relies on and incorporates the facts detailed and cited in the First Amended Complaint. In short, they allege that Plaintiffs Jason and Stacy Hinners have a history of serving the City of Huron as fiscal watchdogs and a source of news on civic affairs.[1] After they discovered—and revealed to their neighbors—that City Council was making secret payments to the city manager, City officials began collaborating to retaliate against them.[2] Soon after, Mr. and Mrs. Hinners filed a lawsuit to reverse the secret payments and recover the misappropriated funds for the City.[3]

Within 24 hours, Defendant Aimee Lane, coordinating with several high-ranking City officials, approved a plan to criminally charge Mrs. Hinners at a City Council meeting, based on her First Amendment–protected speech to the people gathered there.[4] Defendant Lane took charge of the prosecution, despite having no authority over criminal matters.[5] She appointed Defendant Michael O'Shea as a prosecutor, despite knowing he had financial and ethical problems that could lead him to ignore fatal constitutional infirmities in the Hinners prosecution, and she retained O'Shea even after she saw that he was indeed ignoring those defects.[6] When City Council learned of Lane and O'Shea's mishandling of the case, Lane intervened to stop it from approving a resolution to terminate the prosecution, warning Council members that doing so could be a crime.[7]

Despite Lane and O'Shea's best efforts, the court eventually dismissed the case against Mrs. Hinners, who has since brought this action seeking monetary damages, as well as equitable and declaratory relief for the violations of her civil rights.

---

[1] First Am. Compl., ¶¶ 26–37.
[2] First Am. Compl., ¶¶ 38–49.
[3] First Am. Compl., ¶¶ 50–54.
[4] First Am. Compl., ¶¶ 55–106.
[5] First Am. Compl., ¶¶ 155–68.
[6] First Am. Compl., ¶¶ 129–41.
[7] First Am. Compl., ¶¶ 182–87.

## LEGAL STANDARD

A ruling on a motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion.[8] In deciding the motion, the Court must "construe the complaint in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor."[9] The Court must deny a motion if the Complaint, so construed, allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] A defendant "bears a much heavier burden at the pleading stage to show that he is entitled to judgment as a matter of law."[11]

## LAW & ARGUMENT

**I.    Prosecutorial immunity does not entitle Defendant Lane to judgment on the pleadings.**

      **A.    Because the Complaint alleges she was not acting within the scope of her duties in initiating and pursuing a criminal prosecution, Defendant Lane cannot claim absolute immunity at this stage.**

A prosecutor is entitled to absolute immunity to damages under 42 U.S.C. § 1983 when he acts "within the scope of his duties in initiating and pursuing a criminal prosecution."[12] That immunity is narrowly defined and available only in actions based on conduct "intimately associated with the judicial phase of the criminal process."[13] At this stage, Defendant Lane is not entitled to absolute immunity as a prosecutor, both because the Complaint does not allege—and explicitly disputes—that she was a prosecutor and because the Complaint alleges that she took actions that ineligible for immunity, regardless of whether she was a prosecutor.

---

[8] *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (reversing judgment on the pleadings where complaint pleaded "sufficient facts to state a claim").

[9] *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

[10] *Mellentine*, 515 F. App'x at 424 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), cleaned up).

[11] *Hickman v. Laskodi*, 45 F. App'x 451, 456 (6th Cir. 2002) (affirming denial of judgment on the pleadings).

[12] *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976) (emphasis added).

[13] *Burns v. Reed*, 500 U.S. 478, 480 (1991).

1.      **Because the pleadings allege Defendant Lane was not acting within the scope of her duties, she cannot claim absolute immunity.**

While absolute immunity protects a government employee acting within the scope of his duties as a prosecutor, *private* attorneys who allegedly engage in unconstitutional conduct while acting under color of state law are "not entitled to immunity."[14] In *Cooper v. Parrish*, for example, a prosecutor recruited Parrish, a private attorney, to help shut down businesses engaged in First Amendment–protected activities. Parrish invoked absolute immunity, but the district court denied his motion. The Sixth Circuit affirmed, holding that both because Parrish had not taken an oath of office allowing him to act on behalf of the state and because he did not have statutory authority to act as prosecutor, "Parrish does not qualify as a public official and is not entitled to absolute prosecutorial or quasi-judicial immunity."[15]

a.      **The complaint alleges Defendant Lane was not a prosecutor.**

*Cooper* controls in this case, where the Complaint alleges that Lane is not a prosecutor but rather a government contractor. The Complaint alleges that when the City retained Defendant Lane, it deliberately did so in a way that ensured she had neither "legal authority over" nor "contractual responsibility for" its prosecution of criminal matters.[16] Just as Parrish purported to exercise prosecutorial authority beyond that allowed by law, the Complaint alleges Lane seized control of the Hinners prosecution—removing the duly appointed prosecutor, hiring another private attorney to prosecute the case, and approving that attorney's misguided efforts to secure a conviction based on First Amendment–protected activity—despite having no authority to do so.[17] As detailed in the

---

[14] *Cooper v. Parrish*, 203 F.3d 937, 950 (6th Cir. 2000).

