IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STACY HINNERS,** *et al.* <br> *Plaintiffs,* <br><br> v. <br><br> **MICHAEL J. O'SHEA,** *et al.* <br> *Defendants.* | Case No.: 1:19-cv-02868 <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge David A. Ruiz |

**PLAINTIFFS STACY AND JASON HINNERS'S OPPOSITION TO
DEFENDANT WALTER HAVERFIELD LLP'S MOTION TO DISMISS**

Plaintiffs Stacy and Jason Hinners respectfully oppose Defendant Walter Haverfield LLP's

motion to dismiss (ECF #46). The reasons for their opposition are set forth in the attached

memorandum.

July 31, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiff Stacy and Jason Hinners*

TABLE OF CONTENTS

Table of Contents ................................................................................................................ ii

Table of Authorities .......................................................................................................... iii

Introduction ........................................................................................................................1

Issues Presented .................................................................................................................1

Factual Background ...........................................................................................................2

Legal Standard ...................................................................................................................3

Law & Argument ...............................................................................................................4

    I.   Because the Sixth Circuit rejects vicarious immunity and there is no one from whom it can borrow immunity, Walter Haverfield LLP is not immune to liability.................4

        A.  Because one conspirator's immunity does not absolve co-conspirators of liability, the claims against Walter Haverfield LLP survive any other parties' assertion of immunity. ...............................................................................................................4

        B.  Because neither Lane nor O'Shea is entitled to immunity, Walter Haverfield LLP is not immune to suit. ..........................................................................................6

    II.  The Complaint adequately pleads a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3) (Claim 23)....................................................................................8

        A.  Because they are members of a clearly defined class of people critical of the City's policies, Mr. and Mrs. Hinners are protected against conspiracies against civil rights under 42 U.S.C. § 1985(3). ............................................................................8

        B.  Because this case falls outside its scope and within its exceptions, the intracorporate-conspiracy doctrine does not bar Plaintiffs' conspiracy claim.......11

            1.  Because the Complaint alleges the participation of multiple parties with multiple employers, Claim 23 survives the intracorporate-conspiracy doctrine. ........................12

            2.  Because the Complaint alleges that Defendants acted outside the scope of their City employment, Claim 23 survives the intracorporate-conspiracy doctrine. ...................13

            3.  Because the Complaint alleges that Lane engaged O'Shea for the purpose of violating Mrs. Hinners's rights, Claim 23 survives the intracorporate-conspiracy doctrine. .....14

            4.  Because the Complaint alleges that Defendants had a personal stake in their unconstitutional acts, Claim 23 survives the intracorporate-conspiracy doctrine.......15

            5.  Because the Complaint alleges that Defendants engaged in a series of discriminatory acts, Claim 23 survives the intracorporate-conspiracy doctrine. ..................................15

        C.  Constraints on *respondeat superior* liability for municipal corporations in § 1983 claims do not immunize private firms from liability on a § 1985(3) claim. ...........16

    III. The Complaint adequately pleads a claim for civil conspiracy under Ohio law. .......17

    IV. The Complaint adequately pleads a claim for negligent hiring, retention, and supervision under Ohio law. .........................................................................................19

Conclusion .......................................................................................................................22

Loc. R. 7.1 Certification ...............................................................Error! Bookmark not defined.

TABLE OF AUTHORITIES

## Cases

*Alioto v. City of Shively, Ky.*, 835 F.2d 1173 (6th Cir. 1987) ...........................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................4

*Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972)..........................................................9, 11

*Bedford v. Se. Pennsylvania Transp. Auth.*, 867 F. Supp. 288 (E.D. Pa. 1994) ...............9

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) .................................................................6

*Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973)..................................................9, 10, 12

*Collins v. Flowers*, No. 04CA008594, 2005 WL 1763615 (Ohio Ct. App. July 27, 2005) ................ 22, 23

*Conklin v. Lovely*, 834 F.2d 543 (6th Cir. 1987) ........................................................10, 12

*Dennis v. Sparks*, 449 U.S. 24 (1980)......................................................................4, 5, 6

*Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761 (11th Cir. 2000).............................16, 17

*Fry v. Wheatland Tube, LLC*, 135 N.E.3d 420 (Ohio Ct. App. 2019) ...............................22

*Givens v. Wenker*, No. 1:10-CV-382, 2012 WL 1680099 (S.D. Ohio May 14, 2012)............19

*Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975) ..............................10, 11, 12

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ....................................................................8

*Han v. Gill*, No. 98CA007061, 1999 WL 492633 (Ohio Ct. App. July 14, 1999) ..................21

*Haverstick Ent., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989 (6th Cir. 1994).......................12

*Hickman v. Laskodi*, 45 F. App'x 451 (6th Cir. 2002) .......................................................4

*Imbler v. Pachtman*, 424 U.S. 409 (1976)........................................................................6

*Ireland v. Tunis*, 113 F.3d 1435 (6th Cir.1997) ...............................................................7

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837 (6th Cir. 1994) .............................14, 15

*Kalina v. Fletcher*, 522 U.S. 118 (1997) .........................................................................6

*Lapin v. Taylor*, 475 F. Supp. 446 (D. Haw. 1979)..........................................................9

*LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St. 3d 323 (2007) ....................................20

*Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013) ...............................3

*Macko v. Byron*, 760 F.2d 95 (6th Cir. 1985)...................................................................5

*Malley v. Briggs*, 475 U.S. 335 (1986)............................................................................7

*Mangelluzzi v. Morley*, 40 N.E.3d 588 (Ohio Ct. App. 2015) ...........................................18

*McLean v. Int'l Harvester Co.*, 817 F.2d 1214 (5th Cir. 1987) ..........................................9

*Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419 (6th Cir. 2013) ...........................4

*Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235 (3d Cir. 1978) ...................12

*Osborne v. Lyles*, 63 Ohio St. 3d 326 (1992) .................................................................14

*Peterson v. Buckeye Steel Casings*, 133 Ohio App. 3d 715 (1999) ...............................21, 22

*Prewitt v. Alexson Servs., Inc.*,
    No. CA2007-09-218, 2008 WL 3893575 (Ohio Ct. App. Aug. 25, 2008) ...........................23

*Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392 (8th Dist. 2015) .................20

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983)..............................................................6

*Scholler v. Scholler*, 10 Ohio St. 3d 98 (1984) ..............................................................19

*Smith v. Johnston*, 173 F.3d 430 (6th Cir. 1999) ............................................................................4

