IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STACY HINNERS,** *et al.* <br> *Plaintiffs,* <br><br> v. <br><br> **MICHAEL J. O'SHEA,** *et al.* <br> *Defendants.* | Case No.: 1:19-cv-02868 <br><br> Judge Pamela A. Barker <br><br> Magistrate Judge David A. Ruiz |
| **PLAINTIFFS STACY AND JASON HINNERS'S OPPOSITION TO THE MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANTS CITY OF HURON,** *et al.* | |

Plaintiffs Stacy and Jason Hinners respectfully oppose the motion for judgment on the pleadings filed by Defendants City of Huron, Brad Hartung, Andrew White, Glen Ginesi, Rick Schaffter, Trey Hardy, Robert Lippert, John Orzech, and Kevin Koehler (ECF #55-1). The reasons for their opposition are explained in the attached memorandum.

TABLE OF CONTENTS

Table of Contents ................................................................................................................... ii

Table of Authorities ............................................................................................................. iv

Introduction .......................................................................................................................... 1

Issues Presented ................................................................................................................... 2

Factual Background .............................................................................................................. 3

Legal Standard ...................................................................................................................... 3

Law & Argument .................................................................................................................. 4

   I.  Because H.C.O. § 509.04 applies to vast amounts of protected speech and invites
      discriminary enforcement, it is facially invalid under the First Amendment. .......... 4

      A.  Because it has virtually unlimited applications to speech and has never been used
          for any other purpose, H.C.O. § 509.04 is unconstitutionally overbroad. ............... 4

      B.  Because it fails to inform ordinary people what conduct it outlaws and because it
          invites arbitrary and discriminatory enforcement, H.C.O. § 509.04 is void for
          vagueness. ................................................................................................................... 6

  II.  Because the City is using them to stop and punish constitutionally protected speech,
      H.C.O. §§ 509.04 and 525.07 are unconstitutional as applied to Mrs. Hinners. ........... 7

      A.  H.C.O. §§ 509.04 and 525.07 are unconstitutional as applied to Mrs. Hinners
          because the charges were brought in retaliation for exercising her First
          Amendment rights. ..................................................................................................... 7

      B.  H.C.O. § 525.07 is unconstitutional as applied to Mrs. Hinners because the
          charge was brought in retaliation for exercising her First Amendment rights. ...... 8

 III. Because the Complaint plausibly alleges the absence of probable cause, the Court
      cannot rely on probable cause to grant judgment on any claims. ............................... 10

      A.  Because the Sixth Circuit treats probable cause as a jury question, the Court may
          not dismiss any claims by concluding it existed as a matter of law. ..................... 10

      B.  Because the Complaint plausibly alleges the absence of probable cause, the Court
          may not dismiss any claims by concluding it existed as a matter of law. ............. 12

      C.  Because probable cause is irrelevant in retaliatory arrests for conduct that is not
          usually prosecuted, Supreme Court precedent forbids using probable cause to
          dismiss Claim 2. ...................................................................................................... 19

      D.  Because the Complaint plausibly alleges the absence of probable cause,
          Defendants are not entitled to qualified immunity. ............................................... 20

 IV. Because the Complaint plausibly alleges other defendants directed Orzech and
      Koehler to unlawfully seize her, the Court may not grant judgment on Claim 17. ..... 21

**V.   Because the Complaint plausibly alleges a conspiracy among independent entities against a protected class, the Court may not grant judgment on the conspiracy claims (Claims 19, 23, or 28)** ................................................................................. 21

**VI. Because Defendants' status as state actors is disputed and irrelevant on a false-imprisonment claim, the Court cannot rely on it to dismiss Claim 27** ....................... 22

**VII.    Because the Complaint plausibly alleges the City knew its lawyers were ignoring the First Amendment, the Court should not grant judgment on Claim 29.** ................ 24

**VIII.    Because the Complaint plausibly alleges Mr. and Mrs. Hinners were aggrieved by Defendants' destruction of public records, the Court should not grant judgment on Claim 31.** ............................................................................................. 25

**Conclusion** .......................................................................................................................... 26

TABLE OF AUTHORITIES

## Cases

*Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999)................................................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................4

*Beck v. State of Ohio*, 379 U.S. 89 (1964) .............................................................. 12, 13

*Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St. 3d 107 (1991)............................ 22, 23

*Bunkley v. City of Detroit, Michigan*, 902 F.3d 552 (6th Cir. 2018)................................20

*Cantwell v. State of Connecticut*, 310 U.S. 296 (1940) ...............................................7

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ................................................... 4, 6

*City of Parma v. Campbell*, 2001 WL 1352657 (Ohio Ct. App. Nov. 1, 2001) ........................16

*Cohen v. California*, 403 U.S. 15 (1971)..........................................................................7

*Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002).........................................................21

*Conrad v. Lengel*, 110 Ohio St. 532 (1924)...................................................................23

*Crockett v. Cumberland Coll.*, 316 F.3d 571 (6th Cir. 2003) ..........................................10

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807 (6th Cir. 2007)..............8

*D.D. v. Scheeler*, 645 F. App'x 418 (6th Cir. 2016)......................................................17

*Daniels v. Wilcoxen*, 2020 WL 3404864 (C.D. Ill. June 19, 2020)........................................9

*Darden v. Louisville & N. R. Co.*, 171 Ohio St. 63 (1960) .............................................23

*Estate of Dietrich v. Burrows*, 167 F.3d 1007 (6th Cir. 1999).........................................20

*Evans v. Smith*, 97 Ohio App. 3d 59 (1994).................................................................23

*Feliciano v. Dohman*, 2013 WL 1234225 (E.D. Pa. Mar. 26, 2013)....................................9

*Feliciano v. Kreiger*, 50 Ohio St. 2d 69 (1977)...........................................................23

*Fricker v. Stokes*, 22 Ohio St. 3d 202 (1986)..............................................................23

*Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir. 1975) ...........................................22

*Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002)..........................................................14

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ...........................................12

*Hickman v. Laskodi*, 45 F. App'x 451 (6th Cir. 2002) ...................................................4

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837 (6th Cir. 1994)...................................22

*Johnson v. Reddy*, 163 Ohio St. 347 (1955) ..............................................................23

*Jones v. Clark Cty., Kentucky*, 959 F.3d 748 (6th Cir. 2020) .........................................12

*Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010) .........................................14

*Largent v. State of Tex.*, 318 U.S. 418 (1943)...............................................................7

*Le Bourgeois v. Inst. Corr. Officer Wolf*, 2018 WL 1399318 (E.D. Wis. Mar. 20, 2018)..............9

*Lefkowitz v. Turley*, 414 U.S. 70 (1973) .....................................................................9

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) ..................................................... 10, 11

*Longfellow v. City of Newark*, 18 Ohio St. 3d 144 (1985) ..............................................23

*Lovell v. City of Griffin, Ga.*, 303 U.S. 444 (1938) ........................................................7

*Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018)........................................1, 19, 20

*Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013) ..................................4

*Martin v. City of Struthers, Ohio*, 319 U.S. 141 (1943) ................................................................7

*Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419 (6th Cir. 2013) ..................... 3, 4

*Middletown v. Hollon*, 156 Ohio App. 3d 565 (2004) ........................................................16

*Minor v. Seliga*, 168 Ohio St. 1 (1958) ...............................................................................23

*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) ..........................................................................19

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019) ............................................. 10, 20

*Osberry v. Slusher*, 750 F. App'x 385 (6th Cir. 2018) ............................................... 16, 17

