IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STACY HINNERS,** *et al.*<br>*Plaintiffs,*<br><br>v.<br><br>**MICHAEL J. O'SHEA,** *et al.*<br>*Defendants.* | Case No.: 1:19-cv-02868<br><br>Judge Pamela A. Barker<br><br>Magistrate Judge David A. Ruiz |
| **PLAINTIFFS STACY AND JASON HINNERS'S OPPOSITION TO DEFENDANT O'SHEA'S MOTION FOR JUDGMENT ON THE PLEADINGS AND REQUEST FOR ORAL ARGUMENT** | |

Plaintiffs Stacy and Jason Hinners respectfully oppose Defendant O'Shea's motion for judgment on the pleadings (ECF #63-1) and request oral argument on this motion. Given the complexity of the facts and laws controlling the absolute-immunity question, they respectfully submit that an opportunity to pose questions directly to the parties' counsel would best ensure that the Court can cover all the factors informing its decision. The reasons for their opposition are explained in the attached memorandum.[1]

---

[1] Because the Huron Municipal Court has dismissed the criminal charges against Defendant O'Shea, Mr. and Mrs. Hinners do not object to dismissing Defendant O'Shea without prejudice as a defendant on Claims 7 and 8. They will be filing a voluntary dismissal in short order.

TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

Introduction ........................................................................................................... 1

Issues presented .................................................................................................... 1

Factual background ............................................................................................... 2

Legal Standard ....................................................................................................... 3

Law & Argument .................................................................................................... 3

    I.  Because he is not eligible for prosecutorial immunity, Defendant O'Shea is not
        entitled to judgment on any federal claims. ...................................................... 3

        A.  Because Defendant O'Shea never became a public official by taking the oath of
            office, he is not protected by absolute immunity. ..................................................... 6

        B.  Because Defendant O'Shea was not properly appointed as prosecutor, he is not
            protected by absolute immunity. .............................................................................. 8

            1.  Because Defendant Lane appointed O'Shea in violation of state law, she did
               not act pursuant to statutory authority when she hired him............................. 8

            2.  Because Defendant Lane appointed O'Shea in violation of local laws limiting
               her authority, she was not acting pursuant to statutory authority when she
               hired O'Shea. .................................................................................................. 11

            3.  Because Defendant Lane was conflicted out of the Hinners prosecution, she
               was not acting pursuant to statutory authority when she hired O'Shea. ......... 12

        C.  Because Defendant Lane appointed O'Shea in violation of Mrs. Hinners's due-
            process rights, she did not act pursuant to statutory authority when she hired
            him. ........................................................................................................................ 13

        D.  Because Defendant O'Shea's liability is based in part on non-prosecutorial acts,
            he is not protected by absolute immunity. ............................................................. 14

        E.  None of Defendant O'Shea's authorities offer any basis for granting absolute
            immunity. .............................................................................................................. 15

    II.  Because he has not invoked it, Defendant O'Shea has waived the defense of qualified
        immunity. .......................................................................................................... 18

    III. Because the Complaint plausibly alleges that he selectively prosecuted Mrs. Hinners,
        Defendant O'Shea is not entitled to judgment on Claim 1 for selective prosecution. 19

    IV. Because the Complaint plausibly alleges First Amendment retaliation, Defendant
        O'Shea is not entitled to judgment on Claim 3 for prior restraints or on Claims 11–14
        for First Amendment retaliation. ..................................................................... 21

V.    Because the Complaint plausibly alleges a malicious prosecution, Defendant O'Shea is not entitled to judgment on Claim 15 for malicious prosecution. ...........................23

VI. Because the Complaint plausibly alleges his participation in a conspiracy against civil rights, Defendant O'Shea is not entitled to judgment on Claims 19, 23, or 28 for conspiracy. ...............................................................................................................24

VII.    Because the Complaint plausibly alleges his participation in various criminal acts, Defendant O'Shea is not entitled to judgment on Claim 32—civil liability for criminal acts. ...........................................................................................................24

Conclusion ...........................................................................................................................27

TABLE OF AUTHORITIES

## Cases

*Alexander v. United States*, 509 U.S. 544 (1993) ...................................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................3

*Buddenberg v. Weisdack*, No. 2018-1209, 2020 WL 4341889 (Ohio July 29, 2020) ..................25

*Burns v. Reed*, 500 U.S. 478 (1991) ......................................................................................14

*Cleavinger v. Saxner*, 474 U.S. 193 (1985) ...........................................................................16

*Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286 (6th Cir. 2006) ..........19

*Condon v. Wolfe*, No. 1:03CV897, 2006 WL 8437981 (S.D. Ohio May 25, 2006) ....................13

*Cooper v. Parrish*, 20 F. Supp. 2d 1204 (W.D. Tenn. 1998) .....................................................4

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000) ............................................................. passim

*Cullinan v. Abramson*, 128 F.3d 301 (6th Cir. 1997) ............................................................16

*Evans v. Vinson*, 427 F. App'x 437 (6th Cir. 2011) ..............................................................18

*Filarsky v. Delia*, 566 U.S. 377 (2012) .................................................................................15

*Franks v. Rubitschun*, 312 F. App'x 764 (6th Cir. 2009) .......................................................21

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ........................................................................ 13, 14

*Griffin v. Kyle*, No. 2:10-CV-664, 2011 WL 2885007 (S.D. Ohio July 15, 2011) ....................25

*Hickman v. Laskodi*, 45 F. App'x 451 (6th Cir. 2002) ..............................................................3

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ....................................................................... 14, 17

*Jacobson v. Kaforey*, 149 Ohio St. 3d 398 (2016) ..................................................................24

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ...............................................................................14

*Kelly v. State, for Use of Comm'rs of Brown Cty.*, 25 Ohio St. 567 (1874) .................................7

*Leary v. Livingston Cty.*, 528 F.3d 438 (6th Cir. 2008) .........................................................18

*Lee v. Willey*, 543 F. App'x 503 (6th Cir. 2013) ...................................................................16

*Lipman v. Budish*, No. 19-3914, 2020 WL 5269826 (6th Cir. Sept. 4, 2020) ...........................18

*Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) ...................................................................23

*Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459 (6th Cir. 2013) .......................................3

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ......................................................................13

*Marvaso v. Sanchez*, 971 F.3d 599 (6th Cir. 2020) ...............................................................24

*McCullum v. Tepe*, 693 F.3d 696 (6th Cir. 2012) .................................................................17

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) .............................................................18

*Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419 (6th Cir. 2013) ...................................3

*Mitchum v. Foster*, 407 U.S. 225 (1972) ..............................................................................17

*Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019) ..................................................... 21, 22

*Peroli v. Cty. of Medina*, No. 1:19CV1755, 2020 WL 2405354 (N.D. Ohio May 12, 2020) ...................15

*Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492 (6th Cir. 2011) ..........................18

*Redlich v. Leen*, No. 16-CIV-20001, 2016 WL 3670575 (S.D. Fla. May 20, 2016) ...................16

*Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983)........................................................................14

*SBT Holdings, LLC v. Town of Westminster*, 541 F. Supp. 2d 405 (D. Mass.) ..................... 15, 16

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008)....................................................19

*Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003)................................................................24

*Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) ................................................................14

*State ex rel. Belford v. Hueston*, 44 Ohio St. 1 (1886)................................................................7

*State ex rel. Botkins v. Laws*, 69 Ohio St. 3d 383 (1994) ....................................................... 8, 9

*State ex rel. Brothers v. Zellar*, 7 Ohio St. 2d 109 (1966) ..........................................................7

*State ex rel. Gahl v. Lutz*, 132 Ohio St. 466 (1937) ..................................................................7

