## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| STACY HINNERS, *et al.*, | ) | Case No. 1:19-cv-2868 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. O'SHEA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Jason and Stacy Hinners, two publicly engaged citizens of Huron, Ohio, are staunch critics of the Huron City Council and twice sued the City in 2019 to require the Council to disclose private communication between members and to hold closed meetings publicly.  For purposes of the present dispute, the clash between the Hinnerses and the City Council came to a head on May 19, 2019 when Mrs. Hinners attended a City Council meeting and was arrested after speaking during the public-comment session.  As a result, Plaintiffs Stacy and Jason Hinners filed this lawsuit, asserting nearly three dozen claims, primarily brought under the First Amendment, against twelve Defendants.  Pending before the Court are six motions, including Mr. Hinners's motion to voluntarily dismiss two claims (ECF No. 78), Defendant Michael O'Shea's motions to strike (ECF No. 64) and for judgment on the pleadings (ECF No. 63), Defendant Aimee Lane's motion for judgment on the pleadings (ECF No. 51), Defendant Walter Haverfield's motion to dismiss (ECF No. 46), and a motion for judgment on the pleadings filed by nine Defendants associated

with  the City of Huron (collectively, the "City Defendants") (ECF No. 55).  For the reasons that follow, the Court **GRANTS** Mr. Hinners's motion to dismiss, Mr. O'Shea's motions to strike and for judgment on the pleadings, Ms. Lane's motion for judgment on the pleadings, and Walter Haverfield's motion to dismiss, and **GRANTS IN PART** and **DENIES IN PART** the City Defendants' motion for judgment on the pleadings.

## STATEMENT OF RELEVANT FACTS

Relying on the 103 exhibits attached to the amended complaint and taking the facts alleged in the amended complaint as true and construing them in Plaintiff's favor, as the Court must on the motions before it, the Court addresses Plaintiffs' claims based on the following relevant facts.

### A.  Stacy and Jason Hinners Criticize City of Huron Officials

At all relevant times, Stacy and Jason Hinners regularly published news and commentary about Huron city hall and other matters of public concern to a social-media page called "The Talk of Huron."  (ECF No. 31, ¶¶ 26–29, PageID #994–95.) On many occasions, the Hinnerses' posts drew considerable local attention.  (*Id.*, ¶ 29, PageID #995–96.)  Eventually, the Hinnerses began regularly attending and speaking at City Council meetings and using the Ohio Public Records Act to investigate the goings-on at city hall.  (*Id.*, ¶ 31, PageID #997.)  On one occasion, Mr. Hinners sued Huron and won after the City Council refused to turn over internal communications that the Hinnerses requested under the Ohio Public Records Act. (*Id.*, ¶ 35, PageID #997.)  The Hinnerses' roles as watchdogs became so persistent that City Councilman Glen Ginesi approached the Hinnerses' priest and requested

2

that he tell Mr. Hinners that his conduct is "causing problems" and is "non-Christian." (*Id.*, ¶¶ 43–47, PageID #998–99.)

On May 13, 2019, the Hinnerses sued the City, this time under the Open Meetings Act, after they discovered that the council held closed-door meetings regarding the city manager's salary.  The Hinners sought to require the council to conduct the meetings regarding the city manager in public, rather than in private, which the city had previously refused.  (*Id.*, ¶¶ 51–54, PageID #999–1000.)

### B.    Mrs. Hinners Speaks at the Huron City Council Meeting

On May 14, 2019, the day after the Hinnerses filed their lawsuit under the Open Meetings Act, Mrs. Hinners attended the Huron City Council's regular meeting to protest the council's private meetings.  (*Id.*, ¶¶ 51–54, PageID #999–1000.)  During public comment, Mrs. Hinners rose from her seat and spoke to the gallery.  (ECF No. 31-8.)  The mayor at the time, Brad Hartung, a Defendant in this lawsuit, interrupted Mrs. Hinners and told her to speak to council from the podium.  (ECF No. 31-8.)  Mrs. Hinners complied and restarted her speech while facing the gallery instead of the council.  (*Id.*)  As she continued to speak, Mr. Hartung again interrupted her, requesting that she direct her comments toward the council and stating that her conduct was disrespectful to the council.  (*Id.*)  At this point, Mr. Hartung summoned the police to remove Mrs. Hinners, first through the panic button, then by leaving the council's chambers.  (ECF No. 31, ¶¶ 65 & 66, PageID #1001; ECF No. 31-8.)  Upon his return to the council chambers, Mr. Hartung approached Defendant Aimee Lane, the City Law Director, and told her that he

wanted her to charge Mrs. Hinners with disturbing a public meeting.  (ECF No. 31, ¶ 68, PageID #1001.)

Nonetheless, Mrs. Hinners continued her comment and at two minutes and fifty-three seconds (2:53) into her three-minute time allowance, she announced that the council approved payments to City Manager Andrew White behind closed doors. At this point, then-Vice Mayor Trey Hardy, also a Defendant in this lawsuit, cut her off, telling her that her three minutes had expired.  (ECF No. 31-8.)  Despite Mr. Hardy's instruction, Mrs. Hinners requested that the council permit her to speak beyond three minutes as it had for other members of the public.  (*Id.*)  Mr. Hartung rejected her request, again saying that she would be charged with a crime.  (*Id.*) Mrs. Hinners then sat down and remained seated and quiet.

Throughout 2018 and 2019, the City Council normally permitted public-comment speakers to speak from their seats or for longer than the three-minute time limit—at least forty-eight times.  (ECF No. 31, PageID #1008–11.)  In each of these instances, none of these speakers were ejected from the meeting.

### C.    Mrs. Hinners Is Arrested

At least five minutes after Mrs. Hinners sat down—during which time she sat in silence—two police officers, Defendants John Orzech and Kevin Koehler, arrived at the meeting at the instruction of Defendant Police Chief Robert Lippert.  (ECF No. 31-8; ECF No. 31-20.)  Mr. Hartung walked out of the meeting and instructed the officers to arrest Mrs. Hinners.  (ECF No. 31, ¶ 87, PageID #1004; ECF No. 31-8.) Officers Orzech and Koehler tried peaceably to remove Mrs. Hinners from the room;

4

however, after she refused, they pinned her against the wall, handcuffed her, and removed her from the meeting.  (ECF No. 31, ¶ 100, PageID #1005; ECF No. 31-8.)

While these events happened, Mr. Hartung provided several justifications for her arrest, including exceeding her time during the public-comment period, making comments from her seat, grandstanding, making a mockery of the City Council, and ignoring the rules for the public-comment session.  (ECF No. 31, ¶¶ 83, 92, 95, 98 & 105, PageID #1003–06.)  Then-Councilman Rick Schaffter, also a Defendant in this case, later corroborated Mr. Hartung's justifications when he gave a statement to the Huron Police Department.  (ECF No. 31-58.)

### D.  Mrs. Hinners Is Prosecuted

After her arrest, the Huron Police Department charged Mrs. Hinners with disturbing a meeting in violation of Section 509.04 of the Huron Codified Ordinances and resisting arrest in violation of Section 525.09 of the Huron Codified Ordinances. (ECF No. 46; ECF No. 47.)  After the prosecution commenced, Defendant and then-Law Director Aimee Lane, who worked for the City of Huron through her law firm Walter Haverfield, recused herself for potential conflicts of interest if Mrs. Hinners sued her and the City as a result of Mrs. Hinners's arrest on May 14, 2019.  (ECF No. 31, ¶ 19, PageID #992; id., ¶ 122, PageID #1012.)  City prosecutor Michael Kaufman also recused himself because he was Ms. Lane's subordinate.  (Id.)

Ms. Lane ultimately appointed local private attorney Defendant Michael O'Shea to serve as special prosecutor pursuant to Section 2938.13 of the Ohio Revised Code.  (ECF No. 31-48.)  Mr. O'Shea contracted to work as special prosecutor for a fee of $150 per hour.  (Id.)  According to Plaintiffs, Ms. Lane oversaw the criminal case

5

and Mr. O'Shea's conduct while he served as the special prosecutor.  (ECF No. 31, ¶ 141, PageID #1015.)

During Mrs. Hinners's prosecution, there was some dispute between the parties about whether there was probable cause to charge Mrs. Hinners with disrupting official business and resisting arrest and whether the parties might enter into a plea agreement.  (*Id.*, ¶¶ 204 & 205, PageID #1023.)  Eventually, Mrs. Hinners's counsel moved the municipal court to investigate whether the City was selectively prosecuting Mrs. Hinners.  (*Id.*, ¶ 216, PageID #1025.)  But before the municipal court held a hearing on that motion, Mr. O'Shea moved on behalf of the City to dismiss the charges against Mrs. Hinners on the ground that, although he had probable cause to charge Mrs. Hinners, he could not secure his supporting witness for the hearing because the witness was subject to a State criminal investigation. (*Id.*, PageID 1025–26.)  The municipal court granted the City's motion to dismiss without prejudice.  After dismissing the case, Mr. O'Shea told the press that, because the court dismissed the charges without prejudice, he could refile the charges against her, a statement that Mrs. Hinners took as a threat.  (*Id.*, ¶¶ 235 & 240, PageID #1028; ECF No. 31-101.)

## STATEMENT OF THE CASE

Based on these allegations, Plaintiffs assert a total of thirty-three counts—eighteen asserted jointly, thirteen by Mrs. Hinners alone, and three by Mr. Hinners alone.  Twenty-five of those counts are federal claims and eight are state claims. Their claims against the twelve Defendants are as follows:

| Claims by Mr. and Mrs. Hinners | |
|---|---|
| Claim 3:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Speech Clause-Prior Restraint) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |
| Claim 9:<br>42 U.S.C. § 1983—First Amendment Deprivation (Establishment Clause) | Against:<br>• City of Huron<br>• Mr. Ginesi (individual capacity) |
| Claim 10:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Exercise Clause) | Against:<br>• City of Huron<br>• Mr. Ginesi (individual capacity) |
| Claim 11:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Speech Clause) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |
| Claim 12:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Press Clause) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |
| Claim 13:<br>42 U.S.C. § 1983—First Amendment Retaliation (Assembly Clause) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |

| | |
|---|---|
| Claim 14:<br>42 U.S.C. § 1983—First Amendment Retaliation (Petition Clause) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |
| Claim 18:<br>42 U.S.C. § 1983—Failure to Intervene | Against:<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler (individual and official capacities) |
| Claim 19:<br>42 U.S.C. § 1983—Civil Conspiracy | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |
| Claim 20:<br>42 U.S.C. § 1983—Municipal Liability (Authorized Action) | Against:<br>• City of Huron |
| Claim 21:<br>42 U.S.C. § 1983—Municipal Liability (Unconstitutional Policy) | Against:<br>• City of Huron |
| Claim 22:<br>42 U.S.C. § 1983—Municipal Liability (Failure to Train/Supervise) | Against:<br>• City of Huron |

| | |
|---|---|
| Claim 23:<br>42 U.S.C. § 1985(3)—Conspiracy to Violate Civil Rights | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities)<br>• Walter Haverfield |
| Claim 24:<br>42 U.S.C. § 1983—Supervisory Liability | Against:<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert (individual and official capacities) |
| Claim 28:<br>State-Law Civil Conspiracy | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities)<br>• Walter Haverfield |
| Claim 29:<br>State-Law Negligent and Reckless Hiring/Retention/Supervision | Against:<br>• City of Huron,<br>• Ms. Lane (individual capacity)<br>• Walter Haverfield |
| Claim 31:<br>Record Destruction—Ohio Rev. Code § 149.351 | Against:<br>• City of Huron<br>• Chief Lippert, Officer Orzech (individual and official capacities) |
| Claim 32:<br>Civil Liability for Criminal Acts—Ohio Rev. Code § 2307.60 | Against:<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |

| Claims by Mrs. Hinners | |
|---|---|
| Claim 1:<br>42 U.S.C. § 1983—Equal Protection (Selective Prosecution) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane (individual capacities)<br>• Chief Lippert, Officer Orzech, Officer Koehler, O'Shea (individual and official capacities) |
| Claim 2:<br>42 U.S.C. § 1983—First Amendment Retaliation (Arrest) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane (individual capacities)<br>• Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |
| Claim 4:<br>42 U.S.C. § 1983—As Applied Challenge to Huron Codified Ord. § 509.04 (First Amendment) | Against:<br>• City of Huron<br>• Mr. O'Shea (official and individual capacity) |
| Claim 5:<br>42 U.S.C. § 1983—As Applied Challenge to Huron Codified Ord. § 525.07 (First Amendment) | Against:<br>• City of Huron<br>• Mr. O'Shea (official and individual capacity) |
| Claim 6:<br>42 U.S.C. § 1983—As Applied Challenge to Huron Codified Ord. § 525.07 (Fifth Amendment) | Against:<br>• City of Huron<br>• Mr. O'Shea (official and individual capacity) |
| Claim 15:<br>42 U.S.C. § 1983—Malicious Prosecution (Fourth Amendment) | Against:<br>• City of Huron,<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler, Mr. O'Shea (individual and official capacities) |

| | |
|---|---|
| Claim 16:<br>42 U.S.C. § 1983—Fourth Amendment Violation (Excessive Force) | Against:<br>• City of Huron<br>• Officer Orzech and Officer Koehler (individual and official capacities) |
| Claim 17:<br>42 U.S.C. § 1983—Fourth Amendment Violation (False Arrest) | Against:<br>• City of Huron<br>• Mr. Hartung, Mr. White, Ms. Lane (individual capacities)<br>• Chief Lippert, Officer Orzech, Officer Koehler (individual and official capacities) |
| Claim 25:<br>Assault | Against:<br>• Officer Orzech, Officer Koehler (individual and official capacities) |
| Claim 26:<br>Battery | Against:<br>• Officer Orzech, Officer Koehler (individual and official capacities) |
| Claim 27:<br>False Imprisonment | Against:<br>• Officer Orzech, Officer Koehler (individual and official capacities) |
| Claim 30:<br>Spoilation | Against:<br>• City of Huron<br>• Chief Lippert, Officer Orzech (individual and official capacities) |
| Claim 33:<br>Intimidation—Ohio Rev. Code § 2921.03 | Against:<br>• Mr. Hartung, Mr. White, Ms. Lane, Mr. Ginesi, Mr. Schaffter (individual capacities)<br>• Mr. Hardy (individual and official capacity) |
| **Claims by Mr. Hinners** | |
| Claim 7:<br>42 U.S.C. § 1983—Vagueness Challenge to Huron Codified Ord. § 509.04 (First Amendment) | Against:<br>• City of Huron<br>• Mr. O'Shea (official and individual capacity) |
| Claim 8:<br>42 U.S.C. § 1983—Overbreadth Challenge to Huron Codified Ord. § 509.04 (First Amendment) | Against:<br>• City of Huron<br>• Mr. O'Shea (official and individual capacity) |

There are several pending motions in response to the amended complaint. Plaintiff moves to dismiss without prejudice Claims 7 and 8 against Mr. O'Shea. (ECF No. 78.)  Defendant Michael O'Shea moves to strike the allegations against him in Paragraphs 129 to 134 of the amended complaint (ECF No. 64) and for judgment on the pleadings on all seventeen claims against him—Claims 1–8, 11–15, 19, 23, 28, and 32 (ECF No. 63).  Defendant Aimee Lane moves for judgment on the pleadings on all sixteen claims against her—Claims 1–3, 11–15, 17–19, 23, 24, 28, and 32.  (ECF No. 51.)  The City Defendants—the City of Huron, Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert and Officer Koehler—move for judgment on the pleadings, in whole or in part, on Claims 2, 4–8, 15, 17, 19, 20, 23, 25–29, and 31.  (ECF No. 55.)  Finally, Defendant Walter Haverfield moves to dismiss all three claims against it—Claims 23, 28, and 29.  (ECF No. 46.)  The Court considers each motion in turn.

## ANALYSIS

"The only difference between Rule 12(c) and Rule 12(b)(6)" is timing.  *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003).  Rule 12(c) provides that, once "the pleadings are closed," a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).  Therefore, on a motion under Rule 12(c), courts must follow the same "pleading standards in *Ashcroft*

*v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).

Under this pleading standard, Plaintiffs must allege facts that "state a claim to relief that is plausible on its face" and raise their "right to relief above the speculative level." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Twombly*, 550 U.S. at 570 (citing *Iqbal*, 556 U.S. at 678)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).  But a complaint must offer more than "labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation omitted).  A plaintiff must "plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (cleaned up).  This inference "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.* (citations omitted).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S.

13

at 555.  In short, only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Bates*, 958 F.3d at 480 (quotation and citation omitted).

On motions under both Rule 12(b)(6) Rule 12(c), courts "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein."  *DeShetler v. FCA US LLC*, No. 3:18 CV 78, 2018 WL 6257377, at *4 (N.D. Ohio Nov. 30, 2018) (quotation omitted); *see Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Plaintiffs attached 103 exhibits to their amended complaint, which the Court will consider in resolving the pending motions.

## I.    Defendant O'Shea's Motion to Strike

Defendant O'Shea moves to strike the allegations against him in Paragraphs 129 to 134 of the amended complaint.  (ECF No. 64.)  These paragraphs allege that Mr. O'Shea (1) received an ethical complaint during his 2016 campaign for a seat on the Cuyahoga County Domestic Relations Court; (2) failed to fulfill his continuing-legal-education requirements in 1996 and 2002; and (3) had several tax liens imposed against him.  (ECF No. 31, ¶¶ 129–31, PageID #1013–14.)  Mr. O'Shea argues that these allegations are intended to harass him and are immaterial to the claims against him and the other Defendants.  (ECF No. 64, PageID #2012.)  Plaintiffs argue that (1) Mr. O'Shea's motion is untimely and (2) the allegations support their negligent

14

hiring claim by demonstrating his motive and the foreseeability that he would improperly prosecute Mrs. Hinners. (ECF No. 70, PageID #2094.)

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court, on its own or upon a party's motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike should be granted "where the allegations are clearly immaterial to the controversy or would prejudice the movant." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 865 (N.D. Ohio Nov. 17, 2009) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.")

Plaintiffs rightly point out that Mr. O'Shea's motion is untimely because he moved to strike after he answered the amended complaint. Fed. R. Civ. P. 12(f)(2). Ordinarily, Rule 12(g)(1) requires joining all motions under Rule 12 in a single motion. But the Court may strike allegations in a complaint *sua sponte* under Rule 12(f)(1). "Rule 12(f) permits a court on its own initiative, at any time, to strike redundant, immaterial, impertinent, or scandalous references in a pleading." *Hughes v. Lavender*, No. 2:10-cv-674, 2011 U.S. Dist. LEXIS 79710, at *5 (N.D. Ohio July 20, 2011).

For three reasons, the Court grants the motion and strikes the allegations in Paragraphs 130 to 133 of the amended complaint. First, the allegations regarding

Mr. O'Shea's 2016 campaign bear no relation to his competency as an attorney or the City's alleged negligence in hiring him as a special prosecutor.

Second, the allegations regarding Mr. O'Shea's failure to adhere to the continuing-legal-education requirement in 1996 and 2002 are too far removed in time to have any bearing on his competency as a prosecutor. Plaintiffs do not allege that Mr. O'Shea was out of compliance when he was hired, suggesting that he was in compliance for the fifteen years before his appointment as special prosecutor.

Third, Plaintiffs' allegations regarding the tax liens against Mr. O'Shea are immaterial. Though Plaintiffs suggest that Mr. O'Shea's financial circumstances motivated him to prosecute Mrs. Hinners for a fee from the City of Huron, they fail to allege that Mr. O'Shea had any outstanding or unsatisfied tax liens against him at the time he assumed the role of special prosecutor. In fact, according to Mr. O'Shea, these liens were satisfied in 2014. Without any allegation that Mr. O'Shea was in financial circumstances supporting a motivation along the lines Plaintiffs allege, these allegations amount to speculation that bear no relationship to his service as a special prosecutor.

For these reasons, the Court finds that these allegations are immaterial to Plaintiffs' claims and **STRIKES** Paragraphs 130 to 133 of Plaintiffs' amended complaint (ECF No. 31).

## II.  Plaintiffs' Motion to Dismiss Counts 7 & 8 Against Defendant O'Shea

Plaintiffs move to dismiss Claim 7 (that Section 509.04 of the Huron Codified Ordinances is void for vagueness) and Claim 8 (that Section 509.04 is overbroad) against Defendant O'Shea without prejudice. (ECF No. 78.) They assert that,

16

although Mr. O'Shea no longer serves as a special prosecutor, and so is no longer an appropriate defendant, he could be reappointed to prosecute the Hinnerses, warranting dismissal without prejudice. (ECF No. 78.) Mr. O'Shea requests that the Court dismiss those claims with prejudice, arguing that those claims against him are meritless. (ECF No. 79.)

After a defendant has filed an answer, as occurred here, a plaintiff may obtain a voluntary dismissal "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). This type of dismissal generally is without prejudice. *Id.* Requiring court approval "protect[s] the nonmovant from unfair treatment." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (citation omitted).

Whether to grant dismissal rests "within the sound discretion of the district court." *Id.* (citing *Banque de Depots v. National Bank of Detroit*, 491 F.2d 753, 757 (6th Cir. 1974)). In exercising this discretion, courts consider whether "the defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* (citation and quotation omitted). To determine whether a defendant will suffer plain legal prejudice, a court considers factors such as: (1) "the defendant's effort and expense of preparation for trial," (2) "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action," (3) "insufficient explanation for the need to take a dismissal," and (4) "whether a motion for summary judgment has been filed by the defendant." *Id.* (citation omitted). On the record presented, these factors favor dismissal without prejudice.

### II.A.  Effort and Expense

The effort and expense of preparation for trial weighs in Mr. O'Shea's favor. Although the Court has not scheduled a trial date, and the case has not yet proceeded to the summary judgment stage, Mr. O'Shea answered both the complaint and the amended complaint ([ECF No. 9](); [ECF No. 33]()), moved to strike portions of the amended complaint ([ECF No. 64]()), and moved for judgment on the pleadings ([ECF No. 63]()). Pleading-stage motions in response to Plaintiffs' allegations present no small task: Plaintiffs filed a total of seventeen claims against Mr. O'Shea.  ([ECF No. 31]().)

### II.B.  Delay

Plaintiffs have not unreasonably delayed the prosecution of this action.  They have pleaded their case with supporting evidence, and they sought to dismiss Claims 7 and 8 against Mr. O'Shea five months after the Huron Municipal Court dismissed the criminal charges against Mrs. Hinners.  During those intervening months, Plaintiffs opposed a motion for judgment on the pleadings ([ECF No. 67]()) and Mr. O'Shea's motion to strike ([ECF No. 70]()).  Under these circumstances, any delay has not prejudiced Mr. O'Shea.

### II.C.  Reason for Dismissal

Plaintiffs claim that dismissal without prejudice is proper to permit defendants to protect their interests if Mr. O'Shea again serves in a prosecutorial capacity for the City of Huron.  But Plaintiffs' position is speculative at best.  In addition, the statute of limitations to prosecute Mrs. Hinners has passed.  This factor weighs in favor of dismissal without prejudice because Mr. O'Shea faces little chance of liability under this claim in the future.

## II.D.  Summary Judgment

No party has yet moved for summary judgment, though the parties have engaged in fairly extensive motion practice at the pleading stage.  Further, although there is a fairly substantial record already, the parties have not yet conducted discovery.  The extent of briefing at the pleading stage favors dismissal with prejudice.