[15] *Cooper*, 203 F.3d at 951.

[16] First Am. Compl., ¶ 161.

[17] First Am. Compl., ¶ 122, 128, 20.

Complaint, Lane's authority was limited to civil matters; her contract explicitly *excluded* litigation from her portfolio, and all prosecutorial authority rested with someone else.[18]

Her attempt to delegate responsibility for the Hinners prosecution was even farther removed from her legal authority. Not only was she explicitly sidelined from criminal matters, she was explicitly barred from assigning or transferring any part of her responsibilities to a third party.[19] Just as Parrish's unlawful assignment to prosecutorial duties "nullified his appointment,"[20] Lane's delegation of her prosecutorial authorities—assuming she had any to begin with—was "void" under state law because it occurred "without the express written consent" of the City, in violation of her contract.[21] Huron's charter also prohibited her from contracting to spend any funds beyond those appropriated.[22] Lane contracted with O'Shea in violation of that law.[23]

> **b.  Lane's own pleadings create a factual question as to whether her participation in the Retaliation Campaign occurred while she could have been protected by absolute immunity.**

Defendant Lane argues that she must be excused from liability for participation in the Retaliation Campaign because it was "allegedly hatched before she became law director."[24] But Lane's theory—that she can avoid liability for joining in a conspiracy merely because she was not one of its founding members—is unsupported by any case law and contradicted by her own pleadings. Her response to Paragraph 11 of the First Amended Complaint denies that she was Huron's law director "at all times relevant to this complaint." She goes on to dispute both the date of her appointment, denying in her response to Paragraph 157 that she was appointed law director

---

[18] First Am. Compl., ¶ 157, 162–63, 168.

[19] First Am. Compl., ¶ 165.

[20] *Cooper*, 203 F.3d at 951.

[21] First Am. Compl., ¶ 165.

[22] First Am. Compl., ¶ 177.

[23] First Am. Compl., ¶ 179.

[24] Lane Mot. for J. on the Pleadings, 4–5 (ECF #51-1).

on April 9, 2019; and the date of her termination, denying in her response to Paragraph 11 that she stopped serving as law director on October 31, 2019. She can hardly demand judgment on the pleadings for when her own pleadings cut against her.

Whatever immunity a law director might be eligible for, Lane cannot claim it while denying she was the law director at the time the Amended Complaint alleges she violated the Hinnerses' civil rights. The Amended Complaint here alleges that Huron officials began conspiring to launch the Retaliation Campaign shortly after April 8, 2019. Given the Complaint's allegation that Defendant Lane began formally contracting with the City the next day, and her pleading that actually, she may not have been formally engaged as law director as soon as alleged, the court can "draw the reasonable inference" that Lane, like the defendant in *Cooper*, began participating in the Retaliation Campaign after she began acting under color of state law but before she was actually vested with any statutory authority that could allow her to claim immunity. For instance, if she advised Defendant Ginesi to reach out to Father McBeth—as he is alleged to have done in Paragraphs 42–47—but did so at a time when she was acting under color of state law but not yet formally sworn in as law director, that advice would not be protected by absolute immunity.

Her denial as to when her engagement ended permits the reverse inference, as well: that Lane continued participating in the Retaliation Campaign after she lost any statutory authority entitling her to immunity but before she stopped acting under color of state law. For instance, the Court can draw the reasonable inference from the Amended Complaint's allegation that "Defendant O'Shea huddled privately in a City Hall conference room with Defendant Lane and consulted her again about how he should proceed"[25] that Defendant Lane directed Defendant O'Shea's handling of the October 7 hearing and motion in Huron Municipal Court. Given Lane's denial that she

---

[25] First Am. Compl., ¶ 230.

remained law director through October 31, it may be that she took those actions as law director even though she was no longer statutorily vested with any such authority. If either is true—and Lane's Answer permits the Court to infer they are—the question becomes what actions Lane's took in furtherance of the Retaliation Campaign during a period when she was not entitled to immunity.

Because the pleadings leave that question open and because the Complaint alleges that the unique facts specific to Huron's bifurcation of the law director role deprived her of immunity in any case, the Court should deny Defendant Lane absolute immunity.

### 2. Because the pleadings allege Defendant Lane was not initiating and pursuing a criminal prosecution, she cannot claim absolute immunity.