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999)......................................................................5

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) .........................................................................6

*Stathos v. Bowden*, 728 F.2d 15 (1st Cir. 1984) .............................................................................12

*Stephens v. A-Able Rents Co.*, 101 Ohio App. 3d 20 (1995) ..........................................................21

*Trautz v. Weisman*, 819 F. Supp. 282 (S.D.N.Y. 1993) ..................................................................9

*Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015) .............................................................................9

*United Bhd. of Carpenters v. Scott*, 463 U.S. 825 (1983) .............................................................10

*United States v. Windsor*, 570 U.S. 744 (2013) .............................................................................11

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ................................................................................. 9, 12

**Statutes**

18 U.S.C. § 1961 .................................................................................................................................6

42 U.S.C. § 1983................................................................................................................... 5, 6, 17

42 U.S.C. § 1985 .......................................................................................................................passim

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................................21

## Introduction

This case involves a law firm that agreed to help government officials retaliate against residents exercising their First Amendment right to ask questions about, object to, and inform their neighbors of how the City was managing local affairs. When those citizens filed a lawsuit to claw back secret payments to a City employee, the retaliation was immediate, egregious, and caught on video. With no room to dispute the facts, Defendant Walter Haverfield LLP moves to dismiss all the claims against it based on a vicarious-immunity theory the Sixth Circuit rejects; an expansion of the intracorporate-conspiracy doctrine to protect conspiracies involving employees of at least four entities; and a nonexistent rule absolving employers from negligent-retention liability until they know that their employees have *repeatedly* endangered the life or liberty of their neighbors. These positions are creative, but they are not the law. Because none of the firm's defenses are supported by law that actually exists, the Court should deny its motion to dismiss.

## Issues Presented

1. The Sixth Circuit rejects vicarious immunity in claims under 42 U.S.C. § 1985(3). The Complaint alleges facts that would deprive Defendants Lane and O'Shea from claiming immunity, including their lack of statutory authority to act as prosecutors and objective bad faith. Should the Court ignore those facts and grant Defendant Walter Haverfield LLP vicarious immunity?

2. The Sixth Circuit says classifications based on support for or opposition to government policies are the most invidious of the kinds of classification a plaintiff must allege under 42 U.S.C. § 1985(3). The Complaint alleges Defendants conspired against Mr. and Mrs. Hinners because they challenged a government policy. Does the Complaint adequately plead membership in a protected classification?

3. The Sixth Circuit recognizes several exceptions to the intracorporate-conspiracy doctrine. The Complaint alleges a conspiracy involving people from at least four different organizations and facts placing the conspiracy into several of the Sixth Circuit's exceptions. Should the Court nevertheless impose the intracorporate-conspiracy doctrine?

4. Attorneys are immune from liability to third parties for representing their clients, unless they or the client act maliciously. The Complaint alleges Defendant Walter Haverfield LLP and its clients acted maliciously. Should the Court grant them immunity?

5. Employers are liable for the incompetence of an employee when they have actual or constructive notice of that incompetence. The Complaint includes an exhibit putting Walter Haverfield LLP on notice that its employee was involved in a malicious prosecution. Should the Court dismiss the negligent-retention claim for lack of notice?

### FACTUAL BACKGROUND

This opposition relies on and incorporates the facts detailed and cited in the First Amended Complaint. In short, they allege that Plaintiffs Jason and Stacy Hinners have a history of serving the City of Huron as fiscal watchdogs and a source of news on civic affairs.[1] After they discovered—and revealed to their neighbors—that City Council was making secret payments to the city manager, City officials began collaborating to retaliate against them.[2] Soon after, Mr. and Mrs. Hinners filed a lawsuit to reverse the secret payments and recover the misappropriated funds for the City.[3] Within 24 hours, several high-ranking City officials—including Defendant Aimee Lane, a partner at Walter Haverfield LLP and the City's contracted law director—approved and executed a plan to criminally charge Mrs. Hinners at a City Council meeting, based on her First Amendment–protected speech to the people gathered there.[4]

Under the mistaken impression that she held prosecutorial authority for the City,[5] counsel for Mrs. Hinners contacted Defendant Lane at Walter Haverfield LLP the day after the arrest, asking her to dismiss the charges and spare everyone involved the cost and expense of litigating an obvious case of First Amendment retaliation.[6] During that call, she and two of the firm's partners—looped in to monitor the firm's exposure as a result of Lane's actions—raised questions as to whether she had the authority to dismiss the charges and suggested they may need to instead consult with Defendant Hartung (then the mayor), Defendant White (then the city manager), or Michael Kaufman, the city's prosecutor.

---

[1] First Am. Compl., ¶¶ 26–37.

[2] First Am. Compl., ¶¶ 38–49.

[3] First Am. Compl., ¶¶ 50–54.

[4] First Am. Compl., ¶¶ 55–106.

[5] Before the Hinners prosecution, Defendant Lane had never exercised or purported to hold any prosecutorial authority. *See* First Am. Compl. ¶ 164.

[6] First Am. Compl., Ex. D-20.

Lane concluded that she had a conflict of interest preventing her from handling the case and said she was recusing herself from involvement., but she never asked the court to appoint a special prosecutor; instead she contracted with Defendant O'Shea to handle the case while she supervised his progress.[7] When City Council learned of Lane and O'Shea's mishandling of the case, Lane intervened to thwart a resolution that would have terminated the prosecution, warning Council members that doing so could be a crime.[8] O'Shea continued to prosecute the case, and Lane watched as he bungled the case and ignored its obvious constitutional defects. She never intervened to stop him. Meanwhile, Lane's partners at Walter Haverfield LLP did the same, monitoring her mismanagement of the case while refusing to intervene to stop her violations of Mrs. Hinners's rights at any point before the case ended in October 2019.

Mrs. Hinners now brings this action against a slate of current and former City officials, Defendant O'Shea, and Walter Haverfield LLP for their participation in the plan to interfere with her civil rights.

## LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) , the Court must "construe the complaint in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor."[9] The Court must deny a motion if the Complaint, so construed, allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] A defendant "bears a much heavier burden at the pleading stage to show that he is entitled to judgment as a matter of law."[11]

---

[7] First Am. Compl., ¶¶ 120–41.

[8] First Am. Compl., ¶¶ 182–87.

[9] *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

[10] *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (cleaned up, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[11] *Hickman v. Laskodi*, 45 F. App'x 451, 456 (6th Cir. 2002) (affirming denial of judgment on the pleadings).