*Owen v. City of Indep., Mo.*, 445 U.S. 622 (1980) .............................................................20

*Rhodes v. New Philadelphia*, 129 Ohio St. 3d 304 (2011) ........................................ 25, 26

*Roath v. Lee*, 2019 WL 3066533 (M.D. Tenn. July 12, 2019) ................................... 7, 9

*Rogers v. Barbera*, 170 Ohio St. 241 (1960) ......................................................................23

*Ryan v. City of Chicago*, 2017 WL 3970605 (N.D. Ill. Sept. 8, 2017) ............................9

*Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147 (1939) .....................7

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ...........................................10

*Smith v. City of Wyoming*, 821 F.3d 697 (6th Cir. 2016) ..................................................15

*State v. Prestel*, 2005 WL 2403941 (Ohio Ct. App. Sept. 30, 2005) ..............................16

*State v. Wellman*, 173 Ohio App. 3d 494 (2007) ..............................................................17

*Staub v. City of Baxley*, 355 U.S. 313 (1958) .....................................................................7

*Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) ....................................................................7

*United States v. Alvarez*, 567 U.S. 709 (2012) ...................................................................5

*United States v. Hughes*, 606 F.3d 311 (6th Cir. 2010) ...................................................12

*United States v. Williams*, 553 U.S. 285 (2008) .................................................................4

*Watchtower Bible and Tract Society v. Village of Stratton*, 536 U.S. 150 (2002) .............7

*Weser v. Goodson*, 965 F.3d 507 (6th Cir. 2020) ..............................................................21

*Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St. 3d 574 (2001) ..............................23

*Wilkie v. Robbins*, 551 U.S. 537 (2007) .............................................................................9

*Wilson v. Neu*, 12 Ohio St. 3d 102 (1984) .........................................................................23

*Wood v. Nesmith*, 62 F.3d 391 (5th Cir. 1995) ..................................................................9

*Wright v. City of Euclid, Ohio*, 962 F.3d 852 (6th Cir. 2020) ..........................................16

*Yancey v. Carroll Cty., Ky.*, 876 F.2d 1238 (6th Cir. 1989) ............................................10

## Statutes

H.C.O. § 509.04 ..........................................................................................................passim

H.C.O. § 525.07 ......................................................................................................... 7, 8, 15

Ohio Rev. Code § 149.351 ........................................................................................ 25, 26

Ohio Rev. Code § 149.43 ....................................................................................................26

## Rules

Fed. R. Civ. P. 12 ............................................................................................... 2, 3, 8, 17

**INTRODUCTION**

Less than a year before Defendants began retaliating against Plaintiffs Jason and Stacy Hinners, the U.S. Supreme Court warned them, in an eerily similar case, that what they were doing would violate the First Amendment. In *Lozman v. City of Riviera Beach*, the plaintiff sued for First Amendment retaliation based on his arrest at a council meeting.[1] The trial court instructed the jury there could be no First Amendment violation if the police had probable cause for the arrest, which Lozman had conceded. The Eleventh Circuit affirmed, but the Supreme Court reversed, holding that *even if there was probable cause for an arrest*, the First Amendment forbade the City's attempts to bring charges in retaliation for his protected speech.[2]

The similarities between *Lozman* and this case are striking: Lozman was an "outspoken critic" of city council in a small beachfront community. He "often made critical comments about officials during the public-comment period" of council meetings and eventually "filed a lawsuit alleging that the City Council … violated Florida's open-meetings laws," leading to city council members's plan to "intimidate" him in retaliation. When he "violated the City Council's rules … and then refused to leave the podium," police charged him with disorderly conduct and resisting arrest. The prosecutor believed there was probable cause but dismissed the charges nonetheless.

Huron's attack on Mrs. Hinners for her speech is even worse. While Lozman actually engaged in some criminal conduct and violated an actual set of rules, there was never probable cause against Mrs. Hinners, and the rules Defendants allege she violated existed only in the mayor's mind. Fortunately, the City came to its senses and dismissed the charges against her after replacing the mayor, and firing Defendants Lane and Walter Haverfield LLP. Now the question is whether the City faces any consequences for its malicious conduct.

---

[1] 138 S. Ct. 1945 (2018).

[2] *Lozman*, 138 S. Ct. at 1955.

Defendants move for judgment on several claims, but they ignore Rule 12's mandate that the Court construe the pleadings in Mr. and Mrs. Hinner's favor. The Complaint alleges an absence of probable cause; Defendants dispute the allegation. The Complaint alleges Defendants knew their employees were a danger to Mr. and Mrs. Hinners; Defendants dispute the allegation. Defendants even ask the Court to ignore *their own pleadings*, denying in their Answers that they ever acted under color of law and then asking for judgment because they were *always* acting under color of law. And so on. Defendants' legal arguments fare no better, shoehorning the few facts they can accept into inapt dicta from off-point cases, rather than engaging well-established law from controlling courts.

Because the Complaint plausibly alleges each of its claims, the Court should deny Defendants' motion.

## ISSUES PRESENTED

1. A law's overbreadth violates the First Amendment when it outlaws a substantial amount of protected speech, measured against its plainly legitimate uses. H.C.O. § 509.04 outlaws virtually any purposeful interruption of any two people's conversation and has only been enforced against the City's critics. Is the ordinance unconstitutionally overbroad?

2. A law's vagueness violates the First Amendment when it fails to put ordinary people on notice of what it prohibits or when it invites discriminatory enforcement. H.C.O. § 509.04 offers no indications of what kinds of routine interruptions it outlaws, and police have only used it against people who criticize City government. Is the ordinance void for vagueness?

3. The Sixth Circuit requires courts to reserve determinations of probable cause for a jury, which must evaluate them based on the information available to arresting officers at the time of the arrest. Defendants ask the Court to find probable cause existed as a matter of *law*, based on their disputed interpretations of evidence unknown to the officers at the time of the arrest. Should the Court deny their motion?

4. Constitutional retaliation claims require evidence that the defendant took an adverse action against a plaintiff based on the plaintiff's exercise of constitutionally protected conduct. Defendants admit they prosecuted Mrs. Hinners because she exercised her right to remain silent. Do the pleadings state a claim for Fifth Amendment retaliation?

5. The unlawful destruction of public records subjects a government to a forfeiture to any person "aggrieved" by the destruction, i.e., any person who requested those records. The Complaint alleges Mrs. Hinners was aggrieved by the City's destruction of text messages related to her arrest. Does the Complaint state a claim for record destruction?

## FACTUAL BACKGROUND

This brief relies on and incorporates the facts detailed and cited in the First Amended Complaint (ECF #31), which alleges that Mr. and Mrs. Hinners have a history of serving their neighbors in the City of Huron as fiscal watchdogs and a source of news on civic affairs.[3] After they discovered—and revealed to their neighbors—that City Council was making secret payments to the city manager, City officials began planning to retaliate against them.[4] Soon after, Mr. and Mrs. Hinners filed a lawsuit to reverse the secret payments and recover the misappropriated funds.[5]

Within 24 hours, several high-ranking City officials approved a plan to criminally charge Mrs. Hinners at a City Council meeting, based on her First Amendment–protected speech to the people gathered there.[6] The final decision came just seconds into a speech Mrs. Hinners made to City Council, purportedly because she turned her back on the mayor when she spoke.[7] Police arrived minutes later. Observing no disturbance, they invited Mrs. Hinners to step outside and talk; when she declined their offer, they yanked her out of her chair, threw her against a wall and slapped her with criminal charges.[8]

She and her husband, Jason, then brought this action to halt the prosecution and vindicate their civil rights.