*State ex rel. Marshall v. Keller*, 10 Ohio St. 2d 85 (1967) ........................................................7

*State v. Hill*, No. 24966, 2012 WL 5471493 (Ohio Ct. App. Nov. 9, 2012)................................7

*State, ex rel. Nau v. Enoch Twp. Bd. of Trustees*,
    No. 300, 2003 WL 21310575 (Ohio Ct. App. May 28, 2003) ..............................................7

*Tennessee v. Culbreath*,
    No. 02C01-9805-CR-00145, 1999 WL 134685 (Tenn. Crim. App. Mar. 9, 1999) .................5

*Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996) ..............4

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) ................................................13

*Ziss Bros. Const. Co. v. City of Indep., Ohio*, 439 F. App'x 467 (6th Cir. 2011) ...........................20

## Statutes

18 U.S.C. § 241 .....................................................................................................................26

18 U.S.C. § 242 .....................................................................................................................26

42 U.S.C. § 1983.............................................................................................................passim

42 U.S.C. § 1985 ...................................................................................................................20

Article XV, § 7 of the Ohio Constitution..................................................................................7

H.C.O. § 5.07.........................................................................................................................11

Ohio Rev. Code § 3.30............................................................................................................7

Ohio Rev. Code § 149.351.......................................................................................................7

Ohio Rev. Code § 1901.34................................................................................................ 2, 8, 10

Ohio Rev. Code § 2307.60................................................................................................. 24, 25

Ohio Rev. Code § 2921.03.......................................................................................................26

Ohio Rev. Code § 2921.04.......................................................................................................26

Ohio Rev. Code § 2921.05.......................................................................................................27

Ohio Rev. Code § 2921.13.......................................................................................................27

Ohio Rev. Code § 2921.32.......................................................................................................27

Ohio Rev. Code § 2921.44.......................................................................................................27

Ohio Rev. Code § 2921.45................................................................................................. 12, 26

Ohio Rev. Code § 2938.13.................................................................................................. 8, 9

Tenn. Code § 8-6-106.............................................................................................................10

## Rules

Fed. R. Civ. P. 12 ...................................................................................................................................3

**Other Authorities**
1981 Ohio Op. Att'y Gen. 2-332 (1981) .................................................................................................7

## INTRODUCTION

This case involves an agreement among officials in the City of Huron and their various contract attorneys to retaliate against two residents exercising their First Amendment rights to ask questions about, object to, and inform their neighbors of how the City was managing local affairs. Defendant O'Shea entered the case as a hired gun when the City needed someone to convict Plaintiff Stacy Hinners for a speech she gave at a city council meeting. Fortunately, the City came to its senses and dismissed the charges against her after replacing the mayor and much of city council, and it has fired Defendant O'Shea, and terminated its contracts with Defendants Aimee Lane and Walter Haverfield LLP.[2] Now the question is whether they face any consequences for their conduct.

Defendant O'Shea seeks judgment on the pleadings on all claims related to his involvement, insisting that because he was appointed "special" prosecutor, he is entitled to absolute immunity for any part he had in the conspiracy. But he refuses to acknowledge or address the effect of the unlawful structuring of his appointment, and he asks the Court to defy on-point Sixth Circuit precedent that strips him of immunity for actions taken before being sworn in.

Aside from the absolute-immunity argument, the vast majority of his brief consists of misconstrued precedents and perfunctory, one-sentence arguments that offer no insight into how or why he might be entitled to judgment. Because his request for judgment defies or ignores controlling law on every claim he addresses, the Court should deny his motion.

## ISSUES PRESENTED

1.  A private attorney is not entitled to absolute immunity for actions taken before being formally sworn in as a prosecutor by swearing an oath to uphold the United States Constitution and the laws of the State of Ohio. Defendant O'Shea never took that oath. Is he entitled to immunity for violating the laws he never swore to uphold?

---

[2] Defendants Lane and Walter Haverfield LLP have asked counsel for Mr. and Mrs. Hinners to alert the Court that they do not wish to be characterized as having been "fired." Despite invitations, each has declined to present any evidence contradicting this conclusion, which Mr. and Mrs. Hinners reached as a result of counsel's work-product investigation and which they believe will be borne out in discovery.

2. A private attorney is not entitled to absolute immunity if his appointment as prosecutor is contrary to law. Defendant O'Shea's appointment violated due process, Ohio Rev. Code § 1901.34, Ohio Prof. Cond. R. 1.7, the Huron city charter, and the City's contract with its law director. Is he entitled to immunity for conduct undertaken without legal authority?

3. Prosecutors are only entitled to absolute immunity for conduct intimately associated with the judicial phase of the criminal process. Mrs. Hinners alleges that Defendant O'Shea's liability comes from acts divorced from the judicial phase of her prosecution. Is O'Shea entitled to prosecutorial immunity for conduct outside his prosecutorial responsibilities?

4. A party asserting a defense must present some effort at developed argumentation, rather than merely invoking it and leaving the Court to guess how it applies. Defendant O'Shea asserts that he is entitled to qualified immunity—and a host of other defenses—without pointing to any relevant allegations or case law to support him. Should the Court research his defenses and develop legal arguments for him?

### FACTUAL BACKGROUND

This opposition relies on and incorporates the facts detailed and cited in the First Amended Complaint. In short, it alleges that Plaintiffs Jason and Stacy Hinners have a history of serving the City of Huron as fiscal watchdogs and a source of news on civic affairs.[3] After they discovered—and revealed to their neighbors—that City Council was making secret payments to the city manager, City officials began collaborating to retaliate against them.[4] Soon after, Mr. and Mrs. Hinners filed a lawsuit to reverse the secret payments and recover the misappropriated funds for the City.[5]

Within 24 hours, Defendant Aimee Lane, coordinating with several high-ranking City officials, approved a plan to criminally charge Mrs. Hinners at a City Council meeting, based on her First Amendment–protected speech to the people gathered there.[6] Defendant Lane took charge of the prosecution, despite having no authority over criminal matters.[7] In violation of various laws, she hired O'Shea as prosecutor, knowing he had financial and ethical problems that could lead him to ignore fatal constitutional infirmities in the case. She let him begin his retaliatory prosecution

---

[3] First Am. Compl., ¶¶ 26–37 (ECF #31).

[4] *Id.* at ¶¶ 38–49.

[5] *Id.* at ¶¶ 50–54.

[6] *Id.* at ¶¶ 55–106.

[7] *Id.* at ¶¶ 155–68.

without being sworn in or otherwise qualifying for his position as prosecutor,[8] and she retained him despite seeing that he was indeed ignoring constitutional defects in the case.[9]

Despite Lane and O'Shea's best efforts, the court eventually dismissed the case against Mrs. Hinners, who has since brought this action seeking monetary damages, as well as equitable and declaratory relief for the violations of her civil rights.

## LEGAL STANDARD

A ruling on a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion.[10] The Court must construe the pleadings "in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor."[11] The Court must deny the motion if the pleadings, so construed, allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[12] A defendant "bears a much heavier burden at the pleading stage to show that he is entitled to judgment as a matter of law."[13]

## LAW & ARGUMENT

**I.   Because he is not eligible for prosecutorial immunity, Defendant O'Shea is not entitled to judgment on any federal claims.**

When the government hires private attorneys, it cannot confer absolute immunity on them by simply labeling them "special" or "assistant" prosecutors. The Sixth Circuit's holding on this is crystal-clear: "Private attorneys who allegedly engage in unconstitutional conduct while acting under color of state law are not entitled to immunity."[14]

---

[8] *Id.* at ¶¶ 137, 175–76.

[9] *Id.* at ¶¶ 129–41.

[10] *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013).