*    *    *

On balance, these factors favor dismissal without prejudice, consistent with the presumption in Rule 41(a)(2) of dismissal without prejudice.  Accordingly, the Court **GRANTS** Plaintiffs' motion and **DISMISSES WITHOUT PREJUDICE** Claims 7 and 8 against Defendant O'Shea.

## III.  Defendant Lane's Motion for Judgment on the Pleadings

Defendant and then-Law Director Aimee Lane moves for judgment on the pleadings on the sixteen claims against her.  (ECF No. 51.)  Generally, she argues that (1) she has prosecutorial immunity from Plaintiffs' retaliation, malicious prosecution, and civil conspiracy claims, and (2) Plaintiffs' false-arrest, failure-to-intervene, and negligent-hiring claims fail to state a plausible claim against her. (ECF No. 51-1.)  Plaintiffs oppose Ms. Lane's motion.  (ECF No. 59.)

### III.A. Prosecutorial Immunity

Ms. Lane asserts that she has prosecutorial immunity against the retaliation, malicious-prosecution, and civil-conspiracy claims because each claim either depends on her decision to prosecute Mrs. Hinners or her decision to delegate prosecutorial

authority to Mr. O'Shea—both activities that Ms. Lane asserts are intimately tied to the judicial process. (ECF No. 51-1.) The Court agrees.

When acting within the scope of her prosecutorial duties, a State prosecutor enjoys absolute immunity against civil liability. *Imbler v. Pachtman,* 424 U.S. 409, 420 (1997); *Howell v. Sanders*, 668 F.3d 344, 349–50 (6th Cir. 2012). Defendants bear the burden of establishing absolute immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Howell*, 668 F.3d at 350. Absolute immunity remains "the exception rather than the rule, and has traditionally been reserved for those actors 'intimately associated with the judicial phase of the criminal process.'" *Spurlock v. Satterfield*, 167 F.3d 995, 1003 (6th Cir. 1999) (quoting *Imbler*, 424 U.S. at 430). Generally, "qualified immunity rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns*, 500 U.S. at 486–87; *Spurlock v. Thompson*, 330 F.3d 791, 796 (6th Cir. 2003). For these reasons, courts have "refused to extend [absolute immunity] any further than its justification would warrant." *Burns*, 500 U.S. at 487.

To determine whether a prosecutor acts within the scope of her prosecutorial duties, the Supreme Court uses a functional approach. *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993); *Burns,* 500 U.S. at 486. Under this approach, "the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997) (quotation omitted). In other words, courts look to "'the nature of the function performed, not the identity of the

actor who performed it' when assessing whether conduct is prosecutorial." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (quoting *Buckley* 509 U.S. at 269).  For example, prosecutorial duties involve "initiating and pursuing a criminal prosecution."  *Id.* at 401 (quoting *Imbler*, 424 U.S. at 410).  Investigative or administrative functions do not confer absolute immunity.  *Id.*

Here, the Court determines that Ms. Lane is entitled to absolute immunity for initiating or pursuing the prosecution of Mrs. Hinners.  The amended complaint alleges that Ms. Lane was "a key participant in the decision to pursue charges against Mrs. Hinners" and that she "approved or endorsed the decision to charge Mrs. Hinners" at or after the May 14, 2019 council meeting.  (ECF No. 31, ¶¶ 3 & 69, PageID #990 & 1001.)  The decision to prosecute Mrs. Hinners constitutes a prosecutorial function inherently related to the judicial process, whether Ms. Lane made that decision after Mrs. Hinners's arrest (*id.*, ¶ 3, PageID #990) or on the spot during the council meeting (*id.*, ¶ 69, PageID #1001).

Plaintiffs argue that Ms. Lane had no authority to prosecute Mrs. Hinners because her "authority was limited to civil matters; her contract explicitly excluded litigation from her portfolio, and all prosecutorial authority rested with someone else."  (ECF No. 59-1, PageID #1874.)  Contrary to Plaintiffs' position, the contract between Walter Haverfield and the City of Huron provides that Ms. Lane could provide litigation services and is silent on the delegation of legal duties.  (ECF No. 31-81, ¶ 3.d.)  Further, neither Huron's Charter nor its Administrative Code delegate prosecutorial authority solely to the city prosecutor or require Ms. Lane to

21

receive authorization to exercise prosecutorial authority.  In fact, Section 5.04 of the City Charter states, "where the administrative code is silent, the officers and employees of the city shall have and may exercise all powers and duties provided for similar officers and employees by the state law."

Similarly, the functional approach undermines Plaintiff's argument that their amended complaint intentionally omits allegations that Ms. Lane is a prosecutor. (ECF No. 59-1, PageID #1873.)  The Court does not look at the labels Plaintiffs assign to Ms. Lane but the conduct they attribute to her and whether that conduct is prosecutorial in nature.  Whether Plaintiffs expressly state that Lane "initiated" or "pursued" Mrs. Hinners's prosecution is irrelevant.  Instead, the conduct in which Ms. Lane engaged implies her function, which here is prosecutorial in nature—at least with respect to the retaliation, malicious-prosecution, and civil-conspiracy claims against her.

### III.B. Claims against Ms. Lane

Next, the Court analyzes whether Ms. Lane is entitled to judgment on the pleadings for each of the claims against her.

### III.B.1. Selective Prosecution (Claim 1)

Notwithstanding the allegation that Ms. Lane did not act as a prosecutor, to avoid application of the doctrine of prosecutorial immunity, the amended complaint alleges that Ms. Lane nonetheless engaged in selective prosecution.  (ECF No. 59-1, PageID #1873.)  Prosecutors sued in their individual capacities enjoy immunity against selective-prosecution claims as a matter of law because a prosecutor's decision to prosecute lies at the heart of the claim.  *See Macko v. Byron*, 576 F. Supp.

22

875, 877 (N.D. Ohio Nov. 14, 1983) (recognizing that prosecutors have absolute immunity against selective prosecution claims).  As the Fifth Circuit observed, "any selective prosecution would have occurred within the scope of [the prosecutor's] duties as prosecutor and, therefore, she is absolutely immune in her individual, but not official, capacity from [defendant's] selective prosecution claim." *Hill v. City of Seven Points*, No. 00-41436, 2002 U.S. App. LEXIS 30214, at *25 (5th Cir. 2002).

### III.B.2. Retaliation Claims (Claims 2, 3, 10, 11, 12, 13 & 14)

To establish a First Amendment retaliation claim, Plaintiffs must prove that (1) they engaged in a constitutionally protected activity; (2) the defendant's adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiffs' constitutional rights. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000).

For each retaliation claim, Plaintiffs assert that Ms. Lane's adverse action consisted of charging her with disturbing a lawful meeting, resisting arrest, and obstructing official business.  (ECF No. 31, ¶¶ 266(i)–(k), PageID #1033; *id.*, ¶ 272, PageID #1034; *id.*, ¶ 326, PageID #1041; *id.*, ¶ 334, PageID #1042; *id.*, ¶ 342, PageID #1043; *id.*, ¶ 350, PageID #1044; & *id.*, ¶ 358, PageID #1045.)  Each of these claims fails as a matter of law for the same reason:  each alleges that Ms. Lane's decision to charge or prosecute Mrs. Hinners chilled her and her husband from engaging in protected conduct.  But prosecutors enjoy immunity for their decisions to prosecute because these decisions are intimately related to the judicial process.  *See Lozman v. City of Riviera Beac*h, 138 S. Ct. 1945, 1953 (2018).

23

### III.B.3. Malicious Prosecution (Claim 15)

To state a claim for malicious prosecution, a plaintiff must allege: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016). Again, Ms. Lane has absolute immunity for her decision to initiate or continue a prosecution, even if her decision is malicious or in bad faith. *See Patterson*, 795 F.2d at 557; *Bickerstaff v. Cuyahoga Cnty.*, No. 1:18-CV-01142, 2019 U.S. Dist. LEXIS 181647, at *19, *41 (N.D. Ohio Aug. 12, 2019) (report and recommendation) (recommending that absolute immunity bars malicious prosecution claims against a prosecutor even if the prosecutor acted maliciously or in bad faith).

### III.B.4. Supervisory Liability (Claim 24)

As part of their retaliation claims, Plaintiffs allege that Ms. Lane failed to "supervise, control, or train other defendants" to ensure that they did not retaliate against Plaintiffs for exercising their constitutional rights. (ECF No. 31, ¶ 443, PageID #1055.)

Because Ms. Lane served the City of Huron as its Law Director, and the Huron Charter limits her duties to those handled within Huron's Department of Law, the Court interprets this claim as seeking to hold Ms. Lane accountable for Mr. O'Shea's conduct as a special prosecutor. Plaintiffs do not allege that Ms. Lane maintained a supervisory role over any other Defendant or that she directed any Defendant other than Mr. O'Shea to violate Plaintiffs' rights. Regarding Mr. O'Shea, Plaintiffs allege throughout their amended complaint that Ms. Lane supervised or asserted control

over Mr. O'Shea and the prosecution of Mrs. Hinners. (ECF No. 31, ¶¶ 120–28, PageID #1012–13; *id*., ¶ 443, PageID #1055.)

Under Section 1983, supervisory liability "must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To clear that hurdle, Plaintiffs must allege facts showing that Ms. Lane "either encouraged the specific incident of misconduct or in some other way directly participated in it" or "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (citation omitted).

Assuming without deciding that Plaintiffs satisfy that pleading requirement, Ms. Lane is still entitled to absolute immunity for certain administrative tasks closely tied to the judicial phase, such as supervising another prosecutor. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (holding that a challenge to an administrative task of that kind that is "directly connected with the conduct of a trial" and, therefore, barred by absolute immunity). Not only is Ms. Lane's delegation of authority to Mr. O'Shea intimately tied to her function during the judicial phase of criminal proceedings—that is, she informed the State court that Mr. O'Shea would serve as special prosecutor—but that decision was within her discretion as the Law Director. After all, the purpose of absolute prosecutorial immunity is to protect the "proper functioning of the office." *Van de Kamp*, 555 U.S. at 345 (quoting *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997)). Otherwise permitting Plaintiffs to sue Ms. Lane in this

25

administrative capacity would undermine both her office's function and the judicial proceedings.

### III.B.5. Conspiracy Claims (Claims 19, 23 & 28)

To state a claim for civil conspiracy under Section 1983 and Ohio law, a plaintiff must specifically plead that (1) a single plan existed, (2) the defendants shared in the general conspiratorial objective to deprive plaintiff of her constitutional or federal statutory rights, and (3) the defendant committed an overt act in furtherance of the conspiracy that caused injury to the plaintiff. *See Trans Rail Am., Inc. v. Hubbard Twp.*, 478 Fed. App'x 986, 988 (6th Cir. 2012); *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859, 868 (1998). In addition to those elements, claims under Section 1985(3) require that a plaintiff allege that the conspiracy was "motivated by racial or other class-based discriminatory animus." *Moore v. City of Garfield Heights*, No. 1:12-CV-1700, 2012 U.S. Dist. LEXIS 164911, at *24 (N.D. Ohio Nov. 19, 2012).

Under both federal and State law regarding civil conspiracy, Ms. Lane's only alleged involvement—and only act in furtherance of any alleged conspiracy—was her initiation of the prosecution of Mrs. Hinners. Again, Ms. Lane has immunity for acts taken in her role as prosecutor. *See Meyers v. Mitrovich*, No. 1:14CV1604, 2015 U.S. Dist. LEXIS 11350, at *26 (N.D. Ohio Jan. 30, 2015) (dismissing conspiracy claim against prosecutor because he was entitled to absolute immunity). "A public prosecutor has absolute immunity from civil suit under Civil Rights Acts such as 42 U.S.C. §§ 1983 and 1985(3) for initiating prosecutions and the conduct of them."

*Coon v. Froehlich*, 573 F. Supp. 918, 920 (S.D. Ohio 1983); *see also* Ohio Rev. Code § 2744.03 (granting statutory immunity for State law claims against prosecutors).