Absolute immunity covers only actions taken "in initiating and pursuing a criminal prosecution."[26] It is not available for constitutional violations arising from conduct that is not "intimately associated with the judicial phase of the criminal process."[27] It does not relieve a defendant of liability incurred, for instance, while acting as an administrator,[28] investigating a crime,[29] advising police investigating a crime,[30] swearing to the facts supporting a warrant,[31] discussing a case with the media,[32] filing a civil suit,[33] or covering up a crime.[34]

Beyond her broader participation in the Retaliation Campaign, the Complaint alleges Defendant Lane engaged in three main actions or courses of conduct giving rise to her liability: (1)

---

[26] *Imbler*, 424 U.S. at 410 (emphasis added).

[27] *Burns*, 500 U.S. at 480.

[28] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.").

[29] *Id.*

[30] *Burns*, 500 U.S. at 480.

[31] *Kalina v. Fletcher*, 522 U.S. 118, 122–23 (1997).

[32] *Buckley*, 509 U.S. at 277.

[33] *Stapley v. Pestalozzi*, 733 F.3d 804, 811 (9th Cir. 2013) ("Because the RICO suit was civil, *see* 18 U.S.C. § 1961, *et seq.,* it was not 'intimately associated with the judicial phase of the *criminal* process.'") (citing *Imbler*).

[34] *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983) (immunity "would make a mockery of the judicial system").

advising city officials to arrest Mrs. Hinners; (2) asserting control over the Hinners prosecution; and (3) dissuading Huron City Council from proceeding with a resolution that would have terminated the Hinners prosecution. None of these actions is intimately associated with the judicial phase of the criminal process.

> ### a. Ordering police to make an arrest is not a prosecutorial function.

The Complaint alleges in Paragraph 69 that when Defendant Hartung came to Lane seeking her advice on whether he could have Mrs. Hinners charged, she said that doing so would be legal. In *Burns v. Reed*, a prosecutor advised police officers who used hypnosis to obtain a suspect's confession that they "probably had probable cause" to arrest the suspect. The district court granted the prosecutor absolute immunity against claims by the suspect, and the Seventh Circuit affirmed, finding that "a prosecutor's risk of becoming entangled in litigation based on his or her role as a legal advisor to police officer is as likely as the risks associated with initiating and prosecuting a case." But the U.S. Supreme Court reversed, holding that neither history nor public policy suggested absolute immunity should be stretched so far beyond its original purpose of freeing prosecutors from litigation over their courtroom advocacy: "That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, *not for every litigation-inducing conduct*."[35]

As in *Burns*, Defendant Lane advised Defendants Hartung and White—and through them, Defendants Lippert, Orzech, and Koehler—that they had probable cause to arrest Mrs. Hinners for

---

[35] *Burns*, 500 U.S. at 494 (emphasis added). *See also Harris v. Bornhorst*, 513 F.3d 503, 510–11 (6th Cir. 2008) ("Spies went beyond merely advising the police; she *instructed* them to arrest Harris, without soliciting any officer's opinion. Accordingly, the district court correctly determined that Spies was acting in an administrative or investigative capacity and is, therefore, not entitled to absolute immunity."); *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) ("[P]rosecutors are not entitled to absolute immunity for the act of giving legal advice to police."); *Prince v. Hicks*, 198 F.3d 607, 613 (6th Cir. 1999) (denying absolute immunity where complaint alleged "Defendant Hicks gave legal advice to Defendant Hazelhurst that there was probable cause for the warrant").

her speech to City Council. While Defendant Lane concedes that *Burns* and numerous other cases deny immunity to prosecutors who approve arrests, she insists "these cases are differentiated" from hers.[36] But she never explains *how* those cases are different from hers, or *why* she should get a special grant of immunity that no other prosecutor gets when advising police to arrest someone without probable cause. Indeed, there seems to be little to distinguish it from the many cases following *Burns* that deny immunity to prosecutors whose bad advice leads to a plaintiff's arrest.

In *Harris v. Bornhorst*,[37] a prosecutor instructed police to arrest a suspect based on her independent assessments of the evidence and probable cause. The district court found the prosecutor "was acting in an administrative or investigative capacity and is, therefore, not entitled to absolute immunity." Noting that "the analytical key to prosecutorial immunity is advocacy—whether the actions in question are those of an advocate," the Sixth Circuit affirmed, agreeing that a decision to arrest a suspect was not "within the scope of her role as an advocate." [38]

More recently, in *Rieves v. Town of Smyrna, Tennessee*, the Sixth Circuit reiterated that advice to law enforcement as to what is and is not legal is not protected by absolute immunity when it is offered "prior to the initiation of any judicial proceedings."[39] In *Rieves*, the prosecutors helped police coordinate raids on CBD shops around Tennessee, based on their (incorrect) assumption that hemp-derived products were illegal under state or federal law. The district court denied immunity to the prosecutors, and the Sixth Circuit affirmed, saying their conduct "falls directly within [a previous] holding that advising law enforcement regarding the existence of probable cause is not protected by absolute immunity."[40]

---

[36] Lane Mot. for J. on the Pleadings, 10.