**LAW & ARGUMENT**

I.    **Because the Sixth Circuit rejects vicarious immunity and there is no one from whom it can borrow immunity, Walter Haverfield LLP is not immune to liability.**

Walter Haverfield LLP's main argument for dismissal is that the Court must dismiss the claims against it because two of the 11 other defendants in this case are supposedly immune from suit. It presents a simple formula—immunity for Party A equals dismissal for Party B—but offers no explanation for how one immunity leads to another. Can a party with immunity share it with co-defendants like a contagious disease? Is immunity somehow a defense on the merits in this case? Walter Haverfield LLP doesn't say, so neither can anyone else, and the Court should therefore deem this argument waived and entertain no new argument on reply.[12]

In any event, the argument is wrong, as neither of the other two defendants is immune, and even if they were, Walter Haverfield LLP cannot hide behind another party's immunity.

A.    **Because one conspirator's immunity does not absolve co-conspirators of liability, the claims against Walter Haverfield LLP survive any other parties' assertion of immunity.**

Although Walter Haverfield LLP failed to disclose any of the Supreme Court or Sixth Circuit's binding authority on this point to the Court, it has been the U.S. Supreme Court's rule for four decades that one participant in a conspiracy cannot evade liability merely because another participant is immune.[13] In *Dennis v. Sparks*, an oil developer brought a claim for civil conspiracy under 42 U.S.C. § 1983, alleging a judge, a rancher, and two sureties participated in a conspiracy to enjoin the oil developer's drilling in retaliation for damage to the rancher's land. After dismissing the judge based on absolute immunity, the trial court dismissed the private defendants, saying that without the judge, the complaint no longer stated a claim upon which relief could be granted. The Fifth Circuit

---

[12] *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[I]ssues [are] waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.").

[13] *Dennis v. Sparks*, 449 U.S. 24, 24 (1980). *See also Smith v. Johnston*, 173 F.3d 430 (6th Cir. 1999) ("'[P]rivate citizens may be subject to § 1983 liability even if the state actor with whom they conspired is immune. … [T]he remaining defendants are potentially subject to § 1983 liability if such a conspiracy existed.").

affirmed, but the U.S. Supreme Court reversed, holding that although the *judge*'s dismissal was proper, "[i]t does not follow … that the action against the private parties accused of conspiring with the judge must also be dismissed."[14] The Court noted that the judge's immunity had no bearing on whether the private parties had engaged in a conspiracy: "[I]t is of no consequence in this respect that the judge himself is immune from damages liability. Immunity does not change the character of the judge's action or that of his co–conspirators."[15]

Here, Mr. and Mrs. Hinners allege Walter Haverfield LLP conspired with its co-defendants to retaliate against Mr. and Mrs. Hinners by criminally prosecuting one of them for turning around at a City Council meeting. The only difference between *Dennis* and this case is the affirmative defense asserted—absolute prosecutorial, rather than judicial, immunity—but that difference doesn't lead to a different outcome here. Indeed, the Sixth Circuit holds that *Dennis* applies with equal force to conspiracies between prosecutors and private parties to arrest a plaintiff without probable cause in retaliation for exercising her First Amendment rights.[16] As the Supreme Court explains: "[T]he potential harm to the public from denying immunity to private co–conspirators is outweighed by the benefits of providing a remedy against those private persons who participate in subverting the judicial process and in so doing inflict injury on other persons."[17]

Because immunity does not spread from one defendant to the next, the Court should find that Walter Haverfield LLP is not immune from liability for its participation in the conspiracy.

---

[14] *Dennis*, 449 U.S. at 27.

[15] *Dennis*, 449 U.S. at 28.

[16] *Macko v. Byron*, 760 F.2d 95, 96 (6th Cir. 1985) ("[T]he dismissal of the prosecutors because they were immune did not mandate dismissal of the other defendants who allegedly conspired with the prosecutors."). *See also Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) ("Satterfield also argues derivative or vicarious absolute immunity of sorts, claiming that, because Apple was absolutely immune for testimony provided at trial, Satterfield would also be immune. We reject this argument."); *Alioto v. City of Shively, Ky.*, 835 F.2d 1173, 1174 (6th Cir. 1987) ("[A]bsolute witness immunity … shields from liability only those defendants who gave testimony in a judicial proceeding.").

[17] *Dennis*, 449 U.S. at 31–32.

**B.      Because neither Lane nor O'Shea is entitled to immunity, Walter Haverfield LLP is not immune to suit.**

In an action for damages under 42 U.S.C. § 1983, a prosecutor is entitled to absolute immunity only when he acts "within the scope of his duties in initiating and pursuing a criminal prosecution."[18] That immunity is narrowly defined. It is not available, for instance, for constitutional violations arising from conduct that is not "intimately associated with the judicial phase of the criminal process,"[19] such as acting as an administrator or investigating a crime,[20] advising police as they investigate a crime,[21] swearing to the facts supporting a warrant,[22] discussing a case with the media,[23] filing a civil suit,[24] or covering up a crime.[25]

Here, the Complaint alleges facts that preclude either Defendant Lane or Defendant O'Shea from claiming immunity. Specifically, it alleges that Defendant Lane was not, in fact, a prosecutor, and that the actions giving rise to her liability were not intimately associated with the judicial phase of the criminal process. Similarly, the Complaint alleges that Defendant O'Shea was not properly appointed as a prosecutor and that his liability arises in part from actions he took were not intimately associated with the judicial phase of the criminal process. Walter Haverfield LLP objects that it is entitled to dismissal anyway because a Complaint is insufficient if it consists only of "unsupported legal conclusions,"[26] but it ignores the Complaint's numerous *factual* allegations underpinning those

---

[18] *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976) (emphasis added).

[19] *Burns*, 500 U.S. at 480.

[20] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[21] *Burns*, 500 U.S. at 480.

[22] *Kalina v. Fletcher*, 522 U.S. 118, 122–23 (1997).

[23] *Buckley*, 509 U.S. at 277 ("[c]omments to the media have no functional tie to the judicial process just because they are made by a prosecutor.").

[24] *Stapley v. Pestalozzi*, 733 F.3d 804, 811 (9th Cir. 2013) ("Because the RICO suit was civil, *see* 18 U.S.C. § 1961, *et seq.*, it was not 'intimately associated with the judicial phase of the *criminal* process.'") (citing *Imbler*).