## LEGAL STANDARD

A ruling on a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion.[9] The Court must construe the

---

[3] First Am. Compl., ¶¶ 26–37 (ECF #31).

[4] First Am. Compl., ¶¶ 38–49.

[5] First Am. Compl., ¶¶ 50–54.

[6] First Am. Compl., ¶¶ 55–106.

[7] First Am. Compl., ¶¶ 68–69.

[8] First Am. Compl., ¶¶ 86–100.

[9] *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (reversing judgment on the pleadings where complaint pleaded "sufficient facts to state a claim").

pleadings "in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor."[10] The Court must deny the motion if the pleadings, so construed, allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[11] A defendant "bears a much heavier burden at the pleading stage to show that he is entitled to judgment as a matter of law."[12]

## LAW & ARGUMENT

I.     **Because H.C.O. § 509.04 applies to vast amounts of protected speech and invites discriminatory enforcement, it is facially invalid under the First Amendment.**

A.     **Because it has virtually unlimited applications to speech and has never been used for any other purpose, H.C.O. § 509.04 is unconstitutionally overbroad.**

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'"[13] Overbreadth analysis moves in two steps: "The first step … is to construe the challenged statute."[14] The second step asks whether the statute "criminalizes a substantial amount of protected expressive activity."[15] If it does, it is invalid under the First Amendment.[16]

By its plain language, H.C.O. § 509.04 outlaws "any act"—assuming the defendant means to interrupt the normal course of a lawful meeting—by which the defendant "hinders" the meeting's operation or progress, by which the defendant "enters into or takes part in the concerns of others," or interposes himself in a way that impedes the meeting. The ordinance allows no exceptions and

---

[10] *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

[11] *Mellentine*, 515 F. App'x at 424 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), cleaned up).

[12] *Hickman v. Laskodi*, 45 F. App'x 451, 456 (6th Cir. 2002) (affirming denial of judgment on the pleadings).

[13] *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

[14] *United States v. Williams*, 553 U.S. 285, 293 (2008).

[15] *Williams*, 553 U.S. at 297.

[16] *Id.* at 292 ("[A] statute is facially invalid if it prohibits a substantial amount of protected speech.").

places no limits on what meetings, processions, and gatherings it protects. It sweeps in every combination of at least two people under any circumstance. It is not limited to disturbances resulting from fighting words, true threats, incitement, or any of the "few historic categories of speech" with limited protection under the First Amendment,[17] nor does it include an exception for First Amendment–protected speech. In short, § 509.04 is an anti-interruption statute, outlawing anyone from approaching a group of people for any reason other than furthering their purpose in meeting.

The absence of limiting language leaves Huron's anti-interruption ordinance with a breathtaking scope. The Hinners prosecution is only the beginning of the absurd scenarios to which police could apply it, as humans living in a civilized society are constantly required to interrupt groups of people under innumerable circumstances. Protesters and proselytizers are only the most obvious of the potential defendants under such a broad ordinance, which targets any third party with a purpose to disrupt a lawful meeting—regardless of her purpose in disrupting, regardless of the character of her disruption, regardless of the result of her disruption. Meanwhile, virtually nothing is within the "plainly legitimate sweep" against which these infringements are to be measured; it has been at least 20 years since Huron officials deemed any other conduct to be within the scope of the ordinance.[18] The law therefore has endless potential to restrict plainly protected speech, while its practical application leaves virtually nothing to balance against its speech-suppressing effects.

The ordinance is therefore overbroad and must be struck down to protect the Hinnerses' First Amendment rights, as well as those of anyone who is now self-censoring to avoid her fate.

---

[17] *United States v. Alvarez*, 567 U.S. 709 (2012).
[18] City's Answer at 108.

**B.  Because it fails to inform ordinary people what conduct it outlaws and because it invites arbitrary and discriminatory enforcement, H.C.O. § 509.04 is void for vagueness.**

"Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement."[19]

If § 509.04 is not so broad that it criminalizes both the many routine interruptions that are part of everyday life and the plainly protected interruptions that necessarily result from First Amendment–protected activities like protesting, evangelizing, and door-to-door political canvassing, the question becomes how anyone can identify its limits. Because the ordinance itself contains no standards, there is no way for the police—let alone the public—to identify what meetings are covered, what kind of disturbance crosses the line, or what results to avoid. The absence of any meaningful guidance violates due process, threatens the First Amendment, and requires the Court to invalidate the ordinance.

As a practical matter, the absence of standards leaves the police with latitude to apply the ordinance however they choose. As this case demonstrates, that kind of unbridled discretion is unwarranted and bound to be abused. As the City insists, the police can go wherever they see people gathered, identify any interruption as a "disturbance," and thereby support probable cause for an arrest. True, arresting someone for going door-to-door looking to save souls or win votes seems preposterous—unless the police are looking for a reason to make an arrest. But that is just the problem; the City was looking for a reason to arrest Mr. or Mrs. Hinners, no different than cities

---

[19] *Morales*, 527 U.S. at 56.

that have enacted unconstitutionally vague laws to target "undesirables" like Jehovah's Witnesses[20] and advocates for political change.[21]

Because § 509.04 sweeps in unacceptable amounts of protected speech without putting ordinary people on notice of what conduct it prohibits, it is unconstitutionally broad and vague.[22]

## II.   Because the City is using them to stop and punish constitutionally protected speech, H.C.O. §§ 509.04 and 525.07 are unconstitutional as applied to Mrs. Hinners.

### A.   H.C.O. §§ 509.04 and 525.07 are unconstitutional as applied to Mrs. Hinners because the charges were brought in retaliation for exercising her First Amendment rights.

As applied to Mrs. Hinners, H.C.O. §§ 509.04 and 525.07 violate her First and Fifth Amendment rights because charging her retaliation for her exercise of those rights. "To establish a retaliation claim for exercising a constitutional right, a plaintiff must show: '(1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct.'"[23]

Although the City's motion offers up a new explanation for charging Mrs. Hinners, the Court's decision on this motion is restricted to the allegations in the pleadings, which say (1) that Mrs. Hinners spoke against City officials, wrote critically about their work, and filed lawsuits against them—all First Amendment–protected conduct; (2) that the City seized her, charged her criminally,

---

[20] *See, e.g.*, *Watchtower Bible and Tract Society v. Village of Stratton*, 536 U.S. 150 (2002); *Martin v. City of Struthers, Ohio*, 319 U.S. 141 (1943); *Largent v. State of Tex.*, 318 U.S. 418 (1943); *Cantwell v. State of Connecticut*, 310 U.S. 296 (1940); *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147 (1939); *Lovell v. City of Griffin, Ga.*, 303 U.S. 444 (1938).

[21] *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 25 (1971) ("How is one to distinguish this from any other offensive word?"); *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610 (1976); *Staub v. City of Baxley*, 355 U.S. 313 (1958).

[22] Mr. and Mrs. Hinners expect to further elaborate on their facial challenges to H.C.O. § 509.04 in a forthcoming motion for judgment on the pleadings, and they incorporate those arguments here.