[11] *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

[12] *Mellentine*, 515 F. App'x at 424 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), cleaned up).

[13] *Hickman v. Laskodi*, 45 F. App'x 451, 456 (6th Cir. 2002) (affirming denial of judgment on the pleadings).

[14] *Cooper v. Parrish*, 203 F.3d 937, 950 (6th Cir. 2000).

For example, in *Cooper v. Parrish*, a group of bar owners brought § 1983 claims against a private attorney who prosecuted them for engaging in First Amendment–protected activity. The plaintiffs argued that the prosecutor, Parrish, was not immune for two classes of activities: first, for actions he took before swearing a statutorily required oath of office; second, for actions after he took the oath, but while laboring under a conflict of interest created by accepting payment from third parties. The district court dismissed the complaint, holding that Parrish enjoyed absolute immunity simply because he was "empowered to specially exercise a grant of prosecutorial authority which derived from his appointment."[15] The Sixth Circuit reversed, holding that the "special prosecutor" designation was not enough to cloak him in immunity; because he began prosecuting without taking the oath of office, he was not immune for his acts before being sworn in, and because his appointment exceeded the district attorney's authority, he was not immune for his acts even after being sworn in.[16]

The circumstances of Cooper's appointment bear a striking resemblance to the allegations in this case. As in *Cooper*, Mr. and Mrs. Hinners were engaged in First Amendment–protected conduct that local officials opposed. As in *Cooper*, the City began hatching a plan with outside actors to bring that conduct to an end. As in *Cooper*, Defendant Lane contracted with a private attorney to prosecute the speakers she was targeting. As in *Cooper*, Defendant Lane hired the private attorney despite lacking legal authority to do so. As in *Cooper*, the private attorney's payments were contrary to state law. And as in *Cooper*, the private attorney violated state law by beginning his prosecution without swearing to support and obey the United States Constitution: Ohio Rev. Code § 3.30 provides that a person appointed to public office is "deemed to have refused to accept the office or employment

---

[15] *Cooper v. Parrish*, 20 F. Supp. 2d 1204, 1209 (W.D. Tenn. 1998).

[16] *Cooper*, 203 F.3d at 950–51. *See also Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) ("[A] party who is not a public official may be liable under 42 U.S.C. § 1983 and yet not be entitled to qualified immunity.").

when the person fails to take, certify, and file the oath of office as required by law." And Huron City Charter § 12.01 mandates that "Every officer and employee of the city shall before entering upon his duties, take and subscribe to the … oath."

This final similarity is the last nail in the coffin for O'Shea's defense. Because Parrish eventually took his required oath and thus became a public official, he could have eventually been eligible for absolute immunity, but for the fact that district attorney who appointed him lacked the authority to do so. Here, O'Shea *never* took the oath, never swore to uphold and obey the United States Constitution, never became a public official, and therefore never came within the protection of absolute immunity, despite acting under color of state law.

O'Shea's attempt to distinguish *Cooper* makes a hash of the Sixth Circuit's analysis. He argues that the Sixth Circuit's rule denying immunity to private attorneys like O'Shea was dependent on the simultaneous presence of three circumstances: (1) the prosecutor's disqualification in the criminal case; (2) the prosecutor's informal appointment without statutory authority; and (3) the prosecutor's payment by an improper third party.[17] But that is not what the Sixth Circuit said. Instead, there were *two independent reasons* the prosecutor could be held accountable. The first reason was "because he was never properly appointed to serve as an assistant district attorney," a finding the court supported by quoting the court that disqualified him: "We find no statutory authority which would allow the District Attorney General to informally appoint Parrish to act on behalf of the state from December 1995 until he took an oath of office in July 1996."[18] Though it agreed with the factual findings in the disqualification case, the Sixth Circuit never suggested that a prosecutor in Parrish or O'Shea's position could obtain absolute immunity by merely dodging disqualification.

---

[17] O'Shea Mot. for J. on the Pleadings, 13 (ECF #63-1).
[18] *Cooper*, 203 F.3d at 950 (quoting *Tennessee v. Culbreath*, No. 02C01-9805-CR-00145, 1999 WL 134685, at *1–2 (Tenn. Crim. App. Mar. 9, 1999)).

Second, the court found another independent basis for denying immunity in the existence of an agreement that Parrish would seek payment from a source other than that allowed by statute: "Furthermore, the [state] court determined that Parrish was never properly appointed … because the method used to compensate Parrish … nullified his appointment."[19] While the Sixth Circuit's language made clear that this was a *separate* reason for denying immunity, O'Shea attempts to turn it into two new prongs—an *ultra vires* appointment and private funding—to add to his disqualification requirement. By O'Shea's reading, being appointed prosecutor by someone with no authority is only relevant to immunity if that lack of authority resulted from private payments; had he been appointed without authority by the City's parks-and-recreation managers, he would still be entitled to immunity, as long as they didn't tell him to find private funding—and even then, only if he had been disqualified in the criminal case. But the Sixth Circuit didn't deny immunity because it found both that Parrish was informally appointed without authority *and* because he was paid by third parties; it found that the third-party payments resulted in an appointment exceeding the district attorney's authority, a condition that was, on its own, sufficient to defeat his claim of immunity.

Under *Cooper*, then, the Court should consider O'Shea's attempt to skirt responsibility for his actions using a two-factor test: a private attorney only enjoys absolute immunity for action taken under color of state law if: (1) he fulfills all oath-of-office and other statutory requirements for appointment to public office; *and* (2) his appointment does not run afoul of the appointing officer's authority. Under that test, O'Shea is not entitled to immunity, as discussed below.

**A.    Because Defendant O'Shea never became a public official by taking the oath of office, he is not protected by absolute immunity.**

For more than a century, it has been black-letter law in Ohio that one is not entitled to wield government power merely by virtue of an appointment. Instead, the Ohio Supreme Court

---

[19] *Id.* at 951.

distinguishes *appointment* to an office from *qualification* to the office, which requires "the taking of the oath of office and any other necessary acts on the part of the appointee to qualify."[20]

The "other necessary acts" may vary depending on the office, but in virtually every context, they require the appointee to swear an oath of office.[21] Whether the employee is a judge, a sheriff, a township trustee, a member of the Board of Tax Appeals, a member of the Industrial Commission, or a county auditor, he is not authorized to act on behalf of the government until taking the oath of office.[22] This requirement is not a ceremonial nicety. An officer who exercises the power of his office without ever taking the oath loses both the office and the authority to exercise its power by operation of law.[23]

Here, the complaint alleges that O'Shea was required to, but never did, swear an oath to uphold and obey the United States Constitution before taking any action on behalf of the state.[24] This allegation is not speculation. Although O'Shea denies failing to take the oath, the City will admit that when it received a request for a copy of the oath, it had no record that O'Shea ever taken it. Indeed, the City, which is responsible for retaining oaths under Ohio Rev. Code § 149.351, reports a "want of knowledge" as to whether O'Shea fulfilled this obligation.[25]

---

[20] *State ex rel. Brothers v. Zellar*, 7 Ohio St. 2d 109, 111 (1966).

[21] *See, e.g.*, Article XV, § 7 of the Ohio Constitution; Ohio Rev. Code § 3.30; Huron Charter § 12.01.

[22] *See State v. Hill*, No. 24966, 2012 WL 5471493, at *3 (Ohio Ct. App. Nov. 9, 2012); *State ex rel. Gahl v. Lutz*, 132 Ohio St. 466, 466 (1937); *State, ex rel. Nau v. Enoch Twp. Bd. of Trustees*, No. 300, 2003 WL 21310575, at *3 (Ohio Ct. App. May 28, 2003); *State ex rel. Brothers v. Zellar*, 7 Ohio St. 2d 109, 111 (1966); *State ex rel. Marshall v. Keller*, 10 Ohio St. 2d 85, 85 (1967); 1981 Ohio Op. Att'y Gen. 2-332 (1981).