Even assuming that Ms. Lane is not entitled to immunity—say, for conduct not intimately related to the judicial phase of the criminal process—Plaintiffs fail to plead with specificity any action, other than prosecution, that Ms. Lane took in furtherance of the alleged conspiracy.

### III.B.6. Negligent or Reckless Hiring and Supervision (Claim 29)

To state a claim for negligent hiring or training, a plaintiff must plead:  "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining [or training or supervising] the employee as the proximate cause of plaintiff's injuries."  *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, 40 N.E.3d 661, ¶ 41 (Ohio Ct. App.).  Further, the Sixth Circuit requires that a plaintiff plead a tort claim against the individual employee to prevail in an action for negligent retention against the employer.  *See Minnich v. Cooper Farms, Inc.*, 39 Fed. App'x 289, 295 (6th Cir. 2002).

Under State law, Plaintiffs allege that Ms. Lane negligently or recklessly hired and retained Mr. O'Shea because he was incompetent and that Ms. Lane knew or should have known as much.  (ECF No. 31, ¶¶ 129 & 483, PageID #1013 & #1059.)  But Plaintiffs' only allegations regarding Mr. O'Shea's competence come in Paragraphs 130 to 133 of the amended complaint, in which Plaintiffs allege that he (1) was the subject of an ethical complaint during his 2016 campaign for a seat on the

27

Cuyahoga County Domestic Relations Court; (2) failed to fulfill his continuing-legal-education requirements in 1996 and 2002; and (3) had several tax liens against him. Because the Court struck these allegations, Plaintiffs' argument lacks factual allegations in support.  Even if the Court considered those allegations, they fail to support Plaintiff's claims for the same reasons that the Court struck them:  they have no bearing on Mr. O'Shea's competency as a prosecutor or his alleged bias in pursing Mrs. Hinners's prosecution.

### III.B.7. Failure to Intervene (Claim 18)

Plaintiffs allege generally that Ms. Lane is liable for failing to intervene during (1) Defendant Hartung's alleged interference with Mrs. Hinners's public comment, (2) the police officers' removal of Mrs. Hinners from the council meeting, and (3) Mr. O'Shea's prosecution of Mrs. Hinners.  (ECF No. 31, PageID #1048.)  So far as the Court can tell, a plaintiff can only maintain a failure-to-intervene claim against a law-enforcement officer.  *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Plaintiffs do not provide any authority to the contrary.

### III.B.8. False Arrest (Claim 17)

Plaintiffs allege that Ms. Lane is liable for false arrest because she "approved or endorsed the decision to charge Mrs. Hinners for her speech."  (ECF No. 59-1, PageID #1886; *see also* ECF No. 31, ¶ 69, PageID #1001.)  A false-arrest claim under the Fourth Amendment "requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."  *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).  In cases where a plaintiff sues a person other than the arresting officer for false arrest, a plaintiff satisfies her burden by showing that that

defendant either ordered the arrest or "set in motion the machinery which proximately caused the arrest; that is, if the arrest was not the act of the officer or other person making the arrest on his own volition." *Weser v. Goodson*, No. 20-5178, 2020 WL 3989633, at *9 (6th Cir. July 15, 2020) (cleaned up).

Here, Ms. Lane takes no position on the question whether Officers Orzech and Koehler had probable cause. Contrary to Plaintiffs' contention that Ms. Lane's approval or endorsement of *charging* Mrs. Hinners constitutes Ms. Lane's direction or setting in motion of Mrs. Hinners's arrest, the amended complaint and the dozens of exhibits attached to it, including the video evidence, do not support a claim of false arrest against Ms. Lane. Drawing all reasonable inferences in Plaintiffs' favor, Ms. Lane is entitled to judgment on the pleadings that she ordered or set in motion the arrest of Mrs. Hinners.

### III.B.9. Civil Liability for Criminal Acts (Claim 32)

Plaintiffs fail to allege that that Ms. Lane committed a criminal act under any of the twenty-four counts that they list in their amended complaint. Further, to the extent that their claims depend on facts supporting their claims against Ms. Lane, the Court has determined either that Ms. Lane is entitled to absolute immunity or judgment on the pleadings. Therefore, the Court also dismisses this claim.

*     *     *

For the foregoing reasons, the Court **GRANTS** Defendant Lane's motion for judgment on the pleadings and **DISMISSES** each of the sixteen claims against her.

## IV. Defendant O'Shea's Motion for Judgment on the Pleadings

Defendant O'Shea moves for judgment on the pleadings on the remaining fifteen claims against him. Mr. O'Shea argues that he has absolute prosecutorial immunity because each claim stems from his role as a special prosecutor. (ECF No. 63-1.) Plaintiffs oppose Mr. O'Shea's motion, arguing that he was not properly appointed by the City under Huron's Charter and Ohio law, and that even if he were, he is not entitled to immunity because his challenged conduct was not within his prosecutorial function. (ECF No. 75.)

As discussed above, a prosecutor is entitled to absolute immunity for actions that are intimately tied to the judicial process. Importantly, however, the defendant seeking prosecutorial immunity must be a public official, not merely acting under color of State law. *Cooper v. Parrish*, 203 F.3d 937, 950 (6th Cir. 2000) (citing *Vector Rsch., Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996)). Private attorneys who allegedly engage in unconstitutional conduct without an official designation are not entitled to immunity. *Id.*

To enjoy to absolute immunity, then, Mr. O'Shea must show that (1) he was serving in an official capacity under color of State law when he prosecuted Mrs. Hinners, and (2) his challenged conduct fell within the scope of his prosecutorial function.

### IV.A. Delegation of Prosecutorial Authority

The Court starts with Mr. O'Shea's status as a public official. The record reflects that Ms. Lane delegated her prosecutorial duties to Mr. O'Shea and did so under Section 2938.13 of the Ohio Revised Code. (ECF No. 31-48.) Section 2938.13

30

provides that "[i]n any case prosecuted for violation of a municipal ordinance the village solicitor or city director of law . . . may delegate the responsibility to some other attorney in a proper case."  But the statute contains a limitation on this delegation.  It provides that "the magistrate or judge shall not permit prosecution of any criminal case by private attorney employed or retained by a complaining witness."  Ohio Rev. Code § 2938.13.  The Ohio Revised Code defines "prosecutor" as "any attorney designated by the prosecuting attorney of the county to appear for the prosecution of a given case."  Ohio Rev. Code § 2935.01.  Notably, Section 2938.13 provides no particular procedure by which a city law director may delegate her prosecutorial duties.

In May 2019, Ms. Lane informed the Huron Municipal Court that, pursuant to Section 2938.13, she was "delegating" her prosecutorial duties in Mrs. Hinners's criminal case to Mr. O'Shea, who would serve as a special prosecutor.  (ECF No. 31-48, PageID #1340.)  The municipal court acknowledged receipt of that letter on its docket and subsequently scheduled a pretrial conference.  (ECF No. 63-4, PageID #2007.)

Plaintiffs assert that Mr. O'Shea lacked authority to prosecute Mrs. Hinners, arguing that (1) Ms. Lane lacked legal and contractual authority to delegate prosecutorial authority to Mr. O'Shea and (2) even if she had the authority to delegate to him, Mr. O'Shea failed to take the oath of office, as required by State and local law, voiding his public office and precluding him from claiming prosecutorial immunity.  (ECF No. 75.)  The Court addresses each argument in turn.

31

### IV.A.1. Delegation of Prosecutorial Duties to Mr. O'Shea

Plaintiffs make several arguments in both the amended complaint and their opposition to Mr. O'Shea's motion that Ms. Lane lacked the authority—legal and contractual—to delegate prosecutorial duties to Mr. O'Shea, voiding his authority to prosecute Mrs. Hinners.

### IV.A.1.a. Delegation Under State Law

Plaintiffs argue that Ms. Lane did not have statutory authority to delegate her prosecutorial duties under Section 2938.13 because that statute falls within a chapter titled "Magistrate Courts," and Huron is a municipal court.  Ohio Rev. Code Chapter 2938.  Under that section, the definition of "magistrate courts" includes "county court judges, mayors of municipal corporation, and judges of other courts inferior to the court of common pleas."  Ohio Rev. Code § 2931.01(a).  Whether a municipal court stands inferior to a court of common pleas presents a complex question.  In the exercise of criminal jurisdiction, a municipal court is inferior to a common pleas court under Ohio law.  *Cincinnati v. Nunnelley*, 20 Ohio App. 2d 163, 164, 252 N.E.2d 295 (Ohio Ct. App. 1969) (citing *Cleveland v. Gunn*, 8 Ohio App. 2d 301, 302, 221 N.E.2d 714 (Ohio Ct. App. 1966)).  But those cases predate various revisions to the applicable statutes that bear on the question.  Moreover, with respect to the type of criminal case at issue here, the alleged violation of local ordinances, a municipal court constitutes the trial court with a right of appeal to an intermediate appellate court.  Therefore, the Court assumes that Ms. Lane lacked authority under the Ohio Revised Code to delegate her prosecutorial duties to a special prosecutor.

Even so, the contract between the City and Walter Haverfield provides an alternative ground for a lawful delegation.

### IV.A.1.b. Delegation Under Local Law

Plaintiffs allege that, in appointing Mr. O'Shea as the special prosecutor, Ms. Lane exceeded her vested authority because:  (1) the contract between Walter Haverfield and the Huron City Council has a non-delegation clause; (2) Huron's Charter delegated prosecutorial authority to the city prosecutor, not the law director; (3) Ms. Lane did not obtain approval from city council to appoint Mr. O'Shea; and (4) Ms. Lane paid Mr. O'Shea in excess of the amount appropriated to Huron's law department.  (ECF No. 31, PageID # 1018.)  Each of these arguments fails as a matter of law.

First, the contract between Walter Haverfield and Huron provides that Ms. Lane could provide litigation services and does not speak to delegation of legal duties.  (ECF No. 31-81.)  However, the contract recites that the City wishes to retain the law firm of Walter Haverfield "to perform general legal services," in addition to Ms. Lane to serve as law director.  (*Id.*, PageID #1437.)  In that respect, the contract contemplates that Ms. Lane will not necessarily perform all aspects of the position of law director or provide all legal services to the City.  Although the contract contains a provision precluding assignments unless in writing and signed by the City and Walter Haverfield (*id.*, ¶ 6.i., PageID #1440), Plaintiffs do not allege that Walter Haverfield assigned the contract to Mr. O'Shea.  To the contrary, the record—construed in favor of Plaintiffs—shows that Mr. O'Shea served as a special prosecutor, not a position the City's contract with Walter Haverfield forecloses.

Indeed, lawyers regularly associate with others when needed, both within a firm and otherwise, suggesting that the expectations of the parties to the contract were consistent with appointment of a special prosecutor.

As for Plaintiffs second and third augments, neither Huron's Charter nor its Administrative Code delegate prosecutorial authority solely to the city prosecutor or require the law director to obtain authorization or approval from the city council before delegating authority to a private attorney.

Finally, Plaintiffs allege that Ms. Lane violated the Huron Charter, which prohibits contracting to spend money more than the amounts appropriated.  (ECF No. 31, ¶¶ 177 & 179, PageID #1020.)  Under Section 5.07 of Huron's City Charter, "[n]o officer, department or agency of the city shall expend or contract to expend any money or incur any liability, or enter into any contract which by its terms involves the expenditure of money on behalf of the city for any purpose in excess of the amounts appropriated for such expenditures and obligations." (ECF No. 63-2.) Such contracts are "voidable" by the Huron City Council.  (*Id.*)  Here, Plaintiffs make no plausible allegations that the fees paid to Mr. O'Shea were in excess of the amounts appropriated for legal services.   But even if Ms. Lane did spend beyond her authorization, Plaintiffs do not allege that the council voided Mr. O'Shea's contract or that the financial terms and conditions affect Mr. O'Shea's legal authority as special prosecutor.