[37] 513 F.3d 503, 510–11 (6th Cir. 2008).

[38] *Harris*, 513 F.3d at 509–10 (cleaned up).

[39] 959 F.3d 678,693 (6th Cir. 2020).

[40] *Rieves*, 959 F.3d at 693 (citing *Prince*, 198 F.3d at 614).

Even the case Lane relies on most heavily, *Lacey v. Maricopa Cty.*,[41] says the same, denying the prosecutor in that case immunity for ordering the plaintiffs arrested or advising that they should be.[42] Lane offers no explanation as to how the Court should distinguish these cases from hers, in which she similarly made her own assessment of probable cause and green-lighted an arrest without seeking a warrant. Because her actions are in line with those of the many prosecutors denied immunity before her, the Court should deny her motion.

### b. Appointing a special prosecutor to avoid a conflict of interest is not a prosecutorial function.

As outlined in *Imbler*, prosecutorial immunity is limited to cases in which a prosecutor acts "within the scope of his duties in initiating and pursuing a criminal prosecution."[43] But when the prosecutor begins coloring outside the lines, absolute immunity no longer protects her.

Lane generally argues that she is entitled to prosecutorial immunity for actions taken outside her authority as civil law director, but on the appointment of O'Shea, she goes even further, arguing that she should be entitled to immunity for not just for actions taken when she exceeded her authority as civil law director to seize control of a criminal prosecution, but also for actions when she went outside that role as well, usurping the *court's* authority to appoint a special prosecutor in cases where the prosecutor faces a conflict. Lane's only support for this idea comes from a single, out-of-circuit case. In *Lacey*, a conflicted county prosecutor appointed a sketchy special prosecutor who then conspired with other government officials to harass their critics for exercising their First Amendment rights. The Ninth Circuit granted the county prosecutor absolute immunity for appointing the prosecutor, noting that (1) the prosecutor had authority to make the appointment

---

[41] 693 F.3d 896 (9th Cir. 2012).

[42] *Lacey*, 693 F.3d at 914 ("Wilenchik is also not entitled to absolute immunity in connection with ordering or advising those making the arrests. Neither are prosecutorial functions.").

[43] *Imbler*, 424 U.S. at 410 (emphasis added).

under an unusual Arizona law; (2) that this authority was undisputed; and (3) that the special prosecutor took on full authority from the county prosecutor.

While *Lacey* bears many similarities to this case and may be useful to the Court on a number of questions, this is not one of them. On the question of Lane's immunity for appointing the special prosecutor, none of the rationales supporting immunity apply to this case. Unlike in *Lacey*, the Complaint in this case alleges facts showing that Huron's unique division of the law director's position deprived Lane of the authority to appoint O'Shea, a point the parties dispute.[44] And beyond the factual questions regarding Huron's division of authority for its chief legal officers generally, a conflicted prosecutor—whoever it actually was in this case—lacks the authority to appoint a special prosecutor as a matter of Ohio law. Appointing a special prosecutor is an action protected by absolute immunity in Ohio, but only for judges. In *Hunter v. Hamilton Cty.*,[45] for instance, a judge appointed a special prosecutor because of the regular prosecutor's conflict of interest. The court held that such a decision is protected by absolute *judicial* immunity because it is "taken by a judge *in his or her judicial capacity* and is one normally performed by a judge. Such appointments are judicial in nature and an integral part of the judicial process."[46] As the Complaint notes, the Erie County Prosecutor, who also faced a conflict of interest in this case (but was not exposed to liability and thus not motivated to meddle in it), followed the normal procedure required by Ohio law, referring the case to the Court of Common Pleas and requesting a special prosecutor.[47] When the Court appointed the Ohio Attorney General in response, that office became the prosecutor in the case,

---

[44] First Am. Compl., ¶¶ 155–81.

[45] No. 1:15-CV-540, 2016 WL 11463840 (S.D. Ohio May 5, 2016), *report and recommendation adopted,* No. 1:15CV540, 2016 WL 4836810 (S.D. Ohio Sept. 15, 2016)

[46] *Id.* at *4. *See also Clemente v. Town of N. Greenbush*, No. 1:08-CV-0212, 2008 WL 1771934, at *2 (N.D.N.Y. Apr. 15, 2008) ("[T]he complained of conduct [appointing a special prosecutor] attributed to McGrath was within the scope of his *judicial* function and he is entitled to absolute immunity.").