[25] *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983) (conferring absolute immunity "would make a mockery of the judicial system").

[26] Mot. to Dism. of Walter Haverfield LLP, at 8 (ECF #46).

conclusions, as to both Lane and O'Shea.[27] It doesn't dispute any of those allegations, and it waived, by its failure to raise them in its motion, any argument that those factual allegations should lead to a different legal conclusion. Instead, it argues that because prosecutors are immune when approving an application for an arrest warrant,[28] Lane must also be immune for approving a *warrantless* arrest.[29] But that distinction goes to the heart of the test for prosecutorial immunity: asking a *judge* to make a finding of probable cause is of course associated with the *judicial* phase of the criminal process, but making that finding yourself has no more connection to the judicial phase when a law director does it than when a police officer does the same thing. The officer does not enjoy absolute immunity, and neither does Lane.[30]

Nor is either Lane or O'Shea entitled to qualified immunity. To induce the public to speak up, just as Mrs. Hinners did on May 14, 2019, courts interpret the First Amendment broadly—endorsing complaints about the government even when they are offensive, rude, false, annoying, or disrespectful. Given the expansive, clearly established protections for such speech and the positively subdued character of Mrs. Hinners's remarks at that meeting as alleged in the First Amended Complaint, it should not be surprising that neither Defendant Lane nor Defendant O'Shea has responded to it with an assertion of qualified immunity. If they have waived that argument, Walter Haverfield LLP cannot make it on their behalf.[31]

Because a law firm cannot impute its employees' immunity to itself, and because neither Lane nor O'Shea is entitled to immunity, the Court should deny the motion to dismiss.

---

[27] *See, e.g.*, First Am. Compl., ¶¶ 156–66; 155–81.

[28] *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir.1997).

[29] Mot. to Dism. of Walter Haverfield LLP, at 7.

[30] *Malley v. Briggs*, 475 U.S. 335, 343 (1986) ("In the case of the officer applying for a warrant, it is our judgment that the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity.").

[31] Mr. and Mrs. Hinners incorporate the immunity arguments from their oppositions to Lane's motion for judgment on the pleadings and to any Rule 12 motion O'Shea may file.

II.  **The Complaint adequately pleads a claim for conspiracy to violate civil rights under 42 U.S.C. § 1985(3) (Claim 23).**

   A.  **Because they are members of a clearly defined class of people critical of the City's policies, Mr. and Mrs. Hinners are protected against conspiracies against civil rights under 42 U.S.C. § 1985(3).**

The Supreme Court held in *Griffin v. Breckenridge*[32] that a conspiracy claim under 42 U.S.C. § 1985(3) must allege the existence of some "class-based, invidiously discriminatory animus behind the conspirators' action."[33] While the complaint in *Griffin* alleged a conspiracy based on the prototypical, i.e., race-based, animus, courts have relied on *Griffin*'s broad conception of § 1985(3)'s equal-protection safeguards—outlawing any conspiracy aimed "at a deprivation of the equal enjoyment of rights secured by the law to all"[34]—to expand the statute's protection to all manner of classes within the ambit of normal American anti-discrimination law, including victims of conspiracies on the basis of "race, ethnicity, religion, and/or national origin,"[35] sex,[36] gender,[37] disability,[38] "political beliefs or associations,"[39] and whistleblowing activity.[40]

The Sixth Circuit has been particularly expansive. Relying on the Supreme Court's focus on protecting "rights secured by the law to all," it has permitted § 1985(3) claims even for a class defined as a "white middle class family."[41] Given that low bar, it should not be surprising that it gives at least as much protection to classes of people engaged in First Amendment–protected activity. As it held in *Cameron v. Brock*, the law covers conspiracies against members of any "clearly

---

[32] 403 U.S. 88, 102 (1971).

[33] *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

[34] *Griffin*, 403 U.S. at 102.

[35] *Turkmen v. Hasty*, 789 F.3d 218, 252 (2d Cir. 2015).

[36] *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir. 1989).

[37] *Bedford v. Se. Pennsylvania Transp. Auth.*, 867 F. Supp. 288, 294 (E.D. Pa. 1994).

[38] *Trautz v. Weisman*, 819 F. Supp. 282, 295 (S.D.N.Y. 1993).

[39] *McLean v. Int'l Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir. 1987).

[40] *Lapin v. Taylor*, 475 F. Supp. 446, 450 (D. Haw. 1979) ("[W]histle blowers as defined herein are a 'class' within the meaning of s 1985(3).").

[41] *Azar v. Conley*, 456 F.2d 1382, 1384 (6th Cir. 1972).

defined classes": "If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)."[42]

In *Cameron*, the plaintiff sued Sheriff Brock, his bonding company, and two deputies, alleging that they arrested him without probable cause because he was distributing pamphlets accusing the sheriff of misconduct. After the jury returned a plaintiff's verdict finding the sheriff "conspired to deprive the appellee … of the protection of the First Amendment," the sheriff appealed, arguing that the plaintiff was not a member of a class protected under § 1985(3). But the Sixth Circuit affirmed, holding that the elements were satisfied where "the purpose of the deprivation was to halt or discourage anti-Brock activity."[43]

The Court has not shied away from that position in the years following. In *Conklin v. Lovely*,[44] a plaintiff brought a § 1985(3) claim against several county officials, alleging they conspired to have her fired in retaliation for First Amendment–protected opposition to the county prosecutor. Like Walter Haverfield LLP in this case, the defendants in *Conklin* relied on *United Brotherhood of Carpenters v. Scott*[45] to argue that the plaintiff's First Amendment activities were insufficient as a matter of law to place her in a class protected under § 1985(3), but the district court denied their Rule 56 motion. The Sixth Circuit affirmed, holding that summary judgment was inappropriate where "a reasonable jury could have found a conspiracy existed to deprive plaintiff and those in a similar position … of their First Amendment rights."[46] It acknowledged the tension with *Carpenters* but resolved it in favor of free-speech rights:

> Admittedly, *Carpenters* raises doubts about the legitimacy of plaintiff's claims, but *Carpenters* does not reject plaintiff's claims either on its facts or in its holding. … This circuit has, however, expressly accepted plaintiff's interpretation of section 1985(3).

---

[42] 473 F.2d 608, 610 (6th Cir. 1973).

[43] *Cameron*, 473 F.2d at 610.

[44] 834 F.2d 543 (6th Cir. 1987).