[23] *Roath v. Lee*, No. 3:17-CV-00995, 2019 WL 3066533, at *19 (M.D. Tenn. July 12, 2019) (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007)).

and prosecuted her—all actions that would deter a person of ordinary firmness from engaging in such conduct;[24] and that those actions were motivated by anger about the protected conduct.[25]

Therefore, it matters not that Defendants now claim the arrest was motivated by Mrs. Hinners's speech outside the three-minute time limit, the seconds-long delay before she sat down, or her "accusatory" comments.[26]

The City's defense merely disputes the Complaint. It argues the charge was premised on conduct rather than speech, and ignores the contrary allegations the Court must accept on a Rule 12 motion. It cites a single case finding that the law had a valid purpose and was constitutionally applied to *someone else*. Its argument misses the point of an as-applied challenge, which concedes the law can be properly applied in some cases but "is unconstitutional as enforced *against the plaintiffs before the court*."[27] Its defense is insufficient to overcome, at this stage, the Complaint's allegation that Defendants decided "to charge Mrs. Hinners for her speech,", and "on the basis of perceived offenses to the dignity of members of City Council."[28]

Because the Complaint alleges—and the videos show—that Hartung sent the word to have her arrested before any of that ever happened, the Court should ignore the City's latest justifications. Because Mrs. Hinners is the non-moving party, it must.

**B.    H.C.O. § 525.07 is unconstitutional as applied to Mrs. Hinners because the charge was brought in retaliation for exercising her First Amendment rights.**

The Complaint alleges all three elements with respect to the Fifth Amendment claim, as well: It alleges that when Defendants Orzech and Koehler sought to interrogate her, Mrs. Hinners

---

[24] *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) ("Deprivation of one's liberty of movement … would undoubtedly deter an average law-abiding citizen from similarly expressing controversial views.").

[25] First Am. Compl. ¶ 268.

[26] City's Mot. for J. on the Pleadings, 7–8.

[27] *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (emphasis added).

[28] First Am. Compl., ¶¶ 69, 419.

exercised her Fifth Amendment "right to remain silent;" rather than provide statements that could be used against her at trial.[29] It alleges the officers seized her, charged her criminally, and sought to prosecute her. And Orzech and Koehler freely admit they arrested Mrs. Hinners because of that protected conduct.[30]

Although Claim 6 neatly checks all the boxes, Defendants insist it fails as a matter of law because Mrs. Hinners did not have a trial where compelled statements were used against her. But the cases they rely on miss the mark. They are correct that the Sixth Circuit forbids claims based on statements that are never used at trial, but that is not the gravamen of this claim, which alleges not a *denial* of Fifth Amendment rights, but *retaliation* for exercising them. These claims are rarer, but indeed permitted. As the Supreme Court noted in *Wilkie v. Robbins*, "[T]he Government may not retaliate for exercising First Amendment speech rights … or certain others of constitutional rank, [such as the] Fifth Amendment privilege against self-incrimination."[31] The viability of such claims is generally undisputed.[32]

Because Claim 6 alleges that Defendants retaliated against Mrs. Hinners for exercising her right to remain silent, the Court should deny Defendants' motion.

---

[29] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[30] City's Mot. For J. on the Pleadings, 9 ("Mrs. Hinners' behavior, as depicted in the video, provided Officers Koehler and Orzech with probable cause to arrest her. … [T]he officers arrived to speak with her at the council meeting, but once the officers asked Mrs. Hinners to step out of the meeting, she refused.").

[31] *Wilkie v. Robbins*, 551 U.S. 537, 555–56 (2007) (citing *Lefkowitz v. Turley*, 414 U.S. 70 (1973)).

[32] *See, e.g., Wood v. Nesmith*, 62 F.3d 391 (5th Cir. 1995) ("Wood raised an inference of retaliation for exercise of Fifth Amendment rights against self-incrimination sufficient to survive a section 1915(d) dismissal."); *Daniels v. Wilcoxen*, No. 20-4096, 2020 WL 3404864, at *1 (C.D. Ill. June 19, 2020) ("Plaintiff states a Fifth Amendment retaliation claim."); *Roath*, 2019 WL 3066533, at *19–20 (applying retaliation framework to Fifth Amendment claim); *Le Bourgeois v. Inst. Corr. Officer Wolf*, No. 17-C-1375, 2018 WL 1399318, at *5 (E.D. Wis. Mar. 20, 2018) ("[P]laintiff may proceed on his Fifth Amendment retaliation claim"); *Ryan v. City of Chicago*, No. 15 C 9762, 2017 WL 3970605, at *3 (N.D. Ill. Sept. 8, 2017) (denying motion to dismiss Fifth Amendment–retaliation claim); *Feliciano v. Dohman*, No. CIV.A. 12-4713, 2013 WL 1234225, at *9–11 (E.D. Pa. Mar. 26, 2013) to dismiss Fifth Amendment–retaliation claim).

III.    **Because the Complaint plausibly alleges the absence of probable cause, the Court cannot rely on probable cause to grant judgment on any claims.**

A.    **Because the Sixth Circuit treats probable cause as a jury question, the Court may not dismiss any claims by concluding it existed as a matter of law.**

Defendants move for judgment on the claims for retaliatory arrest (Claim 2), malicious prosecution (Claim 15), false arrest (Claim 17), failure to intervene (Claim 18), authorized action (Claim 20), and false imprisonment under Ohio law (Claim 27). On each claim, their only argument is the same: because police had probable cause to arrest Mrs. Hinners, the claim must fail. As discussed below, this argument fails because the Court cannot settle this question as a matter of law. Any other arguments on these claims are waived.[33]

The Sixth Circuit held in *Logsdon v. Hains* that "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."[34] In *Logsdon*, 492 F.3d 334, an abortion protestor brought § 1983 claims against a police officer who arrested him at the protest. The district court dismissed the claims, finding that because the officer was relying on a reliable witness and found Logsdon at the scene, he had probable cause as a matter of law. But the Sixth Circuit reversed, holding that the trial court failed to construe the complaint in the Plaintiff's favor, including the allegations that the officer had deliberately ignored witnesses whose statements might have undermined probable cause.[35]

---

[33] *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[I]ssues [are] waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.").

[34] *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007).

[35] *See also Novak*, 932 F.3d at 429 ("Whether the police had probable cause to arrest Novak is an issue of fact."); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 581 (6th Cir. 2003) ("In the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible."); *Yancey v. Carroll Cty., Ky.*, 876 F.2d 1238, 1244 (6th Cir. 1989) ("[T]he issue of whether there was a lack of probable cause for the search of Yancey's home should have been submitted to a jury.").

The City's motion arrives in the same position. The Complaint alleges, and its attached videos show, that there was no probable cause to support the arrest,[36] that the police arrived to find nothing out of the ordinary,[37] that they simply arrested Mrs. Hinners on Hartung's command,[38] and that they deleted text messages that would have shown what they knew about the incident.[39] Further, the videos show that Mrs. Hinners explained the circumstances leading up to the officers' arrival, that Hartung did not dispute her characterization of their peaceful, orderly exchange, that Hartung admitted he was angry because she was "making a mockery of the City Council meeting," and that a room full of witnesses were on hand protesting that the arrest was "ridiculous" and "unbelievable."[40]

The City's new justification for arresting Mrs. Hinners—its seventh, following the six already detailed throughout the Complaint—is that it had probable cause because she spent more than three minutes addressing council and then made "accusatory" comments.[41] But the facts discussed above provide ample grounds for a jury to conclude that the officers were unaware of any facts the City now hopes to rely on. The jury could similarly conclude that, like in *Logsdon*, the officers "failed to reasonably determine whether they had probable cause" because they ignored "information that might bear on the accuracy, reliability, or trustworthiness of the report" of a disturbance, and that "potentially conflicting explanations from these eyewitnesses would have [given] them reason to question the reliability of reports" that Mrs. Hinners had disturbed the meeting.[42]

---

[36] First Am. Compl., ¶ 119.