[23] *See, e.g.*, *Nau*, 2003 WL 21310575, at *3 ("Relator neglected to take the oath of office or provide the bond required by law and his office was properly considered vacant due to his failure to timely comply with R.C. 3.22 and 505.02."); *Kelly v. State, for Use of Comm'rs of Brown Cty.*, 25 Ohio St. 567, 577 (1874) ("[T]he office had become vacant by the treasurer's failure to give bond and take the oath of office on or before the 2d day of September, when his term of office was to commence."); *State ex rel. Belford v. Hueston*, 44 Ohio St. 1, 9 (1886) ("[W]hen he does not so qualify and transmit [the oath of office], he shall be deemed to have refused the office, and it shall be considered vacant.").

[24] *Id.* at ¶¶ 175–76.

[25] Answer of City of Huron, ¶ 176 (ECF #49).

O'Shea's case is therefore more extreme than in *Cooper*, where the prosecutor at least took the oath at some point in the midst of his First Amendment retaliation. Here, O'Shea *never* took the oath of office, and he therefore has no claim to absolute immunity.

**B.     Because Defendant O'Shea was not properly appointed as prosecutor, he is not protected by absolute immunity.**

**1.     Because Defendant Lane appointed O'Shea in violation of state law, she did not act pursuant to statutory authority when she hired him.**

Defendant O'Shea argues that his appointment was proper under Ohio Rev. Code § 2938.13, but that section is part of Title 29's chapter on trials in "magistrate courts"; the Hinners prosecution was governed by Ohio Rev. Code § 1901.34, part of Title 19's chapter on *municipal* courts. That section generally delegates prosecutorial responsibility in municipal courts to the chief legal officer of the relevant county or city and addresses those designees' eligibility for "additional" compensation, i.e., payment for handling prosecutions, as opposed to general legal matters for the county or city. It provides that county prosecutors shall receive no additional compensation for these services; for assistants to city prosecutors, it mandates that they shall receive additional compensation only "as the board of county commissioners prescribes," and that such compensation must "be paid from the treasury of the county."[26]

In *State ex rel. Botkins v. Laws*, for example, a village hired Evans, an outside prosecutor, with an understanding that he would be paid by the county commissioners, consistent with § 1901.34.[27] When the county refused to pay, the city and the prosecutor made a new agreement: the city would directly pay Evans, who would assign the city his interest in future payments from the county. The city then sought mandamus to compel the county to pay. The county argued that no court decision had ever required counties to pay for city prosecutors handling cases in municipal court—so the

---

[26] Ohio Rev. Code Ann. § 1901.34(C).
[27] 69 Ohio St. 3d 383 (1994)

Ohio Supreme Court gave them one, holding that the statute means just what it says: "it is manifest that [the county] possessed a mandatory duty under R.C. 1901.34(C) to compensate Evans and his assistants for their additional services."[28] Although the county had some discretion in setting his compensation, it violated the law by refusing to pay him anything; the city, likewise, had violated the law by paying Evans directly in exchange for an assignment of his future earnings, an arrangement the court said was "contrary to public policy and thus void."[29]

Here, where the Erie County commissioners shared none of Defendants' retaliatory animus, Lane and the City brokered an arrangement cutting them out of the equation: O'Shea would send bills to Walter Haverfield, which would seek payment from the City, which could choose to seek payment from the county or eat the costs itself, avoiding any scrutiny when O'Shea tried to collect thousands of dollars for a prosecution that everyone knew was baseless. As in *Botkins*, their arrangement was contrary to § 1901.34, contrary to public policy, and void. As in *Cooper*, Defendants Lane and O'Shea negotiated a contract where she appointed him "with the understanding that [he] would seek compensation from private sources,"[30] i.e., by submitting bills to Defendant Walter Haverfield LLP, which would in turn seek payment from the City, rather than the county.[31] Lane was therefore "not acting pursuant to statutory authority when [s]he appointed [O'Shea]," and O'Shea therefore "does not qualify as a public official and is not entitled to absolute prosecutorial or quasi-judicial immunity."[32]

Even if this case were governed by § 2938.13's rules for delegating prosecutorial authority, O'Shea's appointment would remain improper for three reasons. First, that statute assumes the

---

[28] *Id.* at 386.

[29] *Id.* at 387.

[30] *Cooper*, 203 F.3d at 951.

[31] *Id.* at ¶ 137.

[32] *Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000).

appointing prosecutor has some authority to delegate, which Lane did not.[33] Second, it allows a prosecutor to delegate her authority only "in a proper case," but, as discussed below, a case in which the prosecutor faces a conflict because of her own possible criminal liability is not a "proper case" for a self-serving delegation of authority. Finally, § 2938.13 prohibits the "prosecution of any criminal case by private attorney employed or retained by a complaining witness." Here, the complaining witness is the City of Huron, whose meeting was allegedly disturbed. O'Shea asks the Court to ignore the City's agency relationship with the employee who signed the complaint, but he offers no reason why a statute designed to avoid this kind of conflict should not apply when the complaining witness is an entity that is physically incapable of signing a complaint and must therefore rely on its agents. Allowing O'Shea to serve as prosecutor was no more faithful to the spirit or letter of the law than allowing K-Mart's general counsel to prosecute a shoplifting case reported by a K-Mart cashier.

Under either statute, then, Lane's disregard for statutory limits on appointing assistants puts the Hinners prosecution on just the same footing as *Cooper*. There, state law required that Parrish's compensation be determined by the governor and "paid out of any money in the treasury."[34] Here, state law required that O'Shea's compensation be determined by the board of county commissioners and "paid from the treasury."[35] In *Cooper*, Parrish's compensation was set and paid by a third party not authorized by statute; here, O'Shea's compensation was set and paid by a third party not authorized by statute. In *Cooper*, violating the Tennessee statute deprived Parrish of immunity; here, violating the Ohio statute deprives O'Shea of immunity.

---

[33] First Am. Compl., ¶ 161.
[34] Tenn. Code § 8-6-106(a).
[35] Ohio Rev. Code § 1901.34(C).

2. **Because Defendant Lane appointed O'Shea in violation of local laws limiting her authority, she was not acting pursuant to statutory authority when she hired O'Shea.**

Questions about whether Defendant Lane had authority to appoint O'Shea in the manner she did assume that she had authority to appoint him in *any* manner. She did not. Huron is a home-rule jurisdiction, and the Complaint alleges that it has established a bifurcated system for delegating the authority that other cities often vest in a single chief legal officer; rather than one official overseeing all its legal affairs, Huron has a prosecutor responsible for criminal matters and a law director responsible for civil matters.[36] When Lane became law director, Council members made it clear that their prosecutor would retain responsibility for criminal matters, and her contract with the City explicitly excluded litigation from her portfolio, and it explicitly prohibited her from delegating any authority she had.[37] Whatever authority she could claim to have, it came from that contract, and—despite O'Shea's unexplained insistence that Lane didn't need the City's approval to appoint him—that contract prohibited her from assigning any responsibilities without Council's agreement.[38] Under this system, Lane "had no contractual responsibility for or legal authority over prosecution decisions."[39] That other fraction of a law director's ordinary statutory authority was committed exclusively to Prosecutor Michael Kaufman.[40]

Lane also contracted to pay O'Shea in excess of the amounts appropriated, violating H.C.O. § 5.07. O'Shea asks the Court to ignore this fact because violating this provision rendered the contract— only enforceable by its parties—voidable by the City, but not by Mrs. Hinners. But Mrs. Hinners is not seeking to void or enforce the contract; she is merely noting that O'Shea's

---

[36] First Am. Compl., ¶¶ 156–58.