### IV.A.2. Mr. O'Shea's Failure to Take the Oath of Office

Plaintiffs argue that Mr. O'Shea was not properly "appointed" as a special prosecutor because he never took the oath of office as Section 3.22 of the Ohio Revised

Code and Section 12.01 of the City Charter require.  Mr. O'Shea does not assert that he took the oath of office, though that position might be a feature of the procedural posture of this case at the moment.  (ECF No. 63-1, PageID #1951.)

The Ohio Revised Code requires that "each person chosen or appointed to an office under the constitution or laws of this state, and each deputy or clerk of such officer, shall take an oath of office before entering upon the discharge of his duties." Ohio Rev. Code § 3.22. Similarly, the Huron Charter requires that "every officer and employee of the city shall before entering upon his duties, take and subscribe to the following oath or affirmation."  Huron, Ohio, Charter § 12.01.

But neither Section 3.22 of the Ohio Revised Code nor Section 12.02 of the Huron Charter void Mr. O'Shea's prosecutorial authority.  Mr. O'Shea was not elected, appointed to an office, or hired as an employee of the City.  Though the parties refer to Mr. O'Shea as an "appointed" special prosecutor, the record reflects that he is merely a *delegee* tapped only to prosecute Mrs. Hinners.  *See Jurich v. Campbell*, No. 2:13-12544, 2014 U.S. Dist. LEXIS 3648, at *4–5 (E.D. Mich. Jan. 13, 2014) (collecting cases).

Further, Mr. O'Shea was an independent contractor not an employee.  "An independent contractor has been defined as a person who is employed in an independent capacity and is not under the immediate control, direction, or supervision of a contractee." *Priestly v. Cannon*, No. 44614, 1982 Ohio App. LEXIS 11685, at *3 (Ohio Ct. App. Dec. 16, 1982).  Here, Mr. O'Shea worked independently

as the special prosecutor (ECF No. 31-48) and was paid as an independent contractor, not from the City's payroll (ECF No. 31-89).

In any event, even assuming that Mr. O'Shea neglected to take the oath of office, under the functional approach, Mr. O'Shea still acted in his capacity as a special prosecutor, entitling him to immunity.

*    *    *

For all these reasons, Plaintiffs' claim that Mr. O'Shea lacked authority to prosecute Mrs. Hinners fails as a matter of law.

### IV.B.  Plaintiffs' Claims Against Mr. O'Shea

Generally, Plaintiffs' complaint alleges that much of Mr. O'Shea's conduct is not intimately associated with the judicial phase and, therefore, not entitled to absolute immunity.  Plaintiffs challenge several of Mr. O'Shea's alleged extra-judicial actions including:  (1) investigating Mrs. Hinners's alleged crime (ECF No. 31, ¶ 211, PageID #1024); (2) advising that the police to file charges (*id.*, ¶ 198, PageID #1022); (3) discussing the case with the media (*id.*, ¶ 105, PageID #1006); (4) collaborating with Ms. Lane, who was not acting as a prosecutor (*id.,* ¶¶ 140–43, PageID #1043); (5) collaborating with the City's civil-defense firm to mitigate liability associated with the Hinners matter (*id.*, ¶¶ 144–46, PageID #1015–16); and (6) threatening criminal charges if Mrs. Hinners continued petitioning the government to redress her grievances (*id.*, ¶¶ 252–55, PageID #1030).

Mr.  O'Shea argues that each of Plaintiffs factual allegations, regardless of whether they are true, are either intimately tied to the judicial process or do not

36

independently support a claim for relief. (ECF No. 63-1, PageID #1953.) The Court addresses each of Plaintiffs' claims against Mr. O'Shea in turn.

### IV.B.1. Selective Prosecution Claim (Claim 1)

Plaintiffs assert that Mr. O'Shea selectively prosecuted Mrs. Hinners. But prosecutors sued in their individual capacities are immune from selective-prosecution claims as a matter of law because a prosecutor's decision to prosecute lies at the heart of the claim. *See Macko v. Byron*, 576 F. Supp. 875, 877 (N.D. Ohio Nov. 14, 1983) (recognizing that prosecutors have absolute immunity against selective prosecution claims). "[A]ny selective prosecution would have occurred within the scope of [the prosecutor's] duties as prosecutor and, therefore, she is absolutely immune in her individual, but not official, capacity from [defendant's] selective prosecution claim." *Hill v. City of Seven Points*, No. 00-41436, 2002 U.S. App. LEXIS 30214, at *25 (5th Cir. 2002).

### IV.B.2. First Amendment Retaliation (Claims 2, 11, 12, 13 & 14)

To establish a First Amendment retaliation claim, Plaintiffs must prove that (1) they engaged in a constitutionally protected activity; (2) the defendant's adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated, at least in part, as a response to the exercise of the plaintiffs' constitutional rights. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000).

Each of Plaintiffs' retaliation claims fails as a matter of law for the same reason: they each allege that Mr. O'Shea's decision to prosecute Mrs. Hinners chilled them from engaging in protected conduct. But prosecutors have immunity for their

decisions to prosecute because those decisions are intimately related to the judicial process.  *See Lozman*, 138 S. Ct. at 1953 .

To the extent Plaintiffs allege that Mr. O'Shea retaliated against Plaintiffs in the plea-bargain process by letting the "resisting-arrest charge hang over Mrs. Hinners's head," Mr. O'Shea is entitled to absolute immunity.  The decision to bring or dismiss a criminal charge constitutes a prosecutorial function, and a discretionary one at that.  *See Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009) (holding that conduct associated with plea bargains has long been held to be "so intimately associated with the prosecutor's role as an advocate of the State in the judicial process" as to warrant absolute immunity).

### IV.B.3. Prior Restraint Claim (Claim 3)

Because Mr. O'Shea is immune to suit insofar as he acted in prosecutorial function, the only viable retaliation claim that Plaintiffs can assert against Mr. O'Shea is that his statements to the public "threatening prosecution" against Mrs. Hinners chilled her speech.  (ECF No. 31, ¶ 276, PageID # 1035; *see also id.,* ¶¶ 344–46; 352–54 & 360–62, PageID #1043–45.).

To start, a prosecutor is generally not entitled to absolute immunity for claims arising from statements the prosecutor made at a press conference.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 277–78 (1993).  So, the question is whether Plaintiffs plausibly allege that Mr. O'Shea's comments were a prior restraint.

Plaintiffs argue that Mr. O'Shea's comments to the press were a prior restraint under *Novak v. City of Parma*, 932 F.3d 421 (6th Cir. 2019).  There, the Sixth Circuit distinguished a prior restraint, which is an "administrative or judicial order that

forbids protected speech in advance," from an action taken after the speech is expressed.  *Id.* at 433 (cleaned up).  The Sixth Circuit held that the plaintiff sufficiently pleaded a prior restraint by alleging that police officers took administrative action when, in a press release, they threatened to prosecute the plaintiff if he refused to take down his Facebook page.  *Id.*

The Court finds that the amended complaint falls short of alleging that Mr. O'Shea's statements to the public were a prior restraint.  Plaintiffs allege that Mr. O'Shea "touted the possibility of charging Mrs. Hinners again . . . in the press," citing, and attaching as an exhibit, a news article quoting Mr. O'Shea.  (ECF No. 31, ¶ 235, PageID #1028.)  The news article quotes Mr. O'Shea as stating, "We just want the attorney general and BCI to complete the investigation demanded by Chandra's office against some of our witnesses . . . [w]e thought it was prudent to let that investigation play out and then decide what we are going to do."  (ECF No. 31-101.) The article also mentions that Mr. O'Shea "motioned Monday for the charges to be dismissed without prejudice, which means they can be brought against her again within two years of the alleged offense."  (*Id.*)  Taken in context, Plaintiffs allege that Mr. O'Shea threatened to reinstate charges against Mrs. Hinners for her past conduct not for Plaintiffs' future speech or conduct.  By making reinstatement of charges contingent on the completion of an investigation undertaken at the request of Plaintiffs' counsel unrelated to activity that the First Amendment protects, these allegations fail to support a claim for prior restraint as a matter of law.  *See Novak*,

932 F.3d at 433 ("An action taken after the speech is expressed, like a punishment for disfavored speech, is not a prior restraint.").

### IV.B.4. Malicious Prosecution Claim (Claim 15)

To state a claim for malicious prosecution, a plaintiff must allege: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016).  Again, a prosecutor in his individual capacity has absolute immunity for his decision to institute or continue a prosecution, even if his decision is malicious or brought in bad faith.  *See Patterson*, 795 F.2d at 557; *Bickerstaff*, 2019 U.S. Dist. LEXIS 181647, at *19, *41 (finding that defendant's malicious prosecution claim against prosecutor was barred by absolute immunity).

### IV.B.5. Claims Regarding Local Ordinances (Claims 4–6)

Plaintiffs allege that the laws under which Mr. O'Shea charged Mrs. Hinners, Sections 509.04 and 525.07 of the Huron Codified Ordinances, are unconstitutional as applied to her under the First and Fifth Amendments.  (ECF No. 31, ¶¶ 283–94, PageID #1035–37.)  However, Mr. O'Shea is absolutely immune against these claims because they are based on "initiating a prosecution."  *See Imbler*, 424 U.S. at 431. Similarly, prosecutors have immunity against civil suits for enforcing statutes that are later found to be unconstitutional.  *See, e.g.*, *Dutchess Sanitation, Inc. v. Plattekill*, 433 F. Supp. 580, 585 (S.D.N.Y. 1977) (finding that "the request for damages against [the prosecutor] for [his] actions taken in the enforcement of an ordinance ultimately found to be unconstitutional as applied to this plaintiff . . . must fall in the face of the section 1983 immunity accorded to prosecutors for 'initiating a prosecution'").

40

### IV.B.6. Civil Conspiracy Claims (Claims 19, 23 & 28)

To state a civil-conspiracy claim under Section 1983 and Ohio law, a plaintiff must allege that (1) a single plan existed, (2) the defendants shared in the general conspiratorial objective to deprive plaintiff of her constitutional or federal statutory rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiff. *See Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012); *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859, 868 (1998).  In addition to these elements, Section 1985(3) requires that a plaintiff allege that the conspiracy was "motivated by racial or other class-based discriminatory animus."  *Moore v. City of Garfield Heights*, No. 1:12-cv-1700, 2012 U.S. Dist. LEXIS 164911, at *24 (N.D. Ohio Nov. 19, 2012).

Mr. O'Shea's only involvement—and only act in furtherance of any alleged conspiracy—was his prosecution of Mrs. Hinners.  Again, Mr. O'Shea is immune for acts taken in his role as prosecutor.  *See Meyers v. Mitrovich*, No. 1:14CV1604, 2015 U.S. Dist. LEXIS 11350, at *26 (N.D. Ohio Jan. 30, 2015) (dismissing conspiracy claim against a prosecutor on the basis of absolute immunity).  "A public prosecutor has absolute immunity from civil suit under Civil Rights Acts such as 42 U.S.C. §§ 1983 and 1985(3) for initiating prosecutions and the conduct of them." *Coon v. Froehlich*, 573 F. Supp. 918, 920 (S.D. Ohio 1983); *see also* Ohio Rev. Code § 2744.03 (granting statutory immunity for State law claims against prosecutors).  Under a functional analysis, this liability applies to Mr. O'Shea in his service as a special prosecutor as well.