[47] First Am. Compl., ¶ 151–54.

stripping Lane of any authority to further interfere in it. Ohio law differs from the law at issue in *Lacey* not only in assigning judges the responsibility of appointing special prosecutors, but in prohibiting the prosecutor from further handling the case once the conflict becomes apparent.[48]

Beyond the obvious inapplicability of the Arizona statute that informed its outcome, *Lacey* doesn't apply here because its decision also depended on the undisputed fact that in appointing a special prosecutor, the county prosecutor "conferred the full prosecutorial authority" of his office. The Complaint here alleges the opposite: that Lane purported to appoint O'Shea as a supposedly independent prosecutor but nonetheless continued to supervise his work, that she exercised the power of the purse by monitoring and approving his spending, and that she directed his decisions at key moments in the case.[49]

Because Lane exceeded the bounds of prosecutorial authority in appointing O'Shea and then continued to direct O'Shea's actions from behind the scenes, the Court should not grant her prosecutorial immunity for wielding power that Ohio law reserves to its judiciary.

### c. Advocating against legislation is not a prosecutorial function.

The third allegation alone is sufficient for the Court to deny absolute immunity, as it is undisputed that this conduct was not intimately associated with the judicial phase of the criminal process. Instead, Lane was providing her clients with advice about the effects and advisability of a piece of legislation under consideration. This conduct was not undertaken in Lane's capacity as an advocate for the state in criminal matters, but as an adviser for the city on a civil matter.

Lane does not claim otherwise, and her motion offers no basis for finding that this conduct should be considered "intimately associated with the judicial phase of the criminal process." Because

---

[48] Ohio R. Prof'l. Cond. 1.7 ("A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created").

[49] *See, e.g.*, First Am. Compl., ¶ 230.

there is no dispute that Lane's participation in the Retaliation Campaign included conduct that is outside its scope, the Court should deny her motion for absolute prosecutorial immunity.

### 3. Lane's conflict of interest stripped her of absolute immunity.

And Lane's conflict—in and of itself— is sufficient to strip her of absolute immunity. *Eldridge v. Gibson*,[50] involved a trio of cases involving Eldridge: the civil-rights case under 42 U.S.C. § 1983, the underlying criminal case charging him with murder, and a civil case seeking damages for the crime, brought under Tennessee's analogue to Ohio Rev. Code § 2307.60, which provides crime victims a civil action for damages against the criminals who victimize them. The county prosecutor recused from the criminal prosecution and appointed as special prosecutors the same attorneys who were simultaneously representing the victim's estate in a potential action against Eldridge for damages.

In the resulting § 1983 action for malicious prosecution, the district court entered a judgment for the conflicted prosecutors. In a fractured decision with each judge writing separately, the Sixth Circuit affirmed, but it split on the question of whether the defendants were entitled to absolute immunity. Although one judge believed the prosecutors were entitled to immunity merely because they undertook some actions of a "prosecutorial nature," Judges Nelson and Cole concluded that the conflict of interest deprived the prosecutors of absolute immunity.

Judge Nelson wrote that the Tennessee law that permitted such unusual arrangements "invites the contingent-fee lawyer who assumes that role to employ the coercive force of the state's criminal justice machinery for an illicit purpose."[51] Although the question was unnecessary to decide given the case's posture, he noted that allowing a lawyer to maximize his position in a civil case by prosecuting the underlying criminal matter was likely unconstitutional. "And if that argument were

---

[50] 332 F.3d 1019, 1025 (6th Cir. 2003).
[51] *Eldridge*, 332 F.3d at 1022.

to be accepted, it would be hard for me to discern any rational justification for extending absolute immunity to the special prosecutor," he wrote.[52]

Judge Cole reached the same outcome, rejecting the notion that immunity would attach solely because the defendants were functioning in part as prosecutors. "Were the attorneys in question functioning solely as special prosecutors, this analysis would surely be correct," he wrote. Instead, they "had offered to settle both the civil and criminal proceedings for a sum certain, and it was apparent that payment of a sum of money for a civil settlement would have resulted in a favorable recommendation by the special prosecutors in the criminal matter."[53]

The conflicts posed by their duties as zealous advocates (on a contingent-fee basis) for their client in the civil matter and their duties as ministers of justice in the criminal matter put the prosecutors, according to Judge Cole, in a position where they had an unacceptable interest in the outcome of the case: "Because of these conflicts, I do not think it can fairly be said that the private attorneys were at all times functioning as state prosecutors, because all of their actions in the context of the criminal trial were inextricably intertwined with their civil functions. Accordingly, the functions of prosecutor and zealous civil advocate are inseparable here."[54]

The same conflict exists here. Lane knew, from Mrs. Hinners's comments at the time she was ejected from the meeting that Mrs. Hinners was contemplating a civil lawsuit,[55] and that such an action would put Lane at personal risk for liability, given her approval of Defendant Hartung's request to use police force against Mrs. Hinners. Despite her conflict—which she acknowledged in her communication with Mrs. Hinners's counsel and admitted in her Answer[56]—she seized control

---

[52] *Eldridge*, 332 F.3d at 1022.