[45] 463 U.S. 825 (1983) (denying § 1985(3) claim based on economic or commercial animus).

[46] *Conklin*, 834 F.2d at 549

In *Cameron*, 473 F.2d 608, we held that, '§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate.' …. Therefore, *Cameron* is controlling in the present case.[47]

And in *Glasson v. City of Louisville*,[48] police stole and destroyed a protestor's sign—"Lead us to hate and kill poverty, disease and ignorance, not each other."—because they determined it was "detrimental" to President Nixon, whose motorcade was approaching. The trial court dismissed the protestor's § 1985(3) claim, saying there was "no evidence that their action was motivated by a class-based invidious discriminatory animus."[49] The Sixth Circuit reversed, holding that a plaintiff can recover on proof of the defendants' intent to infringe the plaintiff's First Amendment rights: "A more invidious classification than that between persons who support government officials and their policies and those who are critical of them is difficult to imagine. Appellees drew a line that was not merely invidious but one that also struck at the very heart of the protection afforded all persons by the First and Fourteenth Amendments."[50]

Like in *Glasson*, the Complaint here alleges Mr. and Mrs. Hinners spoke out about their opposition to government policies.[51] Like in *Glasson*, the Complaint alleges Defendants acted in concert to undermine Mr. and Mrs. Hinners's First Amendment rights.[52] And like in *Glasson*, the Complaint alleges that conspiracy was the result of Mr. and Mrs. Hinners standing on the wrong side of the clearly defined line between "persons who support government officials and their policies and those who are critical of them."[53]

---

[47] *Conklin*, 834 F.2d at 549.

[48] 518 F.2d 899 (6th Cir. 1975), *overruled by Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228 (6th Cir. 2015).

[49] *Glasson*, 518 F.2d at 903 (cleaned up).

[50] *Glasson*, 518 F.2d at 912.

[51] First Am. Compl., ¶¶ 29, 35–36, 39, 52–54, 63.

[52] *See, e.g.*, First Am. Compl., ¶ 266.

[53] First Am. Compl., ¶¶ 433–34. They also allege that they were targeted based on their classification as a family unit, as in *Azar*. *Id.*

Walter Haverfield LLP acknowledges *Glasson* but makes no effort to distinguish it.[54] Instead, it relies on a curious string of cases and dubious assertions of their holdings to suggest that the Sixth Circuit limits § 1985(3) cases of race, national-origin, and gender discrimination. For instance, it argues this case must fail because courts reject classes "based on sexual orientation." Of course, this isn't a sexual-orientation case, and the only case Walter Haverfield LLP cites to support this proposition, *United States v. Windsor*, somewhat famously reached exactly the opposite conclusion.[55]

Whatever tenuous distinction Walter Haverfield LLP thinks it has identified, the fact remains that just like in *Cameron*, *Conklin*, and *Glasson*, Mr. and Mrs. Hinners allege they were conspired against because they belong to a clearly defined class of people opposing the government conspirators' policies. "Therefore, *Cameron* is controlling in the present case,"[56] and the Court should find that the Complaint adequately states a claim under § 1985(3).

### B. Because this case falls outside its scope and within its exceptions, the intracorporate-conspiracy doctrine does not bar Plaintiffs' conspiracy claim.

Although federal courts apply the intracorporate-conspiracy doctrine to antitrust claims, the Supreme Court "has not given its approval to this doctrine in the specific context of § 1985(3)."[57] Nor should it—or this Court—extend that doctrine into the realm of civil-rights conspiracies, where its application would be contrary to the text, purpose, and legislative intent of the Civil Rights Act, and where its rationale runs counter to the principles underpinning a century's worth of developments in civil-rights case law. For instance, the Supreme Court's decision in *Monell* precludes

---

[54] Mot. to Dism. of Walter Haverfield LLP, at 11.

[55] *United States v. Windsor*, 570 U.S. 744, 775 (2013) ("By seeking to displace this protection and treating [same-sex couples] as living in marriages less respected than others, the federal statute is in violation of the Fifth Amendment."). Walter Haverfield LLP similarly misstates the law surrounding discrimination against those with mental disabilities. It argues they are not a class protected under § 1985(3), citing *Haverstick Ent., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994). But *Haverstick* doesn't actually have any such holding; instead, it held that the plaintiff failed to produce evidence establishing that his disability motivated the defendants.

[56] *Conklin*, 834 F.2d at 549.

[57] *Ziglar*, 137 S. Ct. at 1868.

courts from imposing *respondeat superior* liability on municipalities, but *respondeat superior* liability is the entire basis for the intracorporate-conspiracy doctrine: "When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal."[58] But even assuming the the intracorporate-conspiracy doctrine applies here, it would not bar to the Complaint's conspiracy claims.

> 1. **Because the Complaint alleges the participation of multiple parties with multiple employers, Claim 23 survives the intracorporate-conspiracy doctrine.**

Under current Sixth Circuit precedent, "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment."[59] But the conspiracy alleged in this case involves employees of numerous entities.[60] Defendants Hartung, Ginesi, Schaffter, Hardy, White, Lippert, Orzech, and Koehler were all employed by the City of Huron. Defendant Lane was employed by Walter Haverfield LLP. Defendant O'Shea was employed by Lipson O'Shea Legal Group. The Complaint also describes how Defendants sought help from Father Jeff McBeth, an employee of the Roman Catholic Church, as well as Wayne Nicol, an employee of the City of Vermilion.

Although it invokes the intracorporate-conspiracy doctrine, Walter Haverfield LLP does not argue that it and its co-conspirators actually satisfy the test, i.e., that they are all "members of the same collective entity." It argues that the City and its officials are part of a single corporate entity. It argues that Lane and O'Shea are part of a single corporate entity. But it never argues that it is itself a member of either of those entities. With no explanation how Walter Haverfield LLP can be

---

[58] *Ziglar*, 137 S. Ct. at 1867. The inapplicability of the intracorporate-conspiracy doctrine to the claims here receives fuller treatment in decisions rejecting it from the First and Third Circuits. *See Stathos v. Bowden*, 728 F.2d 15, 20–21 (1st Cir. 1984); *Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1256–59 (3d Cir. 1978), *vacated,* 442 U.S. 366 (1979).