[37] First Am. Compl., ¶ 93

[38] First Am. Compl., ¶ 87.

[39] First Am. Compl., ¶ 72.

[40] First Am. Compl., Ex. A-7 at 8:45 (ECF #31-8).

[41] City's Mot. for J. on the Pleadings, 7. The City's new complaint about "accusatory" comments, besides showing pretext through shifting explanations, is yet again an admission that it was Mrs. Hinners's protected *speech* that induced Defendants to prosecute her.

[42] *Logsdon*, 492 F.3d at 342.

Moreover, the Complaint alleges that all the police officers involved—Chief Lippert and the arresting officers—were participating in an ongoing campaign to retaliate against Mrs. Hinners for her First Amendment–protected conduct.[43] If that were proved, a jury could reasonably infer that the officers knew upon being summoned to that meeting that they were not there to stop a criminal offense but to carry out the retaliatory purpose.

The question is not whether the City believes probable cause existed, but whether the Complaint can be read to suggest it didn't. In the light most favorable to Mr. and Mrs. Hinners, the Complaint plausibly alleges that nothing the officers knew suggested a crime had occurred, and the Court is therefore bound by Sixth Circuit precedent to submit the question to a jury.

**B.      Because the Complaint plausibly alleges the absence of probable cause, the Court may not dismiss any claims by concluding it existed as a matter of law.**

**1.      The Complaint plausibly alleges the absence of probable cause to believe Mrs. Hinners disturbed a lawful meeting.**

"A probable cause determination is based upon the totality of the circumstances and must consider both the inculpatory and exculpatory evidence. That means an officer cannot simply turn a blind eye toward evidence favorable to the accused."[44] In *Beck v. State of Ohio*, the U.S. Supreme Court held that courts must evaluate the existence of probable "at the moment of the arrest."[45] Therefore, police may not "look for after-the-fact justifications for [seizures] that would otherwise be impermissible."[46] Subsequent investigation supporting probable cause therefore cannot relieve a defendant of liability for an arrest without probable cause, though subsequent investigation undermining probable cause can create liability for continued detention without probable cause.[47]

---

[43] First Am. Compl., ¶¶ 264–265.

[44] *Jones v. Clark Cty., Kentucky*, 959 F.3d 748 (6th Cir. 2020).

[45] *Beck v. State of Ohio*, 379 U.S. 89, 96 (1964).

[46] *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010).

[47] *See, e.g., Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Because there exists a genuine issue of material fact about whether Katz intentionally withheld exculpatory information in order to continue

The City's entire argument for dismissing the claims against it is built on its attorneys' *post hoc* conclusion that Mrs. Hinners was actually guilty. As wrong as the City is, its error is irrelevant in the Fourth Amendment context, where the only question is whether the officers who arrested her had probable cause to do so *at that time*. In arguing that they did, the City builds its whole case on the kind of after-acquired evidence that *Beck* forbids, relying entirely on its lawyers' interpretation of "[t]he video and audio evidence attached to Plaintiffs' complaint."[48] But those exhibits are irrelevant, as the Complaint does not allege that the officers who arrested Mrs. Hinners in May 2019 did so based on exhibits she would file in court nearly a year later.

At this stage, the City must instead limit its argument to the knowledge the Complaint attributes to the arresting officers, construed in a light most favorable to Mr. and Mrs. Hinners. The City never addresses what facts the police relied on in choosing to charge Mrs. Hinners with disturbing a lawful meeting, perhaps because those facts are fatal to its case. The Complaint alleges Defendants Lippert, Orzech, and Koehler had virtually no knowledge of the events leading up to their decision to charge Mrs. Hinners:

- Lippert was the first police officer aware of Mrs. Hinners's presence at the meeting, learning only that Defendant Hartung was "ignited" and "wants her arrested."[49]

- Lippert then contacted Orzech and Koehler, with nothing other than instructions "to remove Mrs. Hinners from the meeting and file charges against her."[50]

- Orzech and Koehler arrived at the meeting to find nothing out of the ordinary, with Mrs. Hinners "sitting quietly and listening to other citizens speak."[51]

---

Plaintiff's detention without probable cause, this Court reverses the district court's grant of summary judgment on this claim.").

[48] City's Mot. For J. on the Pleadings, x.

[49] First Am. Compl., ¶ 71.

[50] First Am. Compl., ¶ 72.

[51] First Am. Compl., ¶ 86.

- Hartung then "directed the police officers to seize Mrs. Hinners" because he believed "she would continue to criticize him and Council," and because "he was angry and wanted to punish and retaliate against her for her critical remarks."[52]

As the Complaint alleges and the videos show, the police initiated their seizure of Mrs. Hinners immediately after that interaction with Mayor Hartung, making that the moment at which the probable cause determination cuts off. Besides being an impermissible, after-the-fact justification, any "disturbance" that happens after that is not attributable to Mrs. Hinners, but to Hartung ordering the police to arrest her.

This leaves the officers with virtually no evidence, personally observed or otherwise, to suggest that an offense had occurred, let alone that Mrs. Hinners had committed it. The fact that Hartung was angry and wanted Mrs. Hinners arrested does not establish a fair probability that she had disturbed the meeting. Receiving instructions from a superior to arrest someone does not create probable cause.[53] Even if the officers somehow inferred from nothing more than the bare-bones orders to "file charges against her" that Mrs. Hinners had violated the ordinance in question, their discovery that the meeting was proceeding normally would have undercut that inference. And if, as the Complaint alleges, Hartung merely wanted to "punish and retaliate against her for her critical remarks" and he communicated that to the officers when he spoke to them, probable cause would have been eliminated.[54]

The City attempts to impute Hartung's knowledge to the arresting officers, but the case they rely on, *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999), fails to make their point. While *Ahlers*

---

[52] First Am. Compl., ¶ 87.

[53] *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) ("[S]ince World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order.").

[54] *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002) ("[The officer] should have known that an arrest undertaken at least in part as retaliation for a constitutionally protected insult to the officer's dignity would be impermissible unless it could be shown that the officer would have made the arrest even in the absence of any retaliatory motive.").

does allow officers to rely on an eyewitness identification to establish probable cause, it was talking about cases where an eyewitness describes someone as having actually committed a crime, not where eyewitnesses just point out random people and demand their arrest. Here, the Complaint does not allege that Hartung accused Mrs. Hinners of disturbing the meeting; he merely asked the police to have her arrested.[55]

Construed most favorably for Plaintiffs, the most the Complaint alleges the arresting officers knew about the basis for the arrest was that the mayor wanted to retaliate against a citizen who criticized him. Because criticism is not a proper basis for an arrest, the Complaint plausibly alleges the absence of probable cause, and the Court may not find that it existed as a matter of law.

### 2. The Complaint plausibly alleges an absence of probable cause to believe Mrs. Hinners obstructed official business.