[37] *Id.* at ¶ 162–68.

[38] *Id.* at ¶ 165.

[39] *Id.* at ¶ 161.

[40] *Id.* at ¶ 168.

appointment violated yet another law, and therefore Lane "was not acting pursuant to statutory authority" when she appointed O'Shea, leaving him ineligible for immunity. Ignoring all these legal and contractual barriers, O'Shea insists his appointment was sufficient for immunity because "neither the Ohio Revised Code, Huron's Charter, or Huron's Administrative Code required Defendant Lane to seek approval for her appointments."[41] Setting aside its willful blindness to all the laws cited throughout complaint, this kind of argument—"We aren't liable because we relied on state law"—should carry little force; if violating civil rights in reliance on state law is an element in a § 1983 claim, it can't also be a defense.

Appointing O'Shea to serve as assistant prosecutor therefore violated a variety of City laws—and her contract with the City— providing additional bases for concluding that O'Shea was not a public official and is therefore not entitled to absolute immunity.

### 3. Because Defendant Lane was conflicted out of the Hinners prosecution, she was not acting pursuant to statutory authority when she hired O'Shea.

Under Ohio Prof. Cond. R. 1.7, a lawyer may not represent a client if "there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited . . . by the lawyer's own personal interests." Defendant Lane was conflicted out of the Hinners prosecution because she had exposed herself, her firm, and the City to civil liability—and criminal liability, under Ohio Rev. Code § 2921.45—by directing or approving Mrs. Hinners's arrest. She had an interest in seeing Mrs. Hinners convicted to avoid that liability and the damage it could do to her career. Further, she was present when Mrs. Hinners was arrested and was therefore a witness, subject to disqualification under Ohio Prof. Cond. R. 3.7. Those conflicts

---

[41] Mot. for J. on the Pleadings at 18.

prohibited her from representing the City in the Hinners prosecution, so Lane was again acting outside her statutory authority when she hired O'Shea.

**C.      Because Defendant Lane appointed Defendant O'Shea in violation of Mrs. Hinners's due-process rights, she did not act pursuant to statutory authority when she hired him.**

When police seek to prosecute a defendant, due process demands the use of a disinterested prosecutor, as "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision."[42] "A prosecutor may be tempted to bring a tenuously supported prosecution if such a course promises financial or legal rewards for the private client."[43] "The Court has yet to precisely define the constitutional limits 'on a financial or personal interest of one who performs a prosecutorial function,'"[44] but the line lies somewhere between cases where the prosecutor's interest in the proceedings is "exceptionally remote"[45] and those where he has a "substantial pecuniary interest."[46]

The U.S. Supreme Court has therefore held that while it was not a due-process violation for an administrative prosecutor to prosecute cases where the resulting fines would find their way back to his employing agency,[47] it was a due-process violation for a state optometry board to prosecute and adjudicate charges whose success would drive up demand for the board members' services and "possibly redound to [their] personal benefit."[48] The O'Shea's appointment is closer to the latter case. Unlike the administrative prosecutors, he has a financial interest in the Hinners prosecution that cannot be said to be in any way "remote." Instead, he continues reaping a financial windfall as

---

[42] *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987).

[43] *Id.* at 805.

[44] *Condon v. Wolfe*, No. 1:03CV897, 2006 WL 8437981, at *13 (S.D. Ohio May 25, 2006).

[45] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (1980).

[46] *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973).

[47] *Marshall*, 446 U.S. 238.

[48] *Gibson*, 411 U.S. at 578.

long as he can keep it alive, no matter how thinly supported. This arrangement creates a graver constitutional threat than those the Supreme Court has invalidated: The Hinners prosecution did not offer a mere possibility of legal rewards for his employer; it guaranteed financial rewards to O'Shea personally, giving him a forbidden "substantial pecuniary interest."[49]

Even if Lane had statutory authority to appoint O'Shea under these circumstances, whatever statute purported to do so was unconstitutional. Lane therefore did not appoint O'Shea pursuant to valid statutory authority, and O'Shea is not entitled to absolute immunity.

### D.     Because Defendant O'Shea's liability is based in part on non-prosecutorial acts, he is not protected by absolute immunity.

A prosecutor is immune to damages under 42 U.S.C. § 1983 when he acts "within the scope of his duties in initiating and pursuing a criminal prosecution."[50] That immunity is narrowly defined and available only in actions based on conduct "intimately associated with the judicial phase of the criminal process."[51] It is not available for constitutional violations arising from conduct that is not "intimately associated with the judicial phase of the criminal process."[52] It does not relieve a defendant of liability incurred, for instance, while acting as an administrator, investigating a crime, or discussing a case with the media,[53] to advising police investigating a crime,[54] to swearing to the facts supporting a warrant,[55] to filing a civil suit,[56] or to covering up a crime.[57]

---

[49] *Gibson*, 411 U.S. at 579.

[50] *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976) (emphasis added).

[51] *Burns v. Reed*, 500 U.S. 478, 480 (1991).

[52] *Id.* at 480.

[53] *Buckley*, 509 U.S. at 273–77.

[54] *Burns*, 500 U.S. at 480.

[55] *Kalina*, 522 U.S. at 122–23.

[56] *Stapley*, 733 F.3d at 811.

[57] *Ryland*, 708 F.2d 967.

Were O'Shea eligible for immunity, that shield would protect him from liability flowing exclusively from his in-court conduct, but the Complaint alleges that he violated Mrs. Hinners's rights through all manner of activities separate from the judicial phase of the criminal process. He investigated her "crime."[58] He advised the police to file charges.[59] He discussed the case with the media.[60] He collaborated with Defendant Lane, who was not acting as a prosecutor.[61] He collaborated with the City's civil-defense firm to mitigate liability associated with the Hinners matter.[62] He dispatched his attorney to threaten criminal charges if Mrs. Hinners continued petitioning the government to redress her grievances.[63]

Because none of these actions are part of, let alone intimately associated with, the judicial phase of the criminal process, prosecutorial immunity does not protect O'Shea from liability.

### E.      None of Defendant O'Shea's authorities offer any basis for granting absolute immunity.

O'Shea also offers a back-up argument that absolute-immunity precedent "makes no distinction between a traditional prosecutor employed by the State and a private attorney appointed as a prosecutor." This argument is thinly developed, but the few cases O'Shea offers highlight the dearth of support for this proposition. He relies primarily on *Filarsky v. Delia*,[64] but the private attorney in that case was only able to get qualified immunity.[65] His second case, *SBT Holdings, LLC v.*

---

[58] First Am. Compl., ¶ 211.

[59] *Id.* at ¶ 198. Defendant O'Shea misrepresents this Court's own holdings back to it, suggesting that it decided in *Peroli v. Cty. of Medina*, No. 1:19CV1755, 2020 WL 2405354 (N.D. Ohio May 12, 2020), that directing the police to file charges is not legal advice and is therefore protected by absolute immunity. Instead, the Court found that the plaintiffs in that case "waived any such argument by repeatedly insisting in their briefing that Huber did **not** provide legal advice to the County." Mr. and Mrs. Hinners insist the opposite.

[60] First Am. Compl., ¶ 105.

[61] *Id.* at ¶ 140–43.

[62] *Id.* at ¶ 144–46.

[63] *Id.* at ¶ 252–55.

[64] 566 U.S. 377, 377 (2012).