41

To the extent Plaintiffs assert that Mr. O'Shea's advised the police to file charges for obstructing official business in July 2019, Mr. O'Shea has immunity against this claim.  (ECF No. 31, ¶ 198, PageID #1022; ECF No. 75, PageID #2167 n.59.)  Contrary to Plaintiffs' assertion, Mr. O'Shea was not providing legal advice to the police department about whether they had probable cause to arrest Mrs. Hinners for obstructing official business.  *See Peroli v. County of Medina*, No. 1:19-cv-1755, 2020 WL 2405354, at *12 n.10 (N.D. Ohio May 12, 2020) (noting that prosecutorial immunity does not extend to investigatory actions before the establishment of probable cause to make an arrest).  As in *Peroli*, the record here reflects that Mr. O'Shea instructed the police to file the charges because he believed probable cause supported prosecution—an action within the prosecutor's discretion and intimately tied to the judicial process, entitling him to immunity.

### IV.B.7. Civil Liability for Criminal Acts Claim (Claim 32)

Finally, Plaintiffs allege that they are entitled to damages for Mr. O'Shea's alleged criminal acts under the Ohio Revised Code, which include violations of: (1) Section 2921.03 by influencing the State-court judge with materially false statements; (2) Section 2921.04 for attempting to intimidate Mrs. Hinners; (3) Section 2921.05  for "retaliat[ing] against Mrs. Hinners's attorneys by threatening criminal charges for asserting her First Amendment right to petition the government"; (4) Section 2921.13 for "falsely incriminate[ing] Mrs. Hinners by telling an officer that there was probable cause to charge her with obstructing official business"; (5) Section 2921.32 when he communicated false information to the police about probable cause to charge Mrs. Hinners with obstructing official business; and (6) Section 2921.44 for

42

failing to halt violations of civil rights and dismiss the criminal charges against Mrs. Hinners. (*See, e.g.*, ECF No. 31, ¶ 504, PageID #1061–62.) As discussed above, each of these underlying criminal allegations are predicated on Mr. O'Shea's role as a prosecutor when he prosecuted, plea bargained, and litigated the prosecution of the case against Mrs. Hinners. He has immunity as a prosecutor against these claims.

\*     \*     \*

For the foregoing reasons, the Court **GRANTS** Mr. O'Shea's motion for judgment on the pleadings and **DISMISSES** each claim against him in his individual capacity.

## V. The City Defendants' Joint Motion for Judgment on the Pleadings

The nine City Defendants—the City of Huron, Mayor Brad Hartung, City Manager Andrew White, Glen Ginesi (a member of the Huron City Council), Rick Schaffter (a member of the Huron City Council), Trey Hardy (a member of the Huron City Council), Chief Robert Lippert, Officer John Orzech, and Officer Kevin Koehler— move for judgment on the pleadings on some of the claims asserted against them. (ECF No. 55.) The Court analyzes each disputed claim in the order that they are presented in the amended complaint.

### V.A. Retaliatory Arrest (Claim 2), Malicious Prosecution (Claim 15), False Arrest (Claim 17), Failure-to-Intervene (Claim 18), Authorized Action (Claim 20), & False Imprisonment (Claim 27).

The City Defendants argue that they are entitled to qualified immunity against Plaintiffs' retaliatory-arrest, malicious-prosecution, false-arrest, failure-to-intervene, authorized-action, and false-imprisonment claims because Officers Orzech and Koehler had probable cause to arrest Mrs. Hinners for (1) disrupting a public

meeting under Section 509.04 of the Huron Codified Ordinances, and (2) obstructing official business under Section 525.07(a) of the Huron Codified Ordinances. (ECF No. 55-1, PageID #1847.)

At this stage of the litigation, however, the Court determines that granting qualified immunity to the City Defendants is inappropriate.  "It is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Marvaso v. Sanchez*, 971 F.3d 599, 601 (6th Cir. 2020).  Instead, "appellate court[s] generally den[y] qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief." *Id.*

Here, Plaintiffs state a claim that probable cause did not support the arrest of Mrs. Hinners.  The Fourth Amendment protects the right of the people to be secure against unreasonable arrest and detention.  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, (2004).  The "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Harris*, 492 F.3d 334, 341 (6th Cir. 2007) (citations omitted).

The inquiry into whether probable cause supports a warrantless arrest depends on the "reasonable conclusion to be drawn from the facts known to the

arresting officer at the time of the arrest," where supported by "reasonably trustworthy information." *Id.* (citations omitted). Once the arresting officer determines the existence of probable cause based on the facts known to him, he has no duty to search or investigate exculpatory evidence. *Id.* His "initial probable cause determination must be founded on both the inculpatory and exculpatory evidence known to [him], [he] cannot simply turn a blind eye toward potentially exculpatory evidence." *Id.* (cleaned up); *see Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (noting that officers may not "make hasty, unsubstantiated arrests with impunity"). "The officer may not ignore information which becomes available in the course of routine investigations." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). Importantly, police may not "look for after-the-fact justifications for [seizures] that would otherwise be impermissible." *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley*, 291 F.3d at 872 (quotation marks omitted).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *DeFillippo*, 443 U.S. at 36. Therefore, the Court must determine whether, after reviewing record and taking as true the allegations in the amended complaint (which do not contradict the other materials in the record), there is only "one reasonable determination" that probable cause existed under Sections 509.04 and 525.07(a). *See Fridley*, 291 F.3d at 872.

### V.A.1. Disrupting a Public Meeting

Under Section 509.04(a) of the Huron Codified Ordinances, "no person, with purpose to prevent or disrupt a lawful meeting, procession or gathering, shall . . . do any act which obstructs or interferes with the due conduct of such meeting, procession or gathering." Relying on the video recording of the May 14, 2019 City Council meeting (ECF No. 31-8), which the Court views as part of the pleadings and sufficiently bound up with them to consider on this motion for judgment on the pleadings without converting the motion to one for summary judgment, the parties dispute whether Officers Orzech and Koehler had probable cause to arrest Mrs. Hinners.

The City Defendants argue that Mrs. Hinners violated the statute when she refused to comply with the City's three-minute time limit, continued to speak after her time expired, refused to sit down after being ordered to do so, made disruptive and accusatory comments after she was not granted additional time, and later refused to the leave the meeting. (ECF No. 55-1, PageID #1839–40.) They maintain that, when Mr. Hartung summoned Officers Orzech and Koehler, the officers had probable cause to arrest Mrs. Hinners.

Plaintiffs counter, arguing that the City Defendants retrospectively justify Mrs. Hinners's arrest. In their view, the inquiry instead focuses on whether, at the time of the arrest, Officers Orzech and Koehler had probable cause after considering both the inculpatory and exculpatory information available to them. They assert that their amended complaint supported by the video evidence alleges, plausibly, that the officers did not have probable cause for the arrest.

46

After reviewing the record at the pleading stage, and taking Plaintiff's allegations as true, the Court determines that reasonable minds could disagree with Defendants' claim that Officers Orzech and Koehler had probable cause to arrest Mrs. Hinners for disrupting the council meeting.  In the amended complaint, Plaintiffs allege that Chief Lippert and Officers Orzech and Koehler had virtually no knowledge of the events leading up to their decision to arrest Mrs. Hinners.  They allege that: Chief Lippert knew only that Mayor Hartung was "ignited" and wanted Mrs. Hinners arrested (ECF No. 31, ¶ 71, PageID #1002); Chief Lippert contacted Officers Orzech and Koehler, with instructions "to remove Mrs. Hinners from the meeting and file charges against her" (*id.*, ¶ 72); Officers Orzech and Koehler arrived at the meeting to find Mrs. Hinners "sitting quietly and listening to other citizens speak" (*id.*, ¶ 86, PageID #1003); and Mayor Hartung directed the officers to seize Mrs. Hinners because he believed "she would continue to criticize him and Council" and "was angry and wanted to punish and retaliate against her for her critical remarks" (*id.*, ¶ 87, PageID #1004).  Plaintiffs make plausible allegations that Officers Orzech and Koehler arrested Mrs. Hinners not because they had reason to believe she disrupted the meeting, but because Mayor Hartung directed Chief Lippert to arrest Mrs. Hinners, and, in turn, the Chief ordered the officers to arrest her.

Nothing in the videos of the council meeting contradicts Plaintiffs' factual allegations that the officers lacked probable cause based on their own observations and involvement in the arrest.  Indeed, Mr. Hartung directed the officers from his seat on the dais to remove Mrs. Hinners for "disrupting a public meeting."  Although

an eyewitness account typically provides sufficient probable cause, that might not be the case where there is an "apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (cleaned up).  Such is the case here, at least in the present procedural posture.  When the officers arrived in council chambers, Mrs. Hinners was no longer speaking.  The meeting was proceeding as normal, and Officers Orzech and Koehler saw Mrs. Hinners sitting quietly in her seat.  Not until Mr. Hartung left the room and addressed the two officers, pointing to Mrs. Hinners, did they approach her and eventually arrest her.  (ECF No. 31-8.)

The City Defendants rely on two Ohio cases to support the existence of probable cause.  First, they cite *City of Columbus v. Doyle*, 149 Ohio App. 3d 164, 2002-Ohio-4490, 776 N.E.2d 537, ¶¶ 24–25 (Ohio Ct. App.).  There, the court affirmed a conviction for disturbing a city council meeting after a jury trial.  In doing so, the court rejected a challenge to the manifest weight of the evidence and agreed that the police had probable cause for the defendant's arrest because he refused to obey the board's time limit for public comment and refused to sit down after his time expired. *Id*. ¶ 25.  When the council summoned the police, the speaker refused to leave and was arrested.  *Id*.  Here, the facts differ in two material respects.  First, the mix of information available to the officers in *Doyle* differed markedly than what was available to Officers Orzech and Koehler.  In *Doyle*, the arresting officer observed the speaker disrupt and continue to disrupt the meeting.  Here, Officers Orzech and

48

Koehler only saw Mrs. Hinners sitting quietly in her seat.  (ECF No. 31-8.)  Second, even if the Court were to consider information not known to the officers at the time that they made a probable cause determination, Mrs. Hinners's alleged conduct does not rise to as great a level of disturbance as the speaker in *Doyle*.  Mrs. Hinners did not refuse to sit down and did so shortly after she was told her time had expired.

Second, the City Defendants also cite *City of Zanesville v. Jones*, No. 15CRB00740, 2017-Ohio-1112, ¶¶ 2–7 (Ohio Ct. App.).  There, the court affirmed the conviction of the speaker after he repeatedly used racial slurs and specifically targeted one of the City Council members during the public-comment period.  *Id.*  When his time expired, the speaker continued to speak, forcing council to suspend the meeting.  *Id.*  For obvious reasons, the facts bear no resemblance to those in *Jones*.

Considering  the mix of information available to the officers, based on the record at this stage of the proceedings, the Court finds that there is not "one reasonable determination" of probable cause that warrants dismissal of these claims.

### V.A.2. Obstructing Official Business

An obstructing-official-business claim has five elements: (1) an act by the defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant so acts without privilege.  Huron, Ohio, Codified Ordinances § 525.07(a); Ohio Rev. Code § 2921.31(A),

The City Defendants' probable-cause defense fails for two reasons.  First, because it is doubtful the officers had probable cause to arrest Mrs. Hinners for disrupting a public meeting, the record at the pleading stage presents questions

whether the officers performed a lawful duty when they confronted Mrs. Hinners and eventually arrested her.

Second, Plaintiffs' claims for retaliatory arrest, malicious prosecution, false arrest, failure-to-intervene, authorized action, and false imprisonment, each arise from the officers' decision to arrest and charge Mrs. Hinners for disrupting a public meeting. The amended complaint alleges that the City Defendants took action against Mrs. Hinners for her speech during the public-comment period, not as a result of anything that occurred when the police confronted her. In fact, the record shows that the officers did not charge Mrs. Hinners with obstructing official business until two months after she was charged with disrupting a public meeting—a fact that supports Plaintiffs' allegations that her arrest stemmed from her public comments.

*    *    *

Taking Plaintiffs' allegations as true and drawing all reasonable inferences from the record in their favor, the Court concludes that Plaintiffs plausibly allege the absence of probable cause. Therefore, the Court **DENIES** the City Defendants' motion on these claims.