[53] *Eldridge*, 332 F.3d at 1024.

[54] *Eldridge*, 332 F.3d at 1024.

[55] See First Am. Compl, Ex. A-7 at 9:50 (ECF #31-8) (Mrs. Hinners: "If you want a federal lawsuit, this is how you get one."); *id.* at 11:08 ("By all means, gentlemen, we'll have a good time in federal court.").

[56] Lane answer ¶ 172.

of the criminal prosecution, removing a prosecutor without a conflict, appointing her own hand-picked successor, managing his handling of the case, and directing his actions, which included an offer to dismiss the charges in exchange for a stipulation of probable cause, which could have wiped out the bulk of Mrs. Hinners's claims against her.

Where the prosecutors in *Eldridge* were burdened by a conflict relating to their interest in maximizing the recovery in a related civil action, Lane was burdened by a conflict relating to her interest in minimizing her exposure in a related civil action. Like in *Eldridge*, as Judge Cole put it, "all of [her] actions in the context of the criminal trial were inextricably intertwined with [her] civil functions," and she should therefore not be allowed to claim immunity.[57]

Were Mrs. Hinners suing a line prosecutor for introducing objectionable evidence or overstating the case in a closing argument, absolute immunity would apply. But this case is far from prototypical: as the Complaint alleges, Defendant Lane was not a prosecutor to begin with, she violated Mrs. Hinners's rights through a variety of non-prosecutorial actions, and she did so while enmeshed in an admitted conflict of interest, based on her apparent desire to avoid exposure to civil liability for those actions. Because any one of those allegations would be sufficient to deprive her of absolute prosecutorial immunity, the Court should deny Defendant Lane's motion.

### B.     Even if Defendant Lane were entitled to immunity, it would not dispose of the Hinnerses' claims for equitable and declaratory relief.

A prosecutor, acting within the scope of his prosecutorial duties, is normally immune from a suit for damages.[58] But even when immune from damages, prosecutors remain amenable to claims for equitable or declaratory relief.[59] Here, the Hinnerses seek not only damages against Lane in her

---

[57] *Eldridge*, 332 F.3d at 1024.

[58] *Pulliam v. Allen*, 466 U.S. 522, 541 (1984).

[59] *See, e.g.*, *Davidson v. Ehlen*, 142 F.3d 432 (6th Cir. 1998) ("While plaintiff's claim for money damages is precluded, plaintiff's claim for injunctive relief against the defendant state judge and state prosecutor is not barred by judicial immunity."); *Rhoden v. Randall*, 124 F.3d 199 (6th Cir. 1997) ("[D]efendants' immunities do

individual and official capacities, but equitable and declaratory relief, as well. It is well established that such relief is not barred by absolute immunity, even if the Court concludes that Lane was at all times properly acting as a prosecutor in this case. Lane argues she is immune from damages, but she does not argue that the Hinnerses' claims are not suitable for equitable relief, nor that their claims for equitable and declaratory relief are barred by immunity. The Court should therefore deny her motion for judgment on the pleadings.

## II. Because the Complaint alleges Defendant Lane advised other Defendants to seize her, Mrs. Hinners has stated a claim for false arrest.

A false-arrest claim must allege "that the arresting officers lacked probable cause to believe that the suspect had committed the charged crime."[60] A false arrest can be attributed to the perpetrator's supervisor if "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."[61] "[I]t matters not whether the defendant directly ordered the arrest, if he set in motion the machinery which proximately caused the arrest."[62]

For instance, in *Combs v. Wilkinson*, an inmate brought claims against a raft of employees at his prison, alleging they used excessive force in suppressing a riot. The district court granted summary judgment to a lieutenant accused of inadequately briefing and supervising corrections officers, but the Sixth Circuit reversed. Even though the lieutenant had not personally perpetrated or even witnessed any excessive force, the court concluded that his failure to brief the officers or exercise any control of them "'implicitly authorized, approved, or knowingly acquiesced' in the use of excessive force against plaintiffs."[63]

---

not protect them from injunctive or declaratory relief."); *Abdullah v. Harrington*, 51 F.3d 271 (6th Cir. 1995) ("[A]bsolute immunity is not a bar to injunctive or declaratory relief against a judge or prosecutor.").

[60] *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999).

[61] *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002).

[62] *Weser v. Goodson*, No. 20-5178, 2020 WL 3989633, at *9 (6th Cir. July 15, 2020) (cleaned up).

[63] *Combs*, 315 F.3d at 559.