[59] *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999), *abrogated by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

[60] First Am. Compl., ¶¶ 10–19, 43–47, 126.

considered the same entity as the City of Huron and the Lipson O'Shea Legal Group, there is no basis for the Court to stretch the intracorporate-conspiracy doctrine from the City's employees to the City itself, then to its outside lawyer, then to that lawyer's firm, then to that firm's subcontractors, and finally to the subcontractors' employees. Even if it could, it would be beyond comprehension for Walter Haverfield LLP to suggest that the Court could then go so far as to treat it as also being the same entity as the Roman Catholic Church.

Because the Complaint alleges the participation of numerous defendants and non-parties, representing no fewer than five entities, the intracorporate-conspiracy doctrine has no bearing on this case.

### 2.  Because the Complaint alleges Defendants weren't in the scope of City employment, the intracorporate-conspiracy doctrine doesn't apply.

In *Johnson v. Hills & Dales Gen. Hosp.*,[61] the Sixth Circuit recognized an exception to the intracorporate-conspiracy doctrine for cases "when employees act outside the course of their employment."[62] "[W]hether an employee is acting within the scope of his employment is a question of fact to be decided by the jury."[63] Here, the Complaint alleges facts from which a reasonable jury could conclude that Defendants were acting outside the scope of their City employment. Among other facts, it alleges Lane seized control of the Hinners prosecution—removing the duly appointed prosecutor, hiring another private attorney to prosecute the case, and approving that attorney's misguided efforts to secure a conviction based on First Amendment–protected activity—despite having no authority to do so.[64] The Complaint makes similar allegations about O'Shea and his lack of authority to act on behalf of the City.[65]

---

[61] 40 F.3d 837, 841 (6th Cir. 1994).

[62] *Johnson*, 40 F.3d at 841.

[63] *Osborne v. Lyles*, 63 Ohio St. 3d 326, 330 (1992).

[64] First Am. Compl., ¶¶ 122, 128, 161.

[65] *See, e.g.*, First Am. Compl., ¶¶ 155–80.

Beyond those explicit allegations, the Complaint details other actions Defendants took that a jury could conclude were outside the scope of their City employment, including Ginesi's contact with Father McBeth[66] and Defendants' submission of false witness statements to Defendant O'Shea,[67] neither of which Walter Haverfield LLP suggests fall within the scope of their employment. Because Defendants' conduct arises in part from actions taken outside the scope of their employment, the intracorporate-conspiracy doctrine is inapplicable.

> **3.     Because the Complaint alleges Lane engaged O'Shea for the purpose of violating Mrs. Hinners's rights, Claim 23 survives the intracorporate-conspiracy doctrine.**

The Sixth Circuit also recognizes an exception to the intracorporate-conspiracy doctrine in cases involving members of "[a] corporation formed for the purpose of depriving citizens of their civil rights."[68] Even if the Court accepts Walter Haverfield LLP's dubious argument that Lane and O'Shea became "the same corporate entity"[69]—which it shouldn't—the Complaint alleges that entity was formed for the purpose of depriving Mrs. Hinners of her First Amendment rights.[70] It alleges the City hired Defendant O'Shea to prosecute her "because she exercised her First Amendment rights to criticize City Council's secret payments and to petition the government for redress of that grievance."[71] It alleges Defendants were "committing numerous other criminal offenses in the process of prosecuting her."[72] It alleges Defendant O'Shea knew he was hired for the purpose of "facilitating a selective prosecution.[73] Because the Complaint alleges the City, Walter

---

[66] First Am. Compl., ¶¶ 43–47.
[67] First Am. Compl., ¶¶ 211–13.
[68] *Johnson*, 40 F.3d at 840.
[69] Mot. to Dism. of Walter Haverfield LLP, at 13.
[70] First Am. Compl., ¶ 20.
[71] First Am. Compl., ¶ 116.
[72] First Am. Compl., ¶ 150.
[73] First Am. Compl., ¶ 215.

Haverfield LLP, and Defendant O'Shea joined for the purpose of retaliating, the intracorporate-conspiracy doctrine does not apply.

> **4.** **Because the Complaint alleges Defendants had a personal stake in their unconstitutional acts, Claim 23 survives the intracorporate-conspiracy doctrine.**

The intracorporate-conspiracy doctrine does not apply when the individual defendants "have an 'independent personal stake' in the corporate action."[74] Here, the Complaint alleges that multiple individual participants in the conspiracy had independent personal stakes in the allegedly corporate action, i.e., the Hinners prosecution. It alleges that Defendant Lane interfered with the prosecution "to limit the civil liability to which she and other city officials were exposed."[75] It alleges Lane—and by extension, Walter Haverfield LLP—were focused on managing their "exposure to civil and criminal liability as a result of Mrs. Hinners's arrest."[76] It alleges Defendant O'Shea had personal financial problems[77] and was motivated by a desire to collect hourly rates.[78] It alleges O'Shea demanded that Mrs. Hinners stipulate to probable cause for her charges "solely to protect Lane, her law firm, and other City officials from liability."[79] Because the Complaint alleges Defendants had independent personal stakes in the subject of the conspiracy, the intracorporate-conspiracy doctrine does not apply.

> **5.** **Because the Complaint alleges Defendants engaged in a series of discriminatory acts, intracorporate-conspiracy doctrine doesn't apply.**

Nor does the intracorporate-conspiracy doctrine apply when the individual defendants "engage in a series of discriminatory acts as opposed to a single action."[80] Here, the Complaint

---

[74] *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 770 (11th Cir. 2000).
[75] First Am. Compl., ¶ 3.
[76] First Am. Compl., ¶ 120.
[77] First Am. Compl., ¶ 130.
[78] First Am. Compl., ¶ 253.
[79] First Am. Compl., ¶ 196.
[80] *Dickerson*, 200 F.3d at 770.

alleges that Defendants engaged in a long string of retaliatory actions, going back at least to Ginesi's contact with Father McBeth in April 2019, and running at least through threatening obstruction-of-justice charges in retaliation for petitioning the government to end her prosecution in January 2020.[81] Because the Complaint alleges Defendants engaged in a series of discriminatory acts, the intracorporate-conspiracy doctrine does not apply.

### C.  Constraints on *respondeat superior* liability for municipal corporations in § 1983 claims do not immunize private firms from liability on a § 1985(3) claim.