H.C.O. § 525.07 (a) tracks Ohio Rev. Code § 2921.31(A), which has five elements:

1. an act by the defendant;
2. done with the purpose to prevent, obstruct, or delay a public official;
3. that actually hampers or impedes a public official;
4. while the official is acting in the performance of a lawful duty; and
5. the defendant so acts without privilege.[56]

### a. The Complaint plausibly alleges that Mrs. Hinners never "acted" to obstruct official business.

"Ohio courts have emphasized the importance of the first element, the requirement that the defendant commit an affirmative act."[57] This element requires more than passive resistance or a refusal to follow orders; "[a] person cannot be guilty of obstructing official business by doing nothing or failing to act."[58] "[T]he affirmative act requirement is only satisfied by particularly

---

[55] First Am. Compl., ¶ 87.

[56] *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016).

[57] *Smith*, 821 F.3d at 715.

[58] *Smith*, 821 F.3d at 715–16.

obstructive acts, or what can fairly be characterized as 'aggressive, boisterous, or unduly disruptive conduct.'"[59]

None of the conduct the City alleges satisfies the affirmative-act requirement. The vast majority of it is explicitly passive, even by the City's description: Mrs. Hinners "refused" to step out of the meeting; she "disregard[ed] the officers' requests"; she "failed to comply with the officers' requests"; she "ignored Mayor Hartung's request."[60] Ohio courts consistently hold that these types of allegations are insufficient,[61] as "passive responses and failure to immediately leave cannot qualify as affirmative acts under Ohio law."[62] The City also suggests Mrs. Hinners undertook an affirmative act by putting up some sort of fight when the police pulled her out of the audience and threw her against the wall. But those actions couldn't be their basis for probable cause to arrest her, because *they were already arresting her* when they happened.

The truth is that Mrs. Hinners was simply trying to maintain her balance in three-inch heels without dropping an iPad and a sheaf of papers while two armed police officers yanked her out of a chair and threw her into a wall. As the Sixth Circuit recently held in *Wright v. Euclid*, even when the police misinterpret a suspect's attempts to comply as resistance, courts should not find probable cause to believe an affirmative act occurred when a jury could find otherwise.[63] The City is of course

---

[59] *Smith*, 821 F.3d at 717.

[60] City's Mot. For J. on the Pleadings, 9.

[61] *State v. Prestel*, No. 20822, 2005 WL 2403941, at *2 (Ohio Ct. App. Sept. 30, 2005) ("[T]he mere refusal to cooperate with police and provide identification upon request does not constitute obstructing official business."); *Middletown v. Hollon*, 156 Ohio App. 3d 565, 571 (2004) (refusing to "pay a fine or sign an agreement to pay the fine after being adjudicated guilty," to "open the door … at the request of police officers," to *"provide [a] driver's license to an officer upon request," and to "be fingerprinted as part of police identification procedure"* are not affirmative acts); *City of Parma v. Campbell*, No. 79041, 2001 WL 1352657, at *3 (Ohio Ct. App. Nov. 1, 2001) ("Mere failure to obey a law enforcement officer's request does not bring a defendant within the ambit of this offense.").

[62] *Osberry v. Slusher*, 750 F. App'x 385, 393–94 (6th Cir. 2018).

[63] *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 873 (6th Cir. 2020) ("[A] reasonable jury could find that he did not engage in an affirmative act such as to give rise to probable cause that he was obstructing official business.").

free to concoct its counternarrative, but it will have to wait for a jury; at the Rule 12 stage, the Court is confined to the allegations in the Complaint unless "the video 'utterly discredits' the plaintiff's version of events."[64] It doesn't.

Even if the Court were to credit the City's characterization, its characterization still only describes passive resistance. For instance, the Sixth Circuit has held that the affirmative-act requirement was not met when a defendant initially pulled away from an officer attempting to handcuff her, but then complied.[65] Instead, it looks to see whether passive resistance is coupled with some kind of "aggressive, boisterous" conduct.[66] But as the Complaint alleges and the videos show, there was no aggressive, boisterous conduct. Mrs. Hinners spoke politely to the officers who approached her, she objected that the City was violating her rights, and she asked to be "treated the same as every other citizen that comes to this meeting."[67] She may have been firm in standing on her rights, but nothing she did rose to the level of abuse or disruption the Sixth Circuit demands.[68]

> **b. The Complaint plausibly alleges that nothing Mrs. Hinners did resulted in an actual obstruction of police business.**

While the statute targets actions that "delay" a public official, it does not require complete and instantaneous compliance with every police order. Instead, the affirmative act supporting the charge "must *actually* hamper or impede the public official in the performance of his duties, and "there must be some substantial stoppage of the officer's progress."[69] Here, nothing Mrs. Hinners

---

[64] *Osberry*, 750 F. App'x at 390.

[65] *Smith*, 821 F.3d at 716, *as amended* (May 18, 2016) ("[T]he only relevant affirmative act was Smith withdrawing her hand when Officer Murphy grabbed it. Drawing all reasonable inferences in Smith's favor, this withdrawal may have been simply an involuntary reaction.").

[66] *Smith*, 821 F.3d at 717, *as amended* (May 18, 2016).

[67] Ex. A-7 at 3:30–4:09.

[68] The City also claims Mrs. Hinners "told the officers they would have to physically remove her," City's Mot. for J. on the Pleadings, 9, but that allegation does not appear in the Complaint and is not supported the exhibits.

[69] *D.D. v. Scheeler*, 645 F. App'x 418, 426 (6th Cir. 2016) (quoting *State v. Wellman*, 173 Ohio App. 3d 494 (2007)) (emphasis added).

did actually hampered or impeded the officers from arresting her. Even crediting the City's argument that she "physically resisted as they attempted to handcuff her," the Complaint does not allege that this led to a substantial stoppage of the officers' progress, nor that the officers had probable cause to believe it had. Indeed, the video shows that from the time officers first laid hands on her, Mrs. Hinners was handcuffed and out of Council chambers in 45 seconds.[70] However fast the officers think they are, they can't seriously characterize the difference between that and 45 seconds as a "substantial stoppage."

Because the Complaint does not allege the officers could have had probable cause to believe they were actually impeded in performing their duties, the Court cannot find probable cause to support the obstruction charge.

### c.     The Complaint plausibly alleges that none of the other obstruction elements were satisfied.

Even those the affirmative-act and substantial-stoppage elements, the Complaint plausibly alleges the absence of probable cause on any of the other obstruction elements. Construing its allegations in Plaintiffs' favor, it would have been clear to the officers that Mrs. Hinners's purpose was to exercise her First Amendment right to attend the council meeting, not to obstruct their work. It would have been clear they had no "lawful duty" to remove her from the meeting. And it would have been clear she was privileged to remain in the meeting despite their desire to talk to her

Absent allegations supporting probable cause on any of those elements, the Court cannot find that probable cause existed to charge her with obstructing official business. Because the Complaint also plausibly alleges a lack of probable cause for § 509.04, the Court may not dismiss any claims by finding that probable cause existed.

---

[70] Ex. A-7 at 10:28–11:13.