[65] *Filarsky*, 566 U.S. at 392–94 ("[G]overnment employees performing such work are entitled to seek the protection of qualified immunity.").

*Town of Westminster*,[66] explicitly makes the distinction that O'Shea says doesn't exist. Noting that "absolute immunity is 'rare and exceptional,'" *SBT Holdings* acknowledged that "courts have denied absolute immunity to a private attorney ostensibly acting on behalf of a government agency [when] the lawyers involved held no actual public office," as is the case with O'Shea.[67] While the private attorney in *SBT Holdings* case did enjoy absolute immunity, it was because he, unlike O'Shea, held an actual public office as town counsel.[68] O'Shea's only case that agrees with him is an unreported, out-of-circuit decision that granted a private attorney absolute immunity without questioning whether that protection was actually available and without relying on a single precedent.[69] How or why any court should rely on it as persuasive, O'Shea never says.

Had O'Shea engaged controlling precedents or analogous cases, his argument would look quite different. First, he would have to find a way around the Sixth Circuit's crystal-clear answer to the exact question he raises: "Private attorneys who allegedly engage in unconstitutional conduct while acting under color of state law *are not entitled to immunity*."[70] To do so, he would have to satisfy the Sixth Circuit's two-step test for determining whether a private defendant was entitled to immunity. That test asks two questions: "(1) whether 'there was a firmly rooted history of immunity for similarly situated parties at common law'; and (2) 'whether granting immunity would be consistent with the history and purpose of § 1983.'"[71]

---

[66] 541 F. Supp. 2d 405, 415 (D. Mass.).

[67] *SBT Holdings, LLC*, 541 F. Supp. 2d at 414 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)).

[68] *SBT Holdings, LLC*, 541 F. Supp. 2d at 414 ("At all relevant times, attorney Alan Seewald of SJS was Westminster's Town Counsel. The position of Town Counsel was created by municipal statute, and the person holding that office is appointed on a year-by-year basis.").

[69] *Redlich v. Leen*, No. 16-CIV-20001, 2016 WL 3670575, at *5 (S.D. Fla. May 20, 2016) ("Mr. Guarch is entitled to absolute immunity.").

[70] *Cooper*, 203 F.3d at 950 (emphasis added). *See also Cullinan v. Abramson*, 128 F.3d 301, 309 (6th Cir. 1997) (granting qualified, rather than absolute, immunity to private attorneys).

[71] *Lee v. Willey*, 543 F. App'x 503, 505 (6th Cir. 2013).

O'Shea answers neither question; perhaps because the answers to both are fatal to his quest for immunity. None of the cases he cites hold that private attorneys contracted to prosecute a single case are entitled to absolute immunity, let alone that such immunity is supported by a "firmly rooted history." To make that showing, the Sixth Circuit requires cases demonstrating that "a person in the same position … would have been immune from liability under the common law of the late Nineteenth Century."[72] O'Shea offers no cases demonstrating that courts in the late 1800s would have granted him the same absolute immunity as real prosecutors.

Nor does O'Shea have any support on the second prong. The purpose of § 1983 is "to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'"[73] Granting O'Shea immunity would do nothing to protect anyone from his unconstitutional actions. Even the purposes of absolute immunity—laid out in *Imbler*—would be ill served by an extension to private prosecutors hired to facilitate First Amendment retaliation. Such cases cannot be "be expected with some frequency."[74] Because private attorneys carry private insurance, they need not constrain themselves for fear of "potential liability in a suit for damages."[75] And the Court need not worry that lawyers in O'Shea's position "would be diverted from the pressing duty of enforcing the criminal law;"[76] because such private actors are not generally responsible for enforcing criminal laws; even the few prosecutions they are responsible for could not be disrupted, as they must terminate in the plaintiffs' favor before a malicious-prosecution claim could even be filed.

---

[72] *McCullum v. Tepe*, 693 F.3d 696, 702 (6th Cir. 2012) (finding that historical analyses relying on 20th-century precedents are "suspect, at best").

[73] *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (allowing § 1983 claims against prosecutor for First Amendment violations).

[74] *Imbler*, 424 U.S. at 425.

[75] *Id.* at 424–25.

[76] *Id.* at 425.

O'Shea's arguments for absolute immunity are at odds with themselves, with controlling precedent from the Sixth Circuit, and with the allegations in the Complaint. The Court should deny his motion for judgment on the pleadings.

## II. Because he has not invoked it, Defendant O'Shea has waived the defense of qualified immunity.

To invoke a defense, a defendant must do more than say that it exists and applies to him. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."[77] In *Evans v. Vinson*,[78] for instance, an inmate brought § 1983 claims against prison officials who violated his First and Fourth Amendment rights. The officials invoked qualified immunity, but Sixth Circuit said the district court could not grant it where their argument consisted of only "a one-and-a-half-page statement of the law with no attempt at argument."[79]

O'Shea's motion makes the *Evans* defendants look positively garrulous, as it is peppered with a mere three sentences in support of qualified immunity:

- "Qualified immunity applies to a prosecutor's activities relating to 'the investigative functions normally performed by a detective or police officer' such as 'searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'"[80]

---

[77] *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (cleaned up).

[78] 427 F. App'x 437 (6th Cir. 2011).

[79] *Evans*, 427 F. App'x at 447. See also *Lipman v. Budish*, No. 19-3914, 2020 WL 5269826, at *17 (6th Cir. Sept. 4, 2020) (denying immunity because "nowhere, either in the district court or on appeal, do Defendants address qualified immunity with respect to Ta'Naejah's interviews or whether the right against such a state-created danger was clearly established law."); *Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492, 503 (6th Cir. 2011) (denying immunity because police officer defendants "have not developed any argument as to why it was reasonable to arrest Clark for this crime"); *Leary v. Livingston Cty.*, 528 F.3d 438, 449 (6th Cir. 2008) (denying immunity because police officer defendant "does not suggest how such a standard is applicable to him and has thus waived the argument.").

[80] O'Shea Mot. for J. on the Pleadings, at 11–12.

- "To the extent Plaintiffs' claims are not barred by absolute immunity, they are barred by qualified immunity."[81]
- "At a minimum, Plaintiffs' claims are barred by qualified immunity"[82]

To the extent O'Shea discusses the law at all, he can't even be troubled to disclose the standard for qualified immunity. He doesn't so much as utter the phrase "clearly established," let alone offer a fact or precedent suggesting that he couldn't possibly have known that he wasn't supposed to prosecute Mrs. Hinners for engaging in protected speech. And his analysis consists only of two bare assertions that he is protected by immunity, supported by exactly zero facts.

Because O'Shea offers only a perfunctory invocation of qualified immunity and fails to offer any developed argument, he has waived the issue. Even if he were to develop it on reply, it would be too late, as defenses are waived "when they are raised for the first time in motions requesting reconsideration or in replies to responses."[83]

## III.    Because the Complaint plausibly alleges that he prosecuted Mrs. Hinners on charges no one else has ever faced, Defendant O'Shea is not entitled to judgment on Claim 1 for selective prosecution.