### V.B.   As-Applied Challenges to Local Ordinances (Claims 4–6)

Mrs. Hinners alleges that Section 509.04 and Section 525.05 of the Huron Codified Ordinances are unconstitutional under the First and Fifth Amendments as applied to her. She seeks to enjoin Defendant O'Shea and the City of Huron from prosecuting her for her conduct at the May 14 meeting. Typically, an as-applied challenge requires a court to determine on a case-by-case basis, whether the regulation as applied to the facts of the case violates the Constitution. *Lakewood v.*

50

*Plain Dealer Publ'g Co.*, 486 U.S. 750, 758–59 (1988).  But the Court does not reach that analysis because it determines that Mrs. Hinners's as-applied challenges are moot.

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction to ensure that it has the authority to proceed.  *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted).  Standing presents a "threshold determinant[] of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975).  The Court can only adjudicate actual, ongoing cases or controversies.  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citing *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988)).  "The parties must continue to have a 'personal stake in the outcome' of the lawsuit," and "it is not enough that a dispute was very much alive when suit was filed."  *Id.* at 477–78 (citations omitted).  Whether a claim is moot directly implicates jurisdiction under Article III of the United States Constitution. *Carras v. Williams*, 807 F.2d 1286, 1289 n.5 (6th Cir. 1986).  A case is moot when "events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras*, 807 F.2d at 1289.  Where the requested relief is no longer forthcoming through litigation, the Court is unable to grant it.  *Id.*

The Court determines that, due to a change in circumstances, it is unable to grant Mrs. Hinners's request for injunctive relief.  Because both prospective charges that Mrs. Hinners seeks to enjoin  are misdemeanors—Section 509.04 (misdemeanor of the fourth degree) and Section 525.07 (misdemeanor of the second degree) (ECF

No. 31-46; ECF No. 31-51)—the City must charge her within two years under Ohio's statue of limitations.  Ohio Rev. Code § 2901.13(b).  Here, more than two-and-half years have passed since May 14, 2019, barring the City from charging Mrs. Hinners for her conduct on that date.  Therefore, the Court **DISMISSES** as moot Plaintiffs' as-applied claims.

### V.C.  Facial Challenges to Local Ordinances (Claims 7 & 8)

Plaintiffs challenge the facial validity of Section 509.04 of the Huron Codified Ordinances, arguing that it is both vague and overbroad.  That ordinance makes it a fourth-degree misdemeanor for any person, "with purpose to prevent or disrupt a lawful meeting," to "(1) [d]o any act which obstructs or interferes with the due conduct of such meeting, procession or gathering" or "(2) [m]ake any utterance, gesture or display which outrages the sensibilities of the group."  Huron Codified Ord. § 509.04(a).

#### V.C.1. Vagueness

Plaintiffs allege that the ordinance is unconstitutionally vague because one cannot discern what First Amendment-protected expression is or is not subject to prosecution under Section 509.04(a)(2) because "no ordinary person would understand what utterances, gestures, or displays are sufficiently outrageous to expose them to criminal sanctions."  (ECF No. 31, ¶ 304, PageID #1038.)

Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *United States v. Coss*, 677 F.3d 278, 289

(6th Cir. 2012) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 148–49 (2007)).  Although the vagueness doctrine originally invalidated penal statutes on due-process grounds, courts frequently apply it in the First Amendment context to determine whether a penal statue's vagueness chills speech.  *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 304–07 (2008); *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992) (noting that a vagueness challenge can nullify an ambiguous law that chills protected First Amendment activities).  Where a plaintiff makes a vagueness challenge predicated on the First Amendment, courts apply a more stringent vagueness test.  *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 498 (1982).

"Vagueness may invalidate a criminal law for either of two independent reasons.  First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).  To succeed on a vagueness challenge, "the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'"  *Flipside*, 455 U.S. at 495 n.7 (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614 (1971)).  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather

the indeterminacy of precisely what that fact is." *Condon v. Wolf*, 310 F. App'x 807, 821 (6th Cir. 2009) (citing *Williams,* 553 U.S. at 504).

Under this stringent test, Section 509.04(a)(2) is vague because it outlaws conduct that "outrages the sensibilities of the group." This language cloaks an inherently subjective standard in the language of objectivity, providing only indeterminacy instead of clear notice of prohibited conduct. *See Williams*, 553 U.S. at 306 (noting that the Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions"). Further, the subjective nature of that provision enables arbitrary or discriminatory enforcement, chilling speech as a result.

### V.C.2. Overbreadth

Under the overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. The doctrine seeks to strike a balance between competing social costs. *Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003). On the one hand, invalidating a law that, in at least some of its applications, is perfectly lawful carries a cost to orderly social discourse. On the other hand, enforcing an overbroad law constrains the free exchange of ideas. *See Williams*, 553 U.S. 292. To strike an appropriate balance, courts should only void a statue if its overbreadth is substantial, "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* (citation omitted). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* (cleaned up).

54

Consistent with these principles, the Court limits the overbreadth analysis to Section 509.04(a)(1)—because Section 509(a)(2) is void vagueness as explained above. The amended complaint alleges that Plaintiffs cannot discern what expressive conduct is forbidden because the ordinance covers a substantial amount of protected speech.  (ECF No. 31, ¶¶ 300 & 307, PageID #1038.)  Further, they allege that it "permits criminal sanctions against speakers at the public-comment session of Huron City Council meetings for any expressive conduct that obstructs or interferes with the meeting in any way, no matter how inconsequential the obstruction or interference."  (*Id.*, ¶ 308, PageID #1039.)

The City Defendants rely on two cases, arguing that Ohio courts have upheld the ordinance as constitutional under the First Amendment.  *See Doyle*, 149 Ohio App. 3d 164, 2002-Ohio-4490, 776 N.E.2d 537, ¶ 24; *State v. Brand;* 2 Ohio App. 3d 460, 462, 442 N.E.2d 805 (Ohio Ct. App. 1981).  Both cases concern enactments substantially similar to Section 509.04, but neither case concerns an overbreadth challenge to the subjective language in Section 509.04(a)(2).  Both *Brand* and *Doyle* decide as-applied challenges to the objective language contained in Section 509.04(a)(1) only.  For the reasons discussed above, *Doyle* involves facts distinguishable from those at issue here.  Similarly, as applied to the facts in *Brand*, where a speaker repeatedly disrupted a First Lady's public speech despite multiple requests from the police, the court upheld the constitutionality of an Ohio statute. The facts alleged here differ markedly from those in both *Doyle* and *Brand* and show the overbreadth of Huron's ordinance.  Nonetheless, the Court cannot say that the

prohibition against disrupting a lawful meeting in Section 509(a)(1) sweeps impermissibly beyond its plainly lawful reach.

*     *     *

For these reasons, the Court concludes that Plaintiffs state a claim that Section 509.04(a)(2) is void for vagueness, but not that Section 509(a)(1) is unconstitutionally overbroad. Accordingly, the Court **GRANTS IN PART and DENIES PART** the City Defendants' motion regarding the facial validity of the Section 509(a).

### V.D. False Arrest (Claim 17)

Next, the City Defendants move to dismiss Plaintiffs' false-arrest claim. In cases where a plaintiff sues someone other than the arresting officer for false arrest, a plaintiff satisfies her burden by showing that the defendant either ordered the arrest or the defendant "set in motion the machinery which proximately caused the arrest; that is, if the arrest was not the act of the officer or other person making the arrest on his own volition." *Weser v. Goodson*, No. 20-5178, 2020 WL 3989633, at *9 (6th Cir. July 15, 2020) (cleaned up).

Plaintiffs' seventeenth claim names as Defendants Mayor Hartung, Chief Lippert, and Mr. White, the City Manager—it also names Ms. Lane, who has immunity, as explained above. With respect to Mr. Hartung, Mrs. Hinners alleges that, at the May 14 meeting, Mr. Hartung wanted her arrested and told her he was having her charged. In the video of the council proceedings, the Mayor approached Officers Orzech and Koehler and pointed to Mrs. Hinners, indicating an instruction that the officers remove or arrest her. Similarly, the amended complaint plausibly

alleges, on information and belief, that Chief Lippert contacted Officer Orzech and directed him to arrest Mrs. Hinners.  (ECF No. 31, ¶ 72, PageID #1002.)  Further, the text messages exchanged between Mr. White and Chief Lippert indicate that Chief Lippert, indeed, sent an officer to the council meeting to monitor Mrs. Hinners.  On these facts, construed in favor of Plaintiffs, a jury could reasonably find that Chief Lippert instructed officers to arrest Mrs. Hinners.  For these reasons, the amended complaint states a claim for false arrest against Mr. Hartung and Chief Lippert.

As for Mr. White, the complaint does not allege that Mr. White directed or proximately caused Mrs. Hinners's arrest.  Instead, Mr. White sent text messages to Chief Lippert, informing Chief Lippert that Mr. Hartung was ignited and wanted Mrs. Hinners arrested.  That exchange does not necessarily suggest that Mr. White ordered the arrest of Mrs. Hinners or set in motion the events resulting in her arrest.  Mr. White might be only a messenger, conveying the Mayor's wishes to Chief Lippert.  At the pleading stage, however, these facts state a plausible claim for false arrest against Mr. White.  They admit the possibility that Mr. White, like Mr. Hartung, wanted Mrs. Hinners arrested and that Chief Lippert acted on the instructions of both men.  The facts might prove otherwise, but these allegations suffice at this stage of the proceedings.

### V.E.   Civil Conspiracy (Claims 19, 23 & 28)

Plaintiffs allege that the City Defendants conspired with the other Defendants—Ms. Lane, Mr. O'Shea, and Walter Haverfield—to retaliate against Plaintiffs for exercising their rights.  (ECF No. 31, PageID #1053–54, 1057–58.)  They bring federal conspiracy claims under Sections 1983 and 1985 and a conspiracy

claims under Ohio law.  All Defendants assert that intracorporate conspiracy doctrine bars Plaintiffs' conspiracy claims because they all are part of the same entity.  (ECF No. 46-1, PageID #1708.)  The Court agrees.

Starting with the two federal conspiracy claims.  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy."  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991).  The Sixth Circuit "has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees."  *Id.* (holding that a school's superintendent, executive director, and administrator could not conspire, because they were all "employees or agents of the [school] Board".)  The Sixth Circuit has extended the intracorporate conspiracy doctrine to civil-rights conspiracies.  *Id.* at 509; *see Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019) (applying the intracorporate conspiracy doctrine to Section 1983 claims); *Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (holding that the intracorporate conspiracy doctrine bars the plaintiff's Section 1985 claim).

Here, Defendants are all part of a single entity:  the City of Huron, a municipal corporation within the State of Ohio.  The amended complaint alleges that all Defendants are or were employees of the City (Defendants Hartung, Ginesi, Schaffter, Hardy, White, Chief Lippert, and Officers Orzech, and Koehler) or agents for the City (Defendants Lane, O'Shea and Walter Haverfield.).  (ECF No. 31, ¶¶ 7–20, PageID #991–92.)  For example, the amended complaint alleges that the City "appointed" and "contracted with" Walter Haverfield for legal services and

attached the City's legal-services agreement with the firm.  (*Id.*, ¶¶ 128 & 157, PageID #1013 & 1017; ECF No. 31-81.)

To sidestep the intracorporate-conspiracy bar, Plaintiffs advance two arguments.  First, they argue that Defendant O'Shea was not an employee of the City or Walter Haverfield but was instead an employee of his law firm, Lipson O'Shea. (ECF No. 59-2.) This fact is unremarkable so far as it goes.  Nonetheless, Mr. O'Shea served as the City's agent as the special prosecutor.  (ECF No. 31, ¶¶ 3, 20 & 137, PageID #990, #992 & #1014–15.)  Each claim against Ms. Lane and Mr. O'Shea arises from their service as a prosecutor for the City.  Inherently, an attorney acts as his or her client's agent.  *United States v. Johnson*, 752 F.2d 206, 210–11 (6th Cir. 1985); *Biddle v. Warren Gen. Hosp.*, 86 Ohio St. 3d 395, 404, 1999-Ohio-115, 715 N.E.2d 518 (1999) (noting that, where an attorney-client relationship exists, a law firm serves as its client's agent); *Mermer v. Medical Correspondence Serv.*, 115 Ohio App. 3d 717, 721, 686 N.E.2d 296 (6th Dist.1996) (a law firm acts as an agent for its client in securing medical records for litigation).  The facts as alleged in the amended complaint establish that the named Defendants all worked for or acted on behalf of the City of Huron.