Defendant Lane's motion does not dispute that Mrs. Hinners was seized without probable cause; it only argues that the false-arrest claim against Lane fails as a matter of law because the Complaint does not allege that Lan personally put her hands on Mrs. Hinners and dragged her out of Council chambers. Instead, the Complaint alleges that "Director Lane approved or endorsed the decision to charge Mrs. Hinners for her speech."[64] In support, Defendant Lane cites a single case, *California v. Hodari D.*, 499 U.S. 621, 626 (1991), for the proposition that a seizure "requires either a *physical application of force*, or *submission* to an officer's show of force or assertion of authority."[65] Therefore, she argues, "[e]ven if Ms. Lane ordered or acquiesced to the arrest, those 'mere words' are not enough to constitute a seizure under the Fourth Amendment."[66]

While *Hodari D.* does support that position, it has little relevance here. There is no dispute that Lane's approval of Mrs. Hinners's seizure did not, by itself, immobilize Mrs. Hinners and place her under arrest. Rather, the Complaint alleges that by approving Mrs. Hinners's seizure, Lane sent an order to carry out that seizure through the City's chain of command, from Defendant Hartung to Defendant White, to Defendant Lippert, and finally to Defendants Orzech and Koehler, who did, in fact, physically apply force to seize Mrs. Hinners.[67] Lane's suggestion that holding her liable requires something more runs contrary to all the Sixth Circuit's instructions on false arrest and supervisory liability. Mrs. Hinners needs only to allege—as she has—that Lane's orders "set in motion the machinery" that caused the arrest. Lane does not argue that her order was too attenuated or otherwise insufficient as a matter of law to establish liability. Such an argument would be unavailing anyway, given the low bar the Sixth Circuit set in *Combs*, allowing claims even where the supervisor only "implicitly" approved the constitutional violation. The case here is of course stronger, where

---

[64] First Am. Compl., ¶ 69.
[65] Lane Mot. for J. on the Pleadings, 16.
[66] Lane Mot. for J. on the Pleadings, 16.
[67] First Am. Compl., ¶ 100.

the Complaint alleges that Lane *explicitly* approved Mrs. Hinners's seizure. Because the Complaint alleges that Defendant Lane, as a supervisor, personally and explicitly ordered other officials to seize Mrs. Hinners without probable cause, it adequately states a claim for false arrest.

### III. Because foreseeability is a jury question, the Court should not find as a matter of law that Lane could not have foreseen the harm O'Shea would inflict on Mrs. Hinners.

The elements of a claim for negligent hiring, retention, and supervision are:

(1) the existence of an employment relationship;

(2) the employee's incompetence;

(3) the employer's actual or constructive knowledge of such incompetence;

(4) the employee's act or omission causing the plaintiff's injuries; and

(5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.[68]

Lane's motion does not dispute that the Complaint alleges sufficient facts to establish the first four elements, limiting its argument only to the question of whether she could have foreseen that Defendant O'Shea would disregard well-established constitutional rights in prosecuting Mrs. Hinners. She argues that the many facts the Complaint alleges were known or available to her—both when she hired O'Shea and throughout his engagement—are insufficient, as a matter of law, to establish foreseeability. But foreseeability is not, generally speaking, a legal question. Outside outlandishly improbable circumstances "of such a kind that no foresight could have been expected to look out for them,"[69] the Sixth Circuit recognizes that proximate cause and the question of what is foreseeable "is a question of fact for the jury."[70] Because foreseeability is a question for a jury, it is not an appropriate basis for a Rule 12 motion, except where the Complaint is totally bereft of allegations as to how the defendant could have foreseen the damage she inflicted.

---

[68] *Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392, 404 (Ohio Ct. App. 2015).

[69] *Bear v. Delaware Cty., Ohio*, No. 2:14-CV-0043, 2016 WL 234848, at *17 (S.D. Ohio Jan. 20, 2016).

[70] *Cooper v. Cty. of Washtenaw*, 222 F. App'x 459, 472 (6th Cir. 2007) (quoting *James v. Meow Media, Inc.*, 300 F.3d 683, 692 (6th Cir. 2002)).

In *Simpkins v. Grace Brethren Church*,[71] a girl brought a negligent hiring claim against a church whose pastor raped her after the church knew of multiple instances of sexual misconduct. The church argued the pastor's prior misconduct—all of which stopped short of rape—made the subsequent rape unforeseeable a matter of law, but the trial court denied its motion. The Court of Appeals affirmed, holding that questions of foreseeability "must be determined by the totality of the circumstances" and require "the trier of fact to weigh and determine witness credibility regarding these issues."[72]

Here, the Complaint provides more than enough factual detail to permit the claim to proceed past the pleading stage. Based on its allegations, the Court can make the following reasonable inferences supporting foreseeability:

- Because she first hired Wayne Nicol, a prosecutor with intimate connections to her firm and co-defendant, Chief Lippert, the Court can infer Defendant Lane was looking for a special prosecutor whose interests were aligned with her own.[73]

- Based on his history of ethical violations and of financial problems, the Court can infer that Defendant O'Shea had—and that Lane was aware of—an economic incentive to disregard the facts and law requiring him to dismiss the charges against Mrs. Hinners.[74]

- Based on their existing business connections, the Court can infer Defendant Lane already knew about Defendant O'Shea and his problems.[75]

- Because O'Shea's problems are a matter of public record, the Court can infer Defendant Lane did not merely *know* about O'Shea's troubled history and ignore it; she hired him *precisely because of it*.[76]

- Because Lane violated city ordinances requiring her to obtain approval before hiring either Nicol or O'Shea, the Court can infer that she knew either candidate would be rejected if she asked the City to give them even the lightest scrutiny—given Nicol's close ties to Lane and O'Shea's history of ethical problems.[77]

---

[71] 16 N.E.3d 687, 700 (Ohio Ct. App. 2014).

[72] *Simpkins*, 16 N.E.3d at 700.

[73] First Am. Compl., ¶¶ 126–27.

[74] First Am. Compl., ¶¶ 129–33.

[75] First Am. Compl., ¶ 128.

[76] First Am. Compl., ¶ 129.

[77] First Am. Compl., ¶¶ 138–39; 167.

And these are only the facts supporting foreseeability in terms of negligent *hiring*. Because the Complaint also alleges negligent *retention*, judgment on the pleadings would require the Court to conclude that O'Shea's disregard for Mrs. Hinners's civil rights was not foreseeable even as Lane "continued overseeing Defendant O'Shea's handling of the case" through its termination,[78] including reviewing the pleadings that demonstrated his ignorance of or disregard for Mrs. Hinners's First and Fourteenth Amendment rights. Even if Defendant Lane could not have foreseen her error *before* she hired O'Shea, she doesn't explain why the Court should find, as a matter of law, that she could not have foreseen that harm as it continued to unfold before her eyes over the course of months.

Because foreseeability is a jury question and the Complaint alleges sufficient facts that, if proven, would allow a jury to find that Lane could have foreseen the harm O'Shea would inflict on Mrs. Hinners, the Court should deny her motion for judgment on the pleadings.

## IV. Because the Complaint alleges Defendant Lane violated numerous criminal statutes, it states a claim under Ohio Rev. Code § 2307.60.

Under Ohio Rev. Code § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action … and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code." The statute, "by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act."[79] Here, the Complaint alleges that Defendant Lane and her co-defendants violated a variety of criminal statutes. Given the perfunctory nature of Lane's argument on this question, the Hinnerses will only address one such statute.

Under Ohio law, it is a criminal act if (a) a public servant; (b) under color of his office, employment, or authority; (c) shall knowingly deprive, or conspire or attempt to deprive any person

---

[78] First Am. Compl., ¶ 141.
[79] *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 400 (2016).

of a constitutional or statutory right.[80] Here, the Complaint alleges that Defendant Lane (a) was a public servant by virtue of her engagement as law director;[81] (b) acted under color of her office;[82] and (c) conspired with her co-defendants "with the purpose of depriving Mr. and Mrs. Hinners of the equal protection of the law."[83] Because the Complaint pleads all the elements of a violation of Ohio Rev. Code § 2921.45, it states a claim for liability under Ohio Rev. Code § 2307.60.

Still, Lane "maintains that any damages under R.C. §2307.60 require an underlying criminal conviction."[84] Lane cites no law for this proposition, and the Ohio Supreme Court says the opposite is true.[85] The Court should enforce the law using its plain language and deny the motion for judgment on the pleadings.

## CONCLUSION

Defendant Lane is not entitled to absolute prosecutorial immunity—at least at this stage—because the Complaint plausibly alleges that facts unique to the City of Huron led to her installation as law director with no prosecutorial authority, and that her involvement in the Retaliation Campaign included acts that are not prosecutorial in nature. Her unwillingness to engage the Rule 12(c) standard on this question runs through her other arguments as well, ignoring well-pleaded facts that support liability on claims for false arrest and negligent hiring and bar her from wrapping herself in immunity at this stage of the case. The Court should deny her motion.

---

[80] Ohio Rev. Code § 2921.45.

[81] First Am. Compl., ¶ 11.

[82] First Am. Compl., ¶ 21.

[83] First Am. Compl., ¶ 432.

[84] Lane Mot. for J. on the Pleadings, 19.

[85] *Buddenberg v. Weisdack*, No. 2018-1209, 2020 WL 4341889, at *3 (Ohio July 29, 2020) ("R.C. 2307.60(A)(2) permits the use of a conviction as evidence, but does not require it.").

July 31, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiffs Stacy and Jason Hinners*