Although the Supreme Court rejects *respondeat superior* liability for municipal corporations in § 1983 actions, it has never extended this principle to all defendants in all actions under the Civil Rights Act. Even in the cases where it does limit vicarious liability, it still permits claims against a tortfeasor's employer where the violation resulted from the employer's failure to train or supervise.[82]

Walter Haverfield LLP is not a municipal corporation, so it cannot claim the protection afforded cities and counties under *Monell*. Even if it could, the Complaint nonetheless alleges that the harm Mr. and Mrs. Hinners suffered was the result of the firm's failure to train and supervise Lane and O'Shea.[83] But more importantly, the complaint alleges liability attributable directly to Walter Haverfield LLP itself, which became a member of the conspiracy in its own right by tasking one of its employees to assist the City in prosecuting Mrs. Hinners. Because neither the requirement of class-based discrimination, nor the intracorporate-conspiracy doctrine, nor *Monell*'s limitations on *respondeat superior* liability are a bar to recovery against Walter Haverfield LLP, the Court should deny its motion to dismiss Claim 23.

---

[81] First Am. Compl., ¶ 266.
[82] *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019)..
[83] First Am. Compl., ¶¶ 469–86.

**III.    The Complaint adequately pleads a claim for civil conspiracy under Ohio law.**

A claim for civil conspiracy under Ohio law has four elements:

1. a malicious combination;

2. of two or more persons;

3. injury to person or property; and

4. existence of an unlawful act independent from the actual conspiracy.[84]

The Complaint alleges all the elements:

1. a combination with a purpose "to commit acts that are unlawful";[85]

2. of all Defendants—including Walter Haverfield LLP itself—as well as other non-parties to the case;[86]

3. resulting in economic and non-economic injuries to Mr. and Mrs. Hinners;[87] and

4. numerous individual unlawful acts in furtherance of the conspiracy, including "the interference with the constitutional and statutory rights of Mr. and Mrs. Hinners."[88]

Walter Haverfield LLP doesn't dispute that it has itself participated in the conspiracy, nor does it dispute that it is vicariously liable for its partners' participation in a state-law conspiracy. Instead, it argues it cannot be held liable because its agent, Defendant Lane, cannot be held liable—saying that she is absolutely immune; that she cannot, as a matter of law, conspire with her own clients; and that Ohio's privity rule bars this claim. But Lane is not immune, as discussed above and in the opposition to Lane's motion for judgment on the pleadings. And Walter Haverfield LLP's argument that it is legally impossible for an attorney to enter into a conspiracy with her client fares no better; its cases make clear that this objection is just another gloss on the intracorporate-conspiracy doctrine, which the Court should reject for the reasons addressed above.

As a fallback, Walter Haverfield LLP relies on Ohio's privity-rule: "An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of,

---

[84] *Mangelluzzi v. Morley*, 40 N.E.3d 588, 601 (Ohio Ct. App. 2015).

[85] First Am. Compl., ¶ 465.

[86] First Am. Compl., ¶ 464.

[87] First Am. Compl., ¶ 467.

[88] First Am. Compl., ¶ 466.

and with the knowledge of his client."[89] But, as the firm acknowledges, this rule does not apply when "such third person is in privity with the client or the attorney acts maliciously."[90] "Malice in this context includes actions by the attorney demonstrating an ulterior motive, separate and apart from the good-faith representation of the client's interests, or conduct that implies '[a] condition of mind which prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another without justification or excuse.'"[91] On a motion to dismiss, "one reference to malicious conduct" is sufficient to preserve a claim.[92]

Although Walter Haverfield LLP states the rule and exception correctly, neither applies here. Mr. and Mrs. Hinners are not raising malpractice claims against Lane or Walter Haverfield LLP; nor is the gist of their Complaint that those defendants merely engaged in professional misconduct. Instead, Mr. and Mrs. Hinners allege that Lane and Walter Haverfield LLP joined a conspiracy to facilitate First Amendment retaliation and malicious prosecution against them. Even assuming for purposes this motion that Ohio's privity rule for malpractice actions applies in a civil-conspiracy case alleging interference with civil rights, it does not bar this claim. The allegation that Lane acted maliciously is at the heart of the Complaint, which repeatedly emphasizes Lane's purpose to retaliate against Mrs. Hinners for engaging in protected speech.[93]

Ohio courts also recognize an exception to the privity rule in cases where a lawyer proceeds with a representation despite a conflict of interest.[94] Here, the Complaint alleges that Lane colluded with other parties to interfere with the Hinners prosecution despite a conflict of interest.[95]

---

[89] *Scholler v. Scholler*, 10 Ohio St. 3d 98, 98 (1984).

[90] *Scholler*, 10 Ohio St. 3d at 103.

[91] *Givens v. Wenker*, No. 1:10-CV-382, 2012 WL 1680099, at *8 (S.D. Ohio May 14, 2012).

[92] *Givens*, 2012 WL 1680099, at *8.

[93] *See, e.g.*, First Am. Compl., ¶¶ 2, 4, 173, 432–33.

[94] *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St. 3d 323, 329–30 (2007) (where complaint alleged "conflicts of interest and collusion," it "state[d] a valid claim under *Simon*'s malice exception").

[95] First Am. Compl., ¶ 3.

Because the Complaint alleges Lane undertook her representation maliciously and despite a conflict of interest, Ohio's privity rule for malpractice claims does not bar the state-law claim for civil conspiracy.

## IV.  The Complaint adequately pleads a claim for negligent hiring, retention, and supervision under Ohio law.

In Ohio, a claim for negligent hiring, retention, or supervision requires a plaintiff to plead:

1. the existence of an employment relationship;
2. the employee's incompetence;
3. the employer's actual or constructive knowledge of such incompetence;
4. the employee's act or omission causing the plaintiff's injuries; and
5. the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.[96]

In its motion to dismiss, Walter Haverfield LLP does not contest that it employed Lane and O'Shea, that they were incompetent, or that their incompetence injured Mr. and Mrs. Hinners. It only disputes the third element, saying the Complaint does not allege that Lane and O'Shea's misconduct was foreseeable.

"To establish foreseeability of the act or injury [pursuant to negligent supervision], plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur."[97] A plaintiff can establish notice in many ways, including allegations that a "red flag" should have prompted the employer to investigate the risks associated with hiring or retaining a worker,[98] or that someone directly told the employer that the employee was dangerous.[99]

---

[96] *Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392 (8th Dist. 2015).

[97] *Hau v. Gill*, No. 98CA007061, 1999 WL 492633, at *2 (Ohio Ct. App. July 14, 1999).

[98] *Stephens v. A-Able Rents Co.*, 101 Ohio App. 3d 20, 25 (1995) ("[T]his information should have been a 'red flag' to A-Able Rents. This conflict in information should have prompted a call to both prior job references.").

[99] *Peterson v. Buckeye Steel Casings*, 133 Ohio App. 3d 715, 729 (1999).

The complaint makes just these sorts of allegations, noting the long string of incidents demonstrating O'Shea's history of disregard for the law and his ethical obligations and alleging it "would suggest that he had every motive and inclination to disregard [Mrs. Hinners's] constitutional rights in return for personal, financial gain."[100] But Walter Haverfield LLP insists these allegations are insufficient, because they are "spurious" and because even if they are true, they are not enough to establish foreseeability.

But an allegation's spuriousness is irrelevant on a Rule 12 motion, where the Court must accept the Complaint's facts as true. And the question of whether these specific allegations are enough to establish foreseeability is a question of fact reserved for a jury, as discussed in Mr. and Mrs. Hinners's opposition to Lane's motion for judgment on the pleadings.[101] Walter Haverfield LLP's argument here mirrors the one rejected in *Peterson v. Buckeye Steel Casings*.[102] There, an employee brought a negligent-retention claim, alleging she complained about sexual harassment to her employer, who took no action to address her complaints. When the employer argued that the plaintiff had not actually reported harassment and that the harasser's denials were more credible than the plaintiff's allegations, the trial court terminated the case in the employer's favor. The appeals court reversed, noting that the defendant's arguments "ignore appellant's claim that she made numerous verbal complaints" and that disputing the credibility of the complaints merely created an issue of fact for a jury to decide.[103]

Even if the facts about O'Shea's record don't establish constructive notice, the Complaint indisputably alleges *actual* notice, as it details how Lane, a partner at Walter Haverfield LLP, kept

---

[100] First Am. Compl., ¶¶ 129–34.

[101] Oppo. to Lane. Mot. for J. on the Pldgs, 18–20. Mr. and Mrs. Hinners incorporate those arguments here.
[102] 133 Ohio App. 3d 715 (1999).

[103] *Peterson*, 133 Ohio App. 3d at 729. *See also Fry v. Wheatland Tube, LLC*, 135 N.E.3d 420, 439 (Ohio Ct. App. 2019) summary judgment on negligent-retention claim where plaintiff established she had reported employee's incompetence to employer).

herself intimately apprised of O'Shea's conduct in the Hinners prosecution.[104] The same is true with respect to Lane, as Exhibit D-20 to the Amended Complaint shows that other partners at her firm met with Mrs. Hinners's defense counsel to discuss the problem and received follow-up correspondence discussing the retaliatory nature of the prosecution, putting the firm on notice of Lane's tortious behavior.

Even assuming the firm could not be held liable for Lane's conduct before the partners met to discuss it, Walter Haverfield LLP offers no explanation why it should not answer for its decision to permit Lane to continue harassing Mrs. Hinners once it knew what was going on. Instead, it submits *Collins v. Flowers*[105] for the proposition that as a matter of law, "no constructive knowledge exists until an employee engages in the same or similar misconduct *on more than one occasion*."[106] In *Collins*, the plaintiff sued her employer, alleging it had failed to address a first incident of a sexual harassment, leading to a second incident. The trial court entered a judgment for the employer, based on evidence that it could not have foreseen any harassment until the first incident, after which it investigated and monitored the harasser, up until moments before the second incident. The appeals court affirmed the judgment for the employer, holding that proving notice requires evidence that "the employer could anticipate the misconduct."[107]

Walter Haverfield LLP suggests that this somehow requires, as a matter of law, "more than one occasion" of misconduct before an employer can be held liable for negligent retention. But *Collins* said nothing of the sort. It merely restated the standard rule requiring "that the employer knew or should have known of the employee's criminal or tortious propensities."[108] Even then, it

---

[104] First Am. Compl., ¶¶ 3, 141–42.

[105] No. 04CA008594, 2005 WL 1763615 (Ohio Ct. App. July 27, 2005).

[106] Mot. to Dism. of Walter Haverfield LLP, at 19 (emphasis added).

[107] *Collins*, 2005 WL 1763615, at *6.

[108] *Collins*, 2005 WL 1763615, at *6.

said nothing about requiring multiple instances; instead it found the employer in that case could have foreseen further misconduct "after the *first* incident."[109]

Under the law as it actually exists, then, Mr. and Mrs. Hinners can plead foreseeability by alleging facts that could allow a jury to find Walter Haverfield LLP had either constructive or actual notice of its employees' threats to their civil rights. Here, they have alleged that Walter Haverfield LLP had notice of that threat no later than May 15, 2019. Perhaps discovery will reveal it actually had notice sooner than that. Or perhaps a jury will conclude that the May 15 conversation was insufficient to establish foreseeability. In either case, this is a question that can only be resolved by the factfinder. Because the Complaint alleges facts allowing a jury to conclude that the injuries to Mr. and Mrs. Hinners were foreseeable, it states a claim for negligent hiring, retention, or supervision.

## CONCLUSION

When it realized an employee had sanctioned a conspiracy to maliciously prosecute a whistleblower, Walter Haverfield LLP did not correct the error but instead joined the conspiracy by licensing her to continue the retaliation in the hopes that she could push it far enough to ensure the firm's exposure never ripened into liability. Because the Complaint alleges the firm knew all along that its employee was participating in this civil conspiracy, and because that conspiracy involved dozens of individuals from at least four corporate entities, working in concert to deprive Mr. and Mrs. Hinners of their First and Fourteenth Amendment rights, it adequately states claims for civil conspiracy and negligent retention. The Court should deny the motion to dismiss.

---

[109] *Collins*, 2005 WL 1763615, at *6 (emphasis added). This is neither the first nor last of the holdings misrepresented in Walter Haverfield LLP's brief. Citing *Prewitt v. Alexson Servs., Inc.*, No. CA2007-09-218, 2008 WL 3893575 (Ohio Ct. App. Aug. 25, 2008), for example, the firm argues that the complaint must allege "overwhelming" circumstances before an employer can be held liable for negligent supervision. What it does not mention is that *Prewitt* —and the line of cases it relies on—limit that requirement to inquiries into the foreseeability of *criminal* conduct and do not apply here, where Mr. and Mrs. Hinners are alleging the tort of malicious prosecution. Additional misstatements are addressed throughout the brief.

July 31, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*
Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiff Stacy and Jason Hinners*