**C.** **Because probable cause is irrelevant in retaliatory arrests for conduct that is not usually prosecuted, Supreme Court precedent forbids using probable cause to dismiss Claim 2.**

Even though the Complaint alleges a lack of probable cause, it need not do so. Because requiring plaintiffs to negate probable cause "could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech,'" the Supreme Court held in *Nieves* that in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so," retaliatory-arrest claims can proceed, even when "there was undoubted probable cause for the arrest."[71] The Court therefore allows retaliatory-arrest claims to move forward despite probable cause "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[72]

This is, of course, exactly what the Complaint case alleges: "Dozens of similarly situated people who have not opposed secret payments to Defendant White have engaged in the same kinds of conduct that prompted the charges against Mrs. Hinners. No one else has ever been charged for that conduct."[73] The Complaint lays out, in a list spanning four pages and hours of attached video exhibits, dozens of instances of citizens violating the City's purported rules when they spoke on topics other than secret payments to Defendant White.[74] And the Complaint attaches admissions from City officials that it has no record of ever prosecuting anyone under similar circumstances.[75] The Complaint makes the same allegations regarding the absence of probable cause for the

---

[71] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (quoting *Lozman*).
[72] *Nieves*, 139 S. Ct. at 1727.
[73] First Am. Compl., ¶ 258.
[74] First Am. Compl., ¶ 111–15.
[75] First Am. Compl., ¶ 108.

obstruction charge.[76] Because probable cause is immaterial to a retaliatory-arrest claim in these circumstances, the Court should not dismiss Claim 2.

**D.   Because the Complaint plausibly alleges the absence of probable cause, Defendants are not entitled to qualified immunity.**

Defendants ask the Court to grant them qualified immunity on the basis of probable cause. But, as described above, the Complaint alleges an absence of probable cause, so Defendants are not entitled to qualified immunity at this stage. This is their only offered reason for granting qualified immunity, but even if they presented some other argument, they would remain ineligible.

The Complaint plausibly alleges each of the claims in question, and it has long been clearly established that government officials cannot arrest in retaliation for First Amendment–protected activity,[77] undertake malicious prosecutions,[78] or arrest people without probable cause,[79] and that government officials must intervene when they see a false arrest happening.[80] The City also strangely argues that it is itself entitled to qualified immunity on Claim 20, one of three *Monell* claims. But it has been black-letter law for more than 40 years that "municipalities have no immunity from damages liability flowing from their constitutional violations."[81] The City offers no explanation why this case should be any different. Because the rights at stake in each of these claims have been clearly established for decades, the Court should not extend qualified immunity to any of the Defendants.

---

[76] First Am. Compl., ¶ 200–02.

[77] *Lozman*, 138 S. Ct. at 1949 ("[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech."); *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1013 (6th Cir. 1999) ("Supreme Court decisions rendered long before the actions at issue in this case recognize that government actions may not retaliate against an individual for the exercise of protected First Amendment freedoms.").

[78] *Novak*, 932 F.3d at 435.

[79] *Estate of Dietrich*, 167 F.3d at 1012 ("Even in 1991, the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.").

[80] *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 566 (6th Cir. 2018) ("The duty of law enforcement officers to intervene to prevent an arrest not supported by probable cause was stated in precedent 'clear enough that every reasonable official would interpret it to establish' this rule.").

[81] *Owen v. City of Indep., Mo.*, 445 U.S. 622, 657 (1980).

**IV.    Because the Complaint plausibly alleges other defendants directed Orzech and Koehler to unlawfully seize her, the Court may not grant judgment on Claim 17.**

Defendants Hartung, White, and Lippert argue that Mrs. Hinners's claim for false arrest (Claim 17) fails as a matter of law against them because they were not the ones who personally arrested her. But the Sixth Circuit has long permitted claims against an officer's supervisors—or even private citizens—if they encouraged or otherwise participated in the arrest.[82] Read in the light most favorable to Mrs. Hinners, the Complaint alleges that Hartung decided to arrest her when she didn't turn around, that he sought and obtained Defendant Lane's approval, that he then directed Defendant White to make the arrest happen, and that White then contacted Lippert, who dispatched Defendants Orzech and Koehler. Thus, each of them satisfies the Sixth Circuit's low bar permitting false-arrest liability for parties who "set in motion the machinery which proximately caused the arrest."[83] Mrs. Hinners's argument on this question is laid out in greater detail in her opposition to Defendant Lane's motion for judgment on the pleadings.[84] She incorporates that argument here by reference.

**V.    Because the Complaint plausibly alleges a conspiracy among independent entities against a protected class, the Court may not grant judgment on the conspiracy claims (Claims 19, 23, or 28).**

Defendants argue that Mr. and Mrs. Hinners's conspiracy claims fail as a matter of law, saying that the claims for civil conspiracy under § 1983 (Claim 19), conspiracy to interfere with civil rights under § 1985(3) (Claim 23), and state-law civil conspiracy (Claim 28) are barred by the intracorporate-conspiracy doctrine. But the Complaint does not allege an intracorporate conspiracy, and even if it did, the Complaint alleges facts that would put this conspiracy into several of the doctrine's many exceptions, including those for cases involving conduct outside the scope of a

---

[82] *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002).

[83] *Weser v. Goodson*, 965 F.3d 507 (6th Cir. 2020) (cleaned up).

[84] ECF #59-1 at 16–18.

participant's employment,[85] for cases involving corporations formed for the purpose of violating civil rights,[86] for cases involving participants with a personal interest in their unconstitutional acts,[87] and for cases involving more than a one-off unconstitutional action.[88]

Defendants also argue that the § 1985(3) claim is barred because Mr. and Mrs. Hinners are not members of a protected class. But the Sixth Circuit has long recognized that § 1985(3) protects citizens against conspiracies targeting those, like Mr. and Mrs. Hinners, who find themselves on the wrong side of the line "between persons who support government officials and their policies and those who are critical of them."[89]

Mr. and Mrs. Hinners's opposition to Walter Haverfield LLP's motion to dismiss lays out in detail their arguments regarding the inapplicability of the intracorporate-conspiracy doctrine[90] and their status as a protected class,[91] which they incorporate here by reference.

## VI.  Because Defendants' status as state actors is disputed and irrelevant on a false-imprisonment claim, the Court cannot rely on it to dismiss Claim 27.

"False imprisonment occurs when a person confines another intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short."[92] Defendants don't dispute these elements, arguing only that government actors—the people who do virtually all the imprisoning—aren't subject to false-imprisonment claims. In support, they point to a single case from the First District Court of Appeals saying false imprisonment "is purely a matter

---

[85] *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994).

[86] *Johnson*, 40 F.3d at 840.

[87] *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 770 (11th Cir. 2000).

[88] *Dickerson*, 200 F.3d at 770.

[89] *Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir. 1975).

[90] ECF #59-2 at 11–16.

[91] ECF #59-2 at 8–11.

[92] *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St. 3d 107, 109 (1991) (internal quotations omitted).

between private persons for a private end."[93] For that holding, that case relies solely on *Rogers v. Barbera*.[94] But *Rogers* included no such holding; the excerpted language was merely part of a larger quotation from American Jurisprudence, included in a theoretical discussion informing the Court's holding distinguishing false arrest from *malicious prosecution*. The court never passed judgment on the elements of a false-imprisonment claim.

Not in *Rogers*, at least. In other cases, the Ohio Supreme Court has repeatedly considered the false-imprisonment tort, and it consistently recites the elements above, with no suggestion that claims are limited to allegations against private actors. On the contrary, nearly all its decisions passing on the contours of false-imprisonment tort in the last century have involved defendants alleged to be acting under color of law, and the court has never endorsed the "purely private" distinction between false arrest and false imprisonment.[95] While Defendants misapprehend it, a distinction *does* exist between those torts. Claims for false arrest focuses on harms flowing from an initial seizure, while claims for false imprisonment focus on harms flowing from continued detention beyond the initial seizure. A police officer who seizes someone with probable cause, for instance, but continues to detain her after probable cause evaporates, would be liable for false imprisonment but not for false arrest.[96]

---

[93] *Evans v. Smith*, 97 Ohio App. 3d 59, 70 (1994).

[94] 170 Ohio St. 241 (1960).

[95] *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St. 3d 574, 580 (2001) (false imprisonment claim against sheriff's deputy); *Bennett*, 60 Ohio St. 3d at 110 ("[T]he state may be held liable for the false imprisonment of its prisoners."); *Fricker v. Stokes*, 22 Ohio St. 3d 202, 206 (1986) (reversing directed verdict for sheriff in false-imprisonment case); *Longfellow v. City of Newark*, 18 Ohio St. 3d 144, 146 (1985) (reversing dismissal of false-imprisonment claim against city); *Wilson v. Neu*, 12 Ohio St. 3d 102, 103 (1984) (considering false-imprisonment liability of judicial officers); *Feliciano v. Kreiger*, 50 Ohio St. 2d 69, 72 (1977) (affirming false-imprisonment verdict against sheriff); *Darden v. Louisville & N. R. Co.*, 171 Ohio St. 63, 64 (1960) (affirming verdict on false imprisonment by police officers); *Minor v. Seliga*, 168 Ohio St. 1, 5 (1958) (allowing both false-arrest and false-imprisonment claims against police and justice of the peace); *Johnson v. Reddy*, 163 Ohio St. 347, 353 (1955) (allowing claim for false imprisonment against police officer); *Conrad v. Lengel*, 110 Ohio St. 532, 535 (1924) false-imprisonment claim against police chief).

[96] *Bennett*, 60 Ohio St. 3d at 109 ("Because of the continuing nature of the false imprisonment tort, it is clear that a person who intentionally confines another cannot escape liability by arguing that he or she was initially

Even if the public/private distinction were real law, that doctrine would not merit dismissal here. Defendants' motion asks for dismissal because they were "acting under 'color of state and local law,'"[97] but that is the opposite of what they've pleaded in their Answer, denying that "[a]ll Defendants acted under color of state and local law."[98] The denial is a strange one. Although one could reasonably conclude that it was an oversight or that it was made in bad faith, it repeats across all the answers; not a single defendant admits that they or anyone else was acting under color of law at any time relevant to this case. Having asked for judgment on the pleadings, they cannot now ask the Court to enter judgment ignoring their pleadings.

Because it alleges Defendants unlawfully confined Mrs. Hinners without her consent, and because the public/private distinction does not provide a basis for dismissal—in general or in this case specifically—Claim 27 plausibly alleges a claim for false imprisonment.

## VII.  Because the Complaint plausibly alleges the City knew its lawyers were ignoring the First Amendment, the Court should not grant judgment on Claim 29.

Defendants argue that Mrs. Hinners's claim for negligent hiring (Claim 29) fails as a matter of law, because they had no way of knowing that Defendant Lane had any tortious propensities and therefore could not have foreseen that she would wrong Mr. and Mrs. Hinners. But the Complaint alleges otherwise, saying the mayor knew of Lane's incompetence no later than May 14, 2019, when she approved his request to arrest Mrs. Hinners. When the City learned she had seized control of the Hinners prosecution, it was further placed on notice. Given the allegation that the City knew Lane had made the initial mistake of approving charges against Mrs. Hinners and then refused to correct the error, the question becomes whether the harm subsequently inflicted on Mrs. Hinners was

---

privileged to impose the confinement. Once the initial privilege expires, the justification for continued confinement expires and possible liability for false imprisonment begins.").

[97] City's Mot. For J. on the Pleadings, 25.

[98] Individuals answer at 21.

foreseeable. Because foreseeability is a jury question, the Court may not grant judgment on this claim at this stage.

Mr. and Mrs. Hinners's argument on this question is laid out in greater detail in their opposition to Defendant Lane's motion for judgment on the pleadings[99] and their opposition to Defendant Walter Haverfield LLP's motion to dismiss.[100] She incorporates those arguments here by reference and expects to further develop her argument in response to Defendant O'Shea's motion for judgment on the pleadings.

## VIII.  Because the Complaint plausibly alleges Mr. and Mrs. Hinners were aggrieved by Defendants' destruction of public records, the Court should not grant judgment on Claim 31.

Under Ohio Rev. Code § 149.351, a person aggrieved by the unlawful destruction of public records has an action for injunctive relief and a forfeiture of $1,000 per violation. Defendants say Claim 31 fails because Mr. and Mrs. Hinners are not sufficiently "aggrieved" to state a claim under Ohio Rev. Code § 149.351. Their argument relies entirely on a single case, *Rhodes v. New Philadelphia*, 129 Ohio St. 3d 304 (2011). There, the Ohio Supreme Court confronted the question of what it meant to be aggrieved in the context of destroyed records. Because the term was not defined in the statute, the court interpreted it to cover only cases where (1) the plaintiff requested records using the Public Records Act; (2) the recordkeeper was obligated to produce the records; and (3) the plaintiff was "aggrieved" by the destruction, i.e., actually wanted the records, not just the forfeiture. Because the Complaint does not explicitly say that Mr. and Mrs. Hinners made a request under the Public Records Act, Defendants say, it fails to state a claim under § 149.351.

Their argument fails for two reasons. First, *Rhodes* is no longer controlling law, as it was superseded by statutory amendments almost immediately. In limiting relief to those making requests

---

[99] ECF #59-1 at 18–20.
[100] ECF #59-2 at 19–22.

under § 149.43, *Rhodes* left anyone who sought records through other laws with no remedy for the destruction of their records. And in limiting relief to those who were legally entitled to the records, it put courts in the impossible position of assessing claims based on the contents of records that no longer existed. Less than three months after *Rhodes*, the General Assembly amended § 149.351 to redefine "aggrieved," still excluding those who request records to generate a forfeiture, but eliminating the court's other elements.

Second, even if *Rhodes* did control, that would mean Mr. and Mrs. Hinners did, in fact, allege that they made a request. The Complaint says that "Mr. and Mrs. Hinners are aggrieved by the destruction of those records,"[101] and *Rhodes* defines "aggrieved" to mean that a person actually requested records. Especially given the requirement that the Court draw all plausible inferences in Plaintiff's favor, the allegation that Mr. and Mrs. Hinners were aggrieved is an allegation that they did request the records.[102]

Because it plausibly alleges that Defendants unlawfully destroyed public records and that Mr. and Mrs. Hinners were aggrieved by that destruction, the Court should not dismiss Claim 31.

## CONCLUSION

The Complaint plausibly alleges a pattern of facts remarkably similar to those the U.S. Supreme Court has already held violate the First Amendment, and it painstakingly details how Defendants' conduct violated a host of other laws along the way. Because Defendants only contest the truth of the Complaint's allegations and because their few legal arguments ignore the law controlling them, the Court should deny their motion.

---

[101] First Am. Compl., ¶ ¶ 501.

[102] All this should be beside the point, as the entire argument seems to be made in bad faith. As Defendants know, and as Mr. and Mrs. Hinners would readily prove at trial, they did, in fact, request these records. If the Court finds that Claim 31 is inadequately pled, even after drawing all reasonable inferences in their favor, Mr. and Mrs. Hinners will seek leave to amend their Complaint to explicitly allege the request and to attach Ex. 1.

September 3, 2020

Respectfully submitted,

*/s/ Brian D. Bardwell*

Subodh Chandra (0069233)
Brian D. Bardwell (0098423)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, OH 44113
T: 216.578.1700
F: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Brian.Bardwell@ChandraLaw.com

*Counsel for Plaintiffs Stacy and Jason Hinners*