To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate (1) that the government treated the plaintiff disparately as compared to similarly situated persons; and (2) that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.[84]

Mrs. Hinners has done all this and more. She alleged that Defendants prosecuted her for conduct that it has permitted from dozens of similarly situated people under identical circumstances.[85] She alleged that their disparate treatment burdened her fundamental rights, that it

---

[81] O'Shea Mot. for J. on the Pleadings, at 13, n. 3.
[82] O'Shea Mot. for J. on the Pleadings, at 19.
[83] *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).
[84] *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 298 (6th Cir. 2006).
[85] First Am. Compl., ¶¶ 111–15.

targeted her as a member of a suspect class of political opponents, and that there was no rational basis for it.[86] But O'Shea suggests these allegations are insufficient because Mrs. Hinners "has not alleged that she is part of an identifiable group."[87] He is wrong on the facts and on the law. Mrs. Hinners has identified herself as a member of several groups relevant to this claim: the Hinners family,[88] opponents of Defendants' political goals;[89] and the activists Defendant White dubbed the "Bad Group."[90] But these allegations are beside the point, as group membership isn't a necessary element of an equal-protection claim. Mrs. Hinners can proceed instead by alleging Defendants treated her differently from similarly situated individuals without an adequate justification.[91] She has done that, supplying and incorporating into her First Amended Complaint video recordings proving disparate treatment.[92]

As with qualified immunity, O'Shea offers no explanation of how this supposed requirement works or how it applies to Mrs. Hinners, and he has therefore waived it. Most likely, he is confusing the standard for an equal-protection claim under § 1983 with the standard for class-based conspiracy claims under § 1985(3)—or simply inventing new elements that might help him avoid accountability. Either way, the Sixth Circuit explicitly rejects his argument: "Membership in a protected class triggers heightened review, which is frequently determinative of success on the merits; but it should

---

[86] *Id.* at ¶ 418.

[87] O'Shea Mot. for J. on the Pleadings, at 20.

[88] First Am. Compl., ¶ 433.

[89] *Id.*

[90] *Id.* at ¶ 32.

[91] *Ziss Bros. Const. Co. v. City of Indep., Ohio*, 439 F. App'x 467, 475 (6th Cir. 2011) ("To prevail on an equal protection claim a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.").

[92] First Am. Compl., ¶ 258.

not be mistaken for a prerequisite to stating a claim in the first place."[93] And even if a protected class were required, Mrs. Hinners has adequately pleaded that, too.[94]

Because Mrs. Hinners has adequately pleaded her claim for selective enforcement, O'Shea is not entitled to judgment on the pleadings.

## IV. Because the Complaint plausibly alleges the Hinners prosecution was a punishment for protected speech, Defendant O'Shea is not entitled to judgment on Claim 3 for prior restraints or on Claims 11–14 for First Amendment retaliation.[95]

Prior restraints are "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."[96] Because prior restraints pose such a grave threat, the Sixth Circuit warns courts against "overly formalistic" applications of this standard.[97] "When an officer carries a badge of authority of the government and represents it in some capacity, his order to a private party to take a specific action may fairly be called an administrative order."[98] But the order constituting the prior restraint need not be binding, nor must it *explicitly* forbid speech; a threat to punish speech is sufficient.

For instance, in *Novak v. City of Parma*, the police announced and followed through on plans to prosecute a man who made fun of them on Facebook. The police sought to dismiss his prior-restraint claim, arguing that a press release threatening to prosecute him for the jokes he had already published did not constitute a prior restraint. The court rejected his motion, and the Sixth Circuit

---

[93] *Franks v. Rubitschun*, 312 F. App'x 764, 765 (6th Cir. 2009).

[94] Mr. and Mrs. Hinners's opposition (ECF #59-2 at 8–11) to Defendant Walter Haverfield LLP's motion to dismiss lays out in detail their arguments regarding their status as a protected class, which they incorporate here by reference.

[95] Because Defendant O'Shea's treatment of these claims is so cursory, it so not clear which parts of his argument are directed at which of the five analytically distinct claims he crams under a single heading. Given the absence of any discussion of the standards for any of the other specific types of First Amendment–retaliation claims, it appears he is solely concerned with the prior-restraint claim (Claim 3).

[96] *Alexander v. United States*, 509 U.S. 544, 550 (1993).

[97] *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019).

[98] *Novak*, 932 F.3d at 433.

affirmed, holding that that press-release allegation was sufficient: "[A] threat of prosecution can trigger a prior restraint, even if the threat is non-binding."[99]

Here, O'Shea admits that he was appointed to serve as a prosecutor and represented the government in some capacity.[100] And the Complaint alleges numerous orders to stop engaging in First Amendment protected speech, including his demand that people opposed to prosecuting Mrs. Hinners stop telling him so.[101] In that case, he explicitly framed his communication as an order, telling protestors that it was "imperative" that they stop telling him that he was violating the First Amendment. The Complaint also alleges that that he threatened to refile charges against Mrs. Hinners[102] and that he threatened to treat further calls for his removal from office as "obstruction of justice."[103] As in *Novak*, O'Shea threatened to prosecute Mrs. Hinners for her speech, which the Sixth Circuit recognizes as a prior restraint.

O'Shea objects that he couldn't have possibly restrained any speech because he didn't show up until after Mrs. Hinners made the speech that resulted in her arrest. This narrow approach flies in the face of all of prior-restraint law. Ideas and beliefs are not paper napkins that get discarded after their first use; they are repeated, refined, and developed over time, so punishing an idea once is likely to restrain it from showing up again. Because O'Shea was participating in a campaign to retaliate based on Mrs. Hinners's lawsuit and speech to council, he was likely to—and did—chill her future speech. As alleged in the Complaint, she no longer speaks at council meetings and has stopped publicly commenting on City business altogether. Indeed, she has written new material about goings-on in the city, but she has not published them for fear of further retaliation.[104]

---

[99] *Novak*, 932 F.3d at 433.

[100] Answer of O'Shea at 137 (ECF #33).

[101] First Am. Compl., ¶ 191.

[102] *Id.* at ¶ 235.

[103] *Id.* at ¶¶ 252–54.

[104] *Id.* at ¶ 244.

The Complaint alleges that O'Shea used his government authority to order people to stop talking and to make threats of prosecution also designed to stop people from talking. It therefore plausibly alleges multiple prior restraints, and O'Shea is not entitled to judgment on the pleadings.

## V.  Because the Complaint plausibly alleges a malicious prosecution, Defendant O'Shea is not entitled to judgment on Claim 15 for malicious prosecution.

Mrs. Hinners's claim for Fourth and Fourteenth Amendment malicious prosecution requires her to allege: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused."[105] O'Shea disputes whether several allegations are sufficient to defeat his attempt to shield himself with absolute immunity, but he disputes only one element of the claim on substance, arguing that the Hinners prosecution was supported by probable cause. As with qualified immunity and the identifiable-group requirement, he fails to make any argument supporting the existence of probable cause and has therefore waived that argument.

Even if he had, the existence of probable cause is a jury question, so any argument would not entitle him to judgment on the pleadings.[106] Further, the Complaint plausibly alleges the absence of probable cause. Mrs. Hinners laid out the arguments against granting judgment based on probable cause more fully in her opposition to the City's motion for judgment on the pleadings, and she incorporates those arguments here by reference.[107]

---

[105] O'Shea Mot. for J. on the Pleadings, at 21.

[106] *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) ("[T]he existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.").

[107] ECF #67 at 10–20.

VI.     **Because the Complaint plausibly alleges he agreed with his co-defendants to prosecute Mrs. Hinners for protected speech, Defendant O'Shea is not entitled to judgment on Claims 19, 23, or 28 for conspiracy.**

"It is well-settled that conspiracy claims must be pled with some degree of specificity."[108] To satisfy this low standard, a plaintiff may rely only on circumstantial evidence, as long as it moves beyond "vague and conclusory allegations unsupported by material facts."[109]

O'Shea says the Complaint fails to meet this low bar, but—as with qualified immunity, the identifiable-group requirement, and probable cause—he waived this defense because he offers no real argument for why anyone should believe it. He does not identify any allegations that are too "vague and conclusory" to support these claims, nor does he suggest that the facts as alleged are insufficient to give rise to a conspiracy. And of course, the Complaint is full of information documenting the conspiracy to pursue the Retaliation Campaign in general,[110] as well as O'Shea's participation specifically.[111]

Because the Complaint plausibly alleges that O'Shea agreed to help deprive Mr. and Mrs. Hinners of their constitutional rights, he isn't entitled to judgment on the conspiracy claims.

VII.    **Because the Complaint plausibly alleges participation in various crimes, Defendant O'Shea is not entitled to judgment on Claim 32—civil liability for criminal acts.**

Ohio Rev. Code § 2307.60 "creates a statutory cause of action for damages resulting from any criminal act."[112] O'Shea argues the statute doesn't apply to him because he "has not been charged or convicted of any of these criminal statutes."[113] But staying cozy enough with law enforcement to avoid prosecution has never been a defense to a claim under Ohio Rev. Code

---

[108] *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

[109] *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020).

[110] *See, e.g.*, First Am. Compl., ¶ 266.

[111] *See, e.g.*, *Id.* at ¶ 3, 144–146, 173, 196, 230.

[112] *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 400 (2016).

[113] O'Shea Mot. for J. on the Pleadings, at 27.

§ 2307.60. As the Ohio Supreme Court held, directly on point, before O'Shea invoked this discredited defense, "the plain language does not require a criminal conviction as a prerequisite for civil liability."[114] O'Shea apparently believes that he is somehow an exception, but he chooses not to say how or why. As with qualified immunity, the identifiable-group requirement, probable cause, and the heightened pleading standard for conspiracy claims, he has waived this defense—whatever it may be—by refusing to explain how it works or why it applies to him.

Perhaps O'Shea also argues that he is entitled to absolute prosecutorial immunity, but federal immunity doctrine in the § 1983 context does not create a defense to claims under state law.[115] Indeed, the U.S. Supreme Court has rejected absolute immunity as a defense to legislatively criminalized conduct: "[W]e have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivation of constitutional rights. … On the contrary, the judicially fashioned doctrine of official immunity does not reach 'so far as to immunize criminal conduct proscribed by an Act of Congress.'"[116]

Perhaps O'Shea intended to invoke a statutory immunity or some immunity available at common law in Ohio, but—as with qualified immunity, the identifiable-group requirement, probable cause, the heightened pleading standard for conspiracy claims, and the Ohio Rev. Code § 2307.60 exception for unconvicted criminals—he offers no explanation why he should enjoy this defense. Because his legal analysis on this issue consists of only a single sentence—"Mr. O'Shea is entitled to

---

[114] *Buddenberg v. Weisdack*, No. 2018-1209, 2020 WL 4341889, at *4 (Ohio July 29, 2020).

[115] *Griffin v. Kyle*, No. 2:10-CV-664, 2011 WL 2885007, at *3 (S.D. Ohio July 15, 2011), *report and recommendation adopted,* No. 2:10-CV-664, 2011 WL 3667401 (S.D. Ohio Aug. 22, 2011) (Qualified immunity "is a potential defense to claims based on federal law … [but] has no application to state law claims.").

[116] *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974).

absolute immunity"—Mr. and Mrs. Hinners are unable to address the argument, the Court is unable to analyze it, and O'Shea has waived it.

Finally, O'Shea also offers a strange argument that Mr. and Mrs. Hinners "make no allegations" raising a plausible inference that he violated any of the statutes listed in Claim 32.

It is correct that Mr. and Mrs. Hinners do not allege that he violated *all* those statutes—the unlawful-restraint statute, for instance, only directly applies to Defendants Orzech and Koehler—but the Complaint is teeming with allegations supporting a claim for liability on other offenses. Most obvious are the allegations that O'Shea violated state and federal civil-rights statutes, including 18 U.S.C. § 241, 18 U.S.C. § 242 and Ohio Rev. Code § 2921.45, supported by extensive allegations that he participated in a retaliatory prosecution,[117] that he continued the prosecution even after learning he was being used to selectively prosecute a political opponent,[118] that he coordinated with his co-defendants to further their attempts to retaliate against Mrs. Hinners,[119] that he sought to chill her speech by holding out the possibility of a renewed prosecution,[120] and that he threatened her with criminal prosecution if she continued to petition the government for redress of her grievances.[121] The Complaint includes allegations supporting a variety of other charges, as well:

- O'Shea violated Ohio Rev. Code § 2921.03 when he sought to influence the state-court judge with materially false statements, including a stipulation that Mrs. Hinners's arrest was supported by probable cause and court filings suggesting that Mrs. Hinners was not entitled to dismissal or a pretrial determination of her First Amendment rights.[122]

- O'Shea violated Ohio Rev. Code § 2921.04 when he attempted to intimidate Mrs. Hinners, the victim of his co-defendants' violation of Ohio Rev. Code § 2921.45, by

---

[117] First Am. Compl., ¶ 173.

[118] *Id.* at ¶ 4.

[119] *Id.* at ¶¶ 142–46.

[120] *Id.* at ¶ 105.

[121] *Id.* at ¶¶ 252–54.

[122] *Id.* at ¶ 194–97, 215–18.

filing unsupported criminal charges against her and when he sought to intimidate her attorneys with threats of criminal charges.[123]

- O'Shea violated Ohio Rev. Code § 2921.05 when he retaliated against Mrs. Hinners's attorneys by threatening criminal charges for asserting her First Amendment right to petition the government.[124]

- O'Shea violated Ohio Rev. Code § 2921.13 when he falsely incriminated Mrs. Hinners by telling an officer that there was probable cause to charge her with obstructing official business.[125]

- O'Shea violated Ohio Rev. Code § 2921.32 when, with purpose to hinder his co-defendants' punishment for violations of civil rights, he communicated to Defendant Orzech false information falsely told about the existence of probable cause to charge Mrs. Hinners with obstructing official business.[126]

- O'Shea violated Ohio Rev. Code § 2921.44 when he failed to halt the commission of the offense of violation of civil rights and dismiss the criminal charges against Mrs. Hinners.[127]

O'Shea may be unable or unwilling to identify which facts support this claim against him, but the Court need not indulge his denialism. The Complaint is loaded with allegations plausibly supporting the claim for civil liability based on criminal acts, and he is therefore not eligible for judgment on Claim 32.

## Conclusion

Courts do not extend absolute immunity to anyone who comes asking; it is reserved for properly appointed governmental officials exercising prosecutorial functions. But when Defendant O'Shea contracted to prosecute Mrs. Hinners, he agreed to a funding system that skirted a system to designed to maintain his independence, and he began performing without taking an oath designed to focus him on his obligations to do justice and to vindicate Mrs. Hinners's civil rights. No one should be surprised that the prosecution never turned into anything more than an extension of the

---

[123] *Id.* at ¶ 194–200.

[124] *Id.* at ¶ 252.

[125] *Id.* at ¶ 198.

[126] *Id.*

[127] *Id.* at ¶ 202–03.

Retaliation Campaign from which it was born. He is not entitled to absolute immunity—nor any of

the other relief he requests—so the Court should deny his motion for judgment on the pleadings.

October 7, 2020                                            Respectfully submitted,

                                                           */s/ Brian D. Bardwell*
                                                           Subodh Chandra (0069233)
                                                           Brian D. Bardwell (0098423)
                                                           The Chandra Law Firm LLC
                                                           The Chandra Law Building
                                                           1265 West Sixth Street, Suite 400
                                                           Cleveland, OH 44113
                                                           T: 216.578.1700
                                                           F: 216.578.1800
                                                           Subodh.Chandra@ChandraLaw.com
                                                           Brian.Bardwell@ChandraLaw.com

                                                           *Counsel for Plaintiffs Stacy and Jason Hinners*