Second, Plaintiffs argue that the intracorporate conspiracy doctrine does not apply because Ms. Lane and Mr. O'Shea acted beyond their scope of employment. (ECF No. 59-2.)  As already mentioned, however, each maintained authority, both legal and prosecutorial, during the prosecution of Mrs. Hinners.

As for the conspiracy claim asserted under State law, in *Bays v. Canty*, 330 F. App'x 594 (6th Cir. 2009), the Sixth Circuit acknowledged that the Ohio Supreme Court has yet to address whether the intracorporate conspiracy doctrine applies to civil conspiracy claims brought under Ohio law. But the *Bays* Court nonetheless held that the Ohio Supreme Court would embrace the doctrine. *Id.* at 591–95. Since then, this Court has applied the intracorporate conspiracy doctrine to conspiracy claims brought under Ohio law. *See Engle v. City of Cuyahoga Falls*, No. 5:14-cv-1161, 2015 U.S. Dist. LEXIS 80654, at *25–26 (N.D. Ohio June 22, 2015) (dismissing State conspiracy claim under the intracorporate conspiracy doctrine).

For these reasons, the Court **DISMISSES** each conspiracy claim against all Defendants.

### V.F. Assault, Battery, and False Imprisonment (Claims 25, 26 & 27)

Officers Orzech and Koehler argue that they are entitled to judgment on the pleadings in their official capacities because the City of Huron is immune from intentional tort claims under Sections 2744.02 and 2744.03 of the Ohio Revised Code. (ECF No. 55-1, PageID #1853 ). Insofar as Plaintiffs dispute this claim, they argue only that there is dispute about whether Officers Orzech and Koehler were acting under color of state law. (ECF No. 67, PageID #2080–82.)

Generally, a political subdivision is not liable for damages caused by it or an employee if the act was in connection with a governmental function. Ohio Rev. Code § 2744.02(A)(1); *see Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, ¶ 10. Importantly, "a suit against an employee of a political subdivision in the employee's official capacity . . . is an action against the entity itself and the

employees are entitled to the same immunity due the political subdivision." *Newton v. City of Cleveland Law Dep't*, 8th Dist. Cuyahoga No. CV–14–829173, 2015-Ohio-1460, ¶ 17 (citing *Lambert*, 2010-Ohio-1483, ¶ 10).  Therefore, for both types of claims, Ohio courts employ a three-tier analysis in accordance with Section 2744.02 to determine whether a defendant is immune from suit.

In the first tier, courts must discern whether Section 2744.02 covers the defendant's actions.  The statute provides a general grant of immunity against claims for "damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1); *Lambert*, 2010-Ohio-1483, ¶ 8.  The second tier of the immunity analysis focuses on the five exceptions to immunity that Section 2744.02(B) lists.  *Id*.  Those exceptions are "(1) the negligent operation of a motor vehicle by an employee with certain exceptions, (2) negligent acts by an employee engaged in a proprietary function, (3) the negligent failure to keep roads in good repair, (4) negligence that results in injury on a subdivision property used for a governmental function, and (5) when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code."  *Newton*, 2015-Ohio-1460, ¶ 15.  "If immunity is removed under one or more of these subsections, only then is the third tier of the analysis utilized." *Id.*

Under this analysis, the City, and as a result Officers **Orzech and Koehler** have immunity against Claims 26, 27, and 28 because, as alleged in the amended

complaint, they acted in connection with City's governmental function of policing the public. The Code defines a "governmental function" as including "the provision or nonprovision of police." *See* Ohio Rev. Code § 2744.01(C)(2)(a); *Newton*, 2015-Ohio-1460, ¶ 14.

Moving to tier two, none of the five exceptions to immunity apply to the Officers' conduct. Therefore, the Court **DISMISSES** Plaintiffs' Claims 26, 27, and 28.

### V.G.   Negligent or Reckless Hiring and Retention (Claim 29)

Under State law, Plaintiffs allege that Walter Haverfield and the City Defendants negligently or recklessly hired and retained both Ms. Lane and Mr. O'Shea. Under the negligent-hiring test set forth above, however, Plaintiffs fail to make plausible allegations that Ms. Lane and Mr. O'Shea were incompetent.

Again, the allegations of Mr. O'Shea's incompetence—that he (1) received an ethical complaint during his 2016 campaign for a seat on the Cuyahoga County Domestic Relations Court; (2) failed to fulfill his continuing-legal-education requirements in 1996 and 2002; and (3) had several tax liens—have been stricken and, in any event, fail to support the allegation that Mr. O'Shea was incompetent to serve as a special prosecutor or was biased. As for Ms. Lane, Plaintiffs simply do not allege any facts that Ms. Lane had a history of incompetence or engaged in any misconduct or that Walter Haverfield or the City Defendants knew or should have known that she was incompetent.

Therefore, the Court **DISMISSES** the negligent hiring and retention claims against all Defendants.

### V.H.  Destruction of Records (Claim 31)

Plaintiffs allege that Chief Lippert and Officers Orzech and Koehler destroyed records by deleting texts messages from May 14, 2019.  (ECF No. 31, PageID #1061.) The City Defendants move for judgment, arguing that Plaintiffs make only conclusory allegations.  (ECF No. 55-1, PageID #1858–59.)

Section 149.351(A) of the Ohio Revised Code prohibits public offices from destroying or disposing of their public records unless permitted by law.  To maintain a claim under Section 149.351(B), a plaintiff must show that:  (1) he or she requested the public records; (2) the public office was obligated to honor the request; (3) the office disposed of the public records in violation of Section 149.351(A); and (4) the plaintiff was "aggrieved by the improper disposal." *Rhodes v. City of New Philadelphia*, 129 Ohio St. 3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 16.

Here, Plaintiffs have failed to allege a claim under Section 149.351(B) because they fail to allege that they requested the allegedly deleted messages.  Plaintiffs merely aver that they were aggrieved by the alleged destruction of the text messages. The Court **DISMISSES** this claim.

## VI.  Defendant Walter Haverfield's Motion to Dismiss

Defendant Walter Haverfield moves to the dismiss the two conspiracy claims (Claims 23 & 28) and the negligent-hiring claim (Claim 29) Plaintiffs assert against the firm.  (ECF No. 46-1.)  For the reasons explained above, the Court **GRANTS** Walter Haverfield's motion and **DISMISSES** Claims 23, 28, and 29 against the firm.

## CONCLUSION

For the foregoing reasons, the Court **STRIKES** Paragraphs 130 to 134 of the amended complaint, **GRANTS** (1) Plaintiffs' motion to dismiss Claims 7 and 8 against Defendant O'Shea (ECF No. 78), (2) Defendant Lane's motion for judgment on the pleadings (ECF No. 51), (3) Defendant O'Shea's motion for judgment on the pleadings (ECF No. 63), and (4) Defendant Walter Haverfield's motion to dismiss (ECF No. 46) and **DISMISSES** all the Claims asserted against them.

Furthermore, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' motion for judgment on the pleadings (ECF No. 55) and **DISMISSES:**

- Claims 19, 23, 28 (conspiracy claims) against all Defendants;

- Claims 25, 26, 27 (intentional torts) against all Defendants;

- Claim 29 (negligent hiring) against all Defendants; and

- Claim 31 (destruction of records) against Defendants Lippert and Orzech.

All claims that the Court did not dismiss may proceed. As a visual aid, the Court includes the following chart, which denotes the claims that may proceed in their entirety with a check mark, claims dismissed in their entirety with a red "x", and claims granted in part and denied in part with a slashed circle. For claims denoted with a slashed circle, the Court notes the remaining Defendants for that respective claim.

| Claims | Disposition | Remaining Defendants |
|---|:---:|---|
| Claim 1:<br>42 U.S.C. § 1983—Equal Protection (Selective Prosecution) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 2:<br>42 U.S.C. § 1983—First Amendment Retaliation (Arrest) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 3:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Speech Clause-Prior Restraint) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 4:<br>As Applied Challenge to Huron Codified Ord. § 509.04 (First Amendment) | ✗ | |
| Claim 5:<br>As Applied Challenge to Huron Codified Ord. § 525.07 (First Amendment) | ✗ | |
| Claim 6:<br>As Applied Challenge to Huron Codified Ord. § 525.07 (Fifth Amendment) | ✗ | |
| Claim 7:<br>42 U.S.C. § 1983—Vagueness Challenge to Huron Codified Ord. § 509.04 (First Amendment) | 🚫 | City of Huron |
| Claim 8:<br>Overbreadth Challenge to Huron Codified Ord. § 509.04 (First Amendment) | ✗ | |
| Claim 9:<br>42 U.S.C. § 1983—First Amendment Deprivation (Establishment Clause) | ✓ | |
| Claim 10:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Exercise Clause) | ✓ | |
| Claim 11:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Speech Clause) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |

| | | |
|---|---|---|
| Claim 12:<br>42 U.S.C. § 1983—First Amendment Retaliation (Free Press Clause) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 13:<br>42 U.S.C. § 1983—First Amendment Retaliation (Assembly Clause) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 14:<br>42 U.S.C. § 1983—First Amendment Retaliation (Petition Clause) | 🚫 | City of Huron,  Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 15:<br>42 U.S.C. § 1983—Malicious Prosecution (Fourth Amendment) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 16:<br>42 U.S.C. § 1983—Fourth Amendment Violation (Excessive Force) | ✓ | |
| Claim 17:<br>42 U.S.C. § 1983—Fourth Amendment Violation (False Arrest) | 🚫 | City of Huron, Mr. Hartung, Mr. White, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 18:<br>    42  .S.C. § 1983—Failure to Intervene | 🚫 | Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 19:<br>42 U.S.C. § 1983—Civil Conspiracy | ✗ | |
| Claim 20:<br>42 U.S.C. § 1983—Municipal Liability (Authorized Action) | ✓ | |
| Claim 21:<br>42 U.S.C. § 1983—Municipal Liability (Unconstitutional Policy) | ✓ | |
| Claim 22:<br>42 U.S.C. § 1983—Municipal Liability (Failure to Train/Supervise) | ✓ | |

| | | |
|---|---|---|
| Claim 23:<br>42 U.S.C. § 1985(3)—Conspiracy to Violate Civil Rights | ✗ | |
| Claim 24:<br>42 U.S.C. § 1983—Supervisory Liability | 🚫 | Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert |
| Claim 25:<br>Assault | ✗ | |
| Claim 26:<br>Battery | ✗ | |
| Claim 27:<br>False Imprisonment | ✗ | |
| Claim 28:<br>State-Law Civil Conspiracy | ✗ | |
| Claim 29:<br>State-Law Negligent and Reckless Hiring/Retention/Supervision | ✗ | |
| Claim 30:<br>Spoilation | ✓ | |
| Claim 31:<br>Record Destruction—Ohio Rev. Code § 149.351 | ✗ | |
| Claim 32:<br>Civil Liability for Criminal Acts—Ohio Rev. Code § 2307.60 | 🚫 | Mr. Hartung, Mr. White, Mr. Ginesi, Mr. Schaffter, Mr. Hardy, Chief Lippert, Officer Orzech, Officer Koehler |
| Claim 33:<br>Intimidation—Ohio Rev. Code § 2921.03 | ✓ | |

**SO ORDERED.**

Dated: May 31, 2